1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH FRAME-WILSON and CHRISTIAN SABOL, on behalf of themselves and all others similarly situated, | No. |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | **DEMAND FOR JURY TRIAL** |
| AMAZON.COM, INC., a Delaware corporation, | |
| Defendant. | |

CLASS ACTION COMPLAINT
Case No.
010888-11/1249081 V1



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

**TABLE CONTENTS**

                                                                                    **Page**

I.      INTRODUCTION ......................................................................................1

        A.      Summary of Allegations .......................................................1

        B.      Identity of Class Products ....................................................11

        C.      The Economic Impact of Amazon's Anticompetitive Conduct.............12

II.     JURISDICTION .......................................................................................14

III.    VENUE ....................................................................................................15

IV.     PARTIES .................................................................................................15

        A.      Plaintiffs .............................................................................15

        B.      Defendant ...........................................................................17

V.      STATEMENT OF FACT ..........................................................................17

        A.      Background .........................................................................17

        B.      Amazon's two million third-party sellers agreed under Amazon's
                former PMFN not to offer their products to U.S. customers at a
                lower price through any competing retail e-commerce channels. .........27

        C.      Amazon's two million third-party sellers agree under Amazon's
                current "fair pricing" provision that selling at a lower price through
                competing retail e-commerce channels will subject them to costly
                penalties. ............................................................................28

        D.      Amazon's former PMFN and current "fair pricing" provision
                reduce price competition and cause consumers to pay more...............28

        E.      Amazon has a monopoly in the retail e-commerce market or
                minimally in several categories of goods................................32

        F.      Alternatively, Amazon has attempted to monopolize the general
                retail e-commerce market. ..................................................33

        G.      Amazon is the subject of a government investigation for possible
                antitrust violations, including whether it uses its relationship with
                its third-party sellers to harm competition. ..............................33

VI.     INTERSTATE TRADE AND COMMERCE .................................................35

VII.    RELEVANT MARKET.............................................................................35

VIII.   CLASS ACTION ALLEGATIONS ............................................................38

IX.     ANTITRUST INJURY .............................................................................41



X.    CAUSES OF ACTION ................................................................42

    FIRST CAUSE OF ACTION VIOLATION OF THE SHERMAN ACT
        (15 U.S.C. § 1) *PER SE* ................................................42

    SECOND CAUSE OF ACTION VIOLATION OF THE SHERMAN ACT
        – MONOPOLIZATION (15 U.S.C. § 2) ...........................44

    THIRD CAUSE OF ACTION VIOLATION OF THE SHERMAN ACT –
        ATTEMPTED MONOPOLIZATION (15 U.S.C. § 2) ...........45

    FOURTH CAUSE OF ACTION VIOLATIONS OF CONSUMER
        PROTECTION STATUTES ...........................................46

    FIFTH CAUSE OF ACTION UNJUST ENRICHMENT ................................48

JURY TRIAL DEMANDED ................................................................49

PRAYER FOR RELIEF ................................................................49



Plaintiffs allege the following upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by and through their attorneys.

## I.   INTRODUCTION[1]

### A.   Summary of Allegations

1.   Amazon.com, Inc. ("Amazon") is "the world's largest online retailer."[2] Sales on its website, through its app or voice control devices (collectively referred to as the "Amazon.com platform") account for almost half of all retail e-commerce in the United States.[3]  Amazon's nine closest competitors have a distant 1.1%-6.6% share of the retail e-commerce market.[4] Amazon operates as retailer, selling directly to its customers. It also operates what economists call a "two-sided platform," meaning that it provides services to two different groups (here third-party sellers and their customers) who both depend on the platform to intermediate between them.[5]As a retail seller, Amazon sells approximately 12 million products at the Amazon.com platform on a wide range of consumer goods.[6] For a fee, Amazon also permits third parties to register with Amazon Marketplace to sell their products on the Amazon.com platform within the same categories of

---

[1] Plaintiffs are mindful of the severe impact of the corona virus pandemic on all aspects of society. In particular, they are aware of the burden this crisis places on small businesses and larger corporations alike, as well as the drain it imposes on scarce judicial resources. Plaintiffs are compelled, however, to file now to preserve their rights and those of the proposed class. To minimize the burden on the Court and to reasonably accommodate Amazon, Plaintiffs will work with Defendant to reach an agreeable schedule for its response to the complaint.

[2] Declaration of Ella Irwin, Director of Marketplace Abuse at Amazon (Jul. 13, 2018), *Kangaroo Mfg., Inc. v. Amazon.com*, Case No. 17-cv-1806SPL (D. Ariz.), Dkt. No. 75 (Irwin Decl.), ¶ 2.

[3] *Amazon Now Has Nearly 50% of US Ecommerce Market*, Emarketer (Jul. 16, 2018), https://www.emarketer.com/content/amazon-now-has-nearly-50-of-us-ecommerce-market.

[4] *Id.*

[5] *See Ohio v. American Express Co.*, ___U.S.___ , 138 S. Ct. 2274, 2276-77 (2018).

[6] *How many products does Amazon carry?* 360pi (May 2016), https://0ca36445185fb449d582-f6ffa6baf5dd4144ff990b4132ba0c4d.ssl.cf1.rackcdn.com/IG_360piAmazon_9.13.16.pdf.; Amazon store directory, https://www.amazon.com/gp/site-directory?ref_=nav_em_T1_0_2_2_36__fullstore.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

consumer goods that Amazon itself offers for sale.[7] Nicholas Denissen, Amazon's Vice President of Marketplace Business, describes the Amazon.com platform as "an online marketplace where millions of third-party sellers list products for sales, setting their own prices and describing their own products."[8] This arrangement gives sellers access to millions of buyers and buyers access to millions of sellers.[9] He likens it to "an online mall where independent merchants display their products to people perusing the website."[10]

2.      As a retailer, Amazon competes not only with the major online or mobile app retail rivals, like Costco, Wayfair, or Home Depot, but also with its two million third-party sellers, who are contractually authorized to sell their wares on the Amazon.com platform.[11] Eighty percent of Amazon's third-party sellers also sell their products on other online retail websites that compete with the Amazon.com platform, most commonly on eBay, their own websites, or Walmart.[12]

3.      But selling on Amazon comes with certain restrictions. When a seller registers with Amazon Marketplace, "it agrees to the terms of the Amazon Services Business Solutions Agreement (BSA) and the policies incorporated in that agreement.[13] The BSA establishes rules

---

[7] Irwin Decl., ¶ 5.

[8] Declaration of Nicholas Denissen, Amazon's Vice President of Marketplace Business (Jun. 30, 2017), *Oberdorf v. Amazon.com*, Case No. 16-cv-1127MWB (M.D. Pa.), Dkt. No. 31 (Denissen Decl.), ¶ 5.

[9] *Id.*

[10] *Id.*

[11] Jay Clement, *Key metrics of Amazon.com marketplace sellers in the United States in 2019* (Jan. 20, 2020), Statista, https://www.statista.com/statistics/1086637/amazoncom-3p-seller-metrics-usa/.

[12] Rani Molla & Jason Del Rey, *A fifth of professional Amazon merchants sell more than $1 million a year — double the share from last year*, Vox (May 23, 2018), https://www.vox.com/2018/5/23/17380088/amazon-sellers-survey-third-party-marketplace-walmart-ebay.

[13] Irwin Decl., ¶ 4.



for setting prices on the Amazon.com platform, and any seller holding an Amazon Seller Account must adhere to them.[14]

4.     Until very recently, the BSA included an express "price parity" (*i.e.*, platform most favored nation or "PMFN") provision.[15] Amazon's PMFN governed the price of products offered for sale on the seller or any of its affiliates' other retail channels other than physical stores.[16] It required that sellers:

> maintain parity between the products you offer through Your Sales
> Channels and the products you list on any Amazon Site by
> ensuring that … the purchase price and every other term of sale …
> is at least as favorable to Amazon Site users as the most favorable
> terms via Your Sales Channels (excluding consideration of
> Excluded Offers).[17]

5.     Last March, under threat of a Federal Trade Commission (FTC) investigation, Amazon officially withdrew its PMFN provision that directly prohibited third-party sellers on Amazon.com platform from selling their products at a lower price through competing retail e-commerce channels.[18] But Amazon continues to enforce this policy under its "fair pricing" provision, which likewise severely penalizes sellers who offer lower prices outside the Amazon.com platform.[19] Amazon's "fair pricing" policy states that "Amazon regularly monitors the prices of items on our marketplaces," and that if it sees "pricing practices" on the Amazon.com platform "that harm[] customer trust, Amazon can remove the Buy Box [*i.e.*, the

---

[14] *Amazon Pricing Policy*, Feedadvisor, https://feedvisor.com/university/amazon-pricing-policy/.

[15] Irwin Decl., Ex. A at 18, section S-4 (Parity with Your Sales Channel).

[16] *Id.*, Ex. A at 14 and 18.

[17] *Id.*, Ex. A at 18.

[18] *See, e.g.*, Greg Magana, *Amazon is ending its restrictive pricing practice*, Business Insider (Mar. 13, 2019), https://www.businessinsider.com/amazon-ends-restrictive-pricing-parity-2019-3.

[19] *See, e.g.*, Guadalupe Gonzalez, *You're No Longer Required to Sell Products for Less on Amazon. The Problem? If You Don't, You've Got Another Penalty Coming*, https://www.inc.com/guadalupe-gonzalez/amazon-removes-price-parity-not-fair-price-rule-third-party-sellers-antitrust-violations.html.



coveted one-click-to-buy button[20]], remove the offer, suspend the ship option, or, in serious or repeated cases, suspend[] or terminat[e] selling privileges."[21] One of the pricing practices Amazon identifies as "harmful" to customer trust is "[s]etting a price on a product or service that is significantly higher than recent prices offered *on or off* Amazon."[22]

6.      Under the "fair pricing" provision, "[a]ny single product or multiple products packages must have a price that is equal to or lower than the price of the same item being sold by the seller on other sites or virtual marketplaces."[23] The "fair pricing" provision  "applies to both the individual product price as well as the collective price that the item or items are being sold for."[24] Fair pricing in substance is not significantly different from Amazon's former PMFN.

7.      Almost half of Amazon's third-party sellers, generate 81 to 100% of their revenues from sales on the Amazon.com platform.[25] It costs less to sell on eBay or the sellers' own websites, but because of Amazon's anticompetitive price policies, its third-party sellers are prevented from lowering their prices to online customers reached outside the Amazon.com platform.[26] By contractually enforcing a price policy that preempts lower prices offered through any competing retail e-commerce channel—even when sellers retain the same level of profit at

---

[20] *Infra* ¶¶ 51-52.

[21] *Amazon Marketplace Fair Pricing Policy*, Amazon Seller Central, https://sellercentral.amazon.com/gp/help/external/G5TUVJKZHUVMN77V?language=en_US&ref=efph_G5TUVJKZHUVMN77V_cont_521.

[22] *Id*. (emphasis added).

[23] *Supra Amazon Pricing Policy*, Feedadvisor, https://feedvisor.com/university/amazon-pricing-policy/.

[24] *Id.*

[25] J. Clement, *Percentage of e-commerce revenue from Amazon sales according to Amazon marketplace sellers in 2018*, Statista (May 4, 2019), https://www.statista.com/statistics/259782/third-party-seller-share-of-amazon-platform/.

[26] Max Godin, Selling on Amazon vs eBay – Discover Which is Better and Why, Crazylister (May 15, 2018), https://sellerengine.com/how-many-products-does-amazon-sell-amazon-marketplace-stats/; Molson Hart, *How Amazon's Business Practices Harm American Consumers: Why Amazon Needs a Competitor and Why Walmart Ain't It*, Medium, https://medium.com/swlh/amazon-needs-a-competitor-and-walmart-aint-it-5997977b77b2.

CLASS ACTION COMPLAINT - 4
Case No.
010888-11/1249081 V1



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

the lower price, Amazon engages in a pricing scheme that broadly and anticompetively impacts virtually all products offered for sale in the U.S. retail e-commerce market.

8.       As a retailer, Amazon sells about 12 million products, whereas its two million third-party sellers sell around 600 million products on the Amazon.com platform.[27] Collectively, sales on the Amazon.com platform accounted for 49.1% of the total U.S. retail e-commerce market in 2018.[28] Third-party sellers accounted for 68% of the sales revenue on the Amazon.com platform, or one third of the revenue generated by the entire U.S. retail e-commerce market.[29] By reaching a horizontal agreement on price with these retailers, Amazon impeded price competition in the U.S. retail e-commerce market.

9.       Plaintiffs and Class[30] members purchased Class Products, *i.e.*, they bought the same products offered by third-party sellers on the Amazon.com platform from competing retail e-commerce channels, *e.g.*, competing retailer websites or apps, or social media platforms. Plaintiffs and Class members overpaid for Class Products because Amazon prevents its third-party sellers from competing on price outside the Amazon.com platform. Even when it costs the sellers less, *e.g.*, when the seller sells directly to consumers on its own website or at a lower fee on eBay, sellers are contractually barred or severely penalized from passing on these savings to their customers.

10.       Amazon has engaged and continues to engage in horizontal price fixing with its two million third-party sellers with respect to Class Products. These sellers have agreed explicitly to comply with Amazon's pricing policies, including its former PMFN and its current "fair pricing" provision. These pricing policies compel Amazon's sellers to maintain supracompetitive prices for Class Products on competing retail e-commerce channels because any discounts sellers offer on another site must also be offered to Amazon buyers. Specifically,

---

[27] *How Many Products Does Amazon Sell? – January 2018*, ScrapeHero, https://www.scrapehero.com/many-products-amazon-sell-january-2018/.

[28] *Supra Amazon Now Has Nearly 50% of US Ecommerce Market.*

[29] *Id.*

[30] *Infra* ¶ 96.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

1   Amazon's horizontal price-fixing agreement with its third-party sellers creates a price floor (*i.e.*,

2   the price of the seller's Amazon listing) for products sold through retail e-commerce channels

3   other than the Amazon.com platform. Amazon's horizontal price-fixing agreement with its two

4   million sellers is a *per se* violation of antitrust law. It harms consumers by maintaining

5   supracompetitive prices for goods sold on the internet and harms competition because it impedes

6   two million sellers from competing on price. While it harms consumers and competition,

7   Amazon's horizontal price-fixing agreement benefits Amazon because it attracts more customers

8   to the Amazon.com platform and because it avoids head-to-head competition between Amazon

9   and its third-party sellers on competing retail e-commerce channels, where they would offer

10  more competitive prices.

11      11.     Amazon's conduct also demonstrates an abuse or attempted abuse of monopoly

12  power in violation of Section 2 of the Sherman Act. Amazon's dominance of the industry hurts

13  consumers. Were it not for Amazon, the e-commerce market price for products sold by its third-

14  party sellers would be substantially cheaper.

15      12.     The digital revolution has vastly transformed retail sales in the United States.

16  Consumers can reach retailers in physical stores, connect with them directly through a retailer's

17  website or app, or indirectly through an internet search or other digital platforms, like social

18  media.[31] "Competition in retail is now a click or voice command away, which means [in theory]

19  that retailers operate within the most competitive industry in the world."[32] But not all

20  competitors are equal. Amazon controls not only the prices that its two million third-party sellers

21  set for their products on websites, apps, or platforms that compete with the Amazon.com

22  platform, it also exercises a significant level of control over the flow of available information to

23

24

---

25  [31] Retail Industry Leaders Association letter to the Federal Trade Commission re:
    Competition and Consumer Protection in the 21st Century Hearings (Project Number P181201)
26  (Jun. 30, 2019) ("RILA letter"), at 1,
    https://rila.my.salesforce.com/sfc/p/#61000000dOrP/a/4M000000DO0Z/H5c7IH2umW0ayLluM
27  XZ0TsRBosaLIZAV9aTfcf9rs3o.

28      [32] *Id.*

CLASS ACTION COMPLAINT - 6
Case No.
010888-11/1249081 V1

consumers on the internet, including consumers' "access to price information."[33] Competing online retailers, like Walmart and Target, recently expressed concerns to the FTC that they struggle to break through the "information bottleneck," caused in large part because Amazon and Google collectively control the majority of internet searches for products.[34] Lina Khan, a fellow on the Open Markets team at New America, a center-left think tank, describes Amazon "as serving almost as the essential infrastructure for the American economy at this point, when it comes to commerce," which she says "affords Amazon a lot of power and control."[35] Alex Sheppard at the New Republic expressed a similar concern: "If Amazon now controls the pricing in the book industry, just imagine what it can do in the broader world of retail."[36]

13.     The figures below show Amazon's dominant position in the online retail market and how its policy decisions can affect the whole e-commerce sector.

14.     The U.S. e-commerce marketplace is dominated by Amazon, which accounts for roughly half of all online retail sales.[37]

---

[33] *Id.*

[34] *Id.* at 3; *Who is winning the shopping search race — Amazon or Google?*, Retail Wire (May 6, 2019), https://retailwire.com/discussion/who-is-winning-the-shopping-search-race-amazon-or-google/.

[35] Robinson Meyer, *When Does Amazon Become a Monopoly?*, ATLANTIC MONTHLY (Jun. 16, 2017), https://www.theatlantic.com/technology/archive/2017/06/when-exactly-does-amazon-become-a-monopoly/530616/.

[36] Alex Sheppard, *How Amazon Is Changing the Whole Concept of Monopoly*, New Republic (Jun. 19, 2017), https://newrepublic.com/article/143376/amazon-changing-whole-concept-monopoly.

[37] J. Clement, *Leading U.S. online marketplaces 2018, by GMV*, Statista (Mar. 1, 12, 2019), https://www.statista.com/statistics/977262/top-us-online-marketplaces-by-gmv/.

CLASS ACTION COMPLAINT - 7
Case No.
010888-11/1249081 V1

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX



15.     Amazon's market share has been increasing over the past five years, as shown by the growth of its sales.[38]



---

[38] J. Clement, *U.S. Amazon marketplace sales 2016-2019*, Statista, Jun 12, 2019, https://www.statista.com/statistics/882919/amazon-marketplace-sales-usa/.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

16.     Third-party sellers account for the majority of sales on the Amazon.com platform[39]



Distribution of Amazon Retail E-Commerce Sales in the United States

17.     The vast majority of active third-party sellers also sell on other online platforms. As of 2019, there were 1.1 million active sellers on the Amazon.com platform; 80% of them sell on other marketplaces, including other online platforms[40]:

---

[39] Laureen Thomas & Courtney Reagan, *Watch out, retailers. This is just how big Amazon is becoming*, CNBC,  www.cnbc.com/2018/07/12/amazon-to-take-almost-50-percent-of-us-e-commerce-market-by-years-end.html.

[40] Catie Grasso, *The State of the Amazon Marketplace 2019*, Feedadvisor, (May 15, 2019), https://feedvisor.com/resources/amazon-trends/the-state-of-the-amazon-marketplace-2019/.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX



18.    Amazon has obtained monopoly power in the U.S. retail e-commerce market, as demonstrated by its power to set the prevailing prices of the vast majority of consumer goods offered for sale on the internet and that it exercises extraordinary control over millions of its online retail competitors.

19.    In the alternative, Amazon has minimally obtained monopoly power in the U.S. online retail sub-markets for home improvement tools, men's athletic shoes, skin care, batteries, golf, cleaning supplies, and kitchen and dining products, where it has the overwhelming majority share in each of these markets. Amazon has willfully acquired its monopoly power in the U.S. retail e-commerce market and/or these identified U.S. online retail sub-markets through anticompetitive conduct, including enforcement of its former PMFN and its current "fair pricing" provision. By enforcing these provisions, Amazon creates a price floor that its third-party sellers must adhere to in all retail e-commerce channels that compete with the Amazon.com platform, thereby causing supracompetitive prices for Class Products in the U.S. retail e-commerce market. Such conduct is an abuse or attempted abuse of monopoly power in violation of Section 2 of the Sherman Act.

20.    In the event that Amazon does not already have a monopoly in the U.S. retail e-commerce market, it has attempted to monopolize this market. Amazon exercises broad control over the online prices of virtually every consumer good by controlling the prices that its two

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

1   million third-party sellers may offer through competing retail e-commerce channels. Amazon's

2   contractual pricing provisions further this goal and cause supracompetitive prices. If Amazon

3   does not already have monopoly power in the e-commerce market, there is a dangerous

4   probability that it will achieve one because sales on the Amazon.com platform account for nearly

5   half of all retail e-commerce sales in the United States.

6          21.     Amazon's anticompetitive conduct also violates multiple state consumer

7   protection laws by causing consumers to overpay for consumer goods purchased online.

8          22.     Plaintiffs on their own behalf and that of similarly situated consumers, seek

9   monetary recovery and injunctive relief for harm caused by Amazon's violations of federal

10  antitrust law and state consumer protection statutes—harm that persists and will not abate unless

11  Amazon is stopped.

12  **B.     Identity of Class Products**

13         23.     Class Products encompass all products that were protected from price competition

14  by floor prices sets by Amazon's anti-competitive pricing policies. To qualify as a Class Product,

15  the product must be sold through a retail e-commerce channel other than the Amazon.com

16  platform, and the product must be concurrently offered by Amazon's third-party sellers on the

17  Amazon.com platform. For example, CaddiesShack is a third-party seller on Amazon, who sold

18  Bridgestone Tour B330-S Golf Balls (12-pack) in March of this year on its own website, the

19  Amazon.com platform, eBay, and Walmart.com.[41] Other sellers, who offered the same product

20  on eBay, Walmart.com or any other e-commerce platform, were spared the price competition

21  that CaddiesShack and other Amazon sellers otherwise would have provided. Therefore, to

22  qualify as a Class Product, it is not necessary that the product sold through a competing retail e-

23  commerce channel be sold by an Amazon third-party seller.

24         24.     "Amazon regularly monitors the prices of items" its third-party sellers offer on the

25  Amazon.com platform, "including shipping costs, and compares them with other prices available

26

27

28  _____
    [41] *See supra* ¶ 66.

HAGENS BERMAN

to our customers . . . on or off Amazon" and penalizes violations.[42] As a result of its price monitoring and enforcement of its pricing policies, Amazon is expected to maintain pricing data not only for products offered for sale on the Amazon.com platform, but also Class Products, *i.e.* the same products sold through competing retail e-commerce channels. Plaintiffs and Class members who paid more than the but-for price for online purchases of Class Products were therefore damaged

## C.     The Economic Impact of Amazon's Anticompetitive Conduct

25.     Without discovery, the exact number or a complete list of all products affected by Amazon's former PMFN and current "fair pricing" policy is unknown at this time. Based on publicly available information, Plaintiffs estimate that Class Products consist of approximately 600 million consumer products offered by Amazon's third-party sellers.[43] Amazon's requirement that its third-party sellers offer their lowest price on the Amazon.com platform in combination with the high fees that Amazon charges them to sell on its platform, creates an anticompetitive floor price for purchases of Class Products in the U.S. e-commerce market. But for Amazon's anticompetitive pricing policies, its third-party sellers would have offered their products on competing websites during the Class Period[44] as low as 15% less than the prices they set to comply with Amazon's pricing policies. In a competitive market, other e-commerce sellers would be expected to lower their prices accordingly. For example, Home Depot will match the "price on an identical, in-stock item from any other retailer."[45] Dell, Sam's Club, Joann Fabrics (Joann.com), Hayneedle and YLiving also match prices of online competitors, regardless of

---

[42] *Supra Amazon Marketplace Fair Pricing Policy*.

[43] *Supra How Many Products Does Amazon Sell? – January 2018*, ScrapeHero, https://www.scrapehero.com/many-products-amazon-sell-january-2018/.

[44] *Supra* ¶ 96.

[45] Home Depot, Low Price Guarantee, https://www.homedepot.com/c/PM_New_Lower_Price.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

1  size.[46] And as a practical matter, because so many consumers use Google to compare prices,

2  most major online retailers are likely to match the lowest online prices, regardless of the seller.[47]

3       26.    If Amazon's two million sellers were allowed to compete on price outside of the

4  Amazon.com platform, the price of Class Products would have been substantially lower:[48]

| Category | Amazon v Other Two-Sided Platforms | Amazon v Retailers' Own Websites |
|---|---|---|
| Books / Music / Video | 3.5% | 17.6% |
| Computer / Electronics | 6.9% | 17.6% |
| Health and Beauty | 0.4% | 8.7% |
| Home and Kitchen | 9.1% | 13.6% |
| Clothing and Accessories | 3.2% | 13.6% |
| Home Improvement Tools | 2.7% | 13.0% |
| Sports and Outdoors | 2.7% | 13.0% |
| Toys and Games | 4.4% | 13.6% |
| Food and Beverages | 6.9% | 17.6% |
| Office Products | 6.9% | 17.6% |
| Other | 8.8% | 19.8% |
| Average | 5.6% | 15.9% |

     27.    Plaintiffs estimate that Amazon caused $55-172 billion in actual damages before trebling as required by federal antitrust laws. Conservatively, considering only the impact of permitting Amazon's third-party sellers to sell at lower prices on other two-party platforms, *e.g.*, Ebay, where it costs them less to sell, the market prices for Class Products would have fallen on average by 5.6%. Considering the full competitive impact of Amazon's third-party sellers selling lower-priced goods on their own websites, market prices would have fallen on average by 15.9%, as the following charts illustrate:[49]

---

[46] Dell, Get the best deal with Price Match and Price Guarantee, https://www.dell.com/en-us/shop/price-match-guarantee/cp/price-match-guarantee; Sam's Club Price Match Policy, https://www.samsclubcontacts.com/price-match-policy; Joan.com, Frequently Asked Questions, https://www.joann.com/faqs.html#ProductInfo; Hayneedle Best Price Guarantee, https://www.hayneedle.com/help-center/best-price-guarantee; YLiving Pricing & Low-Price Guarantee, https://www.yliving.com/customer-service/pricing.html.

[47] RILA letter at 3.

[48] *See Infra* ¶ 42.

[49] Damages are expressed in billions of dollars.

CLASS ACTION COMPLAINT - 13
Case No.
010888-11/1249081 V1

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX





## II. JURISDICTION

28.   This Court has federal question jurisdiction pursuant to the federal antitrust laws invoked herein, including the Sherman Act and Clayton Antitrust Act, *e.g.*, 28 U.S.C. § 1331, 28 U.S.C. § 1337(a), and 15 U.S.C. § 15(a).

29.   This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

citizenship from Amazon, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

30.     Plaintiffs are residents of Virginia and California, who purchased consumer goods online. Plaintiffs were harmed and injured financially as a result of Defendant's conduct, as described further herein.

31.     This Court has personal jurisdiction over Amazon because Amazon has its principal headquarters in Washington, does business in Washington, directly or through agents, and has registered with the Washington Secretary of State such that it has sufficient minimum contacts with Washington.

### III.     VENUE

32.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Amazon's principal place of business is in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### IV.     PARTIES

**A.     Plaintiffs**

33.     Deborah Frame-Wilson is a resident of Winchester, Virginia. She regularly shops online for household goods, including baking products, cleaning products, children's toys and children's clothing. Before making her purchases, Ms. Frame-Wilson typically compares prices on multiple online retail sites, and she has found that prices are very similar on competing websites, when shipping costs are included. She purchases products from multiple online retailers, including Fanatics.com, Walmart.com, and QVC. Ms. Frame-Wilson also shops on the Amazon.com platform, but she is not making any claims relating in any way to any products or services sold or distributed by Defendant or through the Amazon.com platform. Many of the purchases Ms. Frame-Wilson made on websites other than the Amazon.com platform are products that were also concurrently available on the Amazon.com platform, *i.e.*, Class Products, *e.g.*, on February 18, 2020, she purchased a DVD, Auntie Mame, online from Walmart for $9.99, a price equal to the best price offered on the Amazon.com platform. Amazon's anticompetitive price policies prevented the price competition that would have resulted in a lower market price

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

1   for this product. Ms. Frame-Wilson has been injured and will continue to be injured by paying

2   more for Class Products than she would have paid or would pay in the future in the absence of

3   Defendant's unlawful acts, as set forth herein.

4        34.     Christian Sabol is a resident of Redondo Beach, California. He regularly shops

5   online, particularly for ski gear, on websites like The House Outdoor Gear, Snow Inn, and Next

6   Adventure. Mr. Sabol also shops on the Amazon.com platform, but he is not making any claims

7   relating in any way to any products or services sold or distributed by Defendant or through the

8   Amazon.com platform. Many of the purchases Mr. Sabol made on websites other than the

9   Amazon.com platform are products that were also concurrently available on the Amazon.com

10  platform, *i.e.*, Class Products. For example, on August 28, 2019, he purchased an 8-pack of

11  Atkins Chocolate Peanut Butter Bars, 2.12-oz., 8-Pack, Pack of 2 online from Walmart for $9.99,

12  and a 6 oz. twin pack of Arm & Hammer Advance White Extreme Whitening Baking Soda and

13  Peroxide Toothpaste, from Walmart for $5.44. The prices for both products are equal to the best

14  price offered on the Amazon.com platform at that time. Amazon's anticompetitive price policies

15  prevented the price competition that would have resulted in a lower market price for these

16  products. Mr. Sabol has been injured and will continue to be injured by paying more for Class

17  Products than he would have paid or would pay in the future in the absence of Defendant's

18  unlawful acts, as set forth herein.

19        35.     Online retail should be "the most competitive industry in the world."[50] But

20  Amazon's anticompetitive pricing policy severely restrains price competition by imposing a

21  price floor for products sold through retail e-commerce channels other than the Amazon.com

22  platform. This effect on competitors' prices is illustrated in the following chart, where the price

23  for each Class Product purchased on a competing platform (in these instances Walmart) mirrors

24  to the best price offered by Amazon's third-party sellers on the Amazon.com platform, even

25  when shipping is included[51]:

---

[50] RILA letter at 3.

[51] Prices in parentheses are the price, inclusive of taxes and shipping costs.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

| Plaintiff | Product | Purchase Date | Seller | Purchase Price* | Amazon Price* | Amazon Seller |
|---|---|---|---|---|---|---|
| Deborah Wilson | Auntie Mame (DVD) | 06/02/2020 | Walmart | $9.99 | $9.99 | Amazon |
| Chris Sabol | Arm & Hammer Advance White Extreme Whitening Baking Soda and Peroxide Toothpaste, 6 Oz | 28/08/2019 | Walmart | $5.99 ($11.43) | $5.99 ($11.43) | Amazon |
| | Atkins Chocolate Peanut Butter Bar, 2.12-oz, 8-Pack, Pack of 2 | 28/08/2019 | Walmart | $10.98 ($16.97) | $10.98 ($16.97) | Amazon |

## B.    Defendant

36.    Amazon is an online retailer giant with its principal headquarters in Seattle, Washington. Amazon sells directly to its retail customers on the Amazon.com platform. Amazon also maintains Amazon Marketplace, a platform for its two million third-party sellers, whom it also permits to sell on the Amazon.com platform. Amazon contractually obligates its third-party sellers to adhere to the pricing policies challenged in this lawsuit.

37.    Amazon's third-party sellers' registration is handled on the Amazon.com platform, where Amazon also has maintained the agreements with its third-party sellers relevant to this lawsuit. It is believed, and therefore alleged, that substantially all of the misconduct alleged in this complaint occurred in or emanated from Amazon's headquarters and principal place of business in Seattle, Washington.

## V.    STATEMENT OF FACT

## A.    Background

38.    From the third-party retailers' perspective, Amazon Marketplace is like Hotel California, a lovely place to start or expand an online retail business, but check out from Amazon Marketplace and you can quickly find your business in bankruptcy. For example, Molson Hart, who sells toys on Amazon reports: "Were we to be suspended from selling on Amazon.com, it would probably take 3–6 months before we'd be bankrupt. We are not alone. This is typical for small to medium sized businesses which sell online today. In fact, most companies like our own, would probably go bust even faster."[52]

---

[52] *Supra* Hart.

CLASS ACTION COMPLAINT - 17
Case No.
010888-11/1249081 V1

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

39.     In addition to the website traffic the Amazon.com platform generates, Amazon's third-party sellers also benefit from Amazon's 105 million Prime members in the United States.[53] Prime membership is a paid subscription service with Amazon's retail customers, which entitles them to benefits, including free two-day shipping on Prime products.[54] According to a survey, an estimated 20% of Amazon Prime members shopped on Amazon a few times per week, and 7% did so almost daily.[55] U.S. Prime members spend an average of $1,400 per year on the Amazon.com platform.[56]

40.     The retailer's relationship with Amazon begins with a modest $40 registration fee that lets it reach 95 million unique visitors per month in the United States.[57] But sellers "have to play by Amazon's rules, and Amazon.com isn't just a marketplace, it's also a seller."[58] Amazon charges a commission ("referral fees") for each item sold on their platform, typically around 15%.[59] Amazon also charges a per-item fee or a monthly subscription and it charges the seller the lesser of $5 or 20% of the price as a fee for any refunds when a shopper returns the product.[60] Optionally, and for an additional fee, Fulfillment by Amazon (FBA) will store, pick, pack, ship orders, and manage customer service and returns. Many sellers enroll in FBA because it costs

---

[53] Number of Amazon Prime members in the United States as of June 2019, Statista, https://www.statista.com/statistics/546894/number-of-amazon-prime-paying-members/.

[54] Id.

[55] Id.

[56] Average annual amount spent on Amazon according to U.S. Amazon Prime and non-Prime members as of March 2019, Statista, https://www.statista.com/statistics/304938/amazon-prime-and-non-prime-members-average-sales-spend/.

[57] Amazon Services Registration Page, https://services.amazon.com/sem-landing.html?ref=pd_sl_2thvswwc79_b&hvdev=c&ld=SEUSSOABING-B20000SC-D&hvadid=78615157546872&hvqmt=p&tag=mh0b-20&hvbmt=bb.

[58] Leanna Zeibak, *7 Steps to Winning the Amazon Buy Box in 2019*, Tinuitu (Aug. 14, 2018), https://tinuiti.com/blog/amazon/win-amazon-buy-box/.

[59] David Hamrick, *Amazon FBA Fees, How They Work, and How to Profit as a Seller*, Jungle Scout (Feb. 7, 2020), https://www.junglescout.com/blog/amazon-fba-fees/.

[60] Id.

less to have Amazon handle these aspects of the business.[61] Sellers who enroll in FBA qualify for Amazon Prime and free shipping eligible orders, otherwise most sellers must join a waitlist to join Seller Fulfilled Prime, which commits sellers to fulfill orders with two-day delivery at no additional charge for Prime customers.[62] Accepting FBA services also greatly increases the likelihood that the seller's product will be selected for the coveted Amazon Buy Box.[63] Meanwhile, sellers' enrollment in FBA is a win for Amazon, who never takes title to the third-party seller's inventory,[64] yet enjoys a steady revenue from its sellers, who do all the merchandising and take on the inventory risk.[65]

41.     Unlike subscription fees to access the platform, referral fees are not paid up-front, but instead are taken out of the seller's Amazon account after the sale is made. Amazon charges higher referral fees for those item categories where it has a significant dominance in the e-commerce market.[66]

---

[61] *Id.*

[62] *Reach hundreds of millions of Amazon customers worldwide-fast*, Amazon Seller Central, https://sellercentral.amazon.com/; *Sell products with the Prime badge directly from your warehouse*, Amazon Seller Central, https://services.amazon.com/services/seller-fulfilled-prime.html.

[63] *Supra* Zeibak.

[64] Irwin Decl., ¶ 5.

[65] Daphne Howland, *Amazon Caves on Seller Pricing*, Retail Dive (Mar. 13, 2019), https://www.retaildive.com/news/amazon-caves-on-seller-pricing/550388/.

[66] David Hamrick, *Amazon FBA Fees, How They Work, and How to Profit as a Seller*, JungleScout, (Feb. 7, 2020), Corey McNair, Top 10 US Ecommerce Companies in 2018, eMarketer (Sep. 17, 2018), https://www.junglescout.com/blog/amazon-fba-fees/#all-fees, https://www.emarketer.com/content/top-10-us-ecommerce-companies-in-2018.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

1
2
3
4
5
6
7
8
9
10
11
12
13



14     42.     Economic literature suggests that PMFN clauses typically result in non-

15 competitive fees, because they discourage the entry of new platforms who would otherwise

16 challenge the incumbents by offering sellers lower fees.[67] Walmart, Amazon's closest direct

17 competitor, charges similar fees across the same product categories. This synchronization of fees

18 between Amazon and Walmart suggest that the higher price structure imposed by Amazon has

19 spread to competing online marketplaces:

20
21
22
23
24
25

───────────────

26     [67] Andre Boik and Kenneth S. Corts, *The Effects of Platform Most-Favored-Nation Clauses on Competition and Entry*, The Journal of Law and Economics 59, no. 1 (February 2016): 105-

27 134; UK Office of Fair Trading, *Can "Fair" Prices Be Unfair? A Review of Price Relationship Agreements*, Paper No. 1438 (Sept. 2012), https://www.jura.uni-

28 wuerzburg.de/fileadmin/02140600/Aktuelles/2012-10-24_-_brit._Kartellbehoerde/OFT1438.pdf.

| Item Category | Amazon | Walmart |
|---|---|---|
| Men's athletic shoes (Shoes) | 15% < $75.00, 18% > $75.00 | 15% |
| Kitchen and Dining | 15% | 15% |
| Home Improvement Tools | 15%, 12% for base equipment | 15% |
| Apparel and Accessories | 17% | 15% |
| Electronics | 8% | 8% |
| Beauty Products | 8% < $10.00, 15% > $10.00 | 15% |
| Books | 15% | 15% |
| Furniture & Décor | 15% < $200.00, 10% > $200.00 | 15% |
| Grocery & Gourmet Food | 8% < $15.00, 15% > $15.00 | 15% |
| Personal Computers | 6% | 6% |
| Camera and Photos | 8% | 8% |
| Automotive & Powersports | 12% | 12% |
| Baby Products | 8% < $10.00,  15% > $10.00 | 15% |
| Jewelry and Watches | 20% < $250.00, 5% > $250.00 | 20% |
| Toys and Games | 15% | 15% |
| Everything Else | 15% | 15% |

43.    Market analyst Simeon Siegel notes that "although every unit sold through 3P . . . comes at lower reported revenue[,] . . . the collected fees flow through at much higher margin rates," meaning that Amazon's gross margin continues to grow even when selling fewer of its own goods.[68] For example, Amazon generated $43 billion in third-party seller service revenues in 2018, which accounted for the second-largest revenue segment of the online retail platform, after Amazon's own retail product sales.[69]

44.    Collectively, the seller fees Amazon charges are substantial and built into the prices its sellers charge their customers for products purchased on the Amazon.com platform. Because Amazon's pricing policies do not permit its sellers to sell at lower prices on other platforms, these fees are also baked into the prices they offer on other platforms, *i.e.*, throughout the e-commerce market.

---

[68] *Supra* Howland.

[69] J. Clement, *Percentage of paid units sold by third-party sellers on Amazon platform as of 4th quarter 2019*, Statista (Jan. 31, 2020), https://www.statista.com/statistics/259782/third-party-seller-share-of-amazon-platform/.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

45.     For example, retailer Molson Hart reports that a $150 item sold on Amazon would make his company the same profit as an item sold for $37 less on his company website:

> We designed, manufactured, imported, stored, shipped the item, and then we did customer service. Amazon hosted some images, swiped a credit card, and got $40 [for a $150 toy].
>
> This is the core problem. Were it not for Amazon, this item would be $40 cheaper. And this is how Amazon's dominance of the industry hurts consumers.[70]

46.     This is a direct consequence of Amazon's price policies with its third-party sellers, *i.e.*, its former PMFN and its current, nearly identical "fair pricing" policy. And these policies are not merely theoretical but have been aggressively enforced. To ensure compliance with the PMFN, Amazon's "automated system continually check[ed] and inform[ed] the seller within 15 minutes if a violation has occurred."[71] If a seller was found in violation, it received a policy warning in the seller's central account.[72] Violations could result in removal of the seller's product listing or suspension of the seller's account.[73] It was reported that "Amazon even checks [the seller's] listings for similar products that are differently described, by color or size, for example. In other words, there's no hiding place."[74] As one advisor phrased it, "[I]f you get caught, Amazon won't hold back from enforcing penalties or suspensions."[75] Jarvin Karnani, who has been selling on Amazon Marketplace for two years, told the FTC, "[I]f Amazon suspends you, it's like a death knell . . . [W]hen Amazon shuts you off, they sit on your money for 90 days and there's nothing you can do."[76] To ensure that they are in compliance with

---

[70] *Supra* Hart.

[71] Rupert Heather, *The Little-Known Amazon Pricing Rule that Would Burn Your Business*, Xsellco, https://www.xsellco.com/resources/amazon-pricing-rule-burn-business/.

[72] *Id.*

[73] Sarah Sayed, 5 Pricing Do's and Don'ts on Amazon and Walmart Marketplace, Worldfirst Blog (Apr. 11, 2018), https://www.worldfirst.com/us/blog/selling-online/5-pricing-dos-donts-amazon-walmart-marketplace/. Amazon's contracts with its third-party sellers are confidential. Plaintiffs therefore rely on publicly available third-party sources for their content.

[74] *Supra* Heather.

[75] *Supra* Sayed.

[76] *Supra* Soper & Brody.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

1    Amazon's price policies, some sellers have come to rely on an external service to replicate their

2    prices across multiple marketplaces.[77]

3          47.    "A staggering number (82%) of consumers cited price as a very important factor

4    when buying a product on Amazon."[78] But Amazon's PMFN had the effect of *reducing* price

5    competition. Third-party sellers, who would have sold their products for less, for example, on

6    their own websites (*e.g.*, by avoiding Amazon's estimated 15% fee),[79] were prevented from

7    selling at lower prices.[80]

8          48.    Amazon came under fire for its PMFN in December 2018, when Senator

9    Blumenthal called for an FTC investigation of the practice.[81] Years earlier, Amazon withdrew

10   this very practice in Europe under pressure from British and German regulators.[82] In response to

11   the Blumenthal letter, Amazon also quietly withdrew its PMFN in the U.S. in March of last

12   year.[83] At the time, Dani Nadel, president of Feedvisor, a company that advises Amazon sellers,

13   expected it to be a watershed moment that would lead "the greater e-commerce landscape" to be

14   "much more dynamic."[84] Likewise, when he learned that Amazon was revoking its PMFN,

15

16   ─────────────────────

17        [77] *Supra* Heather.

18        [78] Catie Grasso, *Amazon Pricing Strategy: How Much Should You Sell a Product For?*,
     Feedadvisor (Jan. 31, 2020), https://feedvisor.com/resources/marketplace-fees-policies/amazon-
     pricing-strategy/.

19        [79] *What it costs to sell on Amazon in 2018*, Xsellco,
20   https://www.xsellco.com/resources/amazon-seller-fees-2018/; *supra* Hart ("Amazon takes a 15%
     commission on every product we sell on their website. We don't have this fee when we sell toys
21   on our own website, so we could sell our products for 15% less and make roughly the same
     amount of money as we do on Amazon.").

22        [80] Letter from Senator Richard Blumenthal to Josephs Simons, Federal Trade Commission
23   Chair (Dec. 19, 2018), https://www.blumenthal.senate.gov/imo/media/doc/12.19.18%20-
     %20DOJ%20-%20Price%20Parity.pdf.

24        [81] *Id.*

25        [82] *Id.*

26        [83] Catherine Shu, *Amazon Reportedly Nixes Its Price Parity Requirement for Third-Party
     Sellers in the U.S.*, Tech Crunch (Mar. 11, 2019), https://techcrunch.com/2019/03/11/amazon-
27   reportedly-nixes-its-price-parity-requirement-for-third-party-sellers-in-the-u-s/.

28        [84] *Supra* Howland.

─────────────────────

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

David Simnick, co-founder and CEO of Soapbox, a Washington, D.C.-based soap and shampoo maker that sells on Amazon, reported: "I almost did a back flip in the hotel gym."[85]

49.     But the watershed moment never came. By all indications, Amazon continues to punish retailers, who price lower on other sites.[86] Despite Amazon's official withdrawal of the price parity provision last year, the Feedadviser website reported this year that "many sellers are still operating by the price parity rule *in fear that their account will be impacted as a result*."[87]

50.     One reason may be that while Amazon withdrew its PMFN, it continues to enforce a "fair pricing" provision, which has the same effect as its former PMFN.[88] Whereas the PMFN prohibited sellers from offering cheaper deals through competing retail e-commerce channels, the "fair pricing" rule penalizes merchants who sell their products at a higher price on the Amazon.com platform by removing the product from the Buy Box, suspending shipping options, and terminating selling privileges.[89]

51.     The "Buy Box" is the white box on the right side of the product details page where shoppers can click "Add to Cart" or "Buy Now." It is a critical listing for third-party sellers. Over 80% of Amazon purchases made on desktops are done via the Buy Box, and due to the smaller screen size, an even higher percentage of mobile Amazon purchases are made through the Buy Box option.[90/91]

---

[85] *Supra* Gonzalez.

[86] *Supra* Hart; Gonzalez.

[87] *Supra Amazon Pricing Strategy: How Much Should You Sell a Product For?* (emphasis added).

[88] *Supra* Gonzalez.

[89] *Id.*

[90] Conor Bond, *Why You Need the Amazon Buy Box and How to Get It*, Ecommerce Strategy, https://www.wordstream.com/blog/ws/2018/10/03/amazon-buy-box.

[91] Meyers Soap entry on Amazon, www.amazon.com/Mrs-Meyers-Clean-Day-Lavender/dp/B01N1N6FMZ (retrieved March 9, 2020).

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX



52.     When users click the "Add to Cart" button on the Amazon.com platform, they are buying from one merchant and one merchant only—the Buy Box winner.[92] Similarly, when a user opts for the "Buy Now" button, that will also lead to the Buy Box owner.[93] Over 90% of sales occur using the Buy Box.[94] Eligibility depends on a number of factors, including the seller's reputation, price, efficiency, and whether the seller is selling its product for a lower price through competing retail e-commerce channels.[95]

53.     For example, retailer David Simnick reports that his sales plunge as much as 40 or 50 percent a day when his listings lose the Buy Box, and that he can reclaim the Buy Box only if he tweaks its pricing either at the Amazon.com platform or at the cheaper retailer, so that both offerings are priced equally.[96] He said that despite the withdrawal of Amazon's PMFN, his

---

[92] Leanna Zeibak, *7 steps to Winning the Amazon Buy Box in 2019*, Tinuiti (Aug. 14, 2018), https://tinuiti.com/blog/amazon/win-amazon-buy-box/.

[93] *Id.*

[94] *Id.*

[95] *Id.*

[96] *Supra* Gonzalez.

CLASS ACTION COMPLAINT - 25
Case No.
010888-11/1249081 V1

HB | HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

company had about six different products removed from the Buy Box option when it sold some of the same products at Target for $1 less.[97]

54.     Molson Hart, whose company, Viahart, sells toys online, says that 98% of its sales come from the Amazon.com platform and that other platforms like eBay and Walmart account for less than 2% of his company's revenue.[98] He also found that even after Amazon officially ended its PMFN, it continued to punish sellers who list prices on other websites for less than the price on Amazon: "If we sell our products for less on channels outside Amazon and Amazon detects this, our products will not appear as prominently in search and, if you do find them, they will lose their prime check mark and with that, their sales."[99]

55.     Amazon is not just an online retailer, it also compiles a massive set of consumer data, based on its retail customers' shopping information, including minutiae, like how long a consumer considers a product.[100] Former Amazon employees reportedly told Yahoo Finance that the internal data Amazon compiles is much more sophisticated than the information available in the public domain, or any third-party tools built for sellers.[101] This massive data collection has helped Amazon evolve into a giant among online retail stores by collecting, storing, processing, and analyzing personal information from its retail customers to determine how they are spending their money.[102] The more Amazon knows about its retail customers, the easier it is for Amazon to sell to them, for example, by recommending various products instead of making customers

---

[97] *Id.*

[98] *Supra* Soper & Brody.

[99] *Supra* Hart.

[100] Amazon Privacy Notice, https://www.amazon.com/gp/help/customer/display.html?nodeId=201909010#GUID-1B2BDAD4-7ACF-4D7A-8608-CBA6EA897FD3__SECTION_87C837F9CCD84769B4AE2BEB14AF4F01.

[101] Krystal Hu, *Revealed: How Amazon uses third-party seller data to build a private label juggernaut*, Yahoo Finance (Sept. 27, 2019).

[102] Jennifer Wills, *7 Ways Amazon Uses Big Data to Stalk You (AMZN)*, Investopedia (Oct. 20, 2018), https://www.amazon.com/gp/help/customer/display.html?nodeId=201909010#GUID-1B2BDAD4-7ACF-4D7A-8608-CBA6EA897FD3__SECTION_87C837F9CCD84769B4AE2BEB14AF4F01.

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

1    conduct their own searches.[103] The company uses predictive analytics for targeted marketing to

2    increase customer satisfaction and build company loyalty.[104] For example, Amazon's

3    anticipatory shipping model increases its product sales and profit margins while decreasing its

4    delivery time and overall expenses by predicting the products a customer is likely to purchase,

5    when the customer is likely to buy them, and where they should be stored while awaiting orders,

6    reducing shipping costs by 10 to 40%.[105]

7    **B.    Amazon's two million third-party sellers agreed under Amazon's former PMFN not**
     **to offer their products to U.S. customers at a lower price through any competing**

8    **retail e-commerce channels.**

9    56.    Amazon is a retailer that competes with its two million third-party sellers in the

10   online sale of consumer goods. These third-party sellers also sell on other websites, like eBay,

11   Walmart.com, or the seller's own website, like Molson Hart's company, Viahart.

12   57.    The problem with PMFNs is that they penalize discounts, which can "soften price

13   competition[] and lead to higher prices."[106] All third-party sellers on the Amazon.com platform

14   agreed to Amazon's former PMFN and its current "fair pricing" provision as a condition of the

15   right to sell their goods at the Amazon.com platform. Under the PMFN, sellers agreed not to

16   lower the price of their goods on competing retail e-commerce channels even if it costs them less

17   to sell the products there and they would gain more market share by passing their savings onto

18   their customers.

19   58.    Amazon regularly monitors retail e-commerce prices offered to U.S. customers

20   both by its external competitors and its third-party sellers.[107] Amazon regularly enforced its

21   PMFN, often within 15 minutes of discovering a price differential, and the enforcement and

22

23   ─────────────────────

24   [103] *Amazon: Using Big Data to understand customers*, Bernard Marr,
     https://www.bernardmarr.com/default.asp?contentID=712.

25   [104] *Supra* Wills.

26   [105] *Id.*

27   [106] Jonathan B. Baker & Fiona Scott Morton, *Antitrust Enforcement Against Platform MFNs*
     127 YALE L.J. 2176, 2179 (2018).

28   [107] *Supra* Sayed; *Amazon Pricing Strategy: How Much Should You Sell a Product For?*.

CLASS ACTION COMPLAINT - 27
Case No.
010888-11/1249081 V1

1    threat of enforcement has regularly prevented its sellers from offering lower prices through

2    competing retail e-commerce channels.[108]

3    **C.    Amazon's two million third-party sellers agree under Amazon's current "fair**

      **pricing" provision that selling at a lower price through competing retail e-commerce**

4    **channels will subject them to costly penalties.**

5         59.    Like the PMFN, the current "fair pricing" provision creates significant financial

6    disincentives to any sellers who dare to offer lower prices outside the Amazon.com platform. For

7    example, suspension or termination could bankrupt a seller, and ineligibility for the Buy Box

8    may reduce a seller's revenue from the product by as much as 40%.[109] The only way sellers can

9    regain eligibility for Buy Box or otherwise void the penalty is by bringing their products' prices

10   on the competing retail e-commerce channels into price parity with their listings on the

11   Amazon.com platform, just as Amazon's former PMFN required.[110]

12        60.    Amazon regularly enforces its "fair pricing" policy, which has the same impact as

13   its former PMFN, in that Amazon significantly penalizes its sellers, who offer lower prices

14   through competing retail e-commerce channels. In recognition of this, third-party sellers

15   continue to maintain price parity across their online platforms.[111]

16        61.    As a seller, Amazon also benefits from its anticompetitive price policies. By

17   prohibiting or penalizing its third-party sellers' price competition outside of the Amzon.com

18   platform, Amazon avoids a head-to-head competition with its third-party sellers on an even

19   playing field, where the seller is not paying fees to Amazon.

20   **D.    Amazon's former PMFN and current "fair pricing" provision reduce price**

      **competition and cause consumers to pay more.**

21

22        62.    Amazon's price policies have an anticompetitive effect because they eliminate

23   external price competition from its third-party sellers in the U.S. retail e-commerce market.

24

25        [108] *Supra* Heather

26        [109] *Supra Amazon Pricing Strategy: How Much Should You Sell a Product For?*; Gonzalez;
      Hart.

27        [110] *Supra* Gonzalez.

28        [111] *Supra Amazon Pricing Strategy: How Much Should You Sell a Product For?*

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

Selling on Amazon Marketplace is not cheap.[112] Sellers would benefit more by competing directly with Amazon on price in competing retail e-commerce channels. Amazon's price policies have prevented or penalized sellers from doing this, which has resulted in reduced price competition and higher online prices for consumers.

63.     Absent Amazon's anticompetitive price policies, third-party sellers would have set a lower price on a platform with lower fees than Amazon or an even lower price on the seller's own website. Consumers, who purchased the same products offered by Amazon's third-party sellers, were injured because they purchased at prices artificially inflated by Amazon's anticompetitive price policies. For example, a customer, who purchased a $150 toy on Viahart (the same price concurrently offered at Amazon) paid $37 more for the toy than if the seller was able to sell the product for $37 less on its own website, while making the same profit.[113] Amazon's "fair pricing" policy has a broad reach, encompassing virtually all consumer products. Consumers who make purchases from competing retail e-commerce channels of any of the hundreds of millions of Class Products concurrently offered at the Amazon.com platform are reasonably likely to be injured in the future by Amazon's current "fair pricing" policy.

64.     The following six charts illustrate the effect[114]:

65.     The average price of men's athletic shoes in the last decade has ranged between $40 and $50.[115] Recent prices on the Amazon.com platform and other platforms for several products were within this range and were unvaried across multiple platforms:

---

[112] *See, e.g., supra* Hart.

[113] *Id.*

[114] The sources of each of the charts are Amazon.com, eBay, Walmart, and other retailer website identified in the charts (retrieved March 5, through March 18, 2020). Note: N/A means that the product is not sold in that marketplace. Shipping is free for all the instances considered.

[115] Athletic Footwear - United States. Retrieved March 11, 2020, from https://www.statista.com/outlook/11020000/109/athletic-footwear/united-states.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

| Retailer | Product | Amazon | Walmart | eBay | Own Website |
|---|---|---|---|---|---|
| Orva Stores | Skechers Men's Equalizer Pesistent Slip-On, Charcoal/Black | $49.95 | $49.95 | N/A | N/A |
| Shoebacca | Diadora Mens Titan Premium Running Sneakers, Blue/Pink | $39.95 | $39.95 | $39.95 | $39.95 |
| | Diadora Mens Kick Casual Sneakers, White, Grey or Black | $39.95 | $39.95 | $39.95 | $39.95 |
| | Diadora Mens N.92 Casual Sneakers, Grey | $39.95 | $39.95 | $39.95 | N/A |
| | Diadora Mens N-6100-4 Running Shoes, Blue | $39.95 | $39.95 | $39.95 | N/A |

66.     Recent prices on the Amazon.com platform and other platforms for several golf ball products were virtually identical:

| Retailer | Product | Amazon | Walmart | eBay | Own Website |
|---|---|---|---|---|---|
| Greater Golf Express | Volvik 2020 Magma Golf Balls, 12-Pack | $39.99 | $39.99 | $39.99 | $39.99 |
| CaddiesShack | Bridgestone Tour B330-S Golf Balls, 12-Pack | $34.99 | $34.99 | $34.99 | $34.99 |
| | Volvik S4 White Color Golf Balls, 12-Pack | $44.38 | $44.95 | $44.99 | N/A |
| Golf Ball Divers | Titleist Pro V1 AAA Golf Balls, Used, 36-Pack | $39.99 | $39.99 | N/A | N/A |
| | Bridgestone Golf Precept Laddie Extreme Golf Balls, Used, 36 Pack | $29.99 | $29.99 | N/A | N/A |

67.     In 2018, Amazonbasics, Amazon's private label, was the leading online brand for disposable batteries, accounting for 26% of the e-commerce market.[116] Recent prices of several battery products on the Amazon.com platform and other platforms were virtually identical or higher on external platforms:

| Retailer | Product | Amazon | Walmart | eBay | Own Website |
|---|---|---|---|---|---|
| Pharmapacks | Eveready Super Heavy Duty Batteries, AAA, 4 Each | $3.36 | $3.36 | $5.04 | N/A |
| Chrome Batteries | 12V 7AH Sealed Lead Acid (SLA) Battery | $21.80 | $21.80 | $29.90 | $21.90 |
| East Coast Photo | Synergy Digital AA NIMH 2800mAh Rechargeable Batteries, Pack of 4 | $12.55 | $12.55 | N/A | $12.55 |
| | DogWatch DG-8000 Large Gray Dog Collar Battery | $8.95 | $8.95 | N/A | $8.95 |
| | Dantona ULA100AAB Alkaline, AA, Pack of 100 | $33.95 | $33.95 | N/A | $33.95 |

68.     Amazon sells over 1.1 million home improvement products per year, with a revenue of $6.1 billion in 2017.[117] Recent prices on the Amazon.com platform and other platforms for several home improvement products were unvaried:

---

[116] Jan Conway, *Market share for largest household battery manufacturers sold online in 2018*, Statista, https://www.statista.com/statistics/718199/online-market-share-household-batteries.

[117] J Clement, *US Amazon sales in selected retail product sectors 2017*, Statista, https://www.statista.com/statistics/709493/us-amazon-sales-selected-retail-sectors/.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

| Retailer | Product | Amazon | Walmart | eBay | Own Website |
|---|---|---|---|---|---|
| Mix Wholesale | Cauldham 5 Pack Solid Kitchen Cabinet Arch Pulls Handles (3-3/4" Hole Centers) - Curved Drawer/Door Hardware - Style T750 - Matte Black | $13.99 | $13.99 | N/A | $13.99 |
| | Cauldham Heavy-Weight Bin Cup Drawer Pulls (3" Hole Centers) - Classic Kitchen Cabinet Door Handle Hardware - Style B350 - Oil Rubbed Bronze | $14.99 | $14.99 | N/A | $14.99 |
| | Cauldham 5 Pack Solid Kitchen Cabinet Knobs Pulls (1" Square) - Transitional Dresser Drawer/Door Hardware - Style S685 - Satin Nickel | $14.99 | $14.99 | N/A | $14.99 |
| Ron's Home and Hardware | WV15TV 1.5 In. Chip Brush, Pack of 36 | $21.37 | $21.37 | N/A | N/A |
| Southfork Homecenter | ProSource Single And Utility Unitrack Shelf Bracket, 8 In L X 2-1/2 In W 1.8 Mm Thick, Steel, White | $9.38 | $9.38 | N/A | N/A |

69.    Kitchen and dining is another leading product category, accounting for 39% of all Amazon sales in the United States as of January 2019.[118] Recent prices on the Amazon.com platform and other platforms for several kitchen and dining products were virtually indistinguishable:

| Retailer | Product | Amazon | Walmart | eBay | Own Website |
|---|---|---|---|---|---|
| eKitchenWorld | Lodge 5 Inch Square Cast Iron Skillet | $15.40 | $15.40 | $15.40 | $15.40 |
| | Ginsu Essential Dishwasher Safe 6 Piece Steak Knife Set | $19.94 | $19.94 | $19.94 | $19.94 |
| BigKitchen | GreenPan Paris 3 Quart Non-Stick Dishwasher Safe Ceramic Covered Sauce Pan | $52.41 | $52.41 | N/A | N/A |
| Zwilling J.A. Henckels | Demeyere Industry 5-Ply 8-inch Stainless Steel Traditional Nonstick Fry Pan | $79.95 | $79.95 | $79.95 | $79.99 |
| Gourmet Forte | Kai Pure Komachi 2 3pc Prep Knife Set | $22.95 | $22.95 | N/A | N/A |

70.    Cleaning supplies is another top selling product category on the Amazon.com platform. Recent prices on the Amazon.com platform and other platforms for several cleaning products were virtually indistinguishable:

| Retailer | Product | Amazon | Walmart | eBay | Own Website |
|---|---|---|---|---|---|
| Microfiber Products | Microfiber Mop Kit for All Floor Types 100% Green Clean | $28.95 | $28.95 | N/A | N/A |
| | 18" Aluminum Commercial Mop Hardware | $29.95 | $29.95 | N/A | N/A |
| Ron's Home and Hardware | Armaly Brands 00009 Proplus Heavy-Duty Utility Sponge, 12-Pack | $30.37 | $38.95* | N/A | N/A |
| Southfork Homecenter | Continental Commercial Swivel Snap C702048 Dust Mop Frame 48 in | $13.97 | $13.97 | $13.97 | N/A |

[118] Jay Clement, *Leading product categories purchased by Amazon shoppers in the United States as of February 2019* (Aug. 9, 2019), Statista, https://www.statista.com/statistics/1086637/amazoncom-3p-seller-metrics-usa/.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

1

2

**E.     Amazon has a monopoly in the retail e-commerce market or minimally in several categories of goods.**

3          71.     Amazon has a monopoly in the U.S. retail e-commerce market, as demonstrated

4    by its power to control prices of a vast number of goods offered for sale in the U.S. retail e-

5    commerce market. Other competing retailers do not have the infrastructure or market power in

6    the U.S. retail e-commerce market to challenge Amazon on price.

7          72.     Alternatively, at a minimum, Amazon has a monopoly in the submarkets where it

8    has the lion's share of the market. For example, inclusive of its third-party sellers, Amazon

9    currently enjoys an overwhelming share of the retail e-commerce market in the following

10   categories of goods: home improvement tools (93%); men's athletic shoes (74%), skin care

11   (91%), batteries (97%), golf (92%), cleaning supplies (88%), and kitchen and dining (94%).[119]

12         73.     Amazon's pricing policies are intended to control retail e-commerce prices.

13   Amazon has achieved market dominance in these categories at least in part through the

14   contractual controls it exercises over the prices its third-party sellers can offer products through

15   competing retail e-commerce channels.

16         74.     Amazon can control prices in these product category markets by establishing a

17   price floor, *i.e.*, the price the third-party seller lists its goods on the Amazon.com platform, even

18   when the seller could sell the same products at a lower price through competing retail e-

19   commerce channels, while making the same profit.

20         75.     Amazon's price policies are injurious to market competition and cause consumers

21   to overpay in their online purchases of home improvement tools, men's athletic shoes, skin care,

22   batteries, golf, cleaning supplies, and kitchen and dining products. But for Amazon's former

23   PMFN and its current "fair pricing" policy, sellers would undercut prices for these categories of

24   goods by selling them at lower prices through other retail e-commerce channels. Consumers are

25

26   _____

     [119] Amy Gresenhues, *Amazon Owns More Than 90% Market Share Across 5 Different*
27   *Product Categories [Report]*, Marketing Land (May 31, 2018),
     https://marketingland.com/amazon-owns-more-than-90-market-share-across-5-different-product-
28   categories-report-241135.

CLASS ACTION COMPLAINT - 32
Case No.
010888-11/1249081 V1



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

injured because they pay inflated prices for products that are protected from competitive pricing by Amazon's anticompetitive pricing policies.

**F.    Alternatively, Amazon has attempted to monopolize the general retail e-commerce market.**

76.    Amazon, inclusive of its third-party sellers, has nearly 50% of all online sales of consumer goods; compared to a meager 21% *combined* share of the next nine biggest online retailers.[120] Amazon has the power to control retail e-commerce prices generally in the United States and demonstrates this power by setting a floor price, for products sold anywhere online by its two million third-party sellers.

77.    Amazon has achieved this market power at least in part by enforcing its former PMFN and its current "fair pricing" policy.

78.    Setting a floor price for products sold through competing retail e-commerce channels is anticompetitive and causes consumers to overpay in their online purchases.

79.    Alternatively, if Amazon does not already exercise monopoly power in the U.S. retail e-commerce market, it has a dangerous probability of achieving a monopoly in this market through its internet dominance and its injurious price policies.

**G.    Amazon is the subject of a government investigation for possible antitrust violations, including whether it uses its relationship with its third-party sellers to harm competition.**

80.    Last summer, the Washington Post reported that the FTC planned to investigate Amazon as part of a broad investigation into the large technology companies.[121] This follows an earlier announcement that the FTC had established a special task force to monitor the big tech companies and to investigate "any potential anticompetitive conduct in those markets, and tak[e] enforcement actions when warranted."[122] According to Gene Kimmelman, the president of

---

[120] *Supra Amazon Now Has Nearly 50% of US Ecommerce Market.*

[121] Tony Romm, *Amazon could face heightened antitrust scrutiny under a new agreement between U.S. regulators*, Wash. Post (Jun. 1, 2019) https://www.washingtonpost.com/technology/2019/06/02/amazon-could-face-heightened-antitrust-scrutiny-under-new-agreement-between-us-regulators/.

[122] *Id.*



1   Public Knowledge, a Washington-based consumer advocacy group: "This should be a wake-up

2   call to both Google and Amazon to behave themselves because it at least shows that the Justice

3   Department and FTC are thinking about them."[123]

4       81.     Vox reported that the FTC started questioning some of Amazon's competitors last

5   summer about its business practices, according to someone briefed on the discussions.[124]

6       82.     Bloomberg reported that FTC investigators began interviewing Amazon's third-

7   party sellers last fall as part of a sweeping probe to determine whether Amazon is using its

8   market power to hurt competition.[125]  Reportedly, several attorneys and an economist have been

9   conducting interviews that typically last about 90 minutes.[126] According to Michael Kades, who

10  spent 20 years at the FTC, the length of the interviews and the manpower devoted to examining

11  Amazon point to a serious inquiry rather than investigators merely responding to complaints and

12  going through the motions: "Early in an investigation, that's a sign of staff doing a serious job,"

13  Kades said. "They're spending lots of time with witnesses and trying to really understand what

14  they're saying."[127] Reportedly, regulators are skeptical that shoppers and suppliers have real

15  alternatives to Amazon.[128]

16      83.     Jennifer Rie, an analyst at Bloomberg Intelligence who specializes in antitrust

17  litigation, offered the opinion that FTC investigators are "in a background phase," when they are

18  "trying to learn as much as they can about the industry from people who aren't the target of their

19  investigation."[129]

20

21

22  _____

      [123] *Id.*

23    [124] Jason Del Rey, *Amazon may soon face an antitrust probe. Here are 3 questions the FTC
      is asking about it.*, Vox (Jun. 4, 2019),

24    https://www.vox.com/recode/2019/6/4/18651694/amazon-ftc-antitrust-investigation-prime.

25    [125] *Supra* Soper & Brody.

26    [126] *Id.*

27    [127] *Id.*

      [128] *Id.*

28    [129] *Id.*

84.     Diana Moss, president of the American Antitrust Institute, a nonprofit that advocates for aggressive antitrust enforcement says that "the central question in an inquiry like this" is whether "merchants are so reliant on Amazon for sales that they are unwilling to offer better prices on other platforms like Walmart and EBay" and whether that can hurt competition.[130]

85.     The Free & Fair Markets Initiative, likewise applauded the FTC's efforts: "It is welcome news to see that regulators are finally getting serious about taking on the unfair advantage Amazon has staked out on its platform," said Robert B. Engel, a spokesperson for the group, in a statement.[131]

86.     Reportedly, the House Judiciary Committee is also investigating whether Amazon has an unfair advantage over third-party merchants when it competes with them to sell similar products on its own platform.[132] The House Judiciary Committee has requested documents and information on Amazon's market share and closest competitors in numerous submarkets of the U.S. retail and e-commerce retail markets.[133]

## VI.     INTERSTATE TRADE AND COMMERCE

87.     Amazon's activities as alleged in this complaint were within the flow of, and substantially affected, interstate commerce. Amazon sells goods on its own behalf and as a platform for its third-party sellers across, and without regard to, state lines.

## VII.     RELEVANT MARKET

88.     Plaintiffs' horizontal price-fixing claim is a *per se* violation and does not require them to prove the relevant market. For purposes of their remaining claims, the antitrust injuries

---

[130] *Id.*

[131] Ben Fox Rubin, *FTC investigation into Amazon reportedly gearing up*, C/net (Sept. 11, 2019), https://www.cnet.com/news/ftc-investigation-into-amazon-reportedly-gearing-up/.

[132] *Supra* Soper & Brody.

[133] Letter from U.S. House of Representatives Committee on the Judiciary to Jeff Bezos, Amazon CEO (Sept. 13, 2019), https://judiciary.house.gov/sites/democrats.judiciary.house.gov/files/documents/amazon%20rfi%20-%20signed.pdf.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

alleged herein, including harm to consumers, who purchase products online that are concurrently offered on the Amazon.com platforms, have occurred in the U.S. retail e-commerce market. Amazon monopolizes or attempts to monopolize this market.

89.     In the alternative, for purposes of antitrust injuries alleged herein for which proof of the relevant market is required, the relevant markets are online U.S. retail market for the sales of

(a) home improvement tools,

(b) men's athletic shoes,

(c) skin care,

(d batteries,

(e) golf,

(f) cleaning supplies, and

(g) kitchen and dining products (collectively the "Identified Sub-markets").

90.     Amazon's restraints on competition directly impact the U.S. retail e-commerce market and each of the Identified Sub-markets as alleged herein.

91.     Plaintiffs seek relief on behalf of themselves and other purchasers of products that are concurrently offered on the Amazon.com platform but were purchased through other retail e-commerce channels. The Amazon.com platform is not a two-sided transaction market for purposes of the claims set forth herein because Defendant can and does charge its third-party sellers fees, *e.g.*, registration, storage, and refund fees, without simultaneously providing a transaction for its retail customers.[134] And Defendant can and does charge its retail customers without simultaneously providing a transaction for its third-party sellers, *e.g.*, Prime membership fees and purchases, when Amazon itself is the seller.[135] Moreover, any justification for retaining retail customers on the Amazon.com platform cannot justify price fixing on competing retail e-commerce channels.

---

[134] *Supra* ¶ 40.

[135] *Supra* ¶ 39.

92.     In the alternative, if the Amazon.com platform is considered a two-sided transaction market, eliminating Amazon's anticompetitive pricing policies would not lead to any discernible negative indirect network effects under the circumstances described herein. For example, unlike credit-card transaction platforms, allowing third-party sellers to compete on price through competing retail e-commerce channels would not reduce the money available to pay rebates or rewards to consumers because Amazon does not pay rebates or rewards to its retail customers.

93.     Amazon harms consumers by imposing a price floor condition on its two million third-party sellers that results in supracompetitive prices for goods sold on the U.S. retail e-commerce market. Amazon harms competition by significantly restraining the price that its two million retail sellers can offer their products through competing retail e-commerce channels. While harming consumers and competition, Amazon itself benefits from its pricing policies. First, it attracts more customers to the Amazon.com platform and thereby acquires more sales opportunities and more shopping and sales data that it can incorporate into its data-driven business models and reinforce its competitive edge over its rivals. And second, it avoids head-to-head competition with its third-party sellers outside the Amazon.com platform, where they would offer better price competition.

94.     Amazon's price policies are also not needed to prevent free riding from third-party sellers, from whom Amazon already collects substantial fees. Nor are they needed to combat free riding from consumers. Many regular Amazon customers already pay substantial fees for their Prime membership, and Amazon dominates consumers' online searches of retailer websites, creating an "information bottleneck" that prevents many consumers from ever receiving competitive price information from other sources.[136]

95.     In fact, Amazon can point to no legitimate considerations that countervail the propriety of the monetary and injunctive relief that Plaintiffs seek.

---

[136] *Supra* ¶ 12.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VIII.   CLASS ACTION ALLEGATIONS

96.     Plaintiffs bring this action on behalf of themselves, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), seeking damages and injunctive relief pursuant to federal law and pursuant to various state antitrust, unfair competition, unjust enrichment, and consumer protection laws of the states listed below on behalf of the members of the following Classes:

> **National Class:** All persons who, on or after March 19, 2016, purchased through any other retail e-commerce channel in the United States other than the Amazon.com platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon.com platform.

> **State Classes**: All persons who, on or after March 19, 2016, purchased in [state] through any other retail e-commerce channel in the United States other than the Amazon.com platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon.com platform.

97.     Excluded from the Classes are the Defendant and its officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

98.     The identity of all products encompassed within the National and State Classes' definition, *i.e.*, Class Products, are readily identifiable from information and records maintained by Defendant.[137] The identity of the members of the Classes and their records of Class Product purchases, is readily available through multiple sources that record online purchases, including Class members' own records of online transactions and payment, the records of the online retailers, from whom the Class Products were purchased, and Class members' and online retailers' records of payment through PayPal, credit cards and other financial institutions.

99.     **Numerosity:** Members of the Classes are so numerous that joinder is impracticable.  Plaintiffs believe that there are tens of millions of members of the National Class (if not more), geographically dispersed throughout the United States, such that joinder of all

---

[137] *Supra* ¶¶ 23-24.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

1  Class members is impracticable. Plaintiffs believe that there are tens of thousands of members of

2  each of the State Classes (if not more), such that joinder of all State Class members is likewise

3  impracticable.

4      100.    **Typicality:** Plaintiffs' claims are typical of the claims of the other Class

5  members. The factual and legal bases of Defendant's liability are the same and resulted in injury

6  to Plaintiffs and all other members of the proposed Classes.

7      101.    **Adequate representation:** Plaintiffs will represent and protect the interests of the

8  proposed Classes both fairly and adequately. They have retained counsel competent and

9  experienced in complex class-action litigation. Plaintiffs have no interests that are antagonistic to

10  those of the proposed Classes, and their interests do not conflict with the interests of the

11  proposed Class members they seek to represent.

12      102.    **Commonality:** Questions of law and fact common to the members of the Classes

13  predominate over questions that may affect only individual Class members because Defendant

14  has acted on grounds generally applicable to the Classes and because Class members share a

15  common injury. Thus, determining damages with respect to the Classes as a whole is

16  appropriate.  The common applicability of the relevant facts to claims of Plaintiffs and the

17  proposed Classes are inherent in Defendant's wrongful conduct, because the overcharge injuries

18  incurred by Plaintiffs and each member of the proposed Classes arose from the same

19  anticompetitive conduct alleged herein.

20      103.    There are common questions of law and fact specific to the Classes that

21  predominate over any questions affecting individual members, including:

22          (a)     Whether Defendant and its third-party sellers unlawfully contracted,

23  combined, or conspired to unreasonably restrain trade in violation of section 1 of the Sherman

24  Act by agreeing under Amazon's former PMFN that third-party sellers would not sell their

25  products to buyers through competing retail e-commerce channels at a price lower than what

26  they offered at the Amazon.com platform;

27          (b)     Whether Defendant and its third-party sellers unlawfully contracted,

28  combined, or conspired to unreasonably restrain trade in violation of section 1 of the Sherman

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

1  Act by agreeing that third-party sellers would be penalized under Amazon's current "fair

2  pricing" policy if they offered their products to buyers through competing retail e-commerce

3  channels at a lower price than what they offered at the Amazon.com platform;

4  (c)  Whether Defendant has unlawfully monopolized, or attempted to

5  monopolize, the U.S. retail e-commerce market, including by way of the contractual terms,

6  policies, practices, mandates, and restraints described herein;

7  (d)  Alternatively, whether Defendant has unlawfully monopolized the

8  Identified Submarkets within the U.S. retail e-commerce market, *i.e.*, U.S. e-commerce retail

9  sales of home improvement tools, men's athletic shoes, skin care, batteries, golf, cleaning

10  supplies, and kitchen and dining products;

11  (e)  Whether competition in the U.S. retail e-commerce market or any of the

12  Identified Submarkets has been restrained and harmed by Amazon's monopolization, or

13  attempted monopolization, of these markets;

14  (f)  Whether consumers and Class members have been damaged by

15  Defendant's conduct;

16  (g)  The amount of any damages; and

17  (h)  The nature and scope of injunctive relief necessary to restore a

18  competitive market.

19  104.  **Prevention of inconsistent or varying adjudications:** If prosecution of a myriad

20  of individual actions for the conduct complained of were undertaken, there likely would be

21  inconsistent or varying results. This would have the effect of establishing incompatible standards

22  of conduct for the Defendant. Certification of Plaintiffs' proposed Classes would prevent these

23  undesirable outcomes.

24  105.  **Injunctive relief:** By way of its conduct described in this complaint, Defendant

25  has acted on grounds that apply generally to the proposed Classes. Accordingly, final injunctive

26  relief is appropriate respecting the Classes as a whole.

27  106.  **Predominance and superiority:** This proposed class action is appropriate for

28  certification. Class proceedings on these facts and this law are superior to all other available

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

1  methods for the fair and efficient adjudication of this controversy, given that joinder of all

2  members is impracticable. Even if members of the proposed Classes could sustain individual

3  litigation, that course would not be preferable to a class action because individual litigation

4  would increase the delay and expense to the parties due to the complex factual and legal

5  controversies present in this matter. Here, the class action device will present far fewer

6  management difficulties, and it will provide the benefit of a single adjudication, economies of

7  scale, and comprehensive supervision by this Court. Further, uniformity of decisions will be

8  ensured.

9                            IX.    ANTITRUST INJURY

10        107.    During the Class Period, Plaintiffs and Class members directly purchased Class

11  Products, *i.e.*, they directly purchased—through a retail e-commerce channel other than the

12  Amazon.com platform—products Amazon's third-party sellers concurrently offered for sale on

13  the Amazon.com platform. Because of Defendant's anticompetitive conduct, Plaintiffs and Class

14  members were forced to pay more for Class Products than they would have if Amazon had

15  permitted its third-party sellers to engage in price competition outside the Amazon.com platform.

16  Defendant therefore has caused Plaintiffs and Class members to suffer overcharge damages.

17  Because Defendant continues to enforce its anticompetitive "fair pricing" policy, Plaintiffs and

18  Class members are reasonably likely to incur future overcharges for Class Products. Both the

19  actual harm and the threat of future harm are cognizable antitrust injuries directly caused by

20  Defendant's violations of federal antitrust laws, including its anticompetitive agreement with its

21  third-party sellers, its monopolization, or its attempted monopolization of the relevant markets,

22  as alleged herein.

23        108.    Defendant, through its unlawful conduct alleged herein, increased prices offered

24  through competing retail e-commerce channels, reduced choice for purchasers, and caused

25  antitrust injury to purchasers in the form of overcharges. Plaintiffs and Class members have

H[B  HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

sustained, and continue to sustain, significant losses in the form of artificially inflated prices caused by Defendant's anticompetitive activity. The full amount of such overcharge damages will be calculated after discovery and upon proof at trial. Unless Amazon's anticompetitive conduct is stopped, Plaintiffs and the Class will incur future overcharges in their direct purchases of Class Products.

## X. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE SHERMAN ACT
### (15 U.S.C. § 1) *PER SE*

109. Plaintiffs repeat and re-make every allegation above as if set forth herein in full.

110. Plaintiffs bring this federal law claim on their own behalf and on behalf of each member of the proposed nationwide Class described above.

111. Plaintiffs and members of the Class are not making any claims against Defendant relating in any way to any products or services sold or distributed by Defendant or through the Amazon.com platform.

112. Defendant's third-party sellers are its U.S. e-commerce retail competitors. As a retail e-commerce seller, Defendant directly offers for sale a broad range of goods on the Amazon.com platform. On information and belief, all products offered by third-party sellers on the Amazon.com platform are reasonably interchangeable with one or more products that Defendant directly sells on the Amazon.com platform, such that there is cross-elasticity of demand between Defendant's products and the products that its third-party sellers offer on the Amazon.com platform. Stated otherwise, all of the products sold by third-party sellers on the Amazon.com platform compete with one or more of Defendant's own products that it also sells on the Amazon.com platform.

113. Class Products (*i.e.*, the same products offered by Defendant's third-party sellers on the Amazon.com platform but purchased through competing retail e-commerce channels) are therefore reasonably interchangeable with products sold directly by Defendant on the



1    Amazon.com platform, such that there is cross-elasticity of demand between Defendant's

2    products and Class Products.

3        114.    Plaintiffs do not believe it is necessary to prove a relevant market for purposes of

4    their horizontal price-fixing claim. To the extent one is required, the relevant market is the retail

5    e-commerce market.

6        115.    To the extent required, the relevant geographic market is the entire United States.

7        116.    In violation of Section 1 of the Sherman Antitrust Act, Defendant entered into a

8    horizontal agreement with its two million third-party sellers on Amazon Marketplace concerning

9    the price they were allowed to sell their products in the United States. Specifically, Defendant

10   and its contractual partners unlawfully agreed under Amazon's former PMFN that third-party

11   sellers will not offer their products to their customers in the U.S. e-commerce market at a price

12   lower than the price they offer them on the Amazon.com platform, and under Amazon's current

13   "fair pricing" provision, Defendant and its contractual partners unlawfully agree that any third-

14   party seller, who offers its products to its customers at a price lower than the price it offers them

15   on Amazon.com platform, will be subject to severe penalties, including rendering the seller's

16   products ineligible for Amazon's Buy Box or suspending or terminating the seller's account with

17   Amazon. These unlawful agreements have unreasonably restrained price competition among

18   retailers for online sales of consumer goods and had the effect of establishing a floor price for

19   Class Products. This combination is *per se* unlawful price-fixing.

20       117.    Plaintiffs and the Class members have been injured and will continue to be

21   injured in their businesses and property by paying more for Class Products than they would have

22   paid or would pay in the future in the absence of Defendant's unlawful acts.

23       118.    Plaintiffs and Class members are direct purchasers because they directly purchase

24   Class Products, whose retail price is inflated as a direct result of Amazon's anticompetitive

25   agreements with its two million third-party sellers.

26       119.    Plaintiffs and the Class are entitled to an injunction that terminates the ongoing

27   violations alleged in this Complaint.

28

CLASS ACTION COMPLAINT - 43
Case No.
010888-11/1249081 V1

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

## SECOND CAUSE OF ACTION
## VIOLATION OF THE SHERMAN ACT – MONOPOLIZATION
## (15 U.S.C. § 2)

120.    Plaintiffs repeat and re-make every allegation above as if set forth herein in full.

121.    Plaintiffs bring this federal law claim on their own behalf and on behalf of each member of the proposed nationwide Class described above.

122.    Plaintiffs and members of the Class are not making any claims against Defendant relating in any way to any products or services sold or distributed by Defendant or through the Amazon.com platform.

123.    The relevant market is the U.S. retail e-commerce market, *i.e.*, the online market for the sale of consumer goods in the United States.

124.    Defendant obtained monopoly power in the U.S. retail e-commerce market, as demonstrated by its power to set the prevailing prices of virtually every good offered for sale in the U.S. retail e-commerce market.

125.    Alternatively, the relevant markets are the Identified Sub-markets for U.S. retail e-commerce, where Defendant, inclusive of its third-party sellers, holds the lion's share of the market for each of the Identified Sub-markets: home improvement tools (93%); men's athletic shoes (74%), skin care (91%), batteries (97%), golf (92%), cleaning supplies (88%), and kitchen and dining (94%).[138]

126.    Defendant obtained and exercises monopoly power in the Identified Sub-markets, as demonstrated by its power to set the prevailing prices of virtually every good offered for sale in each of the Identified Sub-markets.

127.    Amazon has gained and maintains monopoly power in the applicable markets by improper and unlawful means.

---

[138] Amy Gresenhues, *Amazon Owns More Than 90% Market Share Across 5 Different Product Categories [Report]*, Marketing Land (May 31, 2018), https://marketingland.com/amazon-owns-more-than-90-market-share-across-5-different-product-categories-report-241135.

CLASS ACTION COMPLAINT - 44
Case No.
010888-11/1249081 V1

 HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

128.   Defendant has willfully acquired its monopoly power in the applicable markets in part through its enforcement of its former PMFN and its current "fair pricing" provision. These provisions establish a price floor based on the seller's price listing on the Amazon.com platform. By requiring its two million third-party sellers to apply a price floor on all other retail e-commerce channels, Defendant largely immunizes Class Products from competitive pricing in the relevant market and causes Class Products to be sold at supracompetitive prices.

129.   Plaintiffs and Class members are direct purchasers because they directly purchase Class Products through a U.S. e-commerce retail channel that competes with the Amazon.com platform.

130.   Plaintiffs and the Class members have been injured and will continue to be injured in their businesses and property by paying more for Class Products than they would have paid or would pay in the future in the absence of Defendant's unlawful acts.

131.   Plaintiffs and the Class are entitled to an injunction that terminates the ongoing violations alleged in this Complaint.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE SHERMAN ACT –**
**ATTEMPTED MONOPOLIZATION (15 U.S.C. § 2)**

132.   Plaintiffs repeat and re-make every allegation above as if set forth herein in full.

133.   Plaintiffs bring this federal law claim on their own behalf and on behalf of each member of the proposed nationwide Class described above.

134.   Plaintiffs and members of the Class are not making any claims against Defendant relating in any way to any products or services sold or distributed by Defendant or through the Amazon.com platform.

135.   If Defendant does not already have a monopoly in the U.S. retail e-commerce market and/or in the Identified Sub-markets, it has attempted to monopolize these markets.

136.   Through enactment of the pricing policies challenged herein—Amazon's former PMFN and its current "fair pricing" policy—Defendant has demonstrated its intent to control online prices of virtually every consumer good offered in the U.S. retail e-commerce market.

137.    Through its enforcement of its former PMFN and current "fair pricing" policy, Defendant has furthered its goal of controlling prices of virtually every consumer good offered in the applicable markets.

138.    There is a dangerous probability that Defendant will succeed in monopolizing the applicable markets. Defendant, inclusive of its third-party sellers, already accounts for almost 50% of the U.S. retail e-commerce market.

139.    Plaintiffs and the Class members have been injured and will continue to be injured in their businesses and property by paying more for Class Products than they would have paid or would pay in the future in the absence of Defendant's unlawful acts.

140.    Plaintiffs and Class members are direct purchasers because they directly purchase Class Products that are inflated as a direct result of Amazon's anticompetitive conduct.

141.    Plaintiffs and the Class are entitled to an injunction that terminates the ongoing violations alleged in this Complaint.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF CONSUMER PROTECTION STATUTES**

142.    Plaintiffs repeat and re-make every allegation above as if set forth herein in full.

143.    Defendant engaged in unfair methods of competition, and unfair or unconscionable, acts or practices to restrain trade, monopolize or attempt to monopolize the relevant market.

144.    For each of the states set forth below, a significant volume of intrastate commerce was impacted by Defendant's illegal conduct as alleged above. That is, online purchases of Class Products occurred in each of the states at supracompetitive prices due to Defendant's illegal conduct.

145.    Plaintiffs and members of the State Classes are not making any claims against Defendant relating in any way to any products or services sold or distributed by Defendant or through the Amazon.com platform.

CLASS ACTION COMPLAINT - 46
Case No.
010888-11/1249081 V1



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

146.    As a direct and proximate result of Defendant's unfair or unconscionable conduct, Plaintiffs and Class members paid higher prices for Class Products than they would have paid but for Defendant's unlawful conduct.

147.    The gravity of harm from Defendant's wrongful conduct significantly outweighs any conceivable utility from that conduct. Plaintiffs and Class members could not reasonably have avoided injury from Defendant's wrongful conduct.

148.    There was and is a gross disparity between the price that Plaintiffs and the Class members paid for Class Products and the value they received.

149.    By engaging in such conduct, Defendant violated the following consumer protection laws:

     a.     Ala. Code §§ 8-19-1, *et seq.*

     b.     Alaska Stat. §§ 45.50.471, *et seq.*

     c.     Ariz. Code §§ 44-1521, *et seq.*

     d.     Cal. Bus. & Prof Code §§ 17200, *et seq.*

     e.     Conn. Code §§ 42-110a, *et seq.*

     f.     D.C. Code §§ 28-3901, *et seq.*

     g.     Fla. Stat. §§ 501.201, *et seq.*

     h.     Ga. Code §§ 10-1-370, *et seq.*

     i.     Haw. Rev. Stat. §§ 481-1, *et seq.*

     j.     Idaho Code §§ 48-601, *et seq.*

     k.     815 ILCS §§ 505/1, *et seq.*

     l.     Ind. Code §§ 24-5-0.5-1, *et seq.*

     m.     Ky. Rev. Stat. § 367.120, *et seq.*

     n.     La. Rev. Stat. §§ 51:1401, *et seq.*

     o.     Me. Rev. Stat. §§ 207, *et seq.*

     p.     Mass. Ann. Laws, Ch. 93A, *et seq.*

     q.     Miss. Code §§ 75-24-1, *et seq.*

     r.     Mo. Rev. Stat. §§ 407.010, *et seq.*



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

1    s.        Mont. Code §§ 30-14-101, *et seq.*

2    t.        Neb. Rev. Stat. §§ 59-1601, *et seq.*

3    u.        Nev. Rev. Stat. §§ 598.0903, *et seq.*

4    v.        N.H. Rev. Stat. §§ 358-A:1, *et seq.*

5    w.        N.M. Stat. §§ 57-12-1, *et seq.*

6    x.        N.C. Gen. Stat. §§ 75-1.2, *et seq.*

7    y.        15 OK Stat §§ 15-751.1, *et seq.*

8    z.        R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

9    aa.       S.C. Code Ann. §§39-5-10, *et seq.*

10   bb.       Vt. Tit. 9, §§ 2453, *et seq.*

11   cc.       Rev. Code Wash. §§ 19.86.010, *et seq.*

12   dd.       W. Va. Code §§ 46A-6-101, *et seq.*

13       150.    As a direct and proximate result of Defendant's unlawful conduct, Class members

14   in each of these states have been injured in their businesses and property in that they paid more

15   for online purchases of Class Products than they would have paid absent the Defendant's

16   unlawful conduct.

17                           **FIFTH CAUSE OF ACTION**
                              **UNJUST ENRICHMENT**

18
         (Applies to all states except Alaska, Delaware, Florida, Georgia, Idaho, Kentucky,
19
     Michigan, Mississippi, New Jersey, New York, and Ohio)
20
         151.    Plaintiffs repeat and re-make every allegation above as if set forth herein in full.
21
         152.    Plaintiffs and members of the Class are not making any claims against Defendant
22
     relating in any way to any products or services sold or distributed by Defendant or through the
23
     Amazon.com platform.
24
         153.    To the detriment of Plaintiffs and members of each of the State Classes,
25
     Defendant has been and continues to be unjustly enriched as a result of the unlawful and/or
26
     wrongful conduct. Defendant has unjustly benefited by reducing price competition and causing
27

28



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX

1    consumers to pay higher online prices for Class Products than they would in the absence of

2    Defendant' anticompetitive conduct.

3         154.     Between the parties, it would be unjust for Defendant to retain the benefits

4    attained by its actions. Accordingly, Plaintiffs and members of the Class seek full restitution of

5    Defendant's enrichment, benefits and ill-gotten gains acquired as a result of the wrongful or

6    unlawful conduct alleged herein.

7                     **JURY TRIAL DEMANDED**

8         155.     Plaintiffs hereby demand a trial by jury of all the claims asserted in this

9    Complaint.

10                     **PRAYER FOR RELIEF**

11       WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

12         A.      The Court determine that this action may be maintained as a class action under

13    Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiffs as Class

14    Representative and their counsel of record as Class Counsel, and direct that notice of this action,

15    as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class, once

16    certified;

17         B.      Adjudication that the acts alleged herein constitute unlawful restraints of trade in

18    violation of the Sherman Act, 15 U.S.C. § 1;

19         C.      Adjudication that the acts alleged herein constitute monopolization or attempted

20    monopolization in violation of the Sherman Act, 15 U.S.C. § 2;

21         D.      Adjudication that the acts alleged herein violate the state laws alleged herein;

22         E.      Actual damages, statutory damages, punitive or treble damages, and such other

23    relief as provided by the statutes cited herein;

24         F.      Pre-judgment and post-judgment interest on such monetary relief;

25         G.      Equitable relief in the form of restitution and/or disgorgement of all unlawful or

26    illegal profits received by Defendant as a result of the anticompetitive conduct alleged herein;

27

28



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292   206.623.0594 FAX

H.      Equitable relief requiring that Amazon cease the abusive, unlawful, and anti-competitive practices described herein (including pursuant to federal antitrust law: *see, e.g.*, 15 U.S.C. § 26), as requested he therein;

I.      The costs of bringing this suit, including reasonable attorneys' fees; and

J.      All other relief to which Plaintiffs and members of the Class may be entitled at law or in equity.

DATED this 19th day of March, 2020          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By     */s/Steve W. Berman*
             Steve W. Berman (WSBA No. 12536)

      */s/ Barbara A. Mahoney*
             Barbara A. Mahoney (WSBA No. 31845)

1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
barbaram@hbsslaw.com

KELLER ROHRBACK L.L.P.

By     */s/ Derek W. Loeser*
             Derek W. Loeser (WSBA No. 24274)

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
Dloeser@kellerrohrback.com

*Attorneys for Plaintiffs and the Proposed Class*

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292    206.623.0594 FAX