The Honorable Richard A. Jones

1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9   DEBORAH FRAME-WILSON and
    CHRISTIAN SABOL, on behalf of themselves
10  and all others similarly situated,              No. 2:20-CV-00424-RAJ

11                        Plaintiff,                AMAZON.COM, INC.'S
                                                    MOTION TO DISMISS
12          v.

13  AMAZON.COM, INC., a Delaware corporation,       ***NOTE ON MOTION CALENDAR:***
                                                    August 7, 2020
14                        Defendant.

15
16
17
18
19
20
21
22
23
24
25
26
27

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ...................................................................................................................... 4

    A.    Amazon's Store ..................................................................................... 4

    B.    Other Retail Participants that Compete with Amazon ........................ 4

    C.    Amazon's Measures To Protect Its Customers ................................... 5

    D.    The Plaintiffs ....................................................................................... 6

STANDARD OF REVIEW ..................................................................................................... 6

ARGUMENT ........................................................................................................................... 7

I.    PLAINTIFFS' SHERMAN ACT CLAIMS ALL FAIL FOR LACK OF
    ANTITRUST STANDING. ....................................................................................... 7

    A.    Plaintiffs Fail To Allege Any Purchase From Amazon Or A Seller Subject
        To The Alleged Restraints. ................................................................ 7

    B.    Plaintiffs Fail To Allege Purchase Of Class Products, Fail To Allege Any
        Injury With Respect To The Now-Eliminated Price Parity Clause, And
        Fail To Allege Injury In Any Alleged Sub-Market. ............................ 9

II.    THE SECTION 1 CLAIM FAILS BECAUSE THE ALLEGED AGREEMENTS
    ARE VERTICAL ARRANGEMENTS AFFECTING DISTRIBUTION, NOT
    HORIZONTAL PRICE-FIXING. ............................................................................. 9

    A.    Agreements Between Customers And Suppliers Are Not Subject To *Per
        Se* Condemnation Without Proof Of Actual Competitive Harm. ...... 10

    B.    The Facts Alleged Do Not Constitute Price-Fixing. .......................... 11

III.    PLAINTIFFS FAIL TO ALLEGE COGNIZABLE RELEVANT MARKETS ............ 13

    A.    The Alleged "E-Commerce Market" Improperly Lumps Together Non-
        Competing Products And Unjustifiably Excludes Acknowledged
        Alternatives. ...................................................................................... 14

    B.    Plaintiffs' Alleged "Sub-Markets" Are Likewise Legally Deficient. .............. 15

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - i
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

IV.    AMAZON'S ALLEGED POLICIES DO NOT CONSTITUTE
       EXCLUSIONARY CONDUCT. ........................................................................ 16

       A.    Featuring Only Good Deals Is Legitimate Competition. .................................... 17

       B.    Plaintiffs Fail To Allege Plausible Anticompetitive Harm. ............................... 20

V.     THE STATE CONSUMER PROTECTION CLAIMS FAIL. ...................................... 21

VI.    THE UNJUST ENRICHMENT CLAIMS FAIL. ........................................................ 22

CONCLUSION ........................................................................................................................ 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alaska Airlines, Inc. v. United Airlines, Inc.,*
948 F.2d 536 (9th Cir. 1991) ...................................................16

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP,*
592 F.3d 991 (9th Cir. 2010) ...................................................16, 17, 20

*Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.,*
116 F. Supp. 2d 1159 (C.D. Cal. 2000) .....................................8

*Apple v. Pepper,*
139 S. Ct. 1514 (2019)..............................................................8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................7

*Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters,*
459 U.S. 519 (1983)..................................................................8

*AT&T Corp. v. JMC Telecom, LLC,*
470 F.3d 525 (3d Cir. 2006).......................................................11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...................................................................6, 9

*Big Bear Lodging Ass'n v. Snow Summit, Inc.,*
182 F.3d 1096 (9th Cir. 1999) ..................................................15

*Blizzard Entm't Inc. v. Ceiling Fan Software LLC,*
2013 WL 12143935 (C.D. Cal. Jan. 7, 2013) ...........................13, 14

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic,*
65 F.3d 1406 (7th Cir. 1995) ....................................................12, 17, 19

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.,*
985 F. Supp. 2d 612 (S.D.N.Y. 2013).......................................16

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
509 U.S. 209 (1993)...................................................................18

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977)...................................................................7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Costco Wholesale Corp. v. AU Optronics Corp.*,
   2014 WL 4723880 (W.D. Wash. Sept. 23, 2014) ...................................................................8

*EchoStar Satellite Corp. v. NDS Grp. PLC*,
   2008 WL 4596644 (C.D. Cal. Oct. 15, 2008)........................................................................22

*ESG Capital Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) .............................................................................................22

*Feitelson v. Google, Inc.*,
   80 F. Supp. 3d 1019 (N.D. Cal. 2015) ..................................................................................21

*Gen. Bus. Sys. v. N. Am. Philips Corp.*,
   699 F.2d 965 (9th Cir. 1982) ...............................................................................................13

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   352 F.3d 367 (9th Cir. 2003) .................................................................................................9

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
   433 F. App'x 598 (9th Cir. 2011) .........................................................................................14

*Goldwasser v. Ameritech Corp.*,
   222 F.3d 390 (7th Cir. 2000) (Wood, J.) ..............................................................................18

*Gross v. New Balance Athletic Shoe, Inc.*,
   955 F. Supp. 242 (S.D.N.Y. 1997) .........................................................................................8

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ...............................................................................14, 15, 16

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992).................................................................................................................8

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977)..................................................................................................................8

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ...............................................................................16, 17, 20

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...........................................................................21, 22

*In re Interior Molded Doors Antitrust Litig.*,
   2019 WL 4478734 (E.D. Va. Sept. 18, 2019)........................................................................22

*In re Packaged Seafood Prods. Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017)..................................................................................22

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - iv
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*In re Park W. Galleries, Inc. Mktg. & Sales Practices Litig.*,
   2010 WL 2653253 (W.D. Wash. June 25, 2010)...................................................................21

*Jain Irrigation, Inc. v. Netafim Irrigation, Inc.*,
   386 F. Supp. 3d 1308 (E.D. Cal. 2019)..................................................................................13

*John Doe 1 v. Abbott Labs.*,
   571 F.3d 930 (9th Cir. 2009) ................................................................................................13

*Kartell v. Blue Shield of Massachusetts*,
   749 F.2d 922 (1st Cir. 1984)..................................................................................................19

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ................................................................................................7

*Khalid v. Microsoft Corp.*,
   2020 WL 1674123 (W.D. Wash. Apr. 6, 2020)....................................................................13

*Kitsap Physicians Serv. v. Washington Dental Serv.*,
   671 F. Supp. 1267 (W.D. Wash. 1987)..................................................................................19

*Krehl v. Baskin Robbins Ice Cream Co.*,
   664 F.2d 1348 (9th Cir. 1982) ..............................................................................................11

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007)........................................................................................................10, 13

*Les Shockley Racing v. Nat'l Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir. 1989) ................................................................................................20

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
   275 F.3d 762 (9th Cir. 2001) ................................................................................................14

*M.A.P. Oil Co. v. Texaco Inc.*,
   691 F.2d 1303 (9th Cir. 1982) ..............................................................................................15

*Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*,
   922 F.3d 713 (6th Cir. 2019) ................................................................................................12

*New York Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*,
   323 F. Supp. 2d 559 (S.D.N.Y. 2004)..................................................................................20

*Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*,
   472 U.S. 284 (1985)..............................................................................................................10

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*,
   883 F.2d 1101 (1st Cir. 1989) ........................................................................................12, 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Ohio v. American Express Co.*,
    138 S. Ct. 2274 (2018) ........................................................................................10, 13

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) ...................................................................................20

*Pac. Bell Tel. Co. v. linkLine,Comm's, Inc.*,
    555 U.S. 438 (2009) .............................................................................................17, 18

*Paladin Assocs., Inc. v. Montana Power Co.*,
    328 F.3d 1145 (9th Cir. 2003) ...................................................................................12

*Payment Logistics Limited v. Lighthouse Network LLC*,
    2018 WL 5311907 (S.D. Cal. Oct. 24, 2018) ............................................................13

*Pool Water Prods. v. Olin Corp.*,
    258 F.3d 1024 (9th Cir. 2001) .....................................................................................7

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997) .......................................................................................15

*Randy's Ring & Pinion Serv. Inc. v. Eaton Corp.*,
    2009 WL 10727790 (W.D. Wash. Nov. 16, 2009) ....................................................21

*S. Pac. Co. v. Darnell-Taenzer Lumber Co.*,
    245 U.S. 531 (1918).......................................................................................................8

*Sambreel Holdings LLC v. Facebook, Inc.*,
    906 F. Supp. 2d 1070 (S.D. Cal. 2012) .................................................................17, 20

*Schertzer v. Bank of Am., N.A.*,
    2020 WL 1046890 (S.D. Cal. Mar. 4, 2020) .............................................................21

*Seaside Inland Transp. v. Coastal Carriers LLC*,
    2019 WL 4918747 (E.D. Wash. Oct. 4, 2019) ..........................................................21

*SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*,
    88 F.3d 780 (9th Cir. 1996) ...................................................................7, 17, 19, 20

*Smith v. eBay Corp.*,
    2012 WL 27718 (N.D. Cal. Jan. 5, 2012) .................................................................14

*State Oil Co. v. Khan*,
    522 U.S. 3 (1997).........................................................................................................18

*Tanaka v. Univ. of S. California*,
    252 F.3d 1059 (9th Cir. 2001) ...................................................................................13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*United States v. Joyce*,
    895 F.3d 673 (9th Cir. 2018) ..................................................................................11

*Universal Grading Serv. v. eBay, Inc.*,
    2012 WL 70644 (N.D. Cal. Jan. 9, 2012), *aff'd sub nom. Universal Grading*
    *Serv., LLC v. eBay, Inc.*, 563 F. App'x 571 (9th Cir. 2014) ....................................14

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ..........................................................................8, 16, 17, 18

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
    382 U.S. 172 (1965).............................................................................................13

*Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*,
    654 F.3d 919 (9th Cir. 2011) ...............................................................................12


**State Cases**

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .........................................................................................21

*Colgan v. Leatherman Tool Grp.*,
    38 Cal. Rptr. 3d 36 (Ct. App. 2006) .....................................................................22

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .......................................................................................22


**Federal Statutes**

15 U.S.C. § 15.................................................................................................................8


**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust*
    *Principles and Their Application* (4th ed. 2020) .............................................11, 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# INTRODUCTION

Having a reputation for low prices and in fact offering low prices to consumers are fundamental business objectives for Amazon, which prides itself on being earth's most customer-centric company.  Within the intensely competitive retail environment, customers will shop around until they find the best deal.  Even a single bad experience in Amazon's stores—such as paying an uncompetitive price for a product found elsewhere—can damage customer trust, which is essential to success in retail and can be easily lost.  The gravamen of plaintiffs' complaint is that Amazon's policies that encourage low prices in Amazon's stores somehow constitute an antitrust violation.  But the proposition forming the basis of plaintiffs' complaint—that Amazon should not be allowed to encourage low prices from the third-party sellers that sell in Amazon's stores—contradicts the letter and purpose of the antitrust laws, which encourage and protect the very type of competition in which plaintiffs allege Amazon is engaging.

Plaintiffs' allegations would also force the Court's involvement in routine business decisions made by thousands of retailers every day.  Like any retailer, to win customers' business, Amazon must choose how to organize its stores to make them attractive.  Just as a physical retailer makes a wide range of choices about which products may present the best value to customers—including, for example, giving certain products prominent placement near a store's entry or at the end of an aisle—Amazon makes its own decisions on which offers to feature to customers.  The complaint itself shows that Amazon's approach is to highlight only products that are competitively priced and thereby encourage competitive prices.  Although other retailers may prefer different policies to achieve their chosen objectives with respect to their brand and reputation, Amazon's business model is a reasonable choice that allows it to compete effectively.  Plaintiffs' complaint, however, would make the Court the arbiter of these policies and a regulator of the criteria and circumstances under which a retailer may highlight or feature a product for sale.  The antitrust laws protect competition, not competitors, and contemplate no such detailed regulation of the types of decisions every retailer routinely must make in its attempt to attract customers.

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 1
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Retail remains dynamic and robustly competitive, with low prices that benefit consumers and result in low margins for retailers across the industry. The Amazon policies alleged in the complaint only advance this competition and benefit consumers. These policies—encouraging low prices in Amazon's stores to spur competition with retail competitors for the benefit of customers—are the type of activity the antitrust laws were designed to promote, not condemn. Consumers have numerous retail options, both online and in brick-and-mortar stores, and sellers continue to have numerous options to reach consumers. They need not sell in Amazon's stores if they disagree with Amazon's low-price approach. The antitrust laws cannot reasonably be construed to prohibit Amazon's procompetitive policies or, as the plaintiffs might have it, require a retailer to feature products that are not competitively priced. For that reason, as well as other serious defects in plaintiffs' complaint, the Court should dismiss this case.

*First*, plaintiffs lack antitrust standing. The two plaintiffs named in the complaint claim to represent classes of almost inconceivable scope, purportedly covering 600 million products sold by 2 million online sellers. But neither of these plaintiffs alleges they made purchases from Amazon. Rather, they purchased goods online from Walmart, an independent retailer that is not even alleged to be subject to the pricing policies the complaint challenges. Plaintiffs allege Amazon's pricing policies affected the prices they paid for products at Walmart. But this allegation is insufficient for antitrust standing. This Court and other courts have rejected antitrust standing of plaintiffs that purchased only from unconstrained third parties (here, Walmart) because the causal connection between the alleged injury and the conduct at issue is attenuated by independent pricing decisions of non-conspiring retailers.

*Second,* plaintiffs' Section 1 *per se* claims fail because courts reserve *per se* treatment only for certain categories of conduct between horizontal competitors, and that is not what plaintiffs allege. Plaintiffs claim Amazon entered into agreements with its two million third-party sellers, but the complaint describes *vertical* agreements between firms at different levels of distribution. In addition, the conduct alleged is beneficial on its face: it secures competitive prices for Amazon customers.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Third*, plaintiffs' Section 2 claims fail because plaintiffs do not allege Amazon possesses monopoly power in any properly defined relevant antitrust market.  Defining a relevant antitrust market of substitutable goods is a prerequisite for a Section 2 claim.  Plaintiffs allege a broad "e-retail" market containing 600 million products, but nowhere allege that these products are interchangeable or substitutable, as the law requires for a single market.  Their alleged "submarkets" suffer from the same defect: a "home improvement tools" submarket assumes consumers see paint brushes as interchangeable with wrenches, and a "kitchen and dining" submarket assumes consumers would substitute coffee makers for frying pans given reasonable variations in price.  In addition, plaintiffs ignore the everyday reality that customers can and do turn to traditional brick-and-mortar stores as alternative sources of the products sold on Amazon (indeed, almost 90 percent of retail sales still occur in physical stores), rendering any online-only market implausibly narrow.  Because plaintiffs do not and cannot allege a relevant antitrust market, their Section 2 claims must be dismissed.

*Fourth*, plaintiffs' Section 2 claims fail for the independent reason that, under applicable Section 2 precedent, the conduct they allege is procompetitive and therefore cannot form the basis of an antitrust claim.  Courts have invariably rejected Section 2 claims such as this one, where the only conduct at issue is an alleged requirement that the defendant or its customers be treated no worse than other purchasers, because that conduct is legitimate and procompetitive.  Under Ninth Circuit precedent, where an antitrust defendant's conduct has legitimate business justifications, a Section 2 claim must fail.  The antitrust laws do not require Amazon to feature or sell products it knows are overpriced.  Regardless of Amazon's policies, within the robustly competitive retail industry, sellers and retailers of all varieties can and will continue to compete vigorously on price, quality, convenience, and other factors.  Amazon's policies serve only to enhance retail competition, driving better outcomes and lower prices for consumers.

*Finally*, plaintiffs' state law claims are derivative of their federal antitrust claims and fail for the same reasons, among others.  The complaint therefore should be dismissed in its entirety.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# BACKGROUND

## A.      Amazon's Store

Amazon operates a retail store in which it sells products itself and also allows "independent merchants [to] display their products to people perusing the website."  Compl. ¶ 1 (quotation omitted).  In this capacity, Amazon allegedly provides "intermediate" services between "third-party sellers and their customers."  *Id.*  Third-party sellers can reach "millions of buyers," and buyers can reach "millions of sellers."  *Id.*  At the same time, the vast majority of third-party sellers also "sell their products on other online retail websites that compete with" Amazon, as well as on "their own websites."  *Id.* ¶ 2.

The complaint makes clear that maintaining competitive prices is imperative in the highly dynamic, intensely aggressive retail segment where consumers have many choices.  "[M]any consumers use Google to compare prices" online, *id.* ¶ 25, and "[a] staggering number (82%) of consumers cited price as a very important factor when buying a product on Amazon," *id.* ¶ 47 (quotation omitted).

Many third-party sellers offer the same products on Amazon in competition with one another (and sometimes in competition with private label products sold by Amazon itself).  According to the complaint, Amazon assists consumers in selecting the best offer among competing sellers of identical goods by using a tool called the "Buy Box," which features the best offer and includes "Add to Cart" and "Buy Now" buttons.  *Id.* ¶ 52.  Whether Amazon selects a seller to be featured in the "Buy Box" allegedly "depends on a number of factors, including the seller's reputation, price, efficiency, and whether the seller is selling its product for a lower price" elsewhere.  *Id.*  The opportunity to be the featured offer encourages sellers to offer their best prices and service to Amazon customers.  *See id.* ¶¶ 51, 52.

## B.      Other Retail Participants that Compete with Amazon

As plaintiffs point out, Amazon competes with many household names, including Walmart, Wayfair, eBay, Home Depot, and Costco.  Compl. ¶ 2.  The complaint describes how Amazon competes as a retailer with brick and mortar stores, online websites, mobile app retail

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 4
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

rivals, and third-party sellers on eBay, Walmart, or their own websites. *Id.* ¶¶ 2, 17.  "As of 2019, there were 1.1 million active sellers on the Amazon.com platform; 80% of them sell on other marketplaces, including other online platforms." *Id.* ¶ 17.  And while plaintiffs focus on online options for purchasing products, the same products that are offered online are also offered in brick and mortar stores.  "Consumers can reach retailers in physical stores, connect with them directly through a retailer's website or app, or indirectly through an internet search or other digital platforms, like social media." *Id.* ¶ 12.

### C.     Amazon's Measures To Protect Its Customers

The complaint focuses on two pricing policies that allegedly apply to third-party sellers. Until March 2019, any third-party seller offering products in Amazon's store allegedly had to show Amazon shoppers a price that was at least as favorable as the seller's lowest price on "other retail channels," such as eBay, Walmart's marketplace, or its own website.  *Id.* ¶ 4.  The complaint terms this the "price parity provision." *Id.* ¶ 49.  Amazon terminated the policy a year before the filing of the complaint, around March 2019.  *Id.* ¶ 48.

Amazon also maintains a "fair pricing" policy, published on its website for sellers and customers to view.  *Id.* ¶ 5 n.21.  The policy explains: "In our mission to be Earth's most customer-centric company, Amazon strives to provide our customers with the largest selection at the lowest price, and with the fastest delivery," and "sellers play an important role" in meeting those goals.  *See id.* (citing *Amazon Marketplace Fair Pricing Policy*, Amazon Seller Central, https://sellercentral.amazon.com/gp/help/external/G5TUVJKZHUVMN77V?language=en_US&ref=efph_G5TUVJKZHUVMN77V_cont_521 and incorporating policy by reference).  To help ensure its customers find the best price, the policy says, Amazon monitors prices in its store and "compares them with other prices available to our customers."  *Id.*  Further, the policy states that if Amazon sees "pricing practices on a marketplace offer that harms customer trust," it may remove the Buy Box, remove the offer from its store, or "in serious or repeated cases," suspend or terminate selling privileges in its store.  *Id.*  Pricing practices that harm customer trust include "setting a price on a product or service that is significantly higher than recent prices offered on or

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 5
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

off Amazon." *Id.*  Despite the differences between the price parity provision and the fair pricing policy, plaintiffs allege the policies are "nearly identical," *id.*  ¶ 46, and have "the same impact," *id.* ¶ 60.

### D.   The Plaintiffs

Plaintiffs seek to represent putative classes of consumers who "purchased through any . . . retail e-commerce channel in the United States *other than*" Amazon "one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon.com platform." *Id.* ¶ 96 (emphasis added).  As defined, the classes expressly exclude customers who purchased only from Amazon and include purchasers from entities not bound by any contract with Amazon.  For example, a purchaser using Walmart's website to buy from Walmart would be part of the purported class so long as some third-party seller was "concurrently" selling the same product in Amazon's store—even though Amazon's alleged policies place no constraint on Walmart's retail pricing.

The Named Plaintiffs are Deborah Frame-Wilson (a Virginia resident), *id.*  ¶ 33, and Christian Sabol (a California resident), *id.* ¶ 34.  On February 18, 2020, Frame-Wilson purchased a DVD "online from Walmart for $9.99." *Id.* ¶ 33.  Sabol purchased "[m]any" items on websites other than Amazon, including on August 28, 2019, when he purchased nutrition bars and toothpaste from Walmart. *Id.* ¶ 34.  Although both of the Named Plaintiffs "shop" in the Amazon store, neither of them is "making any claims relating in any way to any products or services sold or distributed by Defendant or through the Amazon.com platform." *Id.* ¶¶ 33-34.  Moreover, despite the class definition, the complaint does not identify any third-party seller that "concurrently" offered on Amazon the same products that Named Plaintiffs purchased.

### STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 6
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   "Dismissal for failure to state a claim is appropriate where the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose." *SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (quotation omitted).   Antitrust cases that fail these standards are especially ripe for dismissal "because discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

## ARGUMENT

## I.   Plaintiffs' Sherman Act Claims All Fail For Lack Of Antitrust Standing.

Plaintiffs seek to represent a class of many millions of purchasers of many millions of different products from any website other than Amazon.  Yet the Named Plaintiffs fail to allege they have suffered the required antitrust injury—that is, an injury that flows from the aspects of the allegedly unlawful conduct that are supposedly anticompetitive.  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  All of their antitrust claims fail for that reason. *See Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1033 (9th Cir. 2001) (affirming dismissal of Section 1 and Section 2 claims for lack of antitrust standing).

### A.   Plaintiffs Fail To Allege Any Purchase From Amazon Or A Seller Subject To The Alleged Restraints.

Plaintiffs lack antitrust standing because they fail to allege they purchased any product from a seller whose prices were constrained by Amazon's policies.  The Named Plaintiffs do not claim their purchases outside the Amazon store came from third-party sellers who also sell in Amazon's store and are subject to Amazon's policies.  Instead, they allege they purchased products from Walmart through Walmart's own website.  Compl. ¶¶ 33-34.  But plaintiffs do not allege that Walmart sells on Amazon, is a party to any agreement with Amazon, or is subject to the policies the complaint challenges.  Walmart is free to set its retail prices as low as it pleases,

and to the extent it fails to do so, its independent pricing decisions—based on Walmart's own suppliers, costs, and competitive strategy—cannot be laid at Amazon's door.  *See Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 541 (1983); *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 416-17 (2004) (Stevens, J., concurring).  Courts, including this one, have applied *Associated General Contractors* to reject antitrust standing based on purchases from third parties in similar circumstances because "the causal connection between the alleged injury and the conspiracy is attenuated by significant intervening causative factors (i.e., independent pricing decisions of non-conspiring retailers)."  *Gross v. New Balance Athletic Shoe, Inc.*, 955 F. Supp. 242, 247 (S.D.N.Y. 1997); *see Costco Wholesale Corp. v. AU Optronics Corp.*, 2014 WL 4723880, at *3-4 (W.D. Wash. Sept. 23, 2014) (Jones, J.) (rejecting analogous antitrust standing except where pricing was under control of an alleged co-conspirator); *Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159, 1167-70 (C.D. Cal. 2000) (rejecting standing based on similar allegations).  Because Named Plaintiffs allegedly purchased only from an independent retailer (Walmart) that controlled its own pricing, they lack antitrust standing.

Allowing these plaintiffs to sue would violate the longstanding principle construing federal statutes not to reach those injured only indirectly.  *S. Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533-34 (1918) (Holmes, J.) ("The general tendency of the law . . . is not to go beyond the first step.").  There must be a "direct relation between the injury asserted and the injurious conduct alleged.  Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover."  *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268-69 (1992).  The requirement is embodied in the antitrust laws.  *See* 15 U.S.C. § 15; *Holmes*, 503 U.S. at 267 n.13; *Associated Gen. Contractors*, 459 U.S. at 534, 540 (citing *Darnell-Taenzer*).  It is reflected specifically in antitrust law's bar on indirect purchaser standing.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977); *see also Apple v. Pepper*, 139 S. Ct. 1514, 1520 (2019).  The injury alleged by these plaintiffs is indirect: it derives entirely from alleged harms incurred by

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 8
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  purchasers from independent sellers.  If customers who buy outside the Amazon store are

2  allowed to sue Amazon for purchases they made from independent third parties, there would be

3  no stopping point for antitrust liability.

4      **B.**     **Plaintiffs Fail To Allege Purchase Of Class Products, Fail To Allege Any
         Injury With Respect To The Now-Eliminated Price Parity Clause, And Fail**

5          **To Allege Injury In Any Alleged Sub-Market.**

6          Plaintiffs fail to allege antitrust injury for two additional reasons.  *First*, the Named

7  Plaintiffs fail to allege they purchased Class Products—defined as a product purchased elsewhere

8  online that was concurrently sold by a third-party seller on Amazon.  The factual allegations (in

9  the table at Compl. ¶ 35) make clear that the "Amazon Seller" of the products Named Plaintiffs

10  bought was "Amazon" itself, rather than a third-party seller on Amazon.  Plaintiffs accordingly

11  fail to allege that they suffered injury as a result of the challenged conduct, and all of their

12  antitrust claims must be dismissed.  *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 371

13  (9th Cir. 2003).

14          *Second*, plaintiffs have not alleged any injury stemming from Amazon's previous best-

15  price clause.  The Named Plaintiffs purchased their goods in late 2019 and 2020.  Compl. ¶¶ 33-

16  34.  Amazon ended the price parity clause in early 2019, *id.* ¶ 5, so it could not have caused

17  Named Plaintiffs injuries on the facts alleged, *see Glen Holly Entm't*, 352 F.3d at 371.  Thus,

18  plaintiffs' antitrust claims must be dismissed to the extent they rest on the best-price clause.

19  **II.**   **The Section 1 Claim Fails Because The Alleged Agreements Are Vertical
         Arrangements Affecting Distribution, Not Horizontal Price-Fixing.**

20          Plaintiffs claim Amazon "entered into a horizontal agreement with its two million third-

21  party sellers on Amazon Marketplace concerning the price they were allowed to sell their

22  products in the United States," and that "[t]his combination is *per se* unlawful price-fixing."

23  Compl. ¶ 116.  But the facts alleged do not support plaintiffs' "horizontal agreement" label or

24  the conclusory assertion that Amazon's conduct is unlawful *per se*.  *See Twombly*, 550 U.S.

25  at 557.  On the contrary, the pricing policies at issue are vertical arrangements: they concern

26  how third-party sellers sell through Amazon's store and do not involve any horizontal

27

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 9
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

agreement not to compete with Amazon's own retail offerings.  And even horizontal agreements not to exceed a price would be agreements to seek lower prices and would not be subject *per se* illegal treatment.

### A.   Agreements Between Customers And Suppliers Are Not Subject To *Per Se* Condemnation Without Proof Of Actual Competitive Harm.

Courts have identified a narrow category of Section 1 agreements with no "redeeming virtue," *Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 289 (1985) (quotation omitted), including naked agreements "among competitors to fix prices," *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007).  These are unlawful *per se*, that is, unlawful without the need for proof of actual anticompetitive effects in a defined market.  *See Ohio v. American Express Co.*, 138 S. Ct. 2274, 2283 (2018).  All other agreements "are judged under the rule of reason," which requires "a fact-specific assessment of market power and market structure . . . to assess the [restraint]'s actual effect on competition." *Id.* at 2284 (quotation omitted).

The alleged agreements here do not fit the narrow category the case law has condemned. The relationship between Amazon and third-party sellers is vertical.  Amazon provides services to third-party sellers that enable those sellers to reach customers.  *See* Compl. ¶ 1 ("third-party sellers and their customers . . . depend on the [Amazon] platform to intermediate between them").  Third-party sellers source goods and set prices for those goods.  For a fee, Amazon displays those offers to customers in its store, handles point-of-sale logistics, and facilitates purchase (and may offer additional services to third-party sellers as well).  *See id.* ¶ 40.  The fair pricing policy (and the best-price provision before it) allegedly "establish[] rules" for how third-party sellers price "*on the Amazon.com platform*." *Id*. ¶ 3 (emphasis added).  This is a vertical arrangement.  The complaint even admits that the restrictions alleged are directed or imposed by Amazon on third-party sellers – allegations of a vertical restraint.  *Id.* ("selling on Amazon comes with certain restrictions"), ¶ 36 ("Amazon contractually obligates its third-party sellers").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The allegation that Amazon is a competitor to third-party sellers in its stores—because Amazon both provides services to third-party sellers and itself sells products to consumers as a retailer—does not bring the challenged policies within the scope of any *per se* rule.  On the contrary, it is common for a business to carry out some function—say, retail distribution—partly on its own and partly by contracting with third parties.  For example, Apple sells electronics in its own stores and through electronics retailers like Best Buy and service providers like T-Mobile; Costco sells name-brand products at retail that compete with "Kirkland" house-brand products.  Like other vertical restraints, such "dual distribution" arrangements "are generally not *per se* violations of the Sherman Act, even where a distributor and manufacturer also compete at the distribution level."  *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006); *see also Krehl v. Baskin Robbins Ice Cream Co.*, 664 F.2d 1348 (9th Cir. 1982) (rejecting application of *per se* rule to horizontal market allocation agreement between franchisor, which also sold through its own outlets, and franchisees).  The vertical nature of the restraints here is made clear by the fact that if Amazon itself never sold another item in its stores, nothing would change about the pricing policies at issue, which would still apply to third-party sellers.

## B.     The Facts Alleged Do Not Constitute Price-Fixing.

The facts plaintiffs have alleged likewise do not constitute *per se* illegal "price-fixing." Compl. ¶ 116.  Per se unreasonable price-fixing requires some agreement between competitors not to compete on the price (or output, quality, or customers) of competing goods or services. *See United States v. Joyce*, 895 F.3d 673, 677 (9th Cir. 2018) (describing price-fixing); Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 2004a (4th ed. 2020) ("Areeda & Hovenkamp, *Antitrust Law*").  Plaintiffs have not alleged any agreement to halt price competition, to reduce output, or to allocate customers; on the contrary, plaintiffs allege that third-party sellers offering the same goods must compete with one another and with Amazon to be featured in the Buy Box.  Compl. ¶¶ 52-53.  Amazon's pricing policy merely makes plain that Amazon will not feature products that are not competitively priced, and under the former parity clause all that a seller allegedly could not do

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 11
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

was charge higher prices in Amazon's stores (prices the seller unilaterally sets) than it charged elsewhere.  Accordingly, *per se* condemnation does not apply.  *See Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health,* 654 F.3d 919, 925 (9th Cir. 2011).

Far from the clear harmfulness of price-fixing, the challenged pricing provisions have plain procompetitive justifications.  When there are "plausible arguments that a practice enhances overall efficiency and makes markets more competitive, *per* se treatment is inappropriate, and the rule of reason applies."  *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003).  The challenged policies do not mandate higher fixed prices in any way.  They simply secure competitive prices for Amazon customers and accordingly resemble so-called "most favored nation" clauses, which are "standard devices by which buyers try to bargain for low prices."  *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995).  Such provisions have never been held unlawful at all, much less *per se* unlawful.  *See id.*; *see also Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*, 883 F.2d 1101, 1110 (1st Cir. 1989).

For example, the plaintiffs in *Marshfield Clinic* challenged a price-parity requirement that prevented affiliated physicians in the defendant's HMO from charging the clinic "more than what these physicians charge their other patients," claiming, just as plaintiffs do here, that this violated Section 1 and Section 2 of the Sherman Act by placing "a floor underneath these physicians' prices, since if they cut prices to their other patients their reimbursement from the Clinic will decline automatically."  65 F.3d at 1415; *compare* Compl. ¶ 128.  The Seventh Circuit rejected this "ingenious but perverse argument" and reversed a jury verdict against the Clinic, explaining that best-price provisions are standard bargaining mechanisms to ensure low prices, and that "is the sort of conduct that the antitrust laws seek to encourage.  It is not price-fixing."  *Marshfield Clinic*, 65 F.3d at 1415 (citing *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993)).

Plaintiffs' inability to allege any *per se* unlawful agreement is fatal to their Section 1 claim because they do not allege any claim under the "rule of reason."  *See Med. Ctr. at*

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 12
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 727-28 (6th Cir. 2019) (affirming summary judgment for defendant where plaintiff brought only a *per se* claim but record supported only a rule of reason claim); *Khalid v. Microsoft Corp.*, 2020 WL 1674123, at *5-6 (W.D. Wash. Apr. 6, 2020) (where plaintiff "failed to plead these restraints under the rule of reason . . . [p]laintiff has failed to state a claim under Section 1"); *Jain Irrigation, Inc. v. Netafim Irrigation, Inc.*, 386 F. Supp. 3d 1308, 1314-16 (E.D. Cal. 2019) (dismissing a complaint where the "conspiracy alleged by plaintiff in the FAC simply is not susceptible to *per se* treatment").

## III.   Plaintiffs Fail To Allege Cognizable Relevant Markets.

Plaintiffs' Section 2 claims fail because they do not define cognizable product markets. To state a claim under Section 2, a plaintiff must plausibly allege the defendant possesses "monopoly power" within a "relevant market." *John Doe 1 v. Abbott Labs.*, 571 F.3d 930, 933 n.3 (9th Cir. 2009). The threshold for establishing monopoly power is defining "the relevant market." *Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 972 (9th Cir. 1982). "Without a definition of that market there is no way to measure [the defendant's] ability to lessen or destroy competition." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965); *see Am. Express*, 138 S. Ct. at 2285 (same); *see also Payment Logistics Limited v. Lighthouse Network LLC*, 2018 WL 5311907, at *4 (S.D. Cal. Oct. 24, 2018) ("Where, as here, PL fails to sufficiently allege a relevant market definition, the Court deems it is impossible to determine market power."). "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. Univ. of S. California*, 252 F.3d 1059, 1063 (9th Cir. 2001); *see Blizzard Entm't Inc. v. Ceiling Fan Software LLC*, 2013 WL 12143935, at *2 (C.D. Cal. Jan. 7, 2013) ("As a threshold matter, Defendants do not sufficiently allege a relevant market. Therefore, the Court cannot determine whether Blizzard's actions violate the Sherman Act."). Although plaintiffs have made no rule-of-reason claim under Section 1, any such claim would similarly fail in the absence of a properly defined relevant market. *Am. Express*, 138 S. Ct. at 2285 n.7; *Leegin*, 551 U.S. at 888.

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 13
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Relevant market allegations fail where the "proposed product markets are facially unsustainable because they fail to include many reasonably interchangeable products," or because they include many products that are not reasonably interchangeable. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1123 (9th Cir. 2018) (quotation omitted).  What matters is interchangeability or cross-elasticity of demand from the consumer's point of view, i.e., whether "an increase in the price of one product leads to an increase in demand for another." *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 767 (9th Cir. 2001) (quoting *Olin Corp. v. F.T.C.*, 986 F.2d 1295, 1298 (9th Cir. 1993)).  Where that is true, the products should be included in the same market; where it is not, the products are not in the same market. *See id.* ("determination of what constitutes the relevant product market hinge[s] . . . on a determination of those products to which consumers will turn, given reasonable variations in price"); *Smith v. eBay Corp.*, 2012 WL 27718, at *7 (N.D. Cal. Jan. 5, 2012) (dismissal proper if a "plaintiff fails to define [the] proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products" (quotation omitted)).  None of the markets asserted in the complaint satisfies these standards.

A.  **The Alleged "E-Commerce Market" Improperly Lumps Together Non-Competing Products And Unjustifiably Excludes Acknowledged Alternatives.**

Plaintiffs' purported "U.S. retail e-commerce market," Compl. ¶ 88, is fatally overbroad. It allegedly includes "approximately 600 million" different products, available from "two million" different sellers, but plaintiffs do not allege these products are economic substitutes for each other, and therefore have failed to allege a relevant product market. *See Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011) (dismissal for including non-interchangeable products in product market); *Universal Grading Serv. v. eBay, Inc.*, 2012 WL 70644, at *7 (N.D. Cal. Jan. 9, 2012) (same), *aff'd sub nom. Universal Grading Serv., LLC v. eBay, Inc.*, 563 F. App'x 571 (9th Cir. 2014); *Blizzard Entm't*, 2013 WL 12143935 at *3 (same).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The purported "U.S. retail e-commerce market" is also fatally under-inclusive. As the complaint acknowledges, products sold online compete with identical products sold in brick-and-mortar stores, yet those products are excluded from plaintiffs' purported market. *See* Compl. ¶ 12 (noting that "[c]onsumers can reach retailers in physical stores"); *Hicks*, 897 F.3d at 1123. The complaint does not allege that consumers would fail to respond to higher online prices for energy bars, cleaning supplies, shoes, or electronics by purchasing some or all of those items at the grocery store or local mall instead. Moreover, the complaint incorporates by reference several documents acknowledging that sort of substitutability between online and physical retail. *See, e.g.*, eMarketer at 2-3 (cited in Compl. ¶ 1 n.3) ("Share of online sales in [the grocery] category is low because most people, for a host of reasons, prefer to buy food in brick-and-mortar stores."); RILA Ltr. at 1 (cited in Compl. ¶ 12 n.31) ("Customers can still reach retailers in physical stores and can now connect directly through digital media (like websites and apps) and indirectly (through Internet search and other digital platforms like social media platforms).").

This failure to define the "U.S. retail e-commerce" market by reference to cross-elasticity of demand (the ability of customers to turn to available substitutes in the face of a price increase) makes it "facially unsustainable." *Hicks*, 897 F.3d at 1123 (dismissing complaint when product markets "omit[ted] many economic substitutes"); *see Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (dismissal for failure to allege "there are no other goods or services that are reasonably interchangeable"); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997) (collecting cases dismissing on the pleadings for failure to define market by rule of reasonable interchangeability).

**B.      Plaintiffs' Alleged "Sub-Markets" Are Likewise Legally Deficient.**

The alleged alternative "online U.S. retail" sub-markets, Compl. ¶ 89, must meet the same legal standards, and they suffer the same defects. *M.A.P. Oil Co. v. Texaco Inc.*, 691 F.2d 1303, 1306 (9th Cir. 1982) (defining a reasonable "submarket" turns on traditional market-definition factors). Plaintiffs do not allege the sub-markets include products that are reasonably interchangeable. For example, while a cheese grater, a microwave oven, and fine china may all

be "kitchen and dining products," the complaint alleges no facts to support any claim that consumers view these items as substitutes, nor that shoppers consider golf balls and golf clubs ("golf" submarket) or football cleats and hiking boots ("men's athletic shoes" submarket) to be substitutes.

The submarkets also similarly fail to include products that are obviously interchangeable to consumers, including products in brick-and-mortar stores. *See Hicks*, 897 F.3d at 1123. Each category of product is available in local, brick-and-mortar stores throughout the country. Indeed, as noted above, plaintiffs acknowledge that sales of these products online compete with sales of identical or similar products in brick and mortar stores. *Cf. Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 621 (S.D.N.Y. 2013) (explaining that plaintiffs had failed to establish an e-reader market when the complaint "itself lists numerous substitute products that are capable of displaying e-books").

## IV.   Amazon's Alleged Policies Do Not Constitute Exclusionary Conduct.

Plaintiffs' Section 2 claims also fail because the alleged conduct is not anticompetitive. To plead monopolization or attempted monopolization under Section 2, plaintiffs must allege "anticompetitive *conduct*," that is, "the willful acquisition or maintenance of [monopoly] power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Trinko*, 540 U.S. at 407 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–571 (1966)); *see also Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 542 (9th Cir. 1991) (attempted monopolization). But where an antitrust defendant's conduct has legitimate business justifications, a Section 2 claim fails. *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir. 1997). If a challenged practice serves a legitimate business purpose, the Ninth Circuit does not "weigh" the benefit against its purported anticompetitive effects. *See id.*; *see also Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 1000 (9th Cir. 2010) ("[t]here is no room in this analysis for balancing the benefits . . . of a product improvement against its anticompetitive effects"). Courts thus reject Section 2 claims at the pleading stage when legitimate reasons for the conduct are a

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 16
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"foregone conclusion." *SmileCare*, 88 F.3d at 786 (affirming dismissal); *see Pac. Bell Tel. Co. v. linkLine*,*Comm's, Inc.*, 555 U.S. 438, 457 (2009) (same); *Trinko*, 540 U.S. at 415-16 (same).

On the face of the complaint, the conduct alleged has clear legitimate business justifications.  Featuring competitively priced products by discouraging sellers from charging higher prices than other retailers are offering for the same product benefits consumers and increases competition with other retailers.  The plain legitimacy and obvious benefits to consumers of Amazon's alleged policies —namely, more competitive lower prices in Amazon's store, along with the assurance to consumers that they will find such prices in Amazon's store— are fatal to plaintiffs' claims.

### A.  Featuring Only Good Deals Is Legitimate Competition.

The complaint demonstrates that Amazon has legitimate, procompetitive business justifications for its alleged policies.  That precludes liability under Section 2.  *See Image Tech. Servs.*, 125 F.3d at 1212; *Allied Orthopedic*, 592 F.3d at 998-1000; *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1081 (S.D. Cal. 2012).

**1.**      Amazon has a legitimate business interest in maintaining customer trust by refusing to host or promote third-party offers that do not give Amazon customers the same low prices they could find elsewhere.  As plaintiffs concede, consumers can and do easily compare prices on different retail sites, *see* Compl. ¶ 25, and consumers care a lot about price, *see id.* ¶ 47. To earn the loyalty of consumers, any retailer—large or small—could choose to feature only those third-party offers that are at least as good as those consumers can find just a click away on Google.  *See id.* ¶ 25.  And plaintiffs further concede, as they must, that Amazon has legitimate reasons for its policies: the challenged conduct "attracts more customers to the Amazon.com platform and [Amazon] thereby acquires more sales opportunities."  *Id.* ¶ 93.  Because it would not be practical for Amazon to bargain individually with millions of sellers, Amazon keeps its store's prices competitive with simple, efficient guidelines for third-party sellers to ensure that Amazon customers get a third-party seller's competitive price.  *See Marshfield Clinic*, 65 F.3d at 1415.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Amazon's policies also avoid the clear risk of free-riding. Without the incentives created by Amazon's alleged policies, a third-party seller might try to profit from Amazon's customer-centric reputation by setting higher prices on Amazon than it sets elsewhere. If that were to happen, consumers who trusted Amazon's recommendations would pay more than they should. The better Amazon's reputation, and the more customers trust Amazon to feature good prices, the more some third-party sellers may seek to exploit Amazon customers if they can, harming Amazon, other sellers on Amazon, and Amazon's customers. *Cf. State Oil Co. v. Khan*, 522 U.S. 3, 15-16 (1997) (explaining how supplier's rules setting maximum resale prices may legitimately prevent retailers from harmfully raising prices). When a consumer finds the same product available at a lower price elsewhere, *see* Compl. ¶ 25, not only will Amazon's store lose a sale, but the consumer will lose confidence in Amazon generally as a source of the best available deals. The Sherman Act does not require Amazon or any business to acquiesce in that perverse result.

The antitrust laws protect competition, not competitors, and do not require detailed regulation of the decisions a retailer must make on a routine basis to attract customers. Subjecting Amazon's alleged policies to potential liability under Section 2 would almost certainly cause prices on Amazon to rise. Plaintiffs' claims are based on the premise that Amazon has an antitrust duty to promote third-party sellers by featuring their offers without regard to whether those offers are competitively priced or good for customers. But the antitrust laws generally impose no affirmative duties of assistance, *see linkLine*, 555 U.S. at 448 (generally no antitrust duty to deal); *Trinko*, 540 U.S. at 408, 414-15 (same); *cf. Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 400 (7th Cir. 2000) (Wood, J.) (noting that antitrust laws do not impose "affirmative duties to help one's competitors"), particularly where that duty of assistance would be used to offer customers a worse deal, *see State Oil*, 522 U.S. at 15. "[C]ondemnation of practices resulting in lower prices to consumers is 'especially costly' because 'cutting prices in order to increase business often is the very essence of competition.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986)); *Brooke Grp.*, 509 U.S. at 223.

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 18
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**2.** Amazon's alleged policies resemble other "best-price" provisions. Those kinds of provisions standing alone have never been held to violate Section 2, including in the face of similar claims that they create a "price floor" by raising the cost of discounting. Compl. ¶ 93. In *Ocean State*, for example, the plaintiff challenged an insurer's "prudent buyer" clause, which required doctors to charge the defendant no more than they charged other, smaller insurers. On appeal, the *Ocean State* court reversed a jury verdict not because there was insufficient evidence of harmful effects but because the conduct proven was, like an above-cost price cut, permissible competition. *See Ocean State*, 883 F.2d at 1110. "A policy of insisting on a supplier's lowest price—assuming that the price is not 'predatory' or below the supplier's incremental cost—tends to further competition on the merits and, *as a matter of law*, is not exclusionary." *Id.* (emphasis added). Insisting on a supplier's lowest prices is "what competition should be all about," and it has no anticompetitive tendency "as a matter of law." *Id.*

In *SmileCare*, the Ninth Circuit explained that the result in *Ocean State* depended on Section 2 law, not the particular facts: "even if Blue Cross's application of its [price parity] policy injured its competitor's business and was in fact intended to put its competitor out of business, Blue Cross committed no antitrust violation *because the policy itself was legitimate*." *SmileCare*, 88 F.3d at 785 n.7 (emphasis added). Consistent with that understanding, several other cases have rejected, as a matter of law, claims that best-price provisions constitute exclusionary conduct. *See Marshfield Clinic*, 65 F.3d at 1415 (best-price provisions are "standard devices by which buyers try to bargain for low prices" and are "the sort of conduct that the antitrust laws seek to encourage"); *Kartell v. Blue Shield of Massachusetts,* 749 F.2d 922, 928-29 (1st Cir. 1984) (Breyer, J.) (upholding as a matter of law an insurer's best-price policy despite the claim that it "discourages doctors from charging others low prices by insisting that its subscribers be given the benefit of any such low prices"); *see also Kitsap Physicians Serv. v. Washington Dental Serv.*, 671 F. Supp. 1267, 1269 (W.D. Wash. 1987) (agreement's "antidiscrimination" clause "that the clinic may not charge [the insurer] more than it charges the public . . . is *only good business sense*" (quotation omitted)). Indeed, the leading antitrust

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 19
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

treatise states that courts should "never condemn" even "a dominant firm's insistence that it obtain the lowest generally available price for a product."  Areeda & Hovenkamp, *Antitrust Law* ¶ 768a6.

The legitimacy of reasons for Amazon's alleged conduct is thus a "foregone conclusion," and plaintiffs' Section 2 claims fail on the pleadings.  *SmileCare*, 88 F.3d at 786 (granting motion to dismiss on the ground that insurer had a legitimate business interest in preserving the health of its network by preventing free-riding); *Sambreel Holdings*, 906 F. Supp. 2d at 1079-80, 1082 (granting motion to dismiss Section 2 claim where "the alleged conduct implicates only Facebook's actions to control the content of its own website"); *New York Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*, 323 F. Supp. 2d 559, 571 (S.D.N.Y. 2004) (dismissing Section 2 case in part because "NYMEX has a legitimate business interest in preventing its competitor, ICE, from free-riding on NYMEX's settlement prices").

### B.      Plaintiffs Fail To Allege Plausible Anticompetitive Harm.

Plaintiffs' Section 2 claims also fail because the complaint does not allege any plausible harm to "the process of competition [or] consumer welfare."  *Sambreel Holdings*, 906 F. Supp. 2d at 1082; *see Image Tech. Servs.*, 125 F.3d at 1202, 1212; *Allied Orthopedic*, 592 F.3d at 998-1000.  Competitive harm, in this context, requires plaintiffs to plead and prove that Amazon has blocked off (or "foreclosed") a substantial share of the market and thereby precluded competition.  *See Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997); *see also Allied Orthopedic*, 592 F.3d at 996 n.1 (requiring actual as opposed to probable foreclosure for Sherman Act claims); Areeda & Hovenkamp, *Antitrust Law* ¶¶ 1807b1, 1807d.

Plaintiffs have not made this allegation, nor could they plausibly do so.  Despite pages devoted to allegations of higher prices, *see* Compl. ¶¶ 62-63, those conclusory allegations are insufficient to plead anticompetitive effect.  *Les Shockley Racing v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) ("claimant may not merely recite the bare legal conclusion that competition has been restrained"); *SmileCare*, 88 F.3d at 783 ("conclusory language regarding the elimination of competition and improper purpose" is insufficient to survive a motion to

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 20
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

dismiss).  Plaintiffs do not state, for example, that Amazon has constrained any particular proportion of all the suppliers of the many products in their purported "U.S. retail e-commerce market" or the "Identified Sub-markets."  Compl. ¶¶ 88-89.  Other retailers that do not sell in Amazon's store—like Walmart, Target, Costco, and many other businesses—are not constrained by any Amazon pricing policy and can continue to compete for business by finding suppliers and setting their own prices at their stores.  And even if plaintiffs had alleged proper relevant antitrust markets, they have not argued that any barriers prevent existing or new retailers from expanding their output or entering to meet demand if prices on Amazon (and offered elsewhere by Amazon's third-party sellers) are above competitive levels.  *See Randy's Ring & Pinion Serv. Inc. v. Eaton Corp.*, 2009 WL 10727790, at *5 (W.D. Wash. Nov. 16, 2009) (dismissal for failure to plausibly allege foreclosure); *Feitelson v. Google, Inc.*, 80 F. Supp. 3d 1019, 1030 (N.D. Cal. 2015) (same).

## V.     The State Consumer Protection Claims Fail.

As residents of California and Virginia bringing suit against a Washington resident, the Named Plaintiffs can bring state consumer protection claims only under California and Washington state law.  (Plaintiffs allege no violation of Virginia state law.)  Because plaintiffs plead no unfair conduct apart from their Sherman Act claims, these state claims rise or fall on the disposition of the antitrust claims.  *See Seaside Inland Transp. v. Coastal Carriers LLC*, 2019 WL 4918747, at *8 (E.D. Wash. Oct. 4, 2019) (Washington CPA); *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (1999) (California UCL).  The claims each fail for the reasons explained above.

Plaintiffs also assert claims under the laws of states for which they lack a representative plaintiff.  "[A]ll claims based on [those states'] laws are subject to dismissal."  *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1163-64 (N.D. Cal. 2009); *see also In re Park W. Galleries, Inc. Mktg. & Sales Practices Litig.*, 2010 WL 2653253, at *9 (W.D. Wash. June 25, 2010) (granting motion to dismiss state law claims on the basis of standing); *Schertzer v. Bank of Am., N.A.*, 2020 WL 1046890, at *5 (S.D. Cal. Mar. 4, 2020) (permissible to "address the issue

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

of Article III standing at the pleading stage and dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products.").

In any event, Sabol, the California plaintiff, cannot recover damages under California's Unfair Competition Law, as restitution is the only form of monetary relief the UCL allows. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) ("damages cannot be recovered" under UCL). "Restitution under the UCL is only available where the sum at issue can 'clearly be traced to particular funds or property in the defendant's possession.'" *EchoStar Satellite Corp. v. NDS Grp. PLC*, 2008 WL 4596644, at *9 (C.D. Cal. Oct. 15, 2008) (quoting *Colgan v. Leatherman Tool Grp.*, 38 Cal. Rptr. 3d 36, 62 (Ct. App. 2006)). Here, the complaint negates Sabol's right to restitution from Amazon: he specifically disclaims "any claims relating in any way to any products or services sold or distributed by" or through Amazon. Compl. ¶ 34.

## VI.    The Unjust Enrichment Claims Fail.

Plaintiffs' "global" unjust enrichment claims are similarly deficient. *See In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1088 (S.D. Cal. 2017) ("As an initial matter, [plaintiffs] claim unjust enrichment generally, and do not list any particular jurisdiction to which the allegations should apply. This alone is fatal to CFPs' unjust enrichment claim."). Unjust enrichment claims are creatures of state law, and so the Named Plaintiffs' lack standing to bring claims under the laws of any states other than California and Virginia. *See In re Flash Memory*, 643 F. Supp. 2d at 1164 ("Where . . . a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal."). Under both California and Virginia law, plaintiffs must "show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (California law); *see In re Interior Molded Doors Antitrust Litig.*, 2019 WL 4478734, at *22 (E.D. Va. Sept. 18, 2019) (Virginia law, same). The Named Plaintiffs have not alleged facts satisfying those requirements. Their sole purported harm arises from Amazon's alleged violations of the antitrust laws, but there is no harm or inequity for the reasons discussed above. The Court should dismiss the unjust enrichment claims.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## CONCLUSION

For these reasons, the Court should grant the motion and dismiss plaintiffs' claims with prejudice.

DATED this 13th day of July, 2020.

Davis Wright Tremaine LLP
Attorneys for AMAZON.COM, INC.

s/ *Stephen M. Rummage*
Stephen M. Rummage, WSBA #11168
MaryAnn Almeida, WSBA #49086
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 757-8136
Fax: (206) 757-7136
E-mail: steverummage@dwt.com
E-mail: maryannalmeida@dwt.com


*s/ Doug Litvack*
Doug Litvack *(pro hac vice)*
1919 Pennsylvania Avenue, N.W., Suite 800
Washington D.C.  20006-3401
Telephone (202) 973-4200
Fax:  (202) 973-4499
E-mail:  Doug.Litvack.com

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2020, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to those

attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served

in accordance with the Federal Rules of Civil Procedure.

<u>*s/ Stephen M. Rummage*</u>
Stephen M. Rummage, WSBA #11168

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Ph:  (206) 622-3150
Fax:  (206) 757-7700
E-mail:  steverummage@dwt.com

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 24
4833-0111-3794v.1 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax