The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH FRAME-WILSON, CHRISTIAN
SABOL, SAMANTHIA RUSSELL, ARTHUR
SCHAREIN, LIONEL KEROS, NATHAN
CHANEY, CHRIS GULLEY, SHERYL
TAYLOR-HOLLY, ANTHONY COURTNEY,
DAVE WESTROPE, STACY DUTILL,
SARAH ARRINGTON, MARY ELLIOT,
HEATHER GEESEY, STEVE MORTILLARO,
CHAUNDA LEWIS, ADRIAN HENNEN,
GLENDA R. HILL, GAIL MURPHY,
PHYLLIS HUSTER, and GERRY
KOCHENDORFER, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

   v.

AMAZON.COM, INC., a Delaware corporation,

        Defendant.

No. 2:20-CV-00424-RAJ

AMAZON.COM, INC.'S
MOTION TO DISMISS FIRST
AMENDED COMPLAINT

***NOTE ON MOTION CALENDAR:***
November 6, 2020

***Oral Argument Requested***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 4

      A.    Amazon's Retail Store ................................................................. 4
      B.    Other Retailers That Compete with Amazon ............................ 4
      C.    Amazon's Efforts to Feature Competitive Prices ..................... 5
      D.    Plaintiffs ..................................................................................... 7

LEGAL STANDARD ........................................................................................................ 7

ARGUMENT ..................................................................................................................... 8

I.      PLAINTIFFS' SHERMAN ACT CLAIMS ALL FAIL FOR LACK OF
      ANTITRUST STANDING. .................................................................................. 8

II.     PLAINTIFFS FAIL TO STATE A SECTION 1 *PER SE* CLAIM. ............................ 10

      A.    There Is No Plausible Basis for the Alleged Horizontal Conspiracy or
            Agreement Among Two Million Third-Party Sellers. ........................ 10
      B.    The Facts Alleged Do Not Constitute *Per Se* Illegal Price-Fixing. .................. 11
      C.    Plaintiffs Challenge a Vertical Arrangement, to Which the *Per Se* Rule
            Does Not Apply. ..................................................................................... 12
      D.    Plaintiffs Concede There Are Procompetitive Justifications for Amazon's
            Policies, Another Reason the *Per Se* Rule Does Not Apply. .............................. 13
      E.    The Section 1 Claim Is Not Subject to a Quick Look Analysis ......................... 14

III.    PLAINTIFFS FAIL TO ALLEGE COGNIZABLE RELEVANT PRODUCT
      MARKETS, REQUIRING DISMISSAL OF THEIR SECTION 1 RULE OF
      REASON AND SECTION 2 CLAIMS. ................................................................ 14

      A.    The Alleged "Ecommerce Market" Unjustifiably Excludes Acknowledged
            Alternatives and Improperly Lumps Together Non-Competing Products. .......... 15
      B.    Plaintiffs' Alleged Submarkets Are Likewise Legally Deficient. ..................... 18

IV.    AMAZON'S POLICIES DO NOT CONSTITUTE ANTICOMPETITIVE
      CONDUCT, A NECESSARY ELEMENT OF A SECTION 2 CLAIM. ...................... 18

V.     PLAINTIFFS FAIL TO ALLEGE PLAUSIBLE ANTICOMPETITIVE HARM,
      A NECESSARY SHOWING FOR SECTION 1 RULE OF REASON AND
      SECTION 2 CLAIMS. ........................................................................................ 21

VI.    THE STATE LAW ANTITRUST AND CONSUMER PROTECTION CLAIMS
      FAIL. ................................................................................................................... 23

VII.   THE UNJUST ENRICHMENT CLAIM FAILS. ................................................... 24

CONCLUSION .................................................................................................................. 24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*Adams v. Target*,

5
    2014 WL 12558290 (C.D. Cal. Mar. 3, 2014)....................................................................24

6

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    948 F.2d 536 (9th Cir. 1991) ......................................................................................19

7

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,

8
    592 F.3d 991 (9th Cir. 2010) ......................................................................................19

9

*Ohio v. Am. Express Co.*,
    138 S. Ct. 2274 (2018)..........................................................................................10, 13

10

*Analogix Semiconductor Inc. v. Silicon Image Inc.*,

11
    2008 WL 8096149 (N.D. Cal. Oct. 28, 2008)............................................................14

12

*Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*,

13
    116 F. Supp. 2d 1159 (C.D. Cal. 2000) .......................................................................9

14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................8

15

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

16
    459 U.S. 519 (1983)......................................................................................................9

17

*AT&T Corp. v. JMC Telecom, LLC*,

18
    470 F.3d 525 (3d Cir. 2006)........................................................................................12

19

*In re ATM Fee Antitrust Litig.*,
    686 F.3d 741 (9th Cir. 2012) ........................................................................................9

20

*Barry v. Blue Cross of Cal.*,

21
    805 F.2d 866 (9th Cir. 1986) ......................................................................................11

22

*Bay Area Surgical Mgmt., LLC v. Aetna Life Ins. Co.*,

23
    2016 WL 3880989 (N.D. Cal. July 18, 2016)............................................................14

24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................7

25

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,

26
    182 F.3d 1096 (9th Cir. 1999) ....................................................................................18

27

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) - ii
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Blaylock v. First Am. Title Ins. Co.*,
  2008 WL 8741396 (W.D. Wash. Nov. 7, 2008) (Jones, J.)....................................8

*Blizzard Ent., Inc. v. Ceiling Fan Software LLC*,
  2013 WL 12143935 (C.D. Cal. Jan. 7, 2013) .......................................................17

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
  65 F.3d 1406 (7th Cir. 1995) .........................................................12, 14, 20

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
  985 F. Supp. 2d 612 (S.D.N.Y. 2013)..................................................................18

*Brantley v. NBC Universal, Inc.*,
  675 F.3d 1192 (9th Cir. 2012) ............................................................................22

*Costco Wholesale Corp. v. AU Optronics Corp.*,
  2014 WL 4540068 (W.D. Wash. Sept. 11, 2014)...............................................8, 9

*United States v. Ctr. for Diagnostic Imaging, Inc.*,
  2011 WL 13353774 (W.D. Wash. Apr. 25, 2011)...............................................13

*Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,
  612 F. Supp. 2d 330 (S.D.N.Y. 2009)..................................................................17

*Fed. Trade Comm'n v. Qualcomm Inc.*,
  2020 WL 4591476 (9th Cir. Aug. 11, 2020)................................10, 14, 19, 21

*Feitelson v. Google, Inc.*,
  80 F. Supp. 3d 1019 (N.D. Cal. 2015) ................................................................22

*In re Flash Memory Antitrust Litig.*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) ..............................................................24

*In re Flonase Antitrust Litig.*,
  692 F. Supp. 2d 524 (E.D. Pa. 2010) ..................................................................24

*Gen. Bus. Sys. v. N. Am. Philips Corp.*,
  699 F.2d 965 (9th Cir. 1983) ..............................................................................14

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
  433 F. App'x 598 (9th Cir. 2011) ..................................................................17, 18

*Gross v. New Balance Athletic Shoe, Inc.*,
  955 F. Supp. 242 (S.D.N.Y. 1997) ......................................................................10

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
  392 U.S. 481 (1968)...............................................................................................8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*California ex rel. Harris v. Safeway, Inc.*,
    651 F.3d 1118 (9th Cir. 2011) ...........................................................................14

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ..........................................................15, 16, 17, 18

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992)..............................................................................................9

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)..............................................................................................8

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
    125 F.3d 1195 (9th Cir. 1997) ...........................................................................19

*United States v. Joyce*,
    895 F.3d 673 (9th Cir. 2018) .............................................................................11

*Kartell v. Blue Shield of Mass. Inc.*,
    749 F.2d 922 (1st Cir. 1984) .............................................................................20

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .............................................................................8

*Kitsap Physicians Serv. v. Wash. Dental Serv.*,
    671 F. Supp. 1267 (W.D. Wash. 1987)..............................................................20

*Krehl v. Baskin-Robbins Ice Cream Co.*,
    664 F.2d 1348 (9th Cir. 1982) ...........................................................................12

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007)......................................................................................10, 13

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    275 F.3d 762 (9th Cir. 2001) .......................................................................15, 17

*M.A.P. Oil Co. v. Texaco Inc.*,
    691 F.2d 1303 (9th Cir. 1982) ...........................................................................18

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) .....................................................................11, 12

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
    472 U.S. 284 (1985)...........................................................................................10

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*,
    883 F.2d 1101 (1st Cir. 1989) .....................................................................14, 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Oliver v. American Express Co.*,
  2020 WL 2079510 (E.D.N.Y. Apr. 30, 2020) .......................................................... 9

*In re Optical Disk Drive Antitrust Litig.*,
  2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ........................................................ 11

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009) .......................................................................................... 19

*In re Packaged Seafood Prods. Antitrust Litig.*,
  242 F. Supp. 3d 1033 (S.D. Cal. 2017) ................................................................ 24

*In re Park W. Galleries, Inc. Mktg. & Sales Practices Litig.*,
  2010 WL 2653253 (W.D. Wash. June 25, 2010) .................................................... 24

*Penn. Ave. Funds v. Borey*,
  569 F. Supp. 2d 1126 (W.D. Wash. 2008) (Jones, J.) ..................................... 13, 14

*Pool Water Prods. v. Olin Corp.*,
  258 F.3d 1024 (9th Cir. 2001) ............................................................................. 8

*Prime Healthcare Servs. Inc. v. Serv. Emps. Int'l Union*,
  2012 WL 3778348 (S.D. Cal. Aug. 30, 2012) ................................................. 10, 22

*PSKS, Inc. v. Leegin Creative Leather Products*,
  615 F.3d 412 (5th Cir. 2010) .......................................................................... 17, 18

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997) ................................................................................ 18

*Randy's Ring & Pinion Serv. Inc. v. Eaton Corp.*,
  2009 WL 10727790 (W.D. Wash. Nov. 16, 2009) ................................................. 22

*Sambreel Holdings LLC v. Facebook, Inc.*,
  906 F. Supp. 2d 1070 (S.D. Cal. 2012) ................................................................ 21

*Seaside Inland Transp. v. Coastal Carriers LLC*,
  2019 WL 4918747 (E.D. Wash. Oct. 4, 2019) ...................................................... 23

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*,
  88 F.3d 780 (9th Cir. 1996) ................................................................... 8, 19, 20, 21

*Smith v. eBay Corp.*,
  2012 WL 27718 (N.D. Cal. Jan. 5, 2012) ............................................................. 15

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2012) .................................................................... 8, 13, 23

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) - v
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Tanaka v. Univ. of S. Cal.*,
    252 F.3d 1059 (9th Cir. 2001) ................................................15

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ...............................................................11

*Universal Grading Serv. v. eBay, Inc.*,
    2012 WL 70644 (N.D. Cal. Jan. 9, 2012) ...............................17

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ...............................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................7

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
    382 U.S. 172 (1965) ...............................................................15

**STATE CASES**

*Kunert v. Mission Fin. Servs.*,
    110 Cal. App. 4th 242 (2003) .................................................23

**STATUTES**

15 U.S.C. § 1 ............................................................... passim

15 U.S.C. § 2 ............................................................... passim

Cal. Bus. & Prof. Code §§ 16720, *et seq.* ...............................23

Ky. Rev. Stat. § 367.120, *et seq.* ...........................................24

Mass. Ann. Laws, Ch. 93A, *et seq.* ........................................24

Md. Code Ann., Com. Law § 11-204(b) ...................................23

**OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
    Principles and Their Application* (4th ed. 2020) ............................11, 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**INTRODUCTION**

Having a reputation for low prices—and in fact offering low prices—are fundamental business objectives for Amazon, which prides itself on being Earth's most customer-centric company.  Within the intensely competitive retail environment, customers shop around until they find the best deal.  Even a single bad experience in Amazon's store—such as paying an uncompetitive price for a product—can damage customer trust, which is essential to success in retail and can be easily lost.  The gravamen of plaintiffs' amended complaint ("complaint") is that Amazon's policies encouraging low prices in its stores somehow constitute an antitrust violation.  This proposition—that Amazon should not be allowed to encourage low prices from the third-party sellers in its store by featuring only competitively priced products—defies common sense and the fundamental dynamic of retail competition.  Unsurprisingly, in light of that common-sense conclusion, it also contradicts the letter and purpose of the antitrust laws, which protect the very type of competition in which plaintiffs allege Amazon is engaging.

Plaintiffs' position has equally egregious practical implications: it would inject court oversight into routine business decisions made not only by Amazon, but by thousands of retailers every day.  Like every retailer, Amazon must choose how to organize its store to make it attractive to customers.  Just as a physical retailer makes a wide range of choices about how to present its products in a way that provides the best value to customers—such as giving certain products prominent placement at the front of the store or the end of an aisle—Amazon must make decisions about which offers to feature on its website.  As the complaint explains, Amazon takes the approach of highlighting only competitively priced products, thereby encouraging competitive prices.  Amazon's approach is not unique; it is a reasonable one that allows it to compete effectively.  Plaintiffs' complaint would make the Court the arbiter of these policies and a regulator of the criteria and circumstances under which Amazon and every other retailer may highlight or feature a product.  The antitrust laws countenance no such detailed regulation of the ordinary business decisions retailers make in their efforts to attract and retain customers.

As the complaint makes clear, retail remains dynamic and robustly competitive, with low

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 1
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  prices that benefit consumers and result in low margins for retailers across the industry. The

2  Amazon policies as alleged in the complaint advance this competition. Policies that encourage

3  low prices in the hyper-competitive retail segment—and thereby benefit customers—are

4  precisely the type of activity the antitrust laws promote, not condemn. As the complaint admits,

5  consumers have many retail options, online, in brick-and-mortar stores, and in new, hybrid

6  combinations like order online and pick up in store. Sellers continue to have many options to

7  reach consumers, and successfully use channels other than Amazon's store. They need not sell

8  in Amazon's store if they disagree with Amazon's low-price approach. The antitrust laws do not

9  prohibit Amazon's procompetitive policies or, as plaintiffs would have it, require a retailer to

10 feature products that are not competitively priced or could cause a bad customer experience. For

11 these reasons, as well as other defects in plaintiffs' complaint, the Court should dismiss this case.

12      *First*, plaintiffs lack antitrust standing. They seek to represent classes of unprecedented

13 and inconceivable scope, purportedly covering purchasers of 600 million products sold by more

14 than two million online sellers. But no plaintiff asserts a claim based on purchases from

15 Amazon. Plaintiffs instead allege only that Amazon's policies affected the prices for alleged

16 "Class Products" that they purchased from *other* retailers. Plaintiffs' theory of injury based on

17 purchases from retailers other than Amazon is too attenuated as a matter of law, and violates the

18 bright-line rule that plaintiffs must be direct purchasers in order to have standing to recover

19 damages under the federal antitrust laws.

20      *Second*, plaintiffs' Section 1 *per se* claim fails because courts reserve *per se* treatment

21 only for certain categories of conduct between horizontal competitors, which is not what

22 plaintiffs allege. Plaintiffs claim—illogically and implausibly—that Amazon, which operates a

23 store, and two million third-party sellers entered into horizontal agreements among each other.

24 But the complaint describes only *vertical* arrangements between Amazon as a retail store

25 operator and third-party sellers, who sell goods to consumers and purchase services from

26 Amazon, such as marketing and product fulfillment, to help facilitate those sales—firms standing

27 at different levels of distribution. The fact that the conduct alleged is beneficial on its face—it

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 2
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

secures competitive prices for Amazon customers—also independently bars *per se* treatment.

*Third*, plaintiffs' Section 1 rule of reason and Section 2 claims fail because plaintiffs do not properly define relevant antitrust markets, a prerequisite for these claims.  Plaintiffs ignore the everyday reality that Amazon competes most heavily with brick-and-mortar stores, where almost 90 percent of all retail sales occur—rendering the alleged online-only "ecommerce" market implausibly narrow.  At the same time, the undifferentiated "ecommerce" market with 600 million different products is implausibly overbroad because plaintiffs do not, and cannot, allege that 600 million products are substitutes for one another.  Their alleged "submarkets" suffer from the same defects:  a "home improvement tools" submarket assumes consumers see paint brushes as interchangeable with wrenches, but do not view a cordless drill purchased online as interchangeable with one purchased in a physical store.  This is not how consumers shop.

*Fourth*, plaintiffs' Section 2 claims fail because they do not allege anticompetitive, exclusionary conduct.  Courts have invariably rejected Section 2 claims such as this one, where the only conduct at issue is an alleged requirement that the defendant or its customers be treated no worse than other purchasers, because that conduct is legitimate and procompetitive—not exclusionary.  Under controlling Ninth Circuit precedent, a Section 2 claim cannot proceed where an antitrust defendant's conduct has legitimate procompetitive business justifications.

*Fifth*, plaintiffs' Section 1 rule of reason and Section 2 claims fail because the complaint does not allege plausible anticompetitive harm.  Plaintiffs describe a retail industry in which retailers "compete on price largely by matching or coming close to the lowest ecommerce market prices."  First Am. Compl. ("FAC") ¶ 101.  This and similar allegations demonstrate that Amazon's conduct leads to matching of *lower* prices for customers, not higher prices.  Regardless of Amazon's policies, within the robustly competitive retail industry, the complaint shows that sellers and retailers of all varieties can and will continue to compete vigorously on price, quality, convenience, and other factors.  Amazon's policies function only to enhance retail competition, driving better outcomes and lower prices for consumers.

*Finally*, plaintiffs' state law claims are derivative of their federal antitrust claims and fail

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

for the same reasons, among others.

## BACKGROUND

### A.    Amazon's Retail Store

Amazon operates a retail store in which it sells products directly to consumers.  FAC ¶ 2.  More than twenty years ago, Amazon invited independent, third-party sellers to sell in its store.  *Id.*  By opening its store to third-party sellers, most of whom are small- and medium-sized businesses, Amazon increased competition in the retail space.  Amazon's significant investment in tools and services for third-party sellers has fueled their sales in Amazon's store, which have grown at a 52% compound annual rate between 1999 and 2018, over double the rate of Amazon's own first-party retail business.  Amazon.com, Inc., 2018 Letter to Shareholders (Form 8-K, Ex. 99.1) (Apr. 11, 2019) (cited at FAC ¶ 8, n.27).  Fulfillment by Amazon ("FBA") is one significant investment Amazon has made to help third-party sellers compete against millions of retailers selling their wares through other online and physical stores.  FBA is an optional program in which Amazon will "store, pick, pack, ship orders, and manage customer service and returns" for third-party sellers.  FAC ¶ 74.  Third-party sellers' costs to use FBA are often lower than if the seller itself performed these services; as one third-party seller explained, "although I have to pay more fees as an Amazon FBA seller, ultimately it would end up costing me more to pack and ship my own products" without FBA.  David Hamrick, *Amazon FBA Fees: How They Work and How to Profit as a Seller*, JungleScout (Feb. 7, 2020) (cited at FAC ¶ 74 n.77).

### B.    Other Retailers That Compete with Amazon

The retail landscape is fiercely competitive, and third-party sellers have many attractive options other than Amazon through which to make sales.  Most third-party sellers in Amazon's store "sell their products on other online retail websites that compete with" Amazon, such as Walmart (FAC ¶ 10), eBay (*id.* ¶¶ 10, 34), Target (*id.* ¶ 90), Newegg (*id.* ¶ 10), and Shopify (*id.*), as well as on "their own websites" (*id.*).  The number of third-party sellers in Walmart's online store, for example, increased by more than fifty percent between 2018 and 2019, and sixty percent of Amazon consumers also shop in Walmart's stores.  Tara Johnson, *Why Walmart is the*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Next Blue Ocean Opportunity for Ecommerce Marketers*, Tinuiti (May 13, 2020) (cited at FAC ¶ 16 n.38).  And the sales channels and services available to third-party sellers continue to grow.  "[L]ower transaction costs and production costs also facilitate easier entry into the market and increase competition," FAC ¶ 142, and other retailers and channels are launching services similar to the innovative tools Amazon developed for third-party sellers.  For example, Walmart launched a fulfillment service similar to FBA for its third-party sellers.  *Id.* ¶ 14.

Likewise, Amazon and its third-party sellers compete with many different household retailers—retailers where plaintiffs admittedly shop—like Best Buy, Costco, Home Depot, QVC, CVS, Kohl's, and Kroger, among others.  *Id.* ¶¶ 48, 49, 52, 58, 59, 61.  These household names have more ways to reach consumers than ever before.  The same products that are offered online are also offered in brick-and-mortar stores.  As of 2019, nearly 90 percent of retail sales remained in physical stores.  FAC ¶ 8, n.27.  At the same time, traditional retailers are creating hybrid options for reaching consumers, including many plaintiffs, who ordered products online but then picked them up in a physical store.  *Id.* ¶¶ 48, 62; *see also id.* ¶ 146 n.249 (citing article explaining Target's efforts to "marry the in-store and digital experiences").

It is imperative for retailers of any stripe to offer competitive prices in the dynamic, intensely competitive retail segment where consumers have many choices.  "[R]etailers have engaged in intense item-by-item and per unit price competition in recent years."  *Id.* ¶ 99.  And because consumers are savvier than ever—as plaintiffs put it, competing offers are "just a few clicks away" (*id.* ¶ 142)—retailers are "likely to match the lowest online prices, regardless of the seller."  *Id.* ¶ 39.  This is the case regardless of store format and holds true for retailers with physical stores, including Home Depot and JOANN, which offer price-match guarantees.  *Id.*

## C. Amazon's Efforts to Feature Competitive Prices

In this highly dynamic retail environment, Amazon competes to win customers by building a reputation for offering the best prices.  To do this, Amazon assists customers in selecting the best offer among competing sellers of identical goods with a tool called the "Featured Offer" (sometimes referred to as the "Buy Box"), which features the best offer and

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 5
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

includes "Add to Cart" and "Buy Now" buttons.  FAC ¶ 87.  Plaintiffs allege that whether
Amazon selects an offer to be featured in the Buy Box "depends on a number of factors,
including the seller's reputation, price, efficiency, and whether the seller is selling its product for
a lower price" elsewhere.  *Id*. ¶ 88.  The opportunity to be featured in the Buy Box encourages
sellers to offer their best prices and service to Amazon customers.  *Id*. ¶¶ 87, 88.  Offers not
featured in the Buy Box remain available in Amazon's store for purchase by clicking on the
"Other Sellers on Amazon" box, found on a product's detail page.  *Id*. ¶ 87.

The complaint focuses on two Amazon policies relating to offers featured in the Buy
Box.  First, Amazon maintains a "fair pricing" policy, published on its website.  *Id*. ¶ 6.  The
policy explains: "In our mission to be Earth's most customer-centric company, Amazon strives
to provide our customers with the largest selection at the lowest price, and with the fastest
delivery," and "sellers play an important role" in meeting those goals.  *Amazon Marketplace Fair
Pricing Policy*, Amazon.com (cited at FAC ¶ 6 n.19, incorporating policy), *available at*
https://sellercentral.amazon.com/gp/help/external/G5TUVJKZHUVMN77V?language=en_US&r
f=efph_G5TUVJKZHUVMN77V_cont_521.  The policy states, "Sellers are responsible for
setting their own prices on Amazon marketplaces."  *Id*.  The policy also states that if Amazon
sees "pricing practices on a marketplace offer that harms customer trust," it may remove the
offer from the Buy Box, remove the offer from Amazon's store, or, "in serious or repeated
cases," suspend or terminate selling privileges in its store.  *Id*.  Pricing practices that harm
customer trust include "[s]etting a price on a product or service that is *significantly higher* than
recent prices offered on or off Amazon."  *Id*. (emphasis added).  To help ensure its customers
find the best price, the policy says Amazon monitors prices in its store and "compares them with
other prices available to our customers."  *Id*.

Second, until March 2019, any third-party seller offering products in Amazon's store
allegedly had to show Amazon shoppers a price that was at least as favorable as the seller's
lowest price on "other retail channels," such as eBay, Walmart, or its own website.  FAC
¶ 5.  Plaintiffs call this the "price parity provision."  *Id*.  Amazon ended the policy more than a

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 6
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

year ago, in March 2019.  *Id.*  Despite the differences between the fair pricing policy and the price parity provision, plaintiffs allege the policies have "the same impact."  *Id.* ¶ 106.

### D.    Plaintiffs

Plaintiffs are a group of consumers who shop for retail products, ranging from lighters to tomato seeds to robot vacuums, from many different retailers.  FAC ¶¶ 46-67.  While they all shop in Amazon's store, none is making any claim related to purchases through Amazon; rather, their claims are based on purchases from other retailers—and overwhelmingly retailers not bound by any contract with Amazon.  For example, plaintiff Deborah Frame-Wilson predicates her claims on a DVD she purchased from Walmart, *id.* ¶ 46, and plaintiff Lionel Keros predicates his claims on his purchase of tomato seeds from a third-party selling on eBay, *id.* ¶ 50.

Plaintiffs seek to represent a national class of untold millions of consumers—possibly the largest class action in history (*cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 342 (2011) (describing proposed class of "about one and a half million plaintiffs" as "one of the most expansive class actions ever"))—who purchased any of 600 million products through any retail ecommerce channel in the United States other than Amazon that was "concurrently offered for sale by Amazon's third-party sellers on the Amazon.com platform," as well as state-law classes for 38 states.  FAC ¶¶ 157, 171, 184, 198, 208, 225.  As defined, the classes expressly exclude customers who purchased only from Amazon and include purchasers from entities not bound by any contract with Amazon.  For example, a purchaser using Walmart's website to buy a product from Walmart would be part of the purported class so long as at least a single third-party seller was "concurrently" selling the same product in Amazon's store—even though Amazon's alleged policies place no constraint on Walmart's retail pricing.

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Dismissal for failure to state a claim is appropriate

2    where the complaint states no set of facts which, if true, would constitute an antitrust offense,

3    notwithstanding its conclusory language regarding the elimination of competition and improper

4    purpose."  *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir.

5    1996) (citation omitted).  Antitrust cases that fail these standards are especially suitable for

6    dismissal "because discovery in antitrust cases frequently causes substantial expenditures and

7    gives the plaintiff the opportunity to extort large settlements even where he does not have much

8    of a case."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

9                                             **ARGUMENT**

10   **I.     Plaintiffs' Sherman Act Claims All Fail for Lack of Antitrust Standing.**

11              Despite amendment, plaintiffs still fail to allege facts demonstrating that they have

12   antitrust standing.  Plaintiffs' Sherman Act claims must be dismissed.  *See Pool Water Prods. v.*

13   *Olin Corp.*, 258 F.3d 1024, 1033 (9th Cir. 2001) (affirming dismissal of Section 1 and 2 claims

14   for lack of antitrust standing); *Blaylock v. First Am. Title Ins. Co.*, 2008 WL 8741396, at *1 n.1

15   (W.D. Wash. Nov. 7, 2008) (Jones, J.) (dismissal on standing "resolves only questions of law").

16              The fact that each plaintiff explicitly disclaims any injury based on purchases from

17   Amazon's store establishes the absence of antitrust standing.  *See* FAC ¶ 172 (plaintiffs are "not

18   making any claims against Defendant relating in any way to any products or services sold or

19   distributed by Defendant or through the Amazon.com platform").  Only consumers who purchase

20   products directly from a defendant have standing to sue under Sections 1 and 2 of the Sherman

21   Act.  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 732-35 (1977) (§ 1); *Hanover Shoe, Inc. v.*

22   *United Shoe Mach. Corp.*, 392 U.S. 481, 492 (1968) (§ 2).  As this Court recognized in *Costco*

23   *Wholesale Corp. v. AU Optronics Corp.*, 2014 WL 4540068, at *2 (W.D. Wash. Sept. 11, 2014),

24   "*Illinois Brick* generally confers statutory standing to recover for antitrust injuries only on

25   plaintiffs who purchase products *directly from a defendant* who violates the antitrust laws."

26   (Emphasis added.)  *See also Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2012) ("[T]he

27   party alleging the injury must be either a consumer of the alleged violator's goods or services or

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

a competitor of the alleged violator in the restrained market." (quoting *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1008 (9th Cir. 2002))). The direct purchaser requirement is a "bright line rule" applicable to Section 1 and 2 claims, with only limited defined exceptions. *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 748 (9th Cir. 2012).

Plaintiffs' claims violate the direct purchaser rule and the longstanding principle that the antitrust laws do not afford a remedy to those injured only indirectly. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 541 (1983). Plaintiffs' alleged harms are indirect and remote, arising from purchases made using "a retail ecommerce channel other than . . . Amazon." FAC ¶ 34. "[A] plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268-69 (1992); *see also AGC*, 459 U.S. at 541. If customers who buy outside the Amazon store are allowed to sue Amazon for purchases they made from other non-party retailers or sellers—who make independent pricing, supplier, and cost decisions—there would be no stopping point for antitrust liability, nor anything left of the direct purchaser rule.

For these reasons, courts, including this one, have applied *AGC* and *Illinois Brick* and found no antitrust standing as a matter of law when based on similarly indirect alleged injuries. In *Oliver v. American Express Co.*, 2020 WL 2079510, at *9 (E.D.N.Y. Apr. 30, 2020), for example, the court applied *AGC* and dismissed a Section 1 claim brought by consumers who alleged Amex's anti-steering rules allowed Mastercard, Visa, or Discover to charge higher fees, in turn causing consumers to pay higher prices for all goods purchased with non-Amex credit cards. The court's reasoning—that the plaintiffs' theory wrongly relied on independent pricing actions of non-parties—applies equally here. *Id.* at *10; *see also Costco*, 2014 WL 4723880, at *3-4 (plaintiff lacked standing as to purchases from non-conspiring third parties given "serious concern" that those pricing decisions were too remote from alleged conspiracy); *Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159, 1167-70 (C.D. Cal. 2000) (no antitrust standing where plaintiff alleged losses due to paying higher prices to a "non-

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 9
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   conspirator, non-defendant"); *Gross v. New Balance Athletic Shoe, Inc.*, 955 F. Supp. 242, 247

2   (S.D.N.Y. 1997) (rejecting antitrust standing where alleged injury was affected by "independent

3   pricing decisions of non-conspiring retailers").

4   **II.     Plaintiffs Fail to State a Section 1 *Per Se* Claim.**

5          Courts have identified a narrow category of Section 1 agreements with no "redeeming

6   virtue," *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 289

7   (1985) (citation omitted), including naked agreements "among competitors to fix prices," *Leegin*

8   *Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007).  These are unlawful *per*

9   *se*, that is, unlawful without the need to prove anticompetitive effects in a defined market.  *Ohio*

10  *v. Am. Express Co.*, 138 S. Ct. 2274, 2283-84 (2018).  All other agreements "are judged under

11  the rule of reason," which requires an "assessment of market power and market structure . . . to

12  assess the [restraint]'s actual effect on competition."  *Id.* at 2284 (citation omitted).  "Whether a

13  plaintiff's alleged facts comprise a per se claim is normally a question of legal characterization

14  that can often be resolved by the judge on a motion to dismiss."  *Prime Healthcare Servs. Inc. v.*

15  *Serv. Emps. Int'l Union*, 2012 WL 3778348, at *6 (S.D. Cal. Aug. 30, 2012) (quoting *Stop &*

16  *Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 61 (1st Cir. 2004)).  The

17  agreements alleged here do not fit the narrow category the case law condemns as possessing no

18  redeeming virtue.  "Furthermore, novel business practices—*especially* in technology markets—

19  should not be 'conclusively presumed to be unreasonable and therefore illegal without elaborate

20  inquiry as to the precise harm they have caused or the business excuse for their use.'"  *Fed.*

21  *Trade Comm'n v. Qualcomm Inc.*, 2020 WL 4591476, at *9 (9th Cir. Aug. 11, 2020) (emphasis

22  in original) (quoting *United States v. Microsoft Corp.,* 253 F.3d 34, 91 (D.C. Cir. 2001)).

23         **A.     There Is No Plausible Basis for the Alleged Horizontal Conspiracy or**
24                  **Agreement Among Two Million Third-Party Sellers.**

25         Plaintiffs allege that Amazon and its two million third-party sellers entered into

26  horizontal agreements among each other "concerning the price they were allowed to sell their

27  products in the United States," and that "[t]his combination is *per se* unlawful price-fixing."

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

FAC ¶ 179.  But if that were so, each of the two million third-party sellers who are parties to this alleged *per se* illegal conspiracy would have had to agree not only with Amazon to follow its policies, but also with *one another* to follow those policies, *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1192 (9th Cir. 2015), subjecting them to joint and several liability.  15 U.S.C. § 1; *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981).  It is implausible that two million third-party sellers entered into such agreements with each other. *E.g., Barry v. Blue Cross of Cal.*, 805 F.2d 866, 869 (9th Cir. 1986) (holding alleged conspiracy among at least 20,000 people made conspiracy unlikely); *In re Optical Disk Drive Antitrust Litig.*, 2011 WL 3894376, at *6-7 (N.D. Cal. Aug. 3, 2011) (alleged price-fixing conspiracy was implausible because it required "the cooperation of an untold number of additional entities who have the power to set prices for the products in dispute").  Plaintiffs have not stated a *per se* claim based on this implausible assertion.

### B.      The Facts Alleged Do Not Constitute *Per Se* Illegal Price-Fixing.

*Per se* price-fixing requires an agreement among competitors not to compete on the price (or output, quality, or customers) of competing goods or services.  *See United States v. Joyce*, 895 F.3d 673, 677 (9th Cir. 2018) (describing price-fixing); Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 2004a (4th ed. 2020) ("Areeda & Hovenkamp, *Antitrust Law*").  The allegation that Amazon sells products to consumers as a retailer, while also providing services to third-party sellers, does not bring the challenged policies within the scope of any *per se* rule.  It is common for a business to carry out some function—say, retail distribution—partly on its own and partly by contracting with third parties.  For example, Apple sells electronics in its own stores and through electronics retailers like Best Buy and service providers like T-Mobile; Costco sells name-brand products at retail that compete with "Kirkland" house-brand products.  Like the vertical arrangements alleged in this case, such "dual distributor" arrangements "are generally not *per se* violations of the Sherman Act, even where a distributor and manufacturer also compete at the distribution level."  *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006); *see also Krehl v.*

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 11
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1354-57 (9th Cir. 1982) (rejecting application of *per se* rule to horizontal market allocation agreement between franchisor, which also sold through its own outlets, and franchisees).  The vertical relationship between Amazon and third-party sellers as it relates to the policies at issue is clear because if Amazon itself never sold another item in its stores, these policies would still apply to third-party sellers.  Nothing in the complaint suggests the challenged policies tie third-party sellers' prices in any way to the prices Amazon itself charges as a seller in its store.

Amazon's policies relate only to its decision as to which products of third-party sellers it will feature in its store, i.e., *competitively* priced products.  Plaintiffs concede "Amazon's outside competitors compete on price largely by matching or coming close to *the lowest ecommerce market prices*."  FAC ¶ 101 (emphasis added); *see also id.* ¶ 99 ("U.S. ecommerce retailers have engaged in intense item-by-item and per unit price competition in recent years.").  Under the former "price parity" policy, all a seller allegedly could not do was charge higher prices that the seller unilaterally sets in Amazon's stores than it charged elsewhere.  *Id.* ¶ 5.  Ensuring that the products offered in its store are competitively priced is "the sort of conduct that the antitrust laws seek to encourage.  It is not price-fixing."  *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995).

### C.   Plaintiffs Challenge a Vertical Arrangement, to Which the *Per Se* Rule Does Not Apply.

The relationship between Amazon, as operator of Amazon's store, and third-party sellers is a vertical arrangement because it involves different levels of the supply chain.  *In re Musical Instruments*, 798 F.3d at 1191-92.  Plaintiffs' allegations confirm the vertical nature of the arrangement.  Amazon provides services to third-party sellers that enable those sellers to reach customers.  FAC ¶ 2 ("third-party sellers and their customers . . . depend on the [Amazon] platform to intermediate between them").  Third-party sellers source goods and set prices for those goods.  For a fee, Amazon displays those offers to customers in its store, handles point-of-sale logistics, and facilitates purchasing (and may offer additional services to third-party sellers

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    as well).  *Id.* ¶ 74.  The challenged policies allegedly "establish[] rules" for how third-party

2    sellers price their goods in the Amazon store.  *Id*. ¶ 4.  The complaint even admits that the

3    "policies" are directed, imposed, and enforced by Amazon on third-party sellers—allegations of

4    a vertical relationship.  *Id*. ¶¶ 39, 68 ("Amazon contractually obligates its third-party sellers");

5    *Id*. § V.A.2 ("Amazon's pricing policies"); *Id*. § V.A.3 ("Amazon's price restraint"); *Id.* ¶¶ 82,

6    85, 91 (Amazon's response if a third-party seller offers a product for less on another website).

7         Vertical arrangements are subject to a rule of reason analysis, not *per se* liability.  *Am.*

8    *Express,* 138 S. Ct. at 2284; *Leegin Creative Leather Prods.*, 551 U.S. at 889-92.

9         **D.      Plaintiffs Concede There Are Procompetitive Justifications for Amazon's**
         **Policies, Another Reason the *Per Se* Rule Does Not Apply.**

10        As this Court has recognized:  "So long as there are 'plausible arguments that a practice

11   enhances overall efficiency and makes markets more competitive,' application of the *per se* rule

12   is not appropriate."  *Penn. Ave. Funds v. Borey*, 569 F. Supp. 2d 1126, 1132 (W.D. Wash. 2008)

13   (Jones, J.) (quoting *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir.

14   2003)).  Plaintiffs allege the policies' purposes are to ensure that Amazon customers are

15   provided "the largest selection at the lowest price, and with the fastest delivery," and to preserve

16   "customer trust."  FAC ¶ 6 n.19.  Plaintiffs also allege that other retailers, such as Walmart, have

17   lowered prices in response to third-party sellers' pricing in compliance with Amazon's policies**,**

18   showing that the policies enhance price competition among retailers.  FAC ¶ 100 (describing

19   "price war" triggered by Amazon third-party seller, which lowered price of dog food by 33%).

20   The pleaded facts therefore flatly contradict plaintiffs' legal conclusion that *per se* treatment

21   applies, and the Court should disregard the conclusion as implausible.  *Somers*, 729 F.3d at 964

22   (general allegations that Apple's software updates were anticompetitive and increased prices

23   were rendered "implausible in the face of contradictory market facts alleged"); *United States v.*

24   *Ctr. for Diagnostic Imaging, Inc*., 2011 WL 13353774, at *1 (W.D. Wash. Apr. 25, 2011).

25        The fair pricing policy embodies Amazon's decision to give "Featured Offer" status only

26   to competitively priced products, and the "price parity" policy resembles so-called "most favored

27

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 13
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    nation" clauses—"standard devices by which buyers try to bargain for low prices," a

2    procompetitive purpose.  *Blue Cross & Blue Shield United of Wis.*, 65 F.3d at 1415.  Policies like

3    these have never been held unlawful, much less *per se* unlawful.  *See id.*; *Ocean State Physicians*

4    *Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*, 883 F.2d 1101, 1110 (1st Cir. 1989).

5         **E.    The Section 1 Claim Is Not Subject to a Quick Look Analysis.**

6         Plaintiffs' Section 1 claim does not warrant "quick look" analysis, FAC ¶ 191, a

7    truncated rule-of-reason analysis applied only where "an observer with even a rudimentary

8    understanding of economics could conclude that the arrangements in question would have an

9    anticompetitive effect on customers and markets."  *California ex rel. Harris v. Safeway, Inc.*, 651

10   F.3d 1118, 1134 (9th Cir. 2011) (citation omitted).  Courts dismiss Section 1 claims invoking a

11   "quick look" analysis where plaintiffs "have not explained" how the challenged conduct "has no

12   plausible procompetitive effects."  *Bay Area Surgical Mgmt., LLC v. Aetna Life Ins. Co.*, 2016

13   WL 3880989, at *13 (N.D. Cal. July 18, 2016).  Here, plaintiffs actually *plead* the policies'

14   procompetitive effects, negating any claim of illegality based on a quick look.

15   **III.   Plaintiffs Fail to Allege Cognizable Relevant Product Markets, Requiring Dismissal**
16          **of Their Section 1 Rule of Reason and Section 2 Claims.**

17        Plaintiffs fail to allege the most basic element of an antitrust claim:  a proper relevant

18   market in which to evaluate Amazon's conduct.  "A proper definition of the relevant market is

19   required for a successful claim under either Section 1 [rule of reason] or Section 2 of the

20   Sherman Act."  *Analogix Semiconductor Inc. v. Silicon Image Inc.*, 2008 WL 8096149, at *7

21   (N.D. Cal. Oct. 28, 2008).  The "threshold" for establishing harm to competition and monopoly

22   power is defining "the relevant market."  *Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965,

23   972 (9th Cir. 1983); *see also Qualcomm*, 2020 WL 4591476, at *10 ("A threshold step in any

24   antitrust case is to accurately define the relevant market, which refers to 'the area of effective

25   competition.'" (quoting *American Express*, 138 S. Ct. at 2285)).  Without that definition, "there

26   is no way to measure [the defendant's] ability to lessen or destroy competition."  *Walker Process*

27

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 14
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   *Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965) (§ 2); *see also Tanaka v.*

2   *Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) (§ 1).

3         A relevant product market hinges "on a determination of those products to which

4   consumers will turn, given reasonable variations in price." *Lucas Auto. Eng'g, Inc. v.*

5   *Bridgestone/Firestone, Inc.*, 275 F.3d 762, 767 (9th Cir. 2001).  This analysis ensures that the

6   relevant market "encompasses the group or groups of sellers or producers who have actual or

7   potential ability to deprive each other of significant levels of business." *Hicks v. PGA Tour, Inc.*,

8   897 F.3d 1109, 1120 (9th Cir. 2018) (citation omitted).  Relevant market allegations fail on a

9   motion to dismiss where the "proposed product markets are facially unsustainable because they

10  fail to include many reasonably interchangeable products" or because they include many

11  products that are not reasonably interchangeable from a consumer's point of view.  *Id.* at 1123;

12  *see also Smith v. eBay Corp.*, 2012 WL 27718, at *7 (N.D. Cal. Jan. 5, 2012) (dismissal required

13  where plaintiff fails to define the "relevant market with reference to the rule of reasonable

14  interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that

15  clearly does not encompass all interchangeable substitute products" (citation omitted)).

16      **A.    The Alleged "Ecommerce Market" Unjustifiably Excludes Acknowledged**
           **Alternatives and Improperly Lumps Together Non-Competing Products.**
17

18        The purported "U.S. retail ecommerce market" is fatally under- and over-inclusive.  It is

19  under-inclusive because it illogically and implausibly fails to include retail products available in

20  physical stores, which are clearly interchangeable with products a consumer can buy online.  As

21  the complaint acknowledges, products sold online compete with products sold in physical stores,

22  with nearly 90% of retail sales occurring in physical stores.  FAC ¶ 8, n.27.  Plaintiffs' complaint

23  is full of documents, incorporated by reference, demonstrating the substitutability between

24  products offered both online and in physical retail stores.  *Amazon Now Has Nearly 50% of US*

25  *Ecommerce Market*, eMarketer (July 16, 2018) (cited at FAC ¶ 2 n.3) ("Share of online sales in

26  [the grocery] category is low because most people, for a host of reasons, prefer to buy food in

27  brick-and-mortar stores.").  Retailers know that "offering a better deal in-store . . . can drive

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

traffic to brick-and-mortar stores, and creates an opportunity to engage with customers in a more meaningful way."  Jia Wertz, *How Brick-and-Mortar Stores Can Compete with E-Commerce Giants*, Forbes (May 17, 2018) (cited at FAC ¶ 146 n.248).  "BestBuy takes advantage of this strategy and implemented it to combat e-commerce competition by matching prices in store with their e-commerce counterparts."  *Id.*; *see also* FAC ¶ 39 n.64 (price-matching policies of major retailers for products available online and in physical stores).

Shopping online or in a brick-and-mortar store is not a binary choice.  "[N]owadays many purchases involve both digital and physical browsing of goods—often a purchase begins with online research followed by a visit to the store to make a purchase, or conversely a purchase may start with a customer examining the product in-store but making the purchase online."  Susan Ward, *Brick and Mortar Stores vs Online Retail Sites*, The Balance SMB (June 25, 2019) (cited at FAC ¶ 148 n.258).  Retailers therefore "sync" their "efforts online and in-store."  FAC ¶ 146 n.248.  Plaintiffs' own purchases demonstrate these common-sense realities:  Ms. Frame-Wilson ordered a DVD online from Walmart "for in-store pick-up," *id.* ¶ 46, and Mr. Hennen ordered a hard drive online from Best Buy "for in-store pick-up," *id*. ¶  62.

In an effort to plead their way around these common-sense conclusions and support their unprecedented market definition, plaintiffs emphasize differences in customer and retailer experiences for online and brick-and-mortar retail.  FAC ¶¶ 140-49.  They do not, however, connect any of these alleged differences to consumers' shopping behavior, as the market definition exercise requires.  Nor could plaintiffs plausibly do so; that would defy the everyday realities of how we shop and how retailers compete.  "[J]udicial experience and common sense" lead to the conclusion that consumers would turn to a physical retailer to purchase a DVD or a hard drive if the price for that product from an online retailer were too high.  *Hicks*, 897 F.3d at 1121 (quoting *Iqbal*, 556 U.S. at 679) (affirming dismissal where plaintiff's relevant market "omit[ted] many economic substitutes").  And an online retailer can price its DVDs or hard drives to "deprive" a physical retailer of "significant levels of business" in the same products.  *Hicks*, 897 F.3d at 1120; *see also Lucas Auto. Eng'g*, 275 F.3d at 767 ("Where an increase in the

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 16
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

price of one product leads to an increase in demand for another, both products should be included in the relevant product market." (citation omitted)); *PSKS, Inc. v. Leegin Creative Leather Products*, 615 F.3d 412, 418 (5th Cir. 2010) (affirming grant of motion to dismiss where market focused on "independent retailers" and plaintiff had not "alleged facts that could establish why independent retailers do not compete with larger chain stores").

At the same time, plaintiffs' purported "U.S. retail ecommerce market," FAC ¶ 200, is of unprecedented magnitude and fatally overbroad.  It allegedly includes "approximately 600 million" different products, *id.* ¶ 33, available from at least "two million" different sellers, *id.* ¶ 154, but plaintiffs do not (and cannot) allege these products are substitutes for each other.  "The products alleged in a relevant market must be 'reasonably interchangeable by consumers for the *same purposes*.'"  *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 598-99 (9th Cir. 2011) (emphasis in original) (quoting *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)); *Universal Grading Serv. v. eBay, Inc.*, 2012 WL 70644, at *7 (N.D. Cal. Jan. 9, 2012); *Blizzard Ent., Inc. v. Ceiling Fan Software LLC*, 2013 WL 12143935, at *3 (C.D. Cal. Jan. 7, 2013).  Consumers would not switch from frying pans to coffee makers given variations in price, for example, because a coffee maker cannot be used for the same purposes as a frying pan.  Plaintiffs' "uncritical aggregation" of 600 million distinct products disregards the rule of reasonable interchangeability.  *Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 353 (S.D.N.Y. 2009); *see also Universal Grading Serv.*, 2012 WL 70644, at *7 ("Plaintiffs attempt to define the relevant market to include any market which significantly depends on participation within online auctions . . . .  However, plaintiffs provide no authority supporting such an overbroad and amorphous market definition, which would theoretically encompass the market for every one of the millions of items sold through eBay.").  Courts have rejected far narrower markets.  *E.g.*, *PSKS*, 615 F.3d at 418 ("women's accessories" was "too broad and vague a definition to constitute a market"); *Golden Gate Pharmacy*, 433 F. App'x at 599 (alleged "pharmaceutical industry" market failed "to allege a product market consisting of reasonably interchangeable goods").

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 17
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

In the end, plaintiffs' failure to define the "U.S. retail ecommerce" market by reference to reasonably interchangeable products makes its alleged product market "facially unsustainable," requiring dismissal of their Section 1 rule of reason and Section 2 claims.  *E.g.*, *Hicks*, 897 F.3d at 1121-23; *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (dismissal for failure to allege "there are no other goods or services that are reasonably interchangeable"); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997) (collecting cases dismissing where reasonable interchangeability not alleged).

### B.   Plaintiffs' Alleged Submarkets Are Likewise Legally Deficient.

The alleged alternative "U.S. online retail sub-markets" suffer from the same fatal defects.  FAC ¶ 28; *M.A.P. Oil Co. v. Texaco Inc.*, 691 F.2d 1303, 1306-08 (9th Cir. 1982) (submarkets defined by traditional market-definition test).  The alleged submarkets are under-inclusive because they fail to include products available both online and in physical stores, products consumers would view as substitutes.  For example, Ms. Elliott purchased moisturizing lotion (in "skin care" submarket) online at CVS.  FAC ¶ 58.  Consumers would consider that online product as interchangeable with the same product in a physical CVS store, and would turn to a physical CVS store to purchase the same lotion, particularly if the lotion cost less in the store.  *See Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 621-22 (S.D.N.Y. 2013) (dismissing claims where alleged market was limited to e-books because "print books are an obvious potential substitute for e-books"); *Hicks*, 897 F.3d at 1121-23.  At the same time, the submarkets are over-inclusive because a cheese grater, a microwave, and cups are all "kitchen and dining" products, but it defies common sense to conclude consumers view these items as substitutes for one another.  The same is true for golf balls and golf clubs (in "golf" submarket) and paint brushes and wrenches (in "home improvement tools" submarket).

### IV.   Amazon's Policies Do Not Constitute Anticompetitive Conduct, a Necessary Element of a Section 2 Claim.

Plaintiffs' Section 2 claims fail for two additional, critical reasons:  the alleged conduct is not anticompetitive, and has procompetitive and legitimate business justifications.  To plead

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 18
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

monopolization or attempted monopolization, plaintiffs must allege "anticompetitive conduct," that is, "the willful acquisition or maintenance of [monopoly] power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (citation omitted); *see also Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 542 (9th Cir. 1991) (attempted monopolization).  Where a defendant's conduct has legitimate business justifications, a Section 2 claim fails, and the Ninth Circuit does not weigh the benefit against its purported anticompetitive effects.  *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir. 1997); *see also Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 1000 (9th Cir. 2010) ("There is no room in this analysis for balancing the benefits . . . of a product improvement against its anticompetitive effects").  Courts thus reject Section 2 claims at the pleading stage when legitimate reasons for the conduct are a "foregone conclusion."  *SmileCare*, 88 F.3d at 786 (affirming dismissal); *see Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009) (same); *Trinko*, 540 U.S. at 415-16 (same).

Encouraging low prices from third-party sellers, and featuring only competitively priced products in the "Buy Box," is not unlawful exclusionary conduct.  Amazon's policy states that third-party sellers are free to set their own prices.  FAC ¶ 6 n.19.  It also makes clear that if they price a product too high, the offer *will remain available for consumers to shop*—but Amazon may decide not to feature that offer in the prime position on Amazon's product-detail page.  *Id.* ¶ 87.  It is axiomatic that "[b]usinesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."  *linkLine*, 555 U.S. at 448; *see also Qualcomm*, 2020 WL 4591476, at *11.  That is what plaintiffs allege Amazon does here.

Moreover, the predecessor price parity policy resembles other "best-price" provisions, which standing alone have never been held to violate Section 2 (or Section 1, discussed *infra*), including in the face of similar claims that they create a "price floor" by raising the cost of discounting.  FAC ¶¶ 67, 154.  In *Ocean State*, the plaintiff challenged an insurer's requirement that doctors charge the defendant no more than they charged other insurers.  883 F.2d at 1103-

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 19
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

04.  The court reversed a jury verdict against the insurer because the insurer's conduct was permissible competition as a matter of law: it held that "a policy of insisting on a supplier's lowest price—assuming that the price is not 'predatory' or below the supplier's incremental cost—tends to further competition on the merits and, as a matter of law, is not exclusionary." *Id.* at 1110.  Insisting on a supplier's lowest prices is "what competition should be all about," and has no anticompetitive tendency "as a matter of law." *Id.* (citation omitted).

In *SmileCare*, the Ninth Circuit explained that the result in *Ocean State* depended on Section 2 law, not the particular facts: "even if Blue Cross's application of its [price parity] policy injured its competitor's business and was in fact intended to put its competitor out of business, Blue Cross committed no antitrust violation *because the policy itself was legitimate*." 88 F.3d at 785 n.7 (emphasis added).  Other cases have similarly rejected, as a matter of law, claims that best-price provisions constitute anticompetitive conduct. *See Marshfield Clinic*, 65 F.3d at 1415 (best-price provisions are "standard devices by which buyers try to bargain for low prices" and are "the sort of conduct that the antitrust laws seek to encourage"); *Kartell v. Blue Shield of Mass. Inc.*, 749 F.2d 922, 928-29 (1st Cir. 1984) (upholding as a matter of law insurer's best-price policy despite claim it "discourages doctors from charging others low prices by insisting that its subscribers be given the benefit of any such low prices"); *see also Kitsap Physicians Serv. v. Wash. Dental Serv.*, 671 F. Supp. 1267, 1269 (W.D. Wash. 1987) (agreement's "antidiscrimination" clause "that the clinic may not charge [the insurer] more than it charges the public . . . is *only good business sense*" (emphasis in original) (citation omitted)). The leading antitrust treatise states that courts should "never condemn" even "a dominant firm's insistence that it obtain the lowest generally available price for a product."  Areeda & Hovenkamp, *Antitrust Law* ¶ 768a6.

The complaint again reinforces the foundational truth that Amazon has legitimate, procompetitive business justifications for its alleged policies.  As plaintiffs concede, consumers can and do easily compare prices on different retail sites, *see* FAC ¶¶ 39, 142, and consumers care a lot about price, *see id.* ¶ 83.  To earn the loyalty of consumers, any retailer could choose to

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 20
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

feature only those third-party offers that are at least as good as those consumers can find "just a few clicks away." *Id.* ¶ 142; *see also id.* ¶ 39. And plaintiffs further concede, as they must, the challenged conduct "attracts more customers" to Amazon, which "offers more sales opportunities" for Amazon. *Id.* ¶ 154. Amazon's policies also avoid the clear risk of free-riding. Amazon adopted the alleged policies to protect consumers from third-party sellers trying to profit from Amazon's customer-centric reputation by setting higher prices on Amazon than they set elsewhere. When a consumer finds the same product available at a lower price elsewhere, Amazon's store not only loses a sale, but the consumer will lose confidence in Amazon as a source of the best available deals. The Sherman Act does not require Amazon or any business to acquiesce in that perverse result. *See SmileCare*, 88 F.3d at 786 (granting motion to dismiss where insurer had a legitimate business interest in preventing free-riding). As one article that plaintiffs cite explains, "Knowing that they can count on getting the best price available from one company gives the shopper confidence to not look elsewhere and creates brand loyalty," a legitimate and procompetitive outcome. FAC ¶ 146 n.248.

## V.   Plaintiffs Fail to Allege Plausible Anticompetitive Harm, a Necessary Showing for Section 1 Rule of Reason and Section 2 Claims.

Plaintiffs' Section 1 rule of reason and Section 2 claims also fail because the complaint does not plausibly allege that the challenged policies caused harm to "the process of competition [or] consumer welfare." *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1082 (S.D. Cal. 2012) (§ 2); *see also Qualcomm*, 2020 WL 4591476, at *9 (explaining Section 1 rule of reason and Section 2 claims require showing of anticompetitive harm). Conclusory "allegations that an agreement has the effect of reducing consumers' choices or increasing prices to consumers do[] not sufficiently allege an injury to competition. Both effects are fully consistent with a free, competitive market." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012).

Far from reduced consumer choices, the complaint demonstrates that the retail landscape is fiercely competitive. The vast majority of third-party sellers in Amazon's store also "sell their

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 21
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

products on other online retail websites that compete with" Amazon, such as Walmart (FAC ¶ 10), eBay (*id.* ¶¶ 10, 34), Target (*id.* ¶ 90), Newegg (*id.* ¶ 10), and Shopify (*id.*), as well as on "their own websites" (*id.*).  Likewise, Amazon and its third-party sellers compete with many different household retailers—where many plaintiffs shop—like Best Buy (*id.* ¶ 48), Costco (*id.* ¶ 49), Home Depot (*id.* ¶ 50), QVC (*id.* ¶ 52), CVS (*id.* ¶ 58), Kohl's (*id.*), and Kroger (*id.* ¶ 61), among others.  These retailers compete on any terms they choose, and none of the household names from which plaintiffs purchased—like Walmart, QVC, CVS, or Kroger—are in any way constrained by Amazon's policies.

Plaintiffs' complaint lacks any specific allegations demonstrating that Amazon's policies have reduced competition among retailers.  Plaintiffs do not allege, for example, that any retailers have exited or reduced their output as a result of Amazon's policies.  *See Prime Healthcare Servs.*, 642 F. App'x at 666-67.  Nor do plaintiffs allege that any barriers prevent existing or new retailers from expanding their output or entering to meet demand if prices on Amazon (and offered elsewhere by Amazon's third-party sellers) are above competitive levels.  Quite the opposite.  Plaintiffs allege that "lower transaction costs and production costs also facilitate easier entry into the market and increase competition," FAC ¶ 142, with third-party sellers having more choices about what channels to use to reach consumers, *see, e.g.*, *id.* ¶ 10.  Plaintiffs cannot plausibly allege anticompetitive effects without foreclosure of retail competitors in a relevant market.  *See Randy's Ring & Pinion Serv. Inc. v. Eaton Corp.*, 2009 WL 10727790, at *5 (W.D. Wash. Nov. 16, 2009) (dismissal for failure to plausibly allege foreclosure); *Feitelson v. Google, Inc.*, 80 F. Supp. 3d 1019, 1032 (N.D. Cal. 2015) (same).

Finally, despite pages devoted to allegations of matching prices, FAC ¶¶ 111-17, those allegations do not show higher prices; the complaint concedes there is competition "on price largely by matching or coming close to the lowest ecommerce market prices," *id.* ¶ 101, offers anecdotes about third-party sellers *lowering* their prices in Amazon's store, *id.* ¶¶ 90, 100, and includes data showing that others match or come close to third-party sellers' prices in Amazon's store, *id.* ¶¶ 111-17.   In alleging that consumers have been harmed by higher prices, plaintiffs

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 22
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    "must allege facts that rise beyond mere conceivability or possibility."  *Somers*, 729 F.3d at 965

2    (citing *Iqbal*, 556 U.S. at 678-69; *Twombly*, 550 U.S. at 555).  The complaint fails to do that.

3    **VI.    The State Law Antitrust and Consumer Protection Claims Fail.**

4            Plaintiffs' complaint adds state antitrust and consumer-protection claims arising under

5    additional state laws, and substitutes a claim under the California Cartwright Act for their prior

6    claim under the California UCL.  FAC ¶ 224.  These claims must be dismissed.

7            First, plaintiffs plead no unfair conduct apart from their Sherman Act claims, so their

8    state law antitrust claims fall on the disposition of the federal claims.  *See, e.g.*, *Seaside Inland*

9    *Transp. v. Coastal Carriers LLC*, 2019 WL 4918747, at *8 (E.D. Wash. Oct. 4, 2019).

10           Plaintiffs do not state a *per se* claim based on a vertical price-fixing agreement among

11   Amazon and third-party sellers under California and Maryland law.  FAC ¶ 19.  These states

12   permit *per se* claims based only on vertical minimum resale price maintenance agreements—

13   where a supplier sets a minimum price at which a distributor sells the supplier's product.  *Kunert*

14   *v. Mission Fin. Servs.*, 110 Cal. App. 4th 242, 263 (2003); Md. Code Ann., Com. Law § 11-

15   204(b).  The complaint does not allege any resale price maintenance agreement between third-

16   party sellers, who supply the products, and Amazon.  Rather, "[s]ellers are responsible for setting

17   their own prices on Amazon marketplaces."  FAC ¶ 6 n.19; *see Kunert*, 110 Cal. App. 4th at 264

18   (no vertical price fixing where supplier did not control or restrict the price offered by distributor

19   or limit competition on price between distributors).  And the complaint disclaims any resale price

20   maintenance theory.  FAC ¶ 174.

21           Second, the Court should dismiss plaintiffs' claims under the laws of 20 states, including

22   Maryland,[1] for which they lack a plaintiff.  *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d

23   1133, 1164 (N.D. Cal. 2009) (where "a representative plaintiff is lacking for a particular state, all

24   claims based on *that* state's laws are subject to dismissal"); *In re Park W. Galleries, Inc. Mktg. &*

25   *Sales Practices Litig.*, 2010 WL 2653253, at *9 (W.D. Wash. June 25, 2010) (same).

26   _____

27   [1] These states are: Alaska, Hawaii, Idaho, Kansas, Kentucky, Louisiana, Maryland, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Mexico, North Carolina, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, and West Virginia.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    Finally, plaintiffs fail to plead facts establishing the elements of each of the 38 state law

2    claims, a vague assortment of antitrust and consumer protection statutes, listed in their fifth cause

3    of action.  An example: plaintiffs list "Ky. Rev. Stat. § 367.120, *et seq.*," which is a citation to

4    the statute setting forth Kentucky's legislative intent in enacting the "Consumer Protection Act."

5    FAC ¶  224(n); *e.g.*, *id.* ¶ 224(r) (listing "Mass. Ann. Laws, Ch. 93A, *et seq.*," a chapter entitled

6    "Regulation of Business Practices for Consumer Protection").  Such a "cursory listing of the

7    other states' statutes is insufficient to satisfy *Twombly* and *Iqbal's* pleading requirements."

8    *Adams v. Target*, 2014 WL 12558290, at *6 (C.D. Cal. Mar. 3, 2014).

9    **VII.    The Unjust Enrichment Claim Fails.**

10    Plaintiffs' "global" unjust enrichment claim is deficient for three reasons.  First, plaintiffs

11    do not plead facts establishing the elements of the claims under the laws of 39 states that they

12    attempt to state.  *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1088

13    (S.D. Cal. 2017) (dismissing "global" unjust enrichment claim).  Second, "almost all states at

14    minimum require plaintiffs to allege that they conferred a benefit or enrichment upon defendant

15    and that it would be inequitable or unjust for defendant to accept and retain the benefit."  *In re*

16    *Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 541 (E.D. Pa. 2010).  Plaintiffs do not allege that

17    they conferred any benefit on Amazon, given that they predicate their claims on purchases on

18    platforms *other than* Amazon.  Third, plaintiffs lack standing to bring claims under the laws of

19    any state in which they do not reside.  *In re Flash Memory*, 643 F. Supp. 2d at 1164.

20                                        **CONCLUSION**

21    The Court should grant the motion and dismiss plaintiffs' claims with prejudice.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    DATED this 2nd day of September, 2020.

2                                    Davis Wright Tremaine LLP
                                     Attorneys for AMAZON.COM, INC.
3
                                     s/ Stephen M. Rummage
4                                    Stephen M. Rummage, WSBA #11168
                                     MaryAnn Almeida, WSBA #49086
5                                    920 Fifth Avenue, Suite 3300
                                     Seattle, WA  98104-1610
6                                    Telephone: (206) 757-8136
                                     Fax: (206) 757-7136
7                                    E-mail: steverummage@dwt.com
                                     E-mail: maryannalmeida@dwt.com
8

9
                                     s/ Douglas E. Litvack
10                                   Douglas E. Litvack (pro hac vice)
                                     1301 K Street, NW
11                                   Suite 500 East
                                     Washington D.C.  20005
12                                   Telephone (202) 973-4200
                                     Fax:  (202) 973-4499
13                                   E-mail:  douglitvack@dwt.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 25
4813-0109-4345v.2 0051461-003030

CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

s/ Stephen M. Rummage
Stephen M. Rummage, WSBA #11168

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Ph:  (206) 622-3150
Fax:  (206) 757-7700
E-mail:  steverummage@dwt.com

AMAZON'S MOTION TO DISMISS FAC (2:20-CV-00424-RAJ) – 26
4813-0109-4345v.2 0051461-003030

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax