1

The Honorable Richard A. Jones

2

3

4

5

6

7

8     UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10    DEBORAH FRAME-WILSON, CHRISTIAN
SABOL, SAMANTHIA RUSSELL, ARTHUR
11    SCHAREIN, LIONEL KEROS, NATHAN          No. 2:20-cv-00424-RAJ
CHANEY, CHRIS GULLEY, SHERYL
12    TAYLOR-HOLLY, ANTHONY COURTNEY,
DAVE WESTROPE, STACY DUTILL,            **PLAINTIFFS' OPPOSITION TO**
13    SARAH ARRINGTON, MARY ELLIOT,           **AMAZON.COM, INC.'S MOTION TO**
HEATHER GEESEY, STEVE MORTILLARO,       **DISMISS**
14    CHAUNDA LEWIS, ADRIAN HENNEN,
GLENDA R. HILL, GAIL MURPHY,            **NOTE ON MOTION CALENDAR:**
15    PHYLLIS HUSTER, and GERRY               November 6, 2020
16    KOCHENDORFER, on behalf of themselves
and all others similarly situated,
17

18                              Plaintiffs,

19            v.

20    AMAZON.COM, INC., a Delaware
corporation,
21

22                              Defendant.

23

24

25

26

27

28



# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 3

STANDARD OF REVIEW ............................................................................................ 5

ARGUMENT ................................................................................................................ 5

I.    Plaintiffs have antitrust standing.............................................................................. 5

II.    Plaintiffs adequately allege that Amazon engaged in a price fixing
agreement in violation of Section 1 of the Sherman Act. ................................... 7

    A.    Plaintiffs rely on an undisputed contract common to all of
Amazon's co-conspirators as evidence of an agreed price restraint. .................... 7

    B.    Plaintiffs plausibly allege that Amazon's agreement with its co-
conspirators not to compete on price unreasonably restrains trade. ...................... 8

        1.    Plaintiffs plausibly allege a *per se* violation. ............................................. 9

            a.    Amazon's restraint on prices its retail competitors
offer on competing websites and competing online
marketplaces is a horizontal restraint........................................... 11

            b.    Courts apply the *per se* analysis to price-fixing or
market-allocation agreements between competitors
even when those agreements have vertical elements
or vertical participants.................................................................. 12

            c.    Plaintiffs do not "concede" procompetitive effects
from Amazon's price restraints...................................................... 13

        2.    Alternatively, Plaintiffs plausibly assert an unlawful
restraint under the quick look analysis...................................................... 14

        3.    Alternatively, under the rule of reason, Plaintiffs allege a
facially plausible market impacted by Amazon's price
restraints..................................................................................................... 15

            a.    Plaintiffs plausibly limit the relevant product market
to the ecommerce market. ............................................................. 16

            b.    Plaintiffs' market allegations encompass the broad
range of products affected by its price restraints. ........................ 18

            c.    Plaintiffs' allege plausible submarkets. ....................................... 19

        4.    Plaintiffs also assert valid claims under California and
Maryland's antitrust laws, which treat vertical price
restraints as *per se* violations. .................................................................. 19



III.   Plaintiffs plausibly allege violations under Section 2 of the Sherman Act......................20

    A.   Plaintiffs' allegations of price restraints demonstrate
        anticompetitive behavior under Section 2...........................................................20

    B.   Plaintiffs plausibly allege anticompetitive harm, in the form of
        overcharges caused by Amazon's conduct. .........................................................21

IV.   Plaintiffs adequately allege their state law causes of action. ...........................................22

CONCLUSION........................................................................................................................24



1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

*Adams v. Target*,
5
   2014 WL 12558290 (C.D. Cal. Mar. 3, 2014)..........................................................22

6

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
   592 F.3d 991 (9th Cir. 2010) ..........................................................................................21
7

*Am. Ad Mgmt., Inc. v. GTE Corp.*,
8
   92 F.3d 781 (9th Cir. 1996) ..............................................................................................7

9

*Ariz. v. Maricopa Cty. Med. Soc.*,
   457 U.S. 332 (1982) ........................................................................................................18
10

11
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................5

12

*Bank of Am. Corp. v. Gibbons*,
13
   918 A.2d 565 (Md. App. 2007)......................................................................................23

14

*Bay Area Surgical Mgmt., LLC v. Aetna Life Ins. Co.*,
   2016 WL 3880989 (N.D. Cal. July 18, 2016)................................................................14
15

16
*Bell Atl. Co. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................5

17

*Blizzard Entm't Inc. v. Ceiling Fan Software LLC*,
18
   2013 WL 12143935 (C.D. Cal. Jan. 1, 2013) ................................................................18

19

*Bloombank v. United Fid. Bank F.S.B.*,
   113 N.E.3d 708 (Ind. Ct. App. 2018)..............................................................................23
20

21
*Boardman v. Pac. Seafood Grp.*,
   2015 U.S. Dist. LEXIS 190896 (D. Or. Mar. 6, 2015), *affirmed* 822 F.3d 1011
22
   (9th Cir. 2016)...................................................................................................................7

23

*Bon-Ton Stores, Inc. v. May Dep't Stores Co.*,
   881 F. Supp. 860 (W.D.N.Y. 1994)................................................................................16
24

25
*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
   985 F. Supp. 2d 612 (S.D.N.Y. 2013)............................................................................17

26

*In re Brand Name Prescription Drugs Antitrust Litig.*,
27
   123 F.3d 599 (7th Cir. 1997) ..........................................................................................18

28



*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012) ................................................................22

*In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*,
   530 F. Supp. 36 (W.D. Wash. 1981) ..........................................................7

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
   441 U.S. 1 (1979) ......................................................................................9

*Brown Shoe v. United States*,
   370 U.S. 294 (1962) ................................................................................18

*In re Cathode Ray Tube (CRT) Antitrust Litig*,
   2016 U.S. Dist. LEXIS 189474 (N.D. Cal. Oct. 26, 2016) ...........................6, 7, 14

*C-E Minerals, Inc. v. Carbo Ceramics, Inc.*,
   2012 U.S. Dist. LEXIS 198653 (N.D. Ga. Mar. 13, 2012) .................................12, 13

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
   762 N.E.2d 303 (Mass. 2002) ..................................................................23

*City of Tulsa v. Bank of Okla., N.A.*,
   280 P.3d 314 (Okla. 2011) ......................................................................24

*Commonwealth v. TP Pharm. Prods., Inc.*,
   885 A.2d 1127 (Pa. Commw. Ct. 2005) ....................................................24

*Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100*,
   421 U.S. 616 (1975)................................................................................15

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962)................................................................................10

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
   691 F.2d 1335 (9th Cir. 1982) ..................................................................6

*Costco Wholesale Corp. v. AU Optronics Corp.*,
   2014 U.S. Dist. LEXIS 133798 (W.D. Wash. Sept. 23, 2014)........................6

*Cross v. Berg Lumber Co.*,
   7 P.3d 922 (Wyo. 2000)...........................................................................24

*Darush v. Revision LP*,
   2013 U.S. Dist. LEXIS 60084 (C.D. Cal. Apr. 10, 2013) ...............................19

*Dema v. Tenet Physician Services-Hilton Head, Inc.*,
   678 S.E.2d 430 (S.C. 2009) ......................................................................24

*Distance Learning Co. v. Maynard*,
   2020 U.S. Dist. LEXIS 99256 (N.D. Cal. June 4, 2020) ...............................16

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ................................................................5

*In re Ebay Seller Antitrust Litig*,
   2010 U.S. Dist. LEXIS 19480 (N.D. Cal. Mar. 4, 2010)........................17

*In re eBay Seller Antitrust Litig*,
   545 F. Supp. 2d 1027 (N.D. Cal. 2008) .................................................21

*Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,
   612 F. Supp. 2d 330 (S.D.N.Y. 2009) ....................................................19

*Feitelson v. Google, Inc.*,
   80 F. Supp. 3d 1019 (N.D. Cal. 2015) ...................................................22

*Freeman Indus. LLC v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005).................................................................24

*FTC v. Actavis, Inc.*,
   2018 U.S. Dist. LEXIS 99716 (N.D. Ga. June 14, 2018)........................7

*FTC v. Qualcomm Inc.*,
   2020 WL 4591476 (9th Cir. 2020) .........................................................12

*FTC v. Staples, Inc.*,
   970 F. Supp. 1066 (D.D.C. 1997) ..........................................................16

*FTC v. Whole Foods Mkt., Inc.*,
   533 F.3d 869 (D.C. Cir. 2008)................................................................16

*Garabet v. Autonomous Techs. Corp.*,
   116 F. Supp. 2d 1159 (C.D. Cal. 2000) ...................................................6

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
   433 F. App'x 598 (9th Cir. 2011) .....................................................18, 19

*Hanover Shoe v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968)..................................................................................5

*Cal. ex rel. Harris v. Safeway, Inc.*,
   651 F.3d 1118 (9th Cir. 2011) .................................................................7

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ...............................................................17

*Huston v. Martin*,
   919 N.W.2d 356 (S.D. 2018)...................................................................24

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ...............................................................21

*Kalkowski v. Neb. Nat'l Trails Museum Found. Inc.*,
    862 N.W.2d 294 (Neb. 2015)................................................................................24

*Kartell v. Blue Shield*,
    749 F.2d 922 (1st Cir. 1984)................................................................................20

*In re Keurig Green Mt. Singleserve Coffee Antitrust Litig*,
    383 F. Supp. 3d 187 (S.D.N.Y. 2019)..........................................................22, 23

*Kitsap Physicians Serv. v. Wash. Dental Serv.*,
    671 F. Supp. 1267 (W.D. Wash. 1987)................................................................21

*Kunert v. Mission Fin. Servs. Corp.*,
    110 Cal. App. 4th 242 (2003)........................................................................19, 20

*Kutza v. Williams-Sonoma, Inc.*,
    2018 U.S. Dist. LEXIS 192456 (N.D. Cal. Nov. 9, 2018)..................................24

*Ky. v. Marathon Petroleum Co., LP*,
    191 F. Supp. 3d 694 (W.D. Ky. 2016).................................................................23

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
    551 U.S. 877 (2007)......................................................................................11, 12

*Lewis v. Lewis*,
    189 P.3d 1134 (Colo. 2008)................................................................................23

*LiveUniverse, Inc. v. MySpace, Inc.*,
    2007 U.S. Dist. LEXIS 43739 (C.D. Cal. June 4, 2007) ....................................17

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    275 F.3d 762 (9th Cir. 2001) ..............................................................................18

*Lumford v. Ota*,
    434 P.3d 1215 (Haw. Ct. App. 2018) ..................................................................23

*Mailand v. Burckle*,
    572 P.2d 1142 (Cal. 1978) ..................................................................................19

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015) .............................................................................24

*Meyer v. Kalanick*,
    174 F. Supp. 3d 817 (S.D.N.Y. 2016)..................................................................12

*N. Cheyenne Tribe v. Roman Catholic Church*,
    296 P.3d 450 (Mont. 2013)..................................................................................24

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents*,
    468 U.S. 85 (1984)........................................................................................11, 12

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

*Nat'l Football League's Sunday Ticket Antitrust Litig. v. DirecTV, LLC,*
   933 F.3d 1136 (9th Cir. 2019) .........................................................................5

*Nat'l Recycling v. Waste Mgmt. of Mass. Inc.,*
   2007 U.S. Dist. LEXIS 107664 (D. Mass. July 2, 2007).........................................15

*Nature Conservancy v. Upland Props., LLC,*
   48 So. 3d 1257 (La. App. 2010).........................................................................23

*Nava v. Kobe Steel, Ltd.,*
   2019 U.S. Dist. LEXIS 179577 (N.D. Cal. Oct. 8, 2019).......................................23

*Newcal Indus. v. Ikon Office Solution,*
   513 F.3d 1038 (9th. Cir. 2008) .................................................................16, 18

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.,*
   883 F.2d 1101 (1st Cir. 1989).........................................................................20

*Ohio v. Am. Express Co.,*
   __U.S.__, 138 S. Ct. 2274 (2018).........................................................................11

*In re Online DVD Rental Antitrust Litig,*
   2010 U.S. Dist. LEXIS 67102 (N.D. Cal. July 6, 2010)...........................................7

*Origami Owl LLC v. Mayo,*
   2015 U.S. Dist. LEXIS 103755 (D. Ariz. Aug. 7, 2015).........................................17

*Pa. Ave. Funds v. Borey,*
   569 F. Supp. 2d 1126 (W.D. Wash. 2008).........................................................13

*Pac. Bell Tel. Co. v. linkLine Communs., Inc.,*
   555 U.S. 438 (2009).........................................................................21

*Palmer v. BRG of Ga., Inc.,*
   498 U.S. 46 (1990).........................................................................9, 11, 12

*In re Polaris Mktg., Sales Practices, & Prods. Liab. Litig,*
   2020 U.S. Dist. LEXIS 32822 (D. Minn. Feb. 26, 2020) .......................................23

*In re Pool Prods. Distrib. Mkt. Antitrust Litig,*
   940 F. Supp. 2d 367 (E.D. La. 2013).........................................................15

*Prime Healthcare Servs. v. SEIU,*
   642 F. App'x 665 (9th Cir. 2016).........................................................................22

*PSKS, Inc. v. Leegin Creative Leather Prods.,*
   615 F.3d 412 (5th Cir. 2010) .................................................................17

*Randy's Ring & Pinion Serv. Inc. v. Eaton Corp.,*
   2009 WL 10727790 (W.D. Wash. 2009).........................................................22

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - vii
Case No. 2:20-CV-00424-RAJ
010888-11/1355517 V1

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ................................................................13, 22

*Sambreel Holdings LLC v. Facebook, Inc.*,
  906 F. Supp. 2d 1070 (S.D. Cal. 2012)..............................................................22

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*,
  2018 U.S. Dist. LEXIS 220574 (S.D.N.Y. Dec. 26, 2018) ....................................23

*Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*,
  2012 U.S. Dist. LEXIS 170201 (E.D. Mich. Nov. 30, 2012) ................................15

*Sitts v. Dairy Farmers of Am., Inc.*,
  417 F. Supp. 3d 433 (D. Vt. 2019).....................................................................15

*SmileCare Dental Group v. Delta Dental Plan*,
  88 F.3d 780 (9th Cir. 1996) .........................................................................20, 21

*Staley v. Gilead Scis., Inc.*,
  2020 U.S. Dist. LEXIS 36747 (N.D. Cal. Mar. 3, 2020)......................................15

*Starr v. Sony BMG Music Entm't*,
  592 F.3d 314 (2d Cir. 2010).................................................................................9

*Town of New Hartford v. Conn. Res. Recovery Auth.*,
  970 A.2d 592 (Conn. 2009) ...............................................................................23

*Tsui v. Sobral*,
  39 Va. Cir. 486 (Cir. Ct. 1996) ..........................................................................24

*United Food & Commer. Workers Local 1776 v. Teikoku Pharma USA*,
  296 F. Supp. 3d 1142 (N.D. Cal. 2017) ..............................................................16

*United States v. Apple, Inc.*,
  791 F.3d 290 (2d Cir. 2015).....................................................................8, 9, 13

*United States v. Apple, Inc.*,
  889 F. Supp. 2d 623 (S.D.N.Y. 2012)..................................................................8

*United States v. Delta Dental*,
  943 F. Supp. 172 (D.R.I. 1996)............................................................................7

*United States v. Delta Dental*,
  1997 U.S. Dist. LEXIS 11239 (D.R.I. July 2, 1997) ..........................................7, 8

*United States v. Green*,
  2007 U.S. Dist. LEXIS 85518 (N.D. Cal. Nov. 7, 2007)......................................10

*United States v. Griffith*,
  334 U.S. 100 (1948)...........................................................................................20

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - viii
Case No. 2:20-CV-00424-RAJ
010888-11/1355517 V1

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

*United States v. Joyce*,
    895 F.3d 673 (9th Cir. 2018) ........................................................12

*United States v. Med. Mut. of Ohio*,
    1998 U.S. Dist. LEXIS 21508 (N.D. Ohio Sept. 30, 1998)........................8

*Universal Grading Serv. v. eBay, Inc.*,
    563 F. App'x 571 (9th Cir. 2014) ...................................................19

*Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)......................................................................21

*Vernon v. S. Cal. Edison Co.*,
    955 F.2d 1361 (9th Cir. 1992) .........................................................5

*Webb v. Dr Pepper Snapple Group, Inc.*,
    2018 U.S. Dist. LEXIS 71270 (W.D. Mo. Apr. 25, 2018) ....................23

*In re Wellpoint Out-Of-Network "UCR" Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) ...........................................13

*Whaley v. Pac. Seafood Grp.*,
    2012 U.S. Dist. LEXIS 200504 (D. Or. Jan. 31, 2012) .........................7

*Yellow Cab Co. v. Uber Techs., Inc.*,
    2015 U.S. Dist. LEXIS 109417 (D. Md. Aug. 19, 2015) ......................19

*Yi v. SK Bakeries, LLC*,
    2018 U.S. Dist. LEXIS 220966 (W.D. Wash. Nov. 13, 2018) ...............14

*In re Zetia Ezetimibe Antitrust Litig.*,
    2019 U.S. Dist. LEXIS 59469 (E.D. Va. Feb. 6, 2019)...................22, 23

### STATUTES

### OTHER AUTHORITIES

IIA Phillip E. Areeda, Herbert Hovenkamp, Roger D. Blair & Christine Piette
    Durrance, Antitrust Law (4th Edition, 2020 Cum. Supp. 2013-2019)) ....................6



## INTRODUCTION

Plaintiffs are consumers from 18 states, who frequently shop online for appliances, electronics, clothing, sports gear, musical instruments, vitamins, and other everyday products. They allege that Amazon, the dominant ecommerce retailer and operator of the largest online retail marketplace (Amazon.com), imposes illegal contractual restraints on the ecommerce retailers that sell on Amazon.com. The fees that Amazon charges ecommerce retailers significantly increases the retail price of the goods they sell on Amazon.com. It costs them less to sell their goods on any other ecommerce platform, and lowering their prices on sites with lower fees would attract customers and maximize their profits. But Amazon presents them with a Hobson's choice: either they agree not to compete on price on sites that compete with Amazon.com or it denies them critical access to Amazon.com's massive customer base. By eliminating the discounts that ecommerce retailers would otherwise profitably provide to Plaintiffs and other consumers who shop on sites with substantially lower seller fees, Plaintiffs plausibly allege that Amazon inflates the market price of products that ecommerce retailers concurrently sell on Amazon.com and other ecommerce sites ("Class Products").

Amazon's price restraints have an unparalleled reach and are not consumer friendly as Amazon contends. Class Products include virtually all products sold online. As described below, ecommerce retailers become coerced co-conspirators by virtue of agreeing to Amazon's price constraints. Amazon and its co-conspirators injure Plaintiffs—and others who purchase Class Products on sites that compete with Amazon.com—in two ways. First, Plaintiffs overpay when they buy directly from Amazon's co-conspirators on the co-conspirators' own websites or on sites that charge them substantially lower selling fees. Instead of a reduced purchase price consistent with lower selling costs and the co-conspirators' own profit motives, Plaintiffs paid as much as (or more than) what these same co-conspirators were charging on Amazon.com. Second, restraining competition, as Amazon and its co-conspirators have done, particularly on this scale, increases the *market price* for Class Products, regardless of seller. Non-conspiratorial, online retailers that are not a party to Amazon's illegal agreement (like Walmart.com) nonetheless set their prices for the *identical products* that Amazon's co-conspirators sell under

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

the same uncompetitive market conditions that the conspirators have caused. Plaintiffs, who paid

a high market price, suffered overcharges from these non-conspiratorial retailers just as certainly

as if they had purchased from Amazon's co-conspirators. These allegations support Plaintiffs'

standing and right of recovery under the Sherman Act and state law antitrust, unfair competition,

and unjust enrichment laws.

Contrary to Amazon's spin, coercing rivals not to compete, eliminating competitively

priced alternatives, and causing consumers to overpay on rival websites, are not permissible

methods of "organiz[ing] its [own] store to make it attractive to customers" or of earning the

"trust" of its own customers. Motion to Dismiss (MTD) at 1. These tactics do not "encourage

low prices." *Id.* at 2. They *raise* market prices and limit consumer choices. *See* § II(B) and III(B)

below. Nor do Plaintiffs seek "judicial oversight into routine business decisions." MTD at 1.

Amazon would not be the first defendant enjoined under the Sherman Act from enforcing similar

price restraints. *Id.* at 2; *see* § II(B). Amazon removed the same price restraints at European

regulators' request. *See* below at 4. If Plaintiffs prevail, it should do so here, as well.

Amazon's procedural and substantive arguments also fail. First, Plaintiffs do not need to

allege purchases directly from Amazon to have federal antitrust standing because they directly

purchased and overpaid for products at prices inflated by Amazon's antitrust violations. *See*

MTD at 8; § I. Second, Plaintiffs do not need to prove a tacit conspiracy among millions of

retailers because Amazon's contractual price restraints on its co-conspirators satisfies Section 2's

requirement of a "contract . . . in restraint of trade." *See* MTD at 10; § II(A). Third, Plaintiffs

have successfully alleged a *per se* antitrust violation. Amazon incorrectly contends that its

contractual provisions are procompetitive and thus the *per se* rule does not apply. *See* MTD at

12-14, 18-21. But Courts have found virtually identical provisions to violate the Sherman Act.

*See* § II(B). Nor does the case law support Amazon's asserted platform exception to the *per se*

rule against price fixing by competing retailers. *See* MTD at 12-13; § II(B)(1). Fourth, Plaintiffs

have also successfully alleged a Section 1 violation under the rule of reason as well as Section 2

claims. Contrary to Amazon's argument, ecommerce is a valid market and the breadth of the

alleged market properly reflects the broad impact of Amazon's conduct. *See* MTD at 14-18; §

II(B)(3). Plaintiffs' allegations of higher market prices and restrained competition satisfy the requirement of anticompetitive harm. *See* MTD at 21; § III(B). Finally, Amazon misunderstands the requirements of Plaintiffs' state law claims, which Plaintiffs adequately allege. *See* MTD at 23; § IV.

## BACKGROUND

Amazon is the world's largest online retailer and its own retail sales provide its principal source of revenue. ¶¶ 2, 81.[1] Its marketplace platform, Amazon.com, has an even larger market presence and has been the subject of antitrust investigations by the FTC, DOJ, and House Judiciary Committee. ¶¶ 130-36. Amazon's representation that its co-conspirators have "many options to reach consumers" grossly underestimates Amazon's power to control their access to online customers. MTD at 2. As described by the Chair of the House Judiciary Antitrust, Commercial and Administrative Law Subcommittee ("Subcommittee Chair"), Amazon.com "serves as [a] critical arter[y] of commerce" and its "business practices and decisions have an outsized effect on our economy." ¶ 92 (quoting Subcommittee Chair); *see also* ¶¶ 17, 27, 71, 120, 123. Approximately 74% of all online shoppers begin their product searches on Amazon.com, which holds a 70% share of all online marketplace sales. ¶¶ 24, 120. Amazon's control over its co-conspirators' access to its marketplace platform allows it to charge them "exorbitant fees" and impose "oppressive contracts." ¶ 92 (quoting Subcommittee Chair); *see also* ¶¶ 1, 73-82, 92-97, 119-122. On average, Amazon charges 15.9% of the retail price just to host the product on Amazon.com and as much as 40%, if its co-conspirator requests additional services to increase its products' visibility. ¶¶ 38, 80.

Amazon only permits its co-conspirators to sell products in the same category of goods that Amazon sells, and often Amazon sells the exact same products that its co-conspirators do. ¶¶ 2, 8, 9, 17, 94. Amazon's high seller fees increase its co-conspirators' prices and make it difficult for them to compete with Amazon on Amazon.com. ¶¶ 1,73-82.  Amazon's co-conspirators could sell profitably at lower prices on other sites, but Amazon unlawfully uses its standard

---

[1] References to "¶ _" are to paragraphs of the First Amended Complaint, Dkt. No. 15, unless otherwise indicated.



Business Service Agreement to minimize the ecommerce competition that they pose outside of Amazon.com. ¶¶ 1, 3-7, 82-86, 103-107. There is no meaningful difference between the "fair pricing" and "price parity" contract provisions that Plaintiffs challenge. *Contra* MTD at 6-7. Both provisions restrain Amazon's two-million co-conspirators from selling anywhere else online at a price lower than they sell on Amazon.com, and both penalize violators by terminating or suspending their accounts or removing their products from the default seller option (Buy-Box) that 90% of shoppers choose when purchasing on Amazon.com. ¶¶ 4-7, 82-86, 103-07.

Because Amazon.com is the primary source of income for most of its co-conspirators, they will not risk competing on price on other sites. ¶¶ 12, 17, 117, 122. One very reluctant co-conspirator explains: "Were we to be suspended from selling on Amazon.com, it would probably take 3–6 months before we'd be bankrupt," and "[t]his is typical for small to medium sized businesses, which sell online today." ¶ 71. Amazon scours the ecommerce market and often finds violations of its pricing policies within minutes of the price posting. ¶ 104. To comply with its price restraints, its co-conspirators forgo selling on other sites or they raise their prices on other sites equal to or higher than their prices on Amazon.com. ¶¶ 12, 16, 36-40, 84, 89-91, 117.

This restraint on Amazon's two-million co-conspirators' competition, inflates the ecommerce market price for all products they concurrently sell on Amazon.com and other sites—like those Plaintiffs purchased. ¶¶ 21, 31, 39, 46- 66, 98-101. Amazon injures Plaintiffs and members of the proposed Class, who buy Class Products on ecommerce sites other than Amazon.com at substantially higher prices than they would absent Amazon's price restraints. *Id.*

Amazon previously withdrew its price restraints in Europe in response to an investigation by German and British regulators. ¶ 84. In an unsuccessful effort to stymie an FTC investigation into the same price restraints, Amazon announced in March 2019 that it would no longer enforce its price parity provision. ¶ 6. But because it continues to enforce the fair pricing provision, which prohibits the same conduct and has the same penalties, its price restraints continue unabated. ¶¶ 3-7, 82-86, 103-107. Plaintiffs seek damages and injunctive relief. ¶ 31.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1

**STANDARD OF REVIEW**

2       On a motion to dismiss, the court must accept all facts in the complaint as true, view

3   them in the light most favorable to the plaintiffs, and draw all reasonable inferences in their

4   favor. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096 (9th Cir. 2019). A plaintiff

5   need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Co.*

6   *v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

7   factual content that allows the court to draw the reasonable inference that the defendant is liable

8   for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "well-pleaded

9   complaint may proceed [even] if it strikes a savvy judge that actual proof of th[e] facts alleged is

10  improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

11

**ARGUMENT**

12  **I.      Plaintiffs have antitrust standing.**

13      A direct purchaser has standing under the Clayton Act to recover overcharge damages

14  caused by antitrust violations. *Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481, 494

15  (1968). Amazon ignores Plaintiffs' two bases for direct-purchaser standing and incorrectly

16  argues that Plaintiffs would have standing only if they claimed to overpay Amazon. MTD at 8.

17      First, even though Amazon's co-conspirators participate in Amazon's price restraints

18  "involuntarily or under coercion," they jointly violate the Sherman Act by consenting to the

19  restraints and by selling Class Products on other sites at supracompetitive prices. *Vernon v. S.*

20  *Cal. Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992). "[W]hen co-conspirators have jointly

21  committed the antitrust violation, a plaintiff who is the immediate purchaser from any of the

22  conspirators is directly injured by the violation[;] . . . *Illinois Brick* is simply not applicable."

23  *Nat'l Football League's Sunday Ticket Antitrust Litig. v. DirecTV, LLC*, 933 F.3d 1136, 1157

24  (9th Cir. 2019). Plaintiffs, who overpaid when they purchased Class Products from Amazon's

25  co-conspirators on sites other than Amazon.com, have standing as direct purchasers from

26  Amazon's co-conspirators. ¶¶ 47, 50, 59, 60, 64, 66.

27      Second, in a conspiracy to inflate a product's market price, purchasers from non-

28  conspiratorial retailers "pay a monopoly overcharge just as certainly as if they had bought from

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1    the conspirators[.]" IIA Phillip E. Areeda, Herbert Hovenkamp, Roger D. Blair & Christine

2    Piette Durrance, Antitrust Law P 347 (4th Edition, 2020 Cum. Supp. 2013-2019) ("Areeda, *et*

3    *al*."), attached hereto as Exhibit A. Amazon's contract with its co-conspirators artificially inflates

4    the market price for Class Products, even when sold by non-conspiratorial online retailers that

5    are not a party to Amazon and its co-conspirator's restraints (like Walmart.com) because they set

6    their prices under the "umbrella" of uncompetitive market conditions that Amazon and its co-

7    conspirators have created. ¶¶ 39, 98-101. Plaintiffs therefore seek recovery as "direct purchasers"

8    from "non-conspiring competitors . . . under an umbrella theory." *In re Coordinated Pretrial*

9    *Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1340 (9th Cir. 1982); ¶¶ 46-66.

10   Although the Ninth Circuit has not decided whether such purchasers have standing, it recognizes

11   that their claims present none of *Illinois Brick*'s concerns about the "danger of duplicative

12   recovery," the "complexities" of "tracing the effects of a conspiracy through several levels of

13   manufacture and distribution," or the potential for disincentivizing suit by purchasers from the

14   defendant. *Id.* And Plaintiffs follow Areeda & Hovenkamp's recommendation of minimizing the

15   influence of independent pricing decisions by asserting umbrella claims only for "the 'self-same'

16   product" the conspirators "sold in the same clearly defined geographical market." Areeda, *et al*.,

17   P 347. Here Plaintiffs seek overcharges only for the *exact same* products concurrently sold by

18   Amazon's co-conspirators on Amazon.com and in the *exact same* ecommerce market. ¶¶ 32-35,

19   46-66, 138.

20          Contrary to Amazon's suggestion, in *Costco Wholesale Corp. v. AU Optronics Corp.* this

21   Court *permitted* umbrella liability, holding that an indirect purchaser had standing under the

22   Clayton Act (under the control exception) based on purchases from entities within the defendant

23   manufacturers' control but containing panels supplied by *non-conspirators.* 2014 U.S. Dist.

24   LEXIS 133798, at *10 (W.D. Wash. Sept. 23, 2014). Amazon also relies on *Garabet v.*

25   *Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159 (C.D. Cal. 2000), which declined (on summary

26   judgment) to permit direct purchaser umbrella claims. But numerous subsequent decisions in this

27   Circuit have since permitted direct purchasers (or direct sellers) to pursue umbrella damages for

28   federal price fixing and monopoly claims, like Plaintiffs seek. *In re Cathode Ray Tube (CRT)*

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 6
Case No. 2:20-CV-00424-RAJ

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1    *Antitrust Litig*, 2016 U.S. Dist. LEXIS 189474, at *118-128 (N.D. Cal. Oct. 26, 2016) (rejecting

2    the reasoning of *Garabet*); *Boardman v. Pac. Seafood Grp.*, 2015 U.S. Dist. LEXIS 190896, at

3    *14 (D. Or. Mar. 6, 2015), *affirmed* 822 F.3d 1011 (9th Cir. 2016); *Whaley v. Pac. Seafood Grp.*,

4    2012 U.S. Dist. LEXIS 200504, at *11-13 (D. Or. Jan. 31, 2012); *In re Online DVD Rental*

5    *Antitrust Litig*, 2010 U.S. Dist. LEXIS 67102 (N.D. Cal. July 6, 2010); *see also Ariz. Dairy*

6    *Prods. Litig.*, 627 F. Supp. 233, 236 (D. Ariz. 1985); *In re Bristol Bay, Alaska, Salmon Fishery*

7    *Antitrust Litig.*, 530 F. Supp. 36, 38 (W.D. Wash. 1981).

8    **II.    Plaintiffs adequately allege that Amazon engaged in a price fixing agreement in
      violation of Section 1 of the Sherman Act.**

9

10           Plaintiffs plausibly allege the required elements of Section 1 of the Sherman Act: (1) an

11   agreement or conspiracy; (2) an unreasonable restraint of trade under a *per se*, quick look, or rule

12   of reason analysis; and (3) effect on interstate commerce. *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92

13   F.3d 781, 788 (9th Cir. 1996). Amazon limits its challenge to the first and second elements.

14   **A.    Plaintiffs rely on an undisputed contract common to all of Amazon's co-
      conspirators as evidence of an agreed price restraint.**

15           Amazon argues irrelevantly that a tacit conspiracy among two-million retailers is facially

16   implausible, but Plaintiffs do not ask the Court to infer a hidden conspiracy based on

17   circumstantial factors. MTD at 11. The Sherman Act prohibits all unreasonable restraints of

18   trade, "whether . . . by formal agreement or otherwise." *Cal. ex rel. Harris v. Safeway, Inc.*, 651

19   F.3d 1118, 1133 (9th Cir. 2011). Contractual provisions—like Amazon's price parity and fair

20   pricing provisions—that "specifically address the conduct the Plaintiffs argue is unlawful"

21   satisfy the requirement of a contract to restrain trade. *FTC v. Actavis, Inc.*, 2018 U.S. Dist.

22   LEXIS 99716, at *35 (N.D. Ga. June 14, 2018). For example, in *United States v. Delta Dental*,

23   the court rejected the defendant's argument that the most favored nation clause of its standard

24   contract was a matter of "unilateral policy." 943 F. Supp. 172, 175 (D.R.I. 1996). Because "'each

25   participating dentist agrees explicitly to comply. . . the requisite concerted action has been

26   alleged.'" *Id.* (quoting magistrate). Like the dentists in *Delta Dental*, all two million co-

27   conspirators here explicitly agree to the same contractual provisions Plaintiffs now challenge.

28



**B.      Plaintiffs plausibly allege that Amazon's agreement with its co-conspirators not to compete on price unreasonably restrains trade.**

Amazon disregards Rule 12's requirement that the Court construe all allegations as true and in a light most favorable to the Plaintiffs. Instead, it asks the Court to treat its contractual provisions as benign policies to stock its "store" with "competitively priced" products. MTD at 12. Amazon's depiction distorts critical allegations of the complaint. Amazon's co-conspirators are not Amazon's suppliers, but rather unaffiliated retailers, who sell alongside Amazon on Amazon.com. ¶¶ 2, 8, 92-97, 117. Amazon's high seller fees drive up its co-conspirators' prices on Amazon.com. ¶¶ 1, 20, 73-82. On other websites, where they pay lower fees (or none at all) and would otherwise competitively price their goods at a *lower* price, Amazon's price restraints require them to raise their prices at least as high as their prices on Amazon.com. ¶¶ 3, 7, 11-13, 16, 84, 89-91, 117. For example, Molson Hart reports that if Amazon's price restraints did not exist, the same product his company sells for $150 on Amazon.com would sell—at the same profit level—for *$37 less* on his company website. ¶ 12; *see also* ¶¶ 36-40. Plaintiffs provide other examples of reluctant co-conspirators, who, to comply with Amazon's anticompetitive and onerous price restraints, are forced to raise prices on their own websites or on other online marketplaces (like Target or Walmart), or to stop selling outside Amazon.com. ¶¶ 16, 84, 89-91, 117. These allegations plausibly support an unreasonable restraint of trade.

Next, Amazon falsely argues that the challenged provisions (commonly referred to as "most-favored-nation" or "MFN" clauses) "have never been held unlawful, much less per se unlawful." MTD at 14. On the contrary, the Court would be "breaking no new ground in concluding that MFNs, though surely proper in many contexts, can be misused to anticompetitive ends in some cases." *United States v. Apple, Inc.*, 791 F.3d 290, 320 (2d Cir. 2015) (quotation omitted). The government, for example, has entered into consent decrees that require insurers to nullify their MFNs as unreasonable restraints of trade. *See, e.g.*, *United States v. Delta Dental*, 1997 U.S. Dist. LEXIS 11239 (D.R.I. July 2, 1997); *United States v. Med. Mut. of Ohio*, 1998 U.S. Dist. LEXIS 21508 (N.D. Ohio Sept. 30, 1998); *see also United States v. Apple, Inc.*, 889 F. Supp. 2d 623, 629 (S.D.N.Y. 2012) (judgment against publishing companies



required them to terminate agreements with MFNs). As discussed below, many other courts have also held that MFNs can violate the Sherman Act, and in appropriate cases on a *per se* basis. *See* § II(B)(1) and (3).

### 1.    Plaintiffs plausibly allege a *per se* violation.

"[A]rrangements among actual or potential competitors" that threaten "competitive pricing," are *per se* violations of Section 1. *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 23 (1979). A *per se* analysis applies to such agreements even if the competitors do not reach "an explicit agreement on prices to be charged." *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 48 (1990). Amazon's MFN supports a *per se* violation because it threatens competitive pricing by requiring its co-conspiring, retail competitors to refrain from lowering their prices on sites that compete with Amazon.com, when these co-conspirators would otherwise pose significant price competition on other sites.

Because MFNs typically appear in agreements between companies in vertical relationships, *e.g.*, agreements between insurers and hospitals within their network, courts most commonly analyze them under the rule of reason. But under appropriate circumstances, such as this case, they also support a *per se* violation. For example, in *Starr v. Sony BMG Music Entm't*, the Second Circuit held that the plaintiff consumers pled a plausible *per se* price fixing claim against defendant music producers, who used virtually identical MFNs to enforce an industry-wide minimum wholesale price for songs, which artificially inflated the price for digital music. 592 F.3d 314, 323, 326 (2d Cir. 2010). In *United States v. Apple*, the Second Circuit affirmed the trial court's judgment that Apple engaged in a *per se* violation of Section 1 of the Sherman Act by means of a common MFN, much like Amazon's, that barred five major publishers from selling their electronic books at lower prices through other online retailers. 791 F.3d 290. The Second Circuit held that it "need not consider whether the vertical agreements" between Apple and the publishers "restrained trade because all participants agreed to the horizontal restraint, which is 'and ought to be, *per se* unlawful.'" *Id.* at 325 (quoting *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 893 (2007)).

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 9
Case No. 2:20-CV-00424-RAJ

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1    Here Plaintiffs sufficiently allege a *per se* violation based on Amazon's *actual*

2    competition with—and restraint of—its co-conspirators. In a letter to its shareholders, Amazon

3    acknowledged the intense competition it faces from its co-conspirators on Amazon.com. ¶ 8. All

4    products they sell on Amazon.com compete with products that Amazon also sells. ¶ 175. In

5    many cases, Amazon and its co-conspirators sell the exact same product on Amazon.com. ¶¶ 2,

6    8, 9, 17, 94. In such cases, Amazon.com uses an algorithm that pits Amazon and its co-

7    conspirators against each other to become the product's default seller (Buy-box), where most

8    sales are made. ¶ 8, 88. To beat Amazon, its co-conspirator must have a lower price, good

9    reviews, and in most cases, pay an added fee to have Amazon fulfill delivery. ¶¶ 74, 88.

10    To the extent there are any Class Products that do not compete with products Amazon

11    sells, Amazon *potentially* competes for these sales. For purposes of "price fixing in violation of

12    the Sherman Act," a potential competitor must have "the necessary desire, intent, and capability

13    to enter the market at the level of the other competitor." *United States v. Green*, 2007 U.S. Dist.

14    LEXIS 85518, at *12-13 (N.D. Cal. Nov. 7, 2007) (citation omitted). Plaintiffs plausibly allege

15    that Amazon has the requisite desire because it routinely analyzes its competitors' sales on its

16    platform to identify which additional products would be profitable for it to sell and the requisite

17    intent because it only permits products on Amazon.com that fit the categories of goods it sells. ¶¶

18    2, 92, 95-97. Its vast infrastructure gives it the capacity to compete in every product. ¶ 119, 121.

19    The Court should reject Amazon's request to treat its MFN as a vertical restraint based on

20    a *hypothesis* that Amazon would have imposed the same restrictions on its co-conspirators even

21    if Amazon sold no goods. MTD at 12. Adopting Amazon's hypothetical would prevent the Court

22    from giving Plaintiffs "the full benefit of their" allegations by "compartmentalizing the various

23    factual components and wiping the slate clean after scrutiny of each." *Continental Ore Co. v.

24    Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). Its hypothesis ignores allegations

25    that Amazon's own retail sales directly benefit from reduced competition and higher market

26    prices for the goods it sells that are subject to these restraints. ¶¶ 98-101, 107, 154. Amazon also

27    ignores the reality that it *does* sell many of the same products that its co-conspirators also sell on

28    its platform and that its contract *does* restrain pricing on competing platforms, unlike, *e.g.*, eBay,

HAGENS BERMAN

which does neither. If Amazon means to limit "horizontal" to reciprocal restraints, *Palmer* forecloses that argument, holding competing companies' exclusive licensing agreement—which increased only one company's price—to be a *per se* illegal price-fixing agreement. 498 U.S. 46.

        **a.**      **Amazon's restraint on prices its retail competitors offer on competing websites and competing online marketplaces is a horizontal restraint.**

Amazon argues incorrectly that because its price restraints appear within a platform agreement, that necessarily renders them vertical agreements, subject to the rule of reason. MTD at 12. An "agreement among competitors on the way in which they will compete with one another" is a "horizontal agreement." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents*, 468 U.S. 85, 99 (1984). By contrast, "vertical restraints" require "agreement between firms at *different* levels of distribution." *Ohio v. Am. Express Co.*, __U.S.__ , __, 138 S. Ct. 2274, 2284 (2018) (citation omitted, emphasis added). Here Amazon and its co-conspirators operate on the *same* (*i.e.*, horizontal) level of the market, performing the same online retail function and competing for the same online retail customers with respect to the sale of many, if not all, Class Products. ¶¶ 1, 2, 8-10, 17, 72, 75, 92, 107, 117, 136.

Amazon erroneously relies on *Leegin*, where the Supreme Court held that an agreement between a manufacturer and its distributor to set minimum resale prices of the manufacturer's product is not a *per se* offense. 551 U.S. at 886. The *Leegin* Court explained that restraints on the pricing of a company's own brand may encourage competition *between* brands. *Id.* at 890-91, 907. *Leegin* concerns pro-competitive justifications for a manufacturer's pricing of its own brand or product line. It provides no justification for Amazon's imposition of minimum prices for other *companies'* brands or products on sites that *compete with* Amazon.com. ¶¶ 17, 20, 94.

Amazon seeks to align itself with manufacturers that distribute their products both on their own sites and through independent distributors. Amazon claims these "dual distributors" avoid *per se* liability for setting the resale price of their own products. MTD at 11. Notably, Amazon's citations address the applicability of the rule of reason only to *non-price* restraints, but assuming that dual-distributor price restraints do fall under the rule of reason, Amazon would not benefit here because Plaintiffs do not challenge Amazon's pricing of its own brands in resale



1    agreements with distributors. They challenge Amazon's agreement *with other retailers* to fix the

2    price of *competing brands*. The court in *Meyer v. Kalanick* rejected an argument similar to

3    Amazon's on a motion to dismiss a horizontal price fixing claim, alleging an agreement among

4    Uber drivers (allegedly independent contractors) to use Uber's pricing algorithm. 174 F. Supp.

5    3d 817, 826 (S.D.N.Y. 2016). The court held that *Leegin's* justification for the rule of reason did

6    not apply because "Uber is not selling anything to drivers that is then resold to riders." *Id.* That

7    holds true for Amazon, which also does not manufacture or supply the products its co-

8    conspirators sell. ¶¶ 1, 20, 173. The fact that the agreement only constrains its co-conspirators'

9    pricing—and not Amazon's—does not alter the analysis. *See, e.g., Palmer*, 498 U.S. at 47.

10   Critically, competing retailers here agree on "the way in which they will compete with one

11   another" in online sales. *NCAA*, 468 U.S. at 99. This is a *per se* violation.

                    **b.    Courts apply the *per se* analysis to price-fixing or market-allocation**
12                          **agreements between competitors even when those agreements have**
13                          **vertical elements or vertical participants.**

14          Amazon mistakenly relies on *FTC v. Qualcomm Inc.*, 2020 WL 4591476, at *9 (9th. Cir.

15   2020), for the proposition "that novel business practices—especially in technology markets—

16   should not be 'conclusively presumed to be unreasonable.'" *See* MTD at 10. *Qualcomm* does not

17   involve price fixing. "[T]he Sherman Act, so far as price-fixing agreements are concerned,

18   establishes one uniform rule applicable to all industries alike." *United States v. Joyce*, 895 F.3d

19   673, 678 (9th Cir. 2018) (quotation omitted). An agreement among "competing retailers that . . .

20   reduces competition in order to increase price is, and ought to be, *per se* unlawful." *Leegin*, 551

21   U.S.at 893. It "is irrelevant that" Amazon and its co-conspirators' retail price fixing "activities

22   took place in any particular industry[.]" *Joyce*, 895 F.3d at 678.

23          The mere presence of vertical elements or participants does not alter the analysis. For

24   example, in *Palmer*, the Supreme Court held that a horizontal non-compete agreement between

25   rival bar review providers was *per se* price fixing violation even though enacted by a vertical

26   (exclusive licensing) agreement with no explicit agreement on the prices to be charged. Because

27   it "was formed for the purpose and with the effect of raising the price of the bar review course,"

28   it was *per se* illegal. 498 U.S. at 49 (quotation omitted). Similarly, in *C-E Minerals, Inc. v.*

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 12
Case No. 2:20-CV-00424-RAJ

*Carbo Ceramics, Inc.*, the court, in enjoining enforcement of a non-compete provision contained within a supply contract, held that the "fact that such a horizontal allocation agreement is contained within a vertical agreement does not save it" from *per se* analysis. 2012 U.S. Dist. LEXIS 198653, at *10 and *14 (N.D. Ga. Mar. 13, 2012). Here, too, placing its horizontal price restraint within a vertical platform agreement does not insulate Amazon from a *per se* analysis.

Courts have subjected interbrand price-fixing agreements to a *per se* analysis even when a vertical participant facilitates a horizontal price fixing agreement. *See, e.g.*, *Apple*, 791 F.3d at 325; *In re Wellpoint Out-Of-Network "UCR" Rates Litig*, 865 F. Supp. 2d 1002, 1028 (C.D. Cal. 2011) (alleged insurance reimbursement conspiracy: "Defendant cannot escape the *per se* rule for certain horizontal restraints of trade simply because their conspiracy depended upon the participation of a middle-man…."") (quotation, brackets omitted). Plaintiffs present an even more compelling argument for a *per se* analysis than *Apple* and *Wellpoint* because Amazon operates on the same level of distribution and competes for the same customers as its co-conspirators in the sale of millions of Class Products. ¶¶ 1, 2, 8-10, 17, 72, 75, 92, 107, 117, 136.

### c.   Plaintiffs do not "concede" procompetitive effects from Amazon's price restraints.

Amazon argues that Plaintiffs concede potential efficiencies from the challenged conduct and that such concession renders their *per se* claim implausible. MTD at 13. That is incorrect. "*Per se* rules relieve plaintiffs of the burden of proving anticompetitive effects, which are assumed[.]" *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1443 (9th Cir. 1995). Amazon cites inapposite cases. Only *Pa. Ave. Funds v. Borey* asserts a *per se* claim, and there—because securities regulations permitted the challenged agreement—the plaintiffs conceded that their claim depended on proving anticompetitive effects. 569 F. Supp. 2d 1126, 1134 (W.D. Wash. 2008). Here Amazon points to no regulations authorizing its conduct.

Even if the Court were to consider plausible justifications for avoiding the *per se* rule (and it should not), Amazon fails to provide one. Plaintiffs do not "concede" procompetitive benefits of its price restraints. *Contra* MTD at 13. Amazon merely misrepresents Plaintiffs' allegations and seeks improperly to draw inferences in its favor. First, Amazon claims that

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

enforcing its restraints against a co-conspirators, whose products sold at a lower price on Target, is pro-competitive, ignoring that its enforcement implicitly led its co-conspirator to remove its lower-priced options from Target. ¶ 90. Second, it focuses myopically on the competition between Walmart, Amazon, and one of Amazon's co-conspirators that lowered the market price for a brand of dog food. ¶ 100. But it ignores Plaintiffs' remaining allegations, including that Amazon and Walmart both would face more intense competition from Amazon's co-conspirators if Amazon's price restraints were lifted. ¶ 101. *See CRT*, 2016 U.S. Dist. LEXIS 189474, at *127 ("non-conspiring suppliers generally stand to benefit from a price-fixing conspiracy insofar as it . . . increases prices"). Plaintiffs allege a plausible *per se* violation.

### 2. Alternatively, Plaintiffs plausibly assert an unlawful restraint under the quick look analysis.

Plaintiffs' allegations also satisfy the "quick look" approach because "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *Yi v. SK Bakeries, LLC*, 2018 U.S. Dist. LEXIS 220966, at *13-14 (W.D. Wash. Nov. 13, 2018) (quoting *Safeway*, 651 F.3d at 1138). For example, in *Yi*, the court held that the anticompetitive effects of an agreement among franchise owners not to hire each other's employees was obvious without extensive market analysis. *Id.* The court acknowledged that the defendants' pro-competitive justifications "may carry weight at other stages in the litigation," and may require "more extensive market inquiry," but neither were under consideration on a motion to dismiss. *Id.* at 14. Like the no-poaching agreement in *Yi*, the anticompetitive effects of Amazon's price restraints on consumers and on the online market are inherently obvious without consideration of potential procompetitive justifications or extensive market analysis. Amazon relies on *Bay Area Surgical Mgmt., LLC v. Aetna Life Ins. Co.*, 2016 WL 3880989, at *13 (N.D. Cal. July 18, 2016), to argue incorrectly that any possible procompetitive justification forecloses the "quick look." MTD at 14. *Bay Area* merely precludes a quick look approach when the challenged conduct "might plausibly be thought to have a net procompetitive effect, or possibly no effect at all on competition." 2016 WL 3880989, at *13 (quotation omitted). Amazon does not meet this burden. It claims its



1   customers benefit when its co-conspirators offer their lowest prices on Amazon.com. MTD at 13.

2   But it ignores Plaintiffs' common-sense allegations that all consumers, including Amazon's own

3   customers, suffer a net loss by the loss of price competition. ¶¶ 12-14, 16, 18, 21, 36-39, 98, 101,

4   108-116, 117, 119. Plaintiffs therefore also satisfy the "quick look" approach.

### 3. Alternatively, under the rule of reason, Plaintiffs allege a facially plausible market impacted by Amazon's price restraints.

Courts have repeatedly found MFNs anticompetitive under Section 2 or Section 1 under

the rule of reason. *See, e.g.*, *Connell Constr. Co. v. Plumbers & Steamfitters Local Union No.

100*, 421 U.S. 616, 619 (1975) (MFN in union's multiemployer bargaining agreement could

violate Sections 1 and 2 by sheltering union subcontractors); *Staley v. Gilead Scis., Inc.*, 2020

U.S. Dist. LEXIS 36747, at *74-81 (N.D. Cal. Mar. 3, 2020) (MFN in drug manufacturers'

settlement supported Sections 1 and 2 claims, where it was allegedly used to delay entry of a

generic); *Sitts v. Dairy Farmers of Am., Inc.*, 417 F. Supp. 3d 433, 472-76 (D. Vt. 2019)

(denying defendant milk marketing cooperative and its subsidiary's motions for summary

judgment on Sections 1 and 2 claims, where they allegedly used MFNs in agreements with milk

processors to depress prices paid to dairy farmers); *In re Pool Prods. Distrib. Mkt. Antitrust

Litig*, 940 F. Supp. 2d 367, 375 (E.D. La. 2013) (declining to dismiss Section 1 illegal boycott

claim, where the distributor allegedly used MFNs in contracts with manufacturers to suppress its

competitors' ability to compete on price); *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*,

2012 U.S. Dist. LEXIS 170201, at *7, *18 (E.D. Mich. Nov. 30, 2012) (declining to dismiss

healthcare purchasers' Section 1 claim where the defendant insurer allegedly used an MFN in its

agreement with hospitals that inflated prices by providing hospitals higher reimbursement if they

agreed to charge other insurers no less than the defendant); *Nat'l Recycling v. Waste Mgmt. of

Mass. Inc.*, 2007 U.S. Dist. LEXIS 107664, at *8 (D. Mass. July 2, 2007) (denying defendants'

summary judgment motion on Section 1 claim where they allegedly used MFNs to set a price

floor for their competitors). Amazon cannot seriously contend that MFNs, like its own fair

pricing and price parity clauses, operate outside the Sherman Act.

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 15
Case No. 2:20-CV-00424-RAJ

HB   HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

Amazon's primary objection to Plaintiffs' Section 1 rule-of-reason claim and their Section 2 claim rests on its erroneous contention that Plaintiffs fail to allege a relevant product market. *See* MTD at 14–18. On the contrary, Plaintiffs plausibly plead the U.S. ecommerce retail market as the relevant product market impacted by Amazon's anticompetitive conduct. Typically, the relevant product market is a fact-intensive determination that is not suitable for resolving on a motion to dismiss. *United Food & Commer. Workers Local 1776 v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1166 (N.D. Cal. 2017). Only "facially unsustainable" allegations of the relevant market provide grounds for dismissal. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th. Cir. 2008). Amazon fails to demonstrate that Plaintiffs allegations of the product market are facially unsustainable. ¶¶ 32-35, 140-149.

### a.   Plaintiffs plausibly limit the relevant product market to the ecommerce market.

Amazon first incorrectly argues that Plaintiffs define the product market too narrowly by excluding brick-and-mortar stores, which also sell some Class Products. MTD at 14. Product availability does not in itself determine the relevant product market. "Of course customers cross-shop," but the "fact that a customer might buy a stick of gum at a supermarket or at a convenience store does not mean there is no definable groceries market." *FTC v. Whole Foods Mkt., Inc.*, 533 F.3d 869, 881 (D.C. Cir. 2008). Despite the availability of products from other sources, courts have sustained a "premium, natural, and organic supermarkets" product market, which excluded "traditional grocery stores," *id.* at 873, 886, a "department stores market," which excluded "general merchandise, apparel and furniture" stores, *Bon-Ton Stores, Inc. v. May Dep't Stores Co.*, 881 F. Supp. 860, 865, 875 (W.D.N.Y. 1994), and a market for "the sale of consumable office supplies through office supply superstores," which excluded sales of such goods through other outlets. *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1080 (D.D.C. 1997).

Several courts in this Circuit have sustained allegations of distinct ecommerce markets that exclude brick-and-mortar stores. *See, e.g.*, *Distance Learning Co. v. Maynard*, 2020 U.S. Dist. LEXIS 99256, at *20 (N.D. Cal. June 4, 2020) (distinct market for online driving schools, where plaintiffs alleged greater convenience, accessibility, affordability, and efficiency in



comparison to brick and mortar schools); *Origami Owl LLC v. Mayo*, 2015 U.S. Dist. LEXIS 103755, at *8 (D. Ariz. Aug. 7, 2015) (ecommerce market for customized jewelry, where plaintiffs plausibly alleged that local retail stores do not have the same inventory or electronic ordering efficiency as an online market); *In re Ebay Seller Antitrust Litig.*, 2010 U.S. Dist. LEXIS 19480, at *19 (N.D. Cal. Mar. 4, 2010) (evidence of peculiar characteristics, distinct customers, and "unique way of retailing" established a triable issue of fact as to whether "online auctions" represents the relevant product market); *LiveUniverse, Inc. v. MySpace, Inc.*, 2007 U.S. Dist. LEXIS 43739, at *18 (C.D. Cal. June 4, 2007) (distinct internet-based social networking website market, where plaintiffs alleged "interactive, user-generated aspects . . . to collectively determine" the networks of friends).

Here, Plaintiffs plausibly allege similar factors to support an ecommerce retail market distinct from brick-and-mortar stores. ¶¶ 140-149. Economists recognize that ecommerce represents a fundamentally different environment from traditional retailing. ¶ 142. The U.S. Census Bureau separately tracks and reports ecommerce sales data. ¶ 141. Established retailers, like Walmart and Target, compete primarily in physical stores and derive only about 5% of their revenue from online sales. ¶ 146. Ecommerce retailers have minimal overhead and can charge different, usually lower prices than physical retailers. ¶ 141. They attract a distinct, predominantly younger demographic, where customers experience 24/7 availability, no lines, and greater inventory, and where they can more easily compare prices and save time, energy and fuel. ¶¶ 147-49. Online retailers have direct or easy access to detailed non-shopping information about their customers that allows them to personalize an online shopping experience in ways unavailable to brick-and-mortar stores. ¶ 144. These allegations of a distinct ecommerce market distinguish Plaintiffs' allegations from the cases on which Amazon relies. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) (lack of facts plausibly demonstrating a distinct advertising market for commercial breaks during golf tournaments); *PSKS, Inc. v. Leegin Creative Leather Prods.*, 615 F.3d 412, 416, 418 (5th Cir. 2010) (implausible market where the plaintiff failed to allege why name brand goods "are not interchangeable with non-brand name" women's accessories). *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292  206.623.0594 FAX

612, 621 (S.D.N.Y. 2013) (allegations of e-books market inconsistent with market share allegations based on the sale of print books). *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, favors Plaintiffs because it found support for a distinct market limited to original equipment major brand, vintage tires. 275 F.3d 762, 768 (9th Cir. 2001).

###### b.   Plaintiffs' market allegations encompass the broad range of products affected by its price restraints.

Amazon next argues that Plaintiffs have defined the market too broadly because it includes a diverse set of products that are not reasonably interchangeable with each other. MTD at 17. The relevant product "market must encompass the product[s] at issue as well as all economic substitutes for the product[s]." *Newcal Indus.*, 513 F.3d at 1045. Amazon does not dispute that the asserted ecommerce retail market includes reasonable substitutes for Class Products. Instead, it erroneously conflates the scope of affected products (Class Products) with the "reasonable interchangeability" of their economic substitutes. But courts commonly recognize that a defendant's anticompetitive activity may affect a broad range of products or services that are not interchangeable with each other, like the diverse products sold at organic supermarkets, department stores, and office supply superstores. *See* § II(B)(3)(a) above. The relevant market in *Brown Shoe v. United States*, consisted of a vast set of products—women's, men's and children's shoes of all styles and price-range—that were not interchangeable with each other. 370 U.S. 294, 327 (1962). *See also In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599 (7th Cir. 1997) (allowing case to proceed to trial, alleging an industry-wide conspiracy to fix the prices of thousands of brand name prescription drugs); *Ariz. v. Maricopa Cty. Med. Soc.*, 457 U.S. 332, 357 (1982) (state was entitled to summary judgment on county-wide price fixing conspiracy among a wide variety of non-competing medical practices).

The vast array of affected products alleged by Plaintiffs accurately reflects the massive scope of products subject to Amazon's price restraints. ¶¶ 32-35. The cases Amazon relies on are inapposite. *See, e.g., Blizzard Entm't Inc. v. Ceiling Fan Software LLC*, 2013 WL 12143935, at *3 (C.D. Cal. Jan. 1, 2013) (failure to allege that products included in the product market were reasonably interchangeable with the affected products); *Golden Gate Pharmacy Servs., Inc. v.*

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 18
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

*Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011) (market consisted only of the defendants' products and omitted interchangeable substitutes); *Universal Grading Serv. v. eBay, Inc.*, 563 F. App'x 571, 572-73 (9th Cir. 2014) (failure to allege injury in "[t]he only market in which eBay was alleged to have a monopoly"); *Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 354 (S.D.N.Y. 2009) (on summary judgment, plaintiff failed to submit evidence supporting a distinct product market for "one-stop shopping for large corporations for immigration services all over the world").

### c. Plaintiffs' allege plausible submarkets.

Amazon raises no new arguments with respect to submarkets. *See* MTD at 18. For the same reasons that the Court should reject Amazon's challenge to the plausibility of the ecommerce market, it should also reject objections to the alternative ecommerce submarkets.

### 4. Plaintiffs also assert valid claims under California and Maryland's antitrust laws, which treat vertical price restraints as *per se* violations.

Even if Amazon's price restraints could be considered "[v]ertical price restraints," they are "per se unlawful under" California's antitrust statute, *Darush v. Revision LP*, 2013 U.S. Dist. LEXIS 60084, at *16 (C.D. Cal. Apr. 10, 2013), and under Maryland's antitrust statute. *Yellow Cab Co. v. Uber Techs., Inc.*, 2015 U.S. Dist. LEXIS 109417, at *14 (D. Md. Aug. 19, 2015). Amazon incorrectly argues that California and Maryland only prohibit minimum resale prices. MTD at 23. On the contrary, in *Mailand v. Burckle*, the California Supreme Court held that a dairy franchise agreement—which required the franchisees to purchase gasoline from a third-party supplier and sell it at a price set by the franchisor—was illegal *per se* even though the franchisor was not selling gasoline to the franchisees for resale and the gasoline supplier was not fixing the price of its product. 572 P.2d 1142, 1148 (Cal. 1978). Even though Uber does not supply goods for resale, the *Yellow Cab* court likewise held that allegations that Uber required its drivers to adhere to a common pricing scheme supported a *per se* violation of the Maryland Antitrust Act. 2015 U.S. Dist. LEXIS 109417, at *6, *14.

Amazon's reliance on *Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242 (2003), is also misplaced. *Kunert* did not address Maryland law, and it rejected the California price



fixing claim not because the agreement between car dealerships and lenders occurred outside of a dealer/supplier relationship but because the plaintiffs made no allegations that the lender "set the financing rate dealers must charge their customers, or made any effort whatsoever to restrict the financing rate charged by the dealer." *Id*. at 264. By contrast, here Amazon enforces its price restraints against its co-conspirators. ¶¶ 3-7, 17, 82-86, 89, 92, 103-07, 117.

### III.   Plaintiffs plausibly allege violations under Section 2 of the Sherman Act.

With respect to Plaintiffs monopoly and attempted monopoly claims, Amazon only challenges willful acquisition through anticompetitive conduct and causal injury. MTD at 18-23.

### A.   Plaintiffs' allegations of price restraints demonstrate anticompetitive behavior under Section 2.

Amazon incorrectly contends that its alleged policies do not constitute anticompetitive conduct for purposes of Section 2. *See* MTD at 18–21. Plaintiffs' allegations in support of their Section 1 claim also satisfy the anticompetitive conduct required for attempted monopoly claims. *See United States v. Griffith*, 334 U.S. 100, 106 (1948) ("[R]estraints of trade which are cognizable under § 1" demonstrate willful acquisition or maintenance under Section 2). Plaintiffs plausibly allege that Amazon acquired its monopoly power for its platform through price fixing. *See* § II(B)(3) above (discussing cases holding that misuse of an MFN can support monopoly claims). Amazon's outdated citations are distinguishable, and they do not support the proposition that companies can never use MFNs to acquire or maintain monopoly power willfully. *See* MTD at 19-20. *Kartell v. Blue Shield*, held that an insurance provision—limiting physicians to the amount of their reimbursement and not permitting them to charge extra fees to the insureds—was procompetitive because it reduced its insureds' costs. 749 F.2d 922, 924 (1st Cir. 1984). *Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*, only considered whether Section 2 prohibits an MFN that has the effect of excluding rivals without considering the anticompetitive effects of eliminating discounts to uninsured patients or patients with lower-cost plans. 883 F.2d 1101 (1st Cir. 1989). The plaintiff competitor in *SmileCare Dental Group v. Delta Dental Plan*, failed to allege a plausible monopoly claim because it conceded the legality of defendant's co-payment scheme, which pre-dated the plaintiff and was not used to bar its



entry into the market. 88 F.3d 780, 786 (9th Cir. 1996). Similarly, the court in *Kitsap Physicians Serv. v. Wash. Dental Serv.*, denied the plaintiff competitor's motion for an injunction, where the defendant had little market share, the MFN predated the complaint by nine years, and there was no indication it was used for predatory purposes. 671 F. Supp. 1267, 1270 (W.D. Wash. 1987). Plaintiffs here plausibly allege harm to consumers and competition. ¶¶ 12-14, 16, 18, 21, 36-39, 98, 101, 108-116, 117, 119.

Amazon's argument about procompetitive effects "is misplaced." *In re eBay Seller Antitrust Litig*, 545 F. Supp. 2d 1027, 1033 (N.D. Cal. 2008); *see* MTD at 19. While a "procompetitive benefit may rebut a *prima facie* case," Plaintiffs need only "establish a *prima facie* case" to survive a motion to dismiss monopoly claims. *Id.* None of the cases Amazon relies on refutes this. *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir. 1997) (sufficiency of the evidence presented at trial); *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991 (9th Cir. 2010) (summary judgment). *Pac. Bell Tel. Co. v. linkLine Communs., Inc.*, 555 U.S. 438, 450 (2009) (judgment reversed because defendant had "no antitrust duty to deal with its competitors at wholesale" or provide "terms and conditions that the rivals find commercially advantageous"); *Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 410 (2004) (dismissal affirmed because "insufficient assistance in the provision of service to rivals is not a recognized antitrust claim").

Even if the Court were to consider Amazon's purported justifications, they do not render Plaintiffs' monopoly claim implausible. No consumers, including Amazon's customers, benefit from less online competition, nor does Amazon need price restraints to prevent free-riding from its co-conspirators. Amazon already severely limits their communications with platform customers and suspends their accounts if they divert customers away from Amazon.com. ¶ 155.

**B.  Plaintiffs plausibly allege anticompetitive harm, in the form of overcharges caused by Amazon's conduct.**

Amazon erroneously contends that Plaintiffs do not allege plausible anticompetitive harm. *See* MTD at 21–24. On the contrary, allegations of "supracompetitive prices," supported by facts, showing that its co-conspirators would sell Class Products for a substantially lower

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 21
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

price outside of Amazon.com, if the restraints were lifted, directly demonstrates "injury to competition." *Rebel Oil*, 51 F.3d at 1434; *see* § I(A) and (B) above; ¶¶ 12-14, 16, 18, 21, 36-39, 98, 101, 108-116, 117, 119. These allegations of injury to retail competition and consumers are sufficient to support Plaintiffs' Section 1 rule-of-reason claim and Section 2 claims. *Brantley v. NBC Universal, Inc.*, cited by Amazon, supports Plaintiffs, holding that "reduced consumer choice and increased prices . . . establish an injury to competition . . . when they are the result of an anticompetitive practice[.]" 675 F.3d 1192, 1202 n.11 (9th Cir. 2012). None of Amazon's authorities supports its contention that Plaintiffs must also allege a mass departure of retailers from the market or a reduction of output. *See* MTD at 22. *Prime Healthcare Servs. v. SEIU*, 642 F. App'x 665, 667 (9th Cir. 2016) (dismissed for failure to allege injury to consumers or to competition); *Feitelson v. Google, Inc.*, 80 F. Supp. 3d 1019, 1032 (N.D. Cal. 2015) (failure to allege any facts showing that the challenged licensing agreement supported a claim for exclusive dealing); *Randy's Ring & Pinion Serv. Inc. v. Eaton Corp.*, 2009 WL 10727790, at *9 (W.D. Wash. 2009) (failure to allege any facts supporting predatory pricing or tying); *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1082 (S.D. Cal. 2012) (allegations of conduct on Facebook's own website failed to support a claim for exclusionary conduct).

## IV. Plaintiffs adequately allege their state law causes of action.

Amazon incorrectly contends that Plaintiffs fail to allege state-law antitrust, consumer protection, and unjust enrichment claims adequately. *See* MTD at 23–24. *Adams v. Target*, cited by Amazon, is distinguishable because the plaintiff there listed various statutes without alleging how the defendant's conduct violated them. 2014 WL 12558290, at *6 (C.D. Cal. Mar. 3, 2014). By contrast, Plaintiffs here plausibly allege that the same factual predicates that support their federal antitrust claims also support violations of the asserted state antitrust and unfair competition laws. *See, e.g.*, *In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 249-269 (S.D.N.Y. 2019) ("*Keurig*") (permitting state antitrust and unfair competition law claims based on monopoly allegations); *In re Zetia Ezetimibe Antitrust Litig.*, 2019 U.S. Dist. LEXIS 59469, at *93-102 (E.D. Va. Feb. 6, 2019) ("*Zetia*") (permitting state antitrust and unfair competition law claims based on price fixing allegations). If the Court

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

requires allegations that are more detailed, Plaintiffs ask for leave to amend. Because Amazon only challenges the sufficiency of their Kentucky and Massachusetts claims, Plaintiffs limit their responses to those states. *See Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 309 (Mass. 2002) (antitrust violations state a violation of G. L. c. 93A); *Ky. v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 705 (W.D. Ky. 2016) ("a claim under the Sherman Act . . . also establish[es] a claim under the KCPA") (citation omitted). Amazon is also incorrect that dismissal of federal claims would require dismissal of state law claims. MTD at 23. For example, the *Keurig* court allowed plaintiffs, who failed to meet standing under the Clayton Act, to proceed under state laws, which apply a different standing analysis. 383 F. Supp. 3d at 255-265.

Amazon's objections to Plaintiffs' unjust enrichment claims are also off base. MTD at 24. Because the elements are essentially the same in every jurisdiction, the court in *Zetia* did not require reiteration for each jurisdiction. 2019 U.S. Dist. LEXIS 59469, at *112. Nor is it required here where Plaintiffs plausibly allege unjust enrichment under the laws of 41 jurisdictions that do not require that the plaintiff confer a direct benefit on the defendant and therefore would permit claims of overcharges caused by Amazon but paid to another. *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, 2018 U.S. Dist. LEXIS 220574, at *156-80 (S.D.N.Y. Dec. 26, 2018) (no direct benefit required in Alabama, Illinois, Rhode Island, Utah, and Washington); *Keurig*, 383 F. Supp. 3d at 269-73 (Arizona, Arkansas, the District of Columbia, Iowa, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, Oregon, South Dakota, Vermont, and Wisconsin); *Zetia*, 2019 U.S. Dist. LEXIS 59469, at *115 (North Carolina and North Dakota); *In re Polaris Mktg., Sales Practices, & Prods. Liab. Litig*, 2020 U.S. Dist. LEXIS 32822, at *16 (D. Minn. Feb. 26, 2020) (Texas); not required under the laws of the forum state: *Nava v. Kobe Steel, Ltd.*, 2019 U.S. Dist. LEXIS 179577, at *2 (N.D. Cal. Oct. 8, 2019); *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008); *Town of New Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 592, 618 (Conn. 2009); *Lumford v. Ota*, 434 P.3d 1215, 1222 (Haw. Ct. App. 2018); *Bloombank v. United Fid. Bank F.S.B.*, 113 N.E.3d 708, 729 (Ind. Ct. App. 2018); *Nature Conservancy v. Upland Props., LLC*, 48 So. 3d 1257, 1261 (La. App. 2010); *Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 574 (Md. App. 2007); *Webb v. Dr Pepper Snapple*

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 23
Case No. 2:20-CV-00424-RAJ

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

*Group, Inc.*, 2018 U.S. Dist. LEXIS 71270, at *17 (W.D. Mo. Apr. 25, 2018); *N. Cheyenne Tribe v. Roman Catholic Church*, 296 P.3d 450, 458 (Mont. 2013); *Kalkowski v. Neb. Nat'l Trails Museum Found. Inc.*, 862 N.W.2d 294, 302 (Neb. 2015); *City of Tulsa v. Bank of Okla., N.A.*, 280 P.3d 314, 319-320 (Okla. 2011); *Commonwealth v. TP Pharm. Prods., Inc.*, 885 A.2d 1127, 1137-38 (Pa. Commw. Ct. 2005); *Dema v. Tenet Physician Services-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009); *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *Huston v. Martin*, 919 N.W.2d 356, 366 (S.D. 2018); *Tsui v. Sobral*, 39 Va. Cir. 486, 488 (Cir. Ct. 1996); *Cross v. Berg Lumber Co.*, 7 P.3d 922, 934 (Wyo. 2000).

Finally, Amazon erroneously argues that Plaintiffs have standing only to assert the laws of the states in which they made purchases. *See* MTD at 23. But it relies on cases that pre-date the Ninth Circuit's opinion in *Melendres v. Arpaio*, holding that "issues regarding the relationship between the class representative and the passive class members . . . are relevant only to class certification, not to standing." 784 F.3d 1254, 1262 (9th Cir. 2015) (quotation omitted). Deferring questions of Plaintiffs' standing to represent residents of other states until class certification is also appropriate because all claims have the same factual predicates and will not significantly alter the scope of discovery. *Kutza v. Williams-Sonoma, Inc.*, 2018 U.S. Dist. LEXIS 192456, at *8 (N.D. Cal. Nov. 9, 2018).

## CONCLUSION

For these reasons, the Court should deny in its entirety Defendant's Motion to Dismiss. Alternatively, if the Court requires allegations that are more detailed, Plaintiffs ask for leave to amend.



DATED: October 2, 2020                    Respectfully submitted,

                                          HAGENS BERMAN SOBOL SHAPIRO LLP

                                          By:___/s/Steve W. Berman_____
                                                 Steve W. Berman, WSBA #12536
                                          By: /s/ Barbara A. Mahoney_____
                                           Barbara A. Mahoney, WSBA #31845

                                          1301 Second Avenue, Suite 2000
                                          Seattle, WA 98101
                                          Telephone: (206) 623-7292
                                          Facsimile: (206) 623-0594
                                          steve@hbsslaw.com
                                          barbaram@hbsslaw.com

                                          KELLER ROHRBACK L.L.P.

                                          By:____/s/ Derek W. Loeser_____
                                           Derek W. Loeser, WSBA No. 24274

                                          1201 Third Avenue, Suite 3200
                                          Seattle, WA 98101-3052
                                          Telephone: (206) 623-1900
                                          Facsimile: (206) 623-3384
                                          E-mail:  Dloeser@kellerrohrback.com


                                          *Attorneys for Plaintiffs and the Proposed Class*



1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on October 2, 2020, a true and correct copy of the foregoing was

3

filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

4

*/s/ Steve W. Berman*
Steve W. Berman

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 26
Case No. 2:20-CV-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX