The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH FRAME-WILSON, CHRISTIAN
SABOL, SAMANTHIA RUSSELL, ARTHUR
SCHAREIN, LIONEL KEROS, NATHAN
CHANEY, CHRIS GULLEY, SHERYL
TAYLOR-HOLLY, ANTHONY COURTNEY,
DAVE WESTROPE, STACY DUTILL,
SARAH ARRINGTON, MARY ELLIOT,
HEATHER GEESEY, STEVE MORTILLARO,
CHAUNDA LEWIS, ADRIAN HENNEN,
GLENDA R. HILL, GAIL MURPHY,
PHYLLIS HUSTER, and GERRY
KOCHENDORFER, on behalf of themselves
and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation,

Defendant.

Case No. 2:20-cv-00424-RAJ

AMAZON.COM, INC.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT

*NOTE ON MOTION CALENDAR:*
July 22, 2022

**Oral Argument Requested**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 4

    A.    The Court's Ruling on Amazon's Motion to Dismiss the First Amended Complaint ............................................................................................. 4

    B.    The Second Amended Complaint's Theories of Liability ................................. 4

ARGUMENT ............................................................................................................... 6

I.    Plaintiffs Have Not Cured the First Amended Complaint's Standing Defects ................ 6

    A.    Plaintiffs Fail to Satisfy the Requirements for Co-Conspirator Standing ............ 6

    B.    Plaintiffs Lack Standing to Assert Claims Based on Purchases from Non-Conspiring Sellers under an Umbrella Theory. .................................... 12

    C.    Plaintiffs Lack Article III Standing to Assert Claims Based on Purchases from Third-Party Sellers from Whom Plaintiffs Did Not Purchase. ................. 15

II.    Plaintiffs' Attempt to Revive Their Sherman Act, Section 1 *Per Se* Claims Fails ......... 17

III.    Plaintiffs' Sherman Act, Section 2 Claims Fail to Allege Anticompetitive Conduct Because the Fair Pricing Policy's Plain Language Contradicts Plaintiffs' Allegations. ........................................................................................ 19

IV.    Plaintiffs Fail to Allege that Each Third-Party Seller Has Market Power and Each of the Alleged Vertical Conspiracies Resulted in Anticompetitive Effects .................. 21

V.    Plaintiffs' Cartwright Act Claim Fails for the Same Reasons Their Claims Under the Sherman Act Fail. .............................................................................. 23

CONCLUSION ........................................................................................................... 24

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2238 Victory Corp.* v. *Fjallraven USA Retail, LLC*,
   2021 WL 76334 (S.D.N.Y. Jan. 8, 2021) ...............................................................18

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
   2007 WL 1689899 (N.D. Cal. June 11, 2007) .......................................................15

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   19 F.4th 127 (2d Cir. 2021) ............................................................................13, 14

*Antoine L. Garabet, M.D., Inc.* v. *Autonomous Techs. Corp.*,
   116 F. Supp. 2d 1159 (C.D. Cal. 2000) ............................................................14, 15

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009)...............................................................................................20

*Associated Gen. Contractors of Cal., Inc.* v. *Cal. State Council of Carpenters*,
   459 U.S. 519 (1983)......................................................................................... *passim*

*In re ATM Antitrust Fee Litig.*,
   686 F.3d 741 (9th Cir. 2012) .............................................................6, 10, 11, 12

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007)...............................................................................................20

*Broad. Music, Inc.* v. *Columbia Broad. Sys., Inc.*,
   441 U.S. 1 (1979)...................................................................................................18

*In re Cipro Cases I & II*,
   61 Cal. 4th 116 (2015) ..........................................................................................23

*Cont'l T.V., Inc.* v. *GTE Sylvania Inc.*,
   433 U.S. 36 (1977).................................................................................................18

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
   691 F.2d 1335 (9th Cir. 1982) ......................................................................9, 10, 14

*Costco Wholesale Corp.* v. *AU Optronics Corp.*,
   2014 WL 4723880 (W.D. Wash. Sept. 23, 2014)..................................................14

*Dickson* v. *Microsoft Corp.*,
   309 F.3d 193 (4th Cir. 2002) .............................................................................21, 22

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*In re Ditropan XL Antitrust Litig.*,
   2007 WL 2978329 (N.D. Cal. Oct. 11, 2007) ..........................................................................9

*Edifecs Inc* v. *TIBCO Software, Inc.*,
   756 F. Supp. 2d 1313 (W.D. Wash. 2010) ..........................................................................19

*Epic Games, Inc.* v. *Apple Inc.*,
   2021 WL 4128925 (N.D. Cal. Sept. 10, 2021) ...................................................................23

*In re EpiPen Direct Purchaser Litig.*,
   2022 WL 1017770 (D. Minn. Apr. 5, 2022) ..................................................................21, 22

*FTC* v. *Mylan Labs., Inc.*,
   62 F. Supp. 2d 25 (D.D.C. 1999) ......................................................................................15

*Gross* v. *New Balance Athletic Shoe, Inc.*,
   955 F. Supp. 242 (S.D.N.Y. 1997) ...................................................................................14

*Hanover Shoe, Inc.* v. *United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) ............................................................................................................6

*Harkins Amusement Enters., Inc.* v. *Gen. Cinema Corp.*,
   850 F.2d 477 (9th Cir.1988) ...............................................................................................8

*Ill. Brick Co.* v. *Illinois*,
   431 U.S. 720 (1977) .................................................................................................. *passim*

*Ixchel Pharma., LLC* v. *Biogen*,
   9 Cal.5th 1130 (2020) .......................................................................................................23

*Jain Irrigation, Inc.* v. *Netafim Irrigation, Inc.*,
   386 F. Supp. 3d 1308 (E.D. Cal. 2019) ............................................................................23

*Jones* v. *Micron Tech. Inc.*,
   400 F. Supp. 3d 897 (N.D. Cal. 2000) ........................................................................14, 16

*Lazy Y Ranch Ltd.* v. *Behrens*,
   546 F.3d 580 (9th Cir. 2008) ............................................................................................20

*Leeder* v. *Nat'l Ass'n of Realtors*,
   2022 WL 1307100 (N.D. Ill. May 2, 2022) ......................................................................11

*Leegin Creative Leather Prods., Inc.* v. *PSKS, Inc.*,
   551 U.S. 877 (2007) ..........................................................................................................18

*Lenhoff Enters., Inc.* v. *United Talent Agency*,
   2015 WL 7008185 (C.D. Cal. Sept. 18, 2015) ...............................................................7, 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Marion Diagnostics Ctr., LLC* v. *Becton Dickinson & Co.*,
    29 F.4th 337 (7th Cir. 2022) ........................................................................................16, 17

*In re Microsoft Corp. Antitrust Litig.*,
    127 F. Supp. 2d 728 (D. Md. 2001), *aff'd*, 309 F.3d 193 (4th Cir. 2002) ...............................9

*Mid-West Paper Prods. Co.* v. *Cont'l Grp., Inc.*,
    596 F.2d 573 (3d Cir. 1979)....................................................................................................14

*Monoper* v. *Boeing Co.*,
    104 F. Supp. 3d 1170 (W.D. Wash. 2015)..............................................................................19

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
    933 F.3d 1136 (9th Cir. 2019) ..................................................................................................6

*NCAA* v. *Alston*,
    141 S. Ct. 2141 (2021) ...........................................................................................................18

*Nelsen* v. *King Cty.*,
    895 F.2d 1248 (9th Cir. 1990) ...............................................................................................15

*NorthBay Healthcare Grp., Inc.* v. *Kaiser Found. Health Plan, Inc.*,
    2017 WL 5059299 (N.D. Cal. Dec. 17, 2017) .........................................................................8

*Oliver* v. *Am. Express Co.*,
    2020 WL 2079510 (E.D.N.Y. 2020)......................................................................................14

*In re Online DVD Rental Antitrust Litig.*,
    2011 WL 1629663 (N.D. Cal. Apr. 29, 2011) .......................................................................14

*Paladin Assocs.* v. *Mont. Power Co.*,
    328 F.3d 1145 (9th Cir. 2003) .............................................................................................7, 8

*Rebel Oil, Inc.* v. *Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ...............................................................................................7, 8

*Sonterra Capital Master Fund Ltd.* v. *Barclays*,
    366 F. Supp.3d 516 (S.D.N.Y. 2018)....................................................................................12

*Spokeo, Inc.* v. *Robbins*,
    578 U.S. 330 (2016)...........................................................................................................7, 15

*Staley* v. *Gilead Scis. Inc.*,
    2022 WL 1158006 (N.D. Cal. Apr. 19, 2022) .........................................................................7

*Stanislaus Food Prods. Co.* v. *USS-Posco Indus.*,
    2010 WL 3521979 (E.D. Cal. 2010)........................................................................................9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Terminalift, LLC* v. *Int'l Longshore & Warehouse Union Local 29*,
2013 WL 215479 (S.D. Cal. May 17, 2013)............................................................8

*In re Vitamins Antitrust Litig.*,
2001 WL 855463 (D.D.C. July 2, 2001)............................................................14

**Statutes**

Sherman Act, 15 U.S.C. § 1 ................................................................... *passim*

Sherman Act, 15 U.S.C. § 2 ................................................................... *passim*

Cartwright Act, Cal. Bus. & Prof. Code §§ 16700–16770 ..........................5, 23

D.C. Code § 28-4102 ....................................................................................20

Idaho Code § 48-603(19) ..............................................................................20

Iowa Admin. Code r. 61-31.1(714) ...............................................................20

La. Stat. Ann. § 29.732 .................................................................................20

Mo. Code Regs. tit. 15, §§ 60-8.030(1)(B)–(C) ...........................................20

N.C. Gen. Stat. § 75-38(a) ............................................................................20

Tex. Bus. & Com. Code Ann. § 17.46(b)(27) ..............................................20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**INTRODUCTION**

Plaintiffs' Second Amended Complaint ("SAC") continues to challenge policies that promote low competitive prices for consumers shopping in Amazon's store. The antitrust laws encourage such policies, rather than condemn them. Mindful of the Court's prior ruling on its motion to dismiss the First Amended Complaint ("FAC"), Amazon does not seek to reargue points the Court decided. Instead, Amazon moves to dismiss the SAC because Plaintiffs lack standing to assert their antitrust claims for reasons the Court did not previously reach, and because the plain language of Amazon's Marketplace Fair Pricing Policy, which the Court did not previously consider, contradicts the core allegations that form the basis for Plaintiffs' claims. The Court should dismiss the SAC for the following reasons:

*First*, Plaintiffs lack standing. In prior briefing, Plaintiffs treated co-conspirator and umbrella standing theories as if they were interchangeable and did not clearly distinguish between those Plaintiffs who purchased from third-party sellers who sell in Amazon's store—the sellers Plaintiffs label as "co-conspirators"[1]—and those who purchased from other online retailers. Dkt. 19 at 5–7. The SAC makes clear that many of the purchases on which Plaintiffs' claims depend were from retail stores such as Walmart, Target, Costco, REI, and CVS that sell online, but do not sell in *Amazon's* store. Because these sellers are not even alleged to be antitrust "co-conspirators," antitrust standing to assert claims based on purchases from these sellers cannot be based on a co-conspirator theory and must be analyzed separately. But whether Plaintiffs' claims are based on purchases from alleged conspiring or non-conspiring sellers, Plaintiffs lack antitrust standing.

For claims based on purchases from alleged co-conspirator sellers, Plaintiffs have failed to satisfy the requirements for antitrust standing based on a co-conspirator theory because, among other things, they have not joined the alleged "co-conspirator" sellers as defendants, as Ninth

---

[1] To be clear, no evidence supports Plaintiffs' allegation that the almost two million sellers in Amazon's store, selling hundreds of millions of different products ranging from lotions to staplers to spark plugs, are Amazon's "co-conspirators." But even accepting that allegation as true for purposes of this motion, Plaintiffs still do not have antitrust standing.

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Circuit law requires.  In addition, the claims in the SAC based on purchases from alleged co-conspirator sellers rest on a pass-on theory of liability, alleging that the fees and commissions that Amazon charges third-party sellers for offering products in Amazon's store are "baked into the prices" that third-party sellers charge when selling outside Amazon's store as a result of the former parity provision and the Fair Pricing Policy.  SAC ¶ 125.  Ninth Circuit law does not permit co-conspirator standing based on a pass-on theory of liability because of the unacceptable risk of duplicative recovery that would arise if the alleged co-conspirators later brought claims of their own and succeeded in proving they were not co-conspirators.

Plaintiffs' claims based on purchases from sellers *not* alleged to be co-conspirators—online sellers like Walmart, Target, Costco, REI, and CVS, and the countless other sellers that sell products online—violate the bright-line rule that only direct purchasers of an alleged antitrust violator have antitrust standing.  To get around this rule, Plaintiffs have argued that they have antitrust standing based on an umbrella theory—that is, the policies that govern sales in Amazon's store supposedly created a price umbrella that caused consumers to pay higher prices outside Amazon's store, even on purchases from sellers not alleged to be co-conspirators.  Dkt. 19 at 6.  In addition to alleging injury unprecedented in scope across the entire internet and affecting nearly every product sold there, this theory is inconsistent with Supreme Court precedent because there is no direct causal connection between the policies that govern sales in Amazon's store and the independent pricing decisions of Walmart, Target, Costco, REI, and CVS, and the countless other online sellers that do not sell in Amazon's store.  Moreover, Plaintiffs lack both Article III and antitrust standing to sue based on purchases of products from sellers other than the sellers from which Plaintiffs purchased.

*Second*, Plaintiffs' new allegations in the SAC regarding the Fair Pricing Policy are implausible because they contradict the plain language of that policy and what it requires.  Even on a motion to dismiss, the Court should not accept as true allegations that contradict the policy's plain language.  The language of Amazon's Fair Pricing Policy itself belies the SAC's allegations that the policy prohibits lower prices outside Amazon's store.  Amazon's Fair Pricing Policy

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

prohibits "Setting a price on a product or service that is *significantly higher* than recent prices offered on or off Amazon."  By its terms, the policy permits sellers in Amazon's store to offer lower prices outside Amazon's store; what it prohibits is price gouging in Amazon's store by sellers offering products at "significantly higher" prices than recent prices on and off Amazon.  And nothing in the policy requires third-party sellers to add Amazon fees to the cost of their products when they sell outside Amazon's store; if sellers can charge lower prices to consumers, then the policy does not prevent them from doing so.  There is nothing illegal about a policy that prohibits price gouging (as many state laws do), and Plaintiffs' conclusory assertions to the contrary are not enough to survive dismissal.

*Third*, the Court should dismiss the SAC because it fails to allege market power or anticompetitive effects.  Because Plaintiffs' claims are based on allegations of almost two million separate vertical conspiracies relating to the pricing of hundreds of millions of different products (again, the SAC's reach is unprecedented in scope), Plaintiffs must allege facts suggesting that each alleged conspiratorial agreement between Amazon and a third-party seller is likely to result in an anticompetitive effect.  To do so requires alleging that each third-party seller has market power to bring about such effect—otherwise, the effects that Plaintiffs purport to condemn could not be the result of any "conspiracy."  Plaintiffs fail to allege that any of the third-party sellers have market power or that any of the agreements they challenge—let alone all of them—had an anticompetitive effect.

*Finally*, Plaintiffs' re-pleaded claims alleging a *per se* violation of Section 1 of the Sherman Act and the California Cartwright Act continue to fail for the reasons this Court has held.  The policies that form the basis of Plaintiffs' claims relate to a vertical relationship, not a horizontal one.  Plaintiffs lack any authority to say that policies such as those at issue in this case would fall into one of the narrow categories subject to *per se* prohibition.  Any antitrust claims directed at such policies, whether under federal or state law, must be analyzed under the rule of reason.

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 3

## BACKGROUND

### A.      The Court's Ruling on Amazon's Motion to Dismiss the First Amended Complaint

The Court granted in part and denied in part Amazon's motion to dismiss Plaintiffs' First Amended Complaint.  The Court held:

- Plaintiffs have antitrust standing to pursue claims "as direct purchasers of alleged antitrust co-conspirators," Dkt. 48 at 8;

- Plaintiffs failed to state a *per se* Sherman Act, Section 1 claim because the former parity provision and the Fair Pricing Policy govern vertical—not horizontal— relationships and, to the extent there are vertical and horizontal aspects to the relationship between Amazon and third-party sellers in Amazon's store, those hybrid relationships are subject to the rule of reason, *id.* at 11–13; and

- Plaintiffs' Sherman Act, Section 2 monopolization and attempted monopolization claims were viable because the Fair Pricing Policy allegedly "requires sellers to add Amazon's fees to the cost of their products when they sell them on all external platforms," *id.* at 20.

The Court also dismissed all state-law claims for failure to allege sufficient facts to establish the elements of each claim.  *Id.* at 24 & n.3.  The Court allowed Plaintiffs to file a Second Amended Complaint to address the pleading deficiencies the Court identified.  *Id.* at 25–26.

Because the Court's decision on antitrust standing addressed only a subset of Plaintiffs' claims, Amazon filed a motion for clarification or reconsideration.  Dkt. 51.  Amazon's motion was pending when Plaintiffs filed the SAC.

### B.      The Second Amended Complaint's Theories of Liability

The SAC centers on two Amazon policies.  The first is a provision that Amazon removed from its Business Services Agreement in March 2019 prohibiting sellers from discriminating against Amazon customers by setting higher prices or worse terms in Amazon's store than sellers set for customers in other stores.  Rummage Decl., Ex. A.  The second is Amazon's Fair Pricing Policy prohibiting sellers from price gouging customers in Amazon's store.  The policy provides

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 4

that, if Amazon sees pricing practices that "harm customer trust," including a third-party seller offering a product at a price "significantly higher than recent prices offered on or off Amazon," Amazon "can remove the Buy Box, remove the offer, suspend the ship option, or, in serious or repeated cases, suspending or terminating selling privileges."  *Id.*, Ex. B.  The policy references recent market prices generally—not the specific prices charged by the third-party sellers in other stores.[2]

The SAC contains amended allegations describing the named Plaintiffs, consumers who shop for retail products—ranging from staplers to tomato seeds to robot vacuums—from different retailers.  SAC ¶¶ 66–86.  Although Plaintiffs all shop in Amazon's store, they base their claims entirely on purchases from other online retailers, many of whom are not alleged to be Amazon third-party sellers and therefore not alleged co-conspirators.  *Id.* ¶ 54.  For example, Plaintiff Sheryl Taylor-Holly bases her claims on her purchase of a stapler from Walmart, *id.* ¶ 73; Plaintiff Anthony Courtney bases his claims on a backpack he purchased from Fingerhut, *id.* ¶ 74; and Plaintiff Dave Westrope bases his claims on spark plugs he bought from a seller on eBay, *id.* ¶ 75.  Walmart, Fingerhut, and eBay are not alleged to be third-party sellers in Amazon's store; Plaintiffs expressly allege that their claims are "not limited to the third-party sellers' sales."  *Id.* ¶ 59.

Plaintiffs have also tried to re-plead a *per se* antitrust violation under the Sherman Act, *id.* ¶¶ 224–235, and a claim under California's Cartwright Act, *id.* ¶¶ 276–284.  And they have added a new claim for conspiracy to monopolize.  *Id.* ¶¶ 265–275.

---

[2] When the SAC describes the Fair Pricing Policy, it includes cites to an article describing the policy from a website called Feedvisor, https://feedvisor.com/university/amazon-pricing-policy.  Dkt. 15 ¶ 4 n.13; *id.* ¶ 7 nn.21–22.  Despite the title, those cites are not to the actual Fair Pricing Policy.  Rather than rely on characterization, Amazon has submitted the actual policy with its motion, as explained below.

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 5

1

**ARGUMENT**

2

**I.     Plaintiffs Have Not Cured the First Amended Complaint's Standing Defects.**

3

**A.     Plaintiffs Fail to Satisfy the Requirements for Co-Conspirator Standing.**

4

As a general rule, only consumers who purchase products directly from a defendant have

5

standing to sue under Sections 1 and 2 of the Sherman Act. *Ill. Brick Co.* v. *Illinois*, 431 U.S. 720,

6

732–35 (1977) (§ 1); *Hanover Shoe, Inc.* v. *United Shoe Mach. Corp.*, 392 U.S. 481, 491–93

7

(1968) (§ 2).[3]   The Court articulated a narrow exception to this rule in its motion to dismiss

8

decision: "when co-conspirators have jointly committed the antitrust violation, a plaintiff who is

9

the immediate purchaser from any of the conspirators is directly injured by the violation." Dkt. 48

10

at 8 (quoting *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1157

11

(9th Cir. 2019)).   This Court held that because "Plaintiffs allege they are direct purchasers of

12

antitrust conspirators," they "have established standing as direct purchasers of alleged antitrust co-

13

conspirators." *Id.*   As explained below, the allegations in the SAC do not establish antitrust

14

standing under the co-conspirator exception, for reasons the Court has not addressed.

15

(i)     The Transactions at Issue in the SAC Include Purchases from "Non-Conspiring" Sellers.

16

In the Ninth Circuit, antitrust standing based on the co-conspirator exception does not apply

17

to consumers who made purchases from non-conspiring sellers because "the price paid by a

18

plaintiff must be set by the conspiracy and not merely affected by the setting of another price." *In*

19

*re ATM Antitrust Fee Litig.*, 686 F.3d 741, 754 (9th Cir. 2012).   The SAC does not confine itself

20

to alleged conspiring sellers, instead alleging that the "impact of Amazon's restraint on its third-

21

party sellers and ultimately consumers is *not limited to the third-party sellers' sales*." SAC ¶ 59.

22

Not all Plaintiffs allege that they have made purchases from a third-party seller, and Plaintiffs

23

define "Class Products" to include purchases from non-conspirator sellers. *Id.* ¶ 54 ("to qualify as

24

a Class Product, it is not necessary that the product sold through a competing retail e-commerce

25

26

[3] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability.  All emphasis is added unless otherwise indicated.

27

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 6

channel be sold by an Amazon third-party seller").

With no factual basis for standing, a number of Plaintiffs have resorted to speculation. Plaintiffs have added allegations to the SAC speculating that they are all *potential* future direct purchasers of alleged co-conspirator sellers—suggesting they *may* have antitrust standing in the future. SAC ¶¶ 66–86. Speculative future purchases do not satisfy Article III standing, much less antitrust standing. Article III standing requires injury that is "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.* v. *Robbins*, 578 U.S. 330, 337–40 (2016); *see also Staley* v. *Gilead Scis. Inc.*, 2022 WL 1158006, at *8–9 (N.D. Cal. Apr. 19, 2022) (plaintiffs did not have Article III standing because, despite assertion that "there is a significant probability that they will take one or more of Defendants' drugs in the future," plaintiffs had not in the past and there was no indication they were likely to in the future, making possibility "too remote and not sufficiently concrete").

    (ii)    <u>Plaintiffs' New Conspiracy to Monopolize Claim Does Not Create Co-Conspirator Standing for the Sherman Act, Section 2 Claims</u>.

The co-conspirator theory of standing does not apply to claims of monopolization and attempted monopolization, which are claims directed at single-firm conduct. *Rebel Oil, Inc.* v. *Atl. Richfield Co.*, 51 F.3d 1421, 1443 (9th Cir. 1995) ("To pose a threat of monopolization, one firm *alone* must have the power to control market output and exclude competition."). To attempt to cure that legal defect, Plaintiffs added to the SAC a claim for "conspiracy to monopolize." SAC ¶¶ 265–275. "To state a claim for conspiracy to monopolize in violation of § 2, Plaintiff must sufficiently plead the following: '(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury.'" *Lenhoff Enters., Inc.* v. *United Talent Agency*, 2015 WL 7008185, at *3 (C.D. Cal. Sept. 18, 2015) (quoting *Paladin Assocs.* v. *Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003)). Plaintiffs fail to allege facts sufficient to satisfy these elements.

"Ninth Circuit case law holds that to sufficiently state a claim under § 2 for conspiracy to monopolize, the plaintiff must allege facts indicating that a conspiracy exists to create a monopoly in a single entity. The Ninth Circuit does not recognize a 'shared monopoly' or 'joint monopoly'

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

theory." *Lenhoff*, 2015 WL 7008185, at *4; *see also Harkins Amusement Enters., Inc.* v. *Gen. Cinema Corp.*, 850 F.2d 477, 490 (9th Cir.1988) ("Not only is there no case support for [a shared monopoly theory under § 2], but the suggestions in the learned treatises do not extend the theory this far.").

To state a claim, Plaintiffs must therefore allege that Amazon and its third-party sellers acted in concert with the specific intent to confer monopoly power on Amazon alone. The "specific intent" required is the specific intent to create an Amazon monopoly. *Paladin*, 328 F.3d at 1158. "It is not enough to plead that the defendants had agreements with each other generally— the defendants must have agreed and conspired to monopolize." *NorthBay Healthcare Grp., Inc.* v. *Kaiser Found. Health Plan, Inc.*, 2017 WL 6059299, at *5 (N.D. Cal. Dec. 17, 2017). Nor is it enough to allege that the third-party sellers "merely agreed to go along." *Rebel Oil*, 51 F.3d at 1437 n.8.

Plaintiffs have failed to allege a conspiracy among and including third-party sellers to achieve an Amazon monopoly under these standards. Most notably, the SAC alleges that Amazon competes with its third-party sellers in the sale of retail goods. SAC ¶¶ 93–102. Any monopoly, based on Plaintiffs' allegations of competing firms, by definition would be a shared monopoly— a theory that Ninth Circuit law does not allow. *E.g.*, *Terminalift, LLC* v. *Int'l Longshore & Warehouse Union Local 29*, 2013 WL 2154793, at *4 (S.D. Cal. May 17, 2013) ("Because PMA members compete against each other, the alleged conspiracy would create a 'shared monopoly' or oligopoly. Such conduct is not a violation of section 2."). The SAC does not allege—nor could it plausibly allege—that almost two million third-party sellers will somehow cease their operations or competition with Amazon.

The SAC also fails to allege facts showing the required specific intent by third-party sellers to create an Amazon monopoly. Instead, the SAC alleges a bare legal conclusion relating to a specific intent to monopolize. SAC ¶ 269 ("Because Amazon and its third-party sellers agreed to restrain competition with Amazon Marketplace, they share a specific intent to establish or maintain Amazon Marketplace's monopoly power."). This conclusory assertion of intent is unsupported by

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

any factual allegation that securing a monopoly for Amazon was a goal that Amazon's almost two million third-party sellers "themselves desired to accomplish."  *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 728, 731 (D. Md. 2001), *aff'd*, 309 F.3d 193 (4th Cir. 2002).

Plaintiffs' allegations of specific intent are not only conclusory, they are implausible: a claim that third-party sellers intended to make Amazon a monopolist directly contradicts Plaintiffs' allegations that third-party sellers compete with Amazon in the sale of retail goods.  SAC ¶¶ 93–102.

           (iii)      <u>Even if the Co-Conspirator Exception Applied to Purchases from Alleged Conspiring Sellers, Plaintiffs Fail to Satisfy the Applicable Pleading Requirement for the Co-Conspirator Exception</u>.

The SAC is also legally deficient because, to invoke the co-conspirator exception, Plaintiffs must join as defendants the Amazon third-party sellers whom Plaintiffs allege are Amazon's co-conspirators.  In *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, the Ninth Circuit held that to establish standing based on an alleged vertical conspiracy, where *Illinois Brick* would otherwise bar plaintiffs' claim, joinder of the alleged co-conspirators "is required to prevent a serious risk of multiple liability."  691 F.2d 1335, 1342 (9th Cir. 1982); *see also In re Ditropan XL Antitrust Litig.*, 2007 WL 2978329, at *4 (N.D. Cal. Oct. 11, 2007) ("Alleged co-conspirator-intermediaries, whose participation must be demonstrated if a vertical conspiracy is to be proved and *Illinois Brick* circumvented, must be named as defendants."); *Stanislaus Food Prods. Co.* v. *USS-Posco Indus.*, 2010 WL 3521979, at *10 (E.D. Cal. 2010) ("In a vertical conspiracy, plaintiff must name the direct seller as a party defendant.").

Plaintiffs have asserted that *Petroleum Products* is distinguishable because, unlike the vertical relationship there, the third-party sellers here are not direct purchasers from Amazon, Dkt. 56 at 5, but *Petroleum Products* is not so limited.  The Ninth Circuit held that alleged co-conspirators in a vertical conspiracy must be named as defendants to avoid the unacceptable risk of duplicative recovery that would arise if the alleged co-conspirators later brought claims of their own and succeeded in proving they were not co-conspirators.  *Petroleum Prods.*, 691 F.2d at 1342. This case presents the risk of duplicative and conflicting recoveries of concern in *Petroleum*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Products*.  Plaintiffs' allegations (if true) would suggest that unnamed co-conspirator third-party sellers could assert their own claims against Amazon seeking to recover overcharge damages for the allegedly supracompetitive commissions and fees they paid Amazon or to recover their alleged lost sales.[4]  In these circumstances, *Petroleum Products* demands that the alleged co-conspirator sellers be joined to avoid duplicative and overlapping theories of liability.

Plaintiffs also assert that they "do not base their standing on overcharges passed on by a conspiring intermediary purchaser (like a dealer or wholesaler who colluded with its supplier)." Dkt. 56 at 5.  This contention is irrelevant to the requirement of joinder of alleged co-conspirators. And, as explained in the next section, Plaintiffs *are* asserting "pass-on" damages.

(iv)    The Co-Conspirator Exception Does Not Apply Because Plaintiffs'
Claimed Damages Are Based on a Pass-On Theory of Liability.

The co-conspirator exception to *Illinois Brick* is narrow: it applies "only when the conspiracy involves *setting the price paid by the plaintiffs*."  *ATM*, 686 F.3d at 755.  The claims in *ATM* fell outside the co-conspirator exception because, like the prices Plaintiffs allege here, the prices that consumers paid were not fixed by an alleged conspiracy, but by the setting of another price that affected the ultimate prices that consumers paid.  In *ATM*, ATM cardholders challenged interchange fees for foreign ATM transactions, which occurred when an ATM cardholder withdrew money from their bank account using an ATM not owned by their bank.  The card-issuing bank paid the challenged fees to the ATM network and the ATM owner, and those fees were ultimately reflected in the fees that the card-issuing bank charged ATM cardholders.  The Ninth Circuit rejected the *ATM* plaintiffs' argument that they should be considered direct purchasers or fit within the co-conspirator exception, explaining:

> Plaintiffs concede that they have never directly paid interchange fees.  Instead, card-issuing banks (including Bank Defendants) pay interchange fees and then include them when they charge foreign ATM fees (alleged by Plaintiffs to be artificially inflated).  In other words, the Bank Defendants pass on the cost of the

---

[4] Based on the allegations in the SAC, this risk is not speculative or hypothetical; the SAC contains allegations that third-party sellers have complained about the impact of Amazon's policies on a product's selection as the Featured Offer, as well as the fees that Amazon charges sellers in its store.  SAC ¶¶ 91, 121, 130–132, 246.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

interchange fees through the foreign ATM fees.

*Id.* at 749–50.  The Ninth Circuit distinguished between a consumer paying a fee that was directly set by a pricing conspiracy and a consumer paying a price that incorporates the fee.  *Id.* at 752–53.  The co-conspirator exception does not apply to the latter situation because "the theory of recovery depends on pass-on damages."  *Id.* at 755.

Similarly, here, Plaintiffs do not allege that Amazon and its third-party sellers fixed the prices that consumers paid for the products they purchased outside Amazon's store.  Nor could they: the Fair Pricing Policy expressly states that "Sellers are responsible for setting their own prices on Amazon marketplaces."  Rummage Decl., Ex. B.  Instead, Plaintiffs claim they paid more than they otherwise would have paid because the former parity provision and the Fair Pricing Policy caused Amazon third-party sellers to pass on to consumers the fees they paid to Amazon, eliminating price competition among online retailers.  Those allegations are factually incorrect, but even accepting the allegations as true for purposes of this motion, they fail to establish standing.  The FAC devoted an entire section to Plaintiffs' admitted and self-described "pass on" theory.  Dkt. 15 at 35 (section heading).  In the SAC, Plaintiffs have used different words to camouflage their prior concession, but the substance of Plaintiffs' claims remains the same: consumers are paying higher prices than they otherwise would pay because third-party sellers pass on to consumers the fees they pay Amazon.  For example, Plaintiffs allege: "the seller fees Amazon charges are substantial and *built into* the prices its sellers charge their customers for products purchased on Amazon Marketplace," and "these fees are also *baked into* the prices they offer on other platforms through Amazon's aggressive enforcement of its price restraint."  SAC ¶ 125.  An allegation that "a cost paid by the buyer is 'baked into' the purchase price is simply another way of saying that the cost is 'passed through' to the buyer."  *Leeder* v. *Nat'l Ass'n of Realtors*, 2022 WL 1307100, at *4 (N.D. Ill. May 2, 2022).

Plaintiffs' claims, like the claims in *ATM*, run "squarely into the *Illinois Brick* wall," *ATM*, 686 F.3d at 749, because Plaintiffs do not pay Amazon seller fees directly.  Plaintiffs' claims depend on those fees being incorporated into the ultimate prices that they pay.  This is a pass-on

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 11

theory of damages and therefore cannot provide antitrust standing even based on a co-conspirator theory.

### B.   Plaintiffs Lack Standing to Assert Claims Based on Purchases from Non-Conspiring Sellers under an Umbrella Theory.

For the online sellers from whom Plaintiffs purchase that are not Amazon third-party sellers—like Walmart, Target, Costco, REI, and CVS—Plaintiffs cannot rely on a co-conspirator theory of antitrust standing.  Plaintiffs' claims as to purchases from these sellers not only violate the "bright line rule" that only direct purchasers of antitrust violators have antitrust standing, *ATM*, 686 F.3d at 748, but they also violate the longstanding principle that the antitrust laws do not afford a remedy to those injured only indirectly, *Associated Gen. Contractors of Cal., Inc.* v. *Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 541–42 (1983).

The only way that Plaintiffs have attempted to argue that they have antitrust standing is an umbrella theory—that is, "a plaintiff injured by dealing with a non-defendant by virtue of a defendant's raising of prices in the market as a whole."  *Sonterra Capital Master Fund Ltd.* v. *Barclays*, 366 F. Supp. 3d 516, 533 (S.D.N.Y. 2018).  Amazon explained in its previous motion to dismiss briefing why that umbrella theory fails as a legal theory, Dkt. 29 at 3–4, and this Court deferred ruling on its viability, Dkt. 48 at 8.  Deciding whether Plaintiffs can proceed based on an umbrella theory is necessary because the SAC makes clear that Plaintiffs base their claims on purchases from non-conspiring sellers, and Plaintiffs' antitrust standing to assert those claims cannot rest on a co-conspirator theory.

"The concern with so-called umbrella purchasers is that significant intervening causative factors, most notably, the independent pricing decisions of non-conspiring retailers, attenuate the causal connection between the violation and the injury."  *Sonterra Capital*, 366 F. Supp. 3d at 545.  Here, Plaintiffs' claims depend on allegations of a multistep causative chain: *First*, Amazon allegedly charges third-party sellers excessive fees and commissions.  SAC ¶¶ 118–124.  *Second*, Amazon's fees and commissions cause third-party sellers to charge higher prices in the Amazon store.  *Id.* ¶ 125.  *Third*, Amazon allegedly prohibits third-party sellers from charging higher prices

to Amazon customers than they do to customers in other stores.  *Id.* ¶¶ 125, 146.  *Fourth*, because of the higher prices charged by alleged conspiring third-party sellers, *non*-conspiring sellers, such as Walmart and Target, and other retailers competing with Amazon, had no reason to lower their prices to consumers and did not do so.  *Id.* ¶¶ 146–153.

Application of umbrella standing here would violate the Supreme Court's decision in *AGC*, which requires proximate causation between the alleged conduct and the claimed injury.  As the Second Circuit recently held, under *AGC*, "proximate cause is demarcated by the 'first step' rule, which limits liability to parties injured at the first step of the causal chain of the defendants' actions."  *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 134–35 (2d Cir. 2021).  Plaintiffs' alleged injury arises only in the last step of a multistep chain.

The breathtaking scope of what Plaintiffs seek under their umbrella theory magnifies that fatal defect.  Plaintiffs assert that they have umbrella standing for "virtually all products offered for sale in the U.S. retail e-commerce market."  SAC ¶ 36.  Under Plaintiffs' umbrella theory, it is other online retailers—such as Walmart, Fingerhut, Sur La Table, QVC, CVS, Sam's Club, and Kroger, and the countless other retailers with online stores—that choose to charge supracompetitive prices to Plaintiffs and proposed class members, in the last step of the alleged multistep causal chain, with this choice being purely their choice even under Plaintiffs' theory.  SAC ¶¶ 66–67, 69, 72, 78, 81, 146–153.  CVS, for example, charged a price for the moisturizing lotion that Plaintiff Mary Elliot purchased, *id.* ¶ 78, and Fingerhut charged Plaintiff Anthony Courtney a price for a backpack, *id.* ¶ 74; there are multiple steps between policies governing the sale of products in Amazon's store and the prices that CVS and Fingerhut charged for these products.  The speculative nature of Plaintiffs' theory of liability is magnified not only by the millions of online sellers selling hundreds of millions of products, but also by the independent pricing, supplier, and cost situations affecting the prices each seller charges for its products.

Where, as here, the chain of causation between the claimed injury and the alleged anticompetitive conduct is so attenuated, and Plaintiffs do not allege injury at the first step of a multistep chain, Plaintiffs lack antitrust standing.  *E.g.*, *Am. Express Anti-Steering Rules*, 19 F.4th

at 141 (rejecting umbrella standing where plaintiffs were "allegedly injured when Amex's competitors, covered by Amex's price umbrella, raised their own prices"); *Oliver* v. *Am. Express Co.*, 2020 WL 2079510, at \*9 (E.D.N.Y. 2020) (dismissing Section 1 claim under *AGC* by consumers alleging that Amex's anti-steering rules allowed Mastercard, Visa, and Discover to charge higher fees, in turn causing consumers to pay higher prices for all goods purchased with non-Amex credit cards); *Costco Wholesale Corp.* v. *AU Optronics Corp.*, 2014 WL 4723880, at \*3–4 (W.D. Wash. Sept. 23, 2014) (rejecting umbrella standing for direct purchases from entities "who were neither conspirators nor in a control relationship with conspirators"); *Antoine L. Garabet, M.D., Inc.* v. *Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159, 1168 (C.D. Cal. 2000) (*AGC* not satisfied where there "are numerous pricing variables" to consider); *Jones* v. *Micron Tech. Inc.*, 400 F. Supp. 3d 897, 912 (N.D. Cal. 2000) (no standing under *AGC* because plaintiffs "have not sufficiently alleged a chain of causation" between anticompetitive conduct and plaintiff's injury); *In re Online DVD Rental Antitrust Litig.*, 2011 WL 1629663, at \*7 (N.D. Cal. Apr. 29, 2011) (causal link between market allocation agreement and alleged injury "too attenuated" to permit plaintiffs to sue Blockbuster); *Gross* v. *New Balance Athletic Shoe, Inc.*, 955 F. Supp. 242, 247 (S.D.N.Y. 1997) (rejecting antitrust standing where alleged injury was affected by "independent pricing decisions of non-conspiring retailers").

The Ninth Circuit has not accepted umbrella standing as a means of establishing antitrust standing, and other courts have repeatedly rejected it. *E.g.*, *Am. Express Anti-Steering Rules*, 19 F.4th at 143 (affirming dismissal of plaintiffs' antitrust claims based on umbrella standing for failure to allege facts establishing "direct connection between the harm and the alleged antitrust violation" required for antitrust standing); *Petroleum Prods.*, 691 F.2d at 1341 ("Under an umbrella theory, the result of any attempt to ascertain with reasonable probability whether the non-conspirators' prices resulted from the defendants' purported price-fixing conspiracy or from numerous other pricing considerations would be speculative to some degree."); *Mid-West Paper Prods. Co.* v. *Cont'l Grp., Inc.*, 596 F.2d 573, 584–85 (3d Cir. 1979) (rejecting umbrella claims); *In re Vitamins Antitrust Litig.*, 2001 WL 855463, at \*4 (D.D.C. July 2, 2001) ("The overwhelming

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

majority of recent court decisions that have addressed the viability of the 'umbrella' theory after [*AGC*] have rejected 'umbrella' claims."); *Garabet*, 116 F. Supp. 2d 1159, 1168–69 ("the weight of recent authority, using the nuanced antitrust analysis outlined in [*AGC*], has found against allowing 'umbrella' standing to plaintiffs"); *FTC* v. *Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 39 (D.D.C. 1999) ("The main difficulty with the umbrella theory is that, even in the context of a single level of distribution, ascertaining the appropriate measure of damages is a highly speculative endeavor.  There are numerous pricing variables which this Court would be bound to consider ...."). The Court here should likewise reject Plaintiffs' reliance on an umbrella theory because the causal connection between the policies that it challenges and the alleged injury is too attenuated to satisfy *AGC*.

### C.     Plaintiffs Lack Article III Standing to Assert Claims Based on Purchases from Third-Party Sellers from Whom Plaintiffs Did Not Purchase.

The named Plaintiffs have alleged no facts that show they have Article III standing to sue based on purchases by absent class members from sellers *other* than the alleged "co-conspirator" sellers from whom Plaintiffs themselves purchased.

"Standing is a jurisdictional element that must be satisfied prior to class certification." *Nelsen* v. *King Cty.*, 895 F.2d 1248, 1249 (9th Cir. 1990); *see also In re Abbott Labs. Norvir Anti-Trust Litig.*, 2007 WL 1689899, *3 (N.D. Cal. June 11, 2007) ("it is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim").  "A litigant must be a member of the class he or she seeks to represent at the time the class action is certified by the district court."  *Nelsen*, 895 F.2d at 1250.  This is necessary for Plaintiffs to establish "the requisite of a case or controversy." *Id.*  The "irreducible constitutional minimum" of standing requires that the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

At most, the named Plaintiffs may claim Article III standing to assert claims based on purchases from sellers from whom those Plaintiffs made purchases. The Seventh Circuit's recent decision in *Marion Diagnostics Center, LLC* v. *Becton Dickinson & Co.*, 29 F.4th 337 (7th Cir. 2022), is instructive. There, as here, the complaint alleged a horizontal conspiracy between Becton Dickinson ("BD") and its distributors, which the court dismissed. *Id.* at 343. In response, plaintiffs filed a second amended complaint alleging separate and independent vertical conspiracies between BD and two of its distributors—Cardinal and McKesson. *Id.* at 344. Although Plaintiffs alleged that they made purchases only from McKesson, they sued Cardinal as well. *Id.* The Seventh Circuit held that plaintiffs lacked Article III standing to assert claims against Cardinal, *id.* at 346–47, explaining that although the named plaintiffs "sufficiently alleged an injury-in-fact in the form of higher prices for BD's products," they had "not shown that their injury is fairly traceable to Cardinal's conduct" because they did not purchase from Cardinal. *Id.* at 346.

The Seventh Circuit's reasoning in *Marion Diagnostics* applies here. Plaintiff Deborah Frame-Wilson, for example, alleges that she bought a money clip and wallet from Amazon third-party seller Fanatics.com on its website, and that she paid more than she would have absent Amazon's policies governing sales by third-party sellers in Amazon's store. SAC ¶ 66. Ms. Frame-Wilson's injury, if any, results from an alleged vertical conspiracy between Amazon and Fanatics.com—not from any supposed conspiracy involving any other third-party seller. She would have Article III standing, if at all, to assert a claim based on an alleged vertical conspiracy between Amazon and Fanatics.com, from which she purchased a money clip and wallet. But just as the *Marion Diagnostics* plaintiffs lacked standing to assert claims based on an alleged conspiracy between BD and a third-party distributor from whom they did not purchase, Ms. Frame-Wilson does not have Article III standing to assert claims based on alleged vertical conspiracies between Amazon and third-party sellers from whom *she* did not purchase because her claimed injuries are not "fairly traceable" to those alleged conspiracies. *Jones*, 400 F. Supp. 3d at 907–08 (class representatives lacked Article III standing to assert antitrust claims where they failed adequately to allege that the antitrust violations as to the products at issue caused harm to the

plaintiffs themselves).   Moreover, *Illinois Brick* bars these same claims for lack of antitrust standing because, under this separate inquiry, they are not based on direct purchases from Amazon or any alleged co-conspirator.  *Marion Diagnostics*, 29 F.4th at 347–48.  Accordingly, to the extent Plaintiffs have antitrust standing to assert any claims, their Article III standing is limited to claims based on purchases from the specific alleged co-conspirator sellers from whom they purchased.

## II.     Plaintiffs' Attempt to Revive Their Sherman Act, Section 1 *Per Se* Claims Fails.

As the Court previously stated, the rule of reason is the "presumptive or default standard." Dkt. 48 at 9.  The *per se* framework applies only when the practice at issue "would always or almost always tend to restrict competition and decrease output." *Id.* at 10.  No court has ever found that policies directed at promoting competitive *consumer* prices, like the former parity provision and the Fair Pricing Policy, are an antitrust violation at all, let alone a *per se* violation.

The former parity provision and the Fair Pricing Policy establish the terms and conditions applicable to third-party sellers offering products for sale in Amazon's store.  As the Court previously concluded, the practices Plaintiffs challenge involve a vertical relationship between Amazon and its third-party sellers relating to the conditions for selling in the Amazon store: "Plaintiffs challenge the vertical agreement between third-party sellers and their *host platform*, Amazon.com.  It is this agreement that restricts how third-party sellers set prices of their products on external sites." *Id.* at 11–12.  "Vertical *agreements* are analyzed under the rule of reason." *Id.* at 11.

The Court further rejected Plaintiffs' argument that the agreements are horizontal agreements among millions of third-party sellers and Amazon.  "Plaintiffs provide no factual allegations to support how Amazon and its third-party sellers agree on how they compete with one another in online sales," and Plaintiffs do not allege that the former parity provision and the Fair Pricing Policy involve "an agreement to fix prices of Amazon's products *and* those of third-party sellers." *Id.* at 11.  Plaintiffs' claims therefore rest on separate alleged vertical conspiracies, each governed by the rule of reason.  Further, as the Court previously held: "Even if the Court were to find that the agreements between Amazon and third-party sellers contained a horizontal element,

AMAZON'S MOTION TO DISMISS (2:20-CV-00424-RAJ) - 17

such a 'hybrid agreement' would be analyzed under the rule of reason." Dkt. 48 at 12.

Plaintiffs argue that they have addressed the deficiencies the Court identified in their claims by alleging that Amazon, as a seller, competes with third-party sellers, and such competition is "interbrand competition." SAC ¶ 2. But the FAC likewise alleged that Amazon competed with third-party sellers with many brands, Dkt. 15 ¶¶ 2, 9, and where such competition exists, third-party sellers will lose sales to Amazon if they price products higher than Amazon. The Court found the FAC's allegations deficient to state a *per se* claim because the policies related to Amazon's relationship with sellers in the Amazon store—a vertical relationship—and not price competition between Amazon and third-party sellers as sellers. Dkt. 48 at 11–12. The SAC does not and cannot change those facts. Invoking interbrand competition is also irrelevant because vertical relationships may promote interbrand competition and are subject to the rule of reason. *Leegin Creative Leather Prods., Inc.* v. *PSKS, Inc.*, 551 U.S. 877, 895–97 (2007); *Cont'l T.V., Inc.* v. *GTE Sylvania Inc.*, 433 U.S. 36, 54–55 (1977); *2238 Victory Corp.* v. *Fjallraven USA Retail, LLC*, 2021 WL 76334, at *5 (S.D.N.Y. Jan. 8, 2021). As the Court found with respect to the prior complaint, the SAC contains no specific allegations to show a conspiracy among millions of third-party sellers, as well as with Amazon. Dkt. 48 at 13. In addition, nothing in the new allegations addresses the Court's holding that even if the relationships here are partially horizontal, they are still governed by the rule of reason. *Id.* at 12.

Moreover, the *per se* rule applies only where courts have developed "considerable experience with the type of restraint at issue" that allows a court to "predict with confidence that the restraint would be invalidated in all or almost all instances under the rule of reason." *Leegin*, 551 U.S. at 877–78; *see also Broad. Music, Inc.* v. *Columbia Broad. Sys., Inc.*, 441 U.S. 1, 9–10 (1979). This is because there are "inherent limits on a court's ability to master an entire industry" and "hard-to-see efficiencies attendant to complex business arrangements." *NCAA* v. *Alston*, 141 S. Ct. 2141, 2156 (2021). Here, Plaintiffs' request to apply a *per se* rule is unprecedented; never before has a court applied a *per se* rule to policies that require competitive prices for consumers, much less has a court been asked to predict with confidence what the competitive effect of such

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   policies would be on hundreds of millions of products ranging from toothbrushes to computers to

2   golf balls.  This Court already considered and found inapplicable each court decision Plaintiffs

3   offered for their *per se* theory; the rule of reason applies.

4   **III.   Plaintiffs' Sherman Act, Section 2 Claims Fail to Allege Anticompetitive**
         **Conduct Because the Fair Pricing Policy's Plain Language Contradicts**

5        **Plaintiffs' Allegations.**

6        In ruling on Amazon's motion to dismiss the FAC, the Court held that Plaintiffs' Section 2

7   claims were viable because the Fair Pricing Policy "requires sellers to add Amazon's fees to the

8   cost of their products when they sell them on all external platforms."  Dkt. 48 at 20.  But that

9   conclusion was based not on the policy language, but on Plaintiffs' inaccurate and unfounded

10  allegation characterizing the Fair Pricing Policy's language, as well as a *summary* of the policy

11  posted online by an unrelated third-party entity identified as "Feedvisor."  Dkt. 48 at 3–4 (citing

12  FAC, Dkt. 15 ¶ 7 & n.21); *see id.* at 20 (repeating allegations).  The policy's plain language, which

13  Amazon submits with this motion, Rummage Decl., Ex. B, refutes any suggestion that Amazon

14  requires third-party sellers to add Amazon's fees and costs to their products when they sell them

15  off Amazon in other online stores.  Because Plaintiffs reference the former parity provision and

16  the Fair Pricing Policy throughout the SAC, on a motion to dismiss, the Court "may rely on

17  documents referred to in the complaint when they are central to a party's claim and their

18  authenticity is not in question."  *Monoper* v. *Boeing Co.*, 104 F. Supp. 3d 1170, 1177–78 (W.D.

19  Wash. 2015); *see also Edifecs Inc* v. *TIBCO Software, Inc.*, 756 F. Supp. 2d 1313, 1321 n.5 (W.D.

20  Wash. 2010) ("The Court considers the Complaint in its entirety, including the contract terms

21  incorporated by reference.").

22       The Fair Pricing Policy protects consumers shopping in Amazon's store from price

23  gouging.   The policy prohibits sellers from "Setting a price on a product or service that

24  is *significantly higher* than recent prices offered on or off Amazon."  Rummage Decl., Ex. B.  By

25  its terms, the policy *permits* sellers to sell their products through any other retail channel—

26  including a third-party seller's own website—for lower prices, or on better terms, than offered

27  through Amazon's online marketplace.  The policy is not an MFN provision for at least two

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

reasons: *First*, the policy references only recent market prices generally, not just the specific prices charged by the third-party sellers in other stores.  *Second*, the policy does not require third-party sellers to offer products in Amazon's store at prices that are as good as or better than the prices that third-party sellers offer through other retail channels.  Instead, the policy protects consumers from "significantly higher" prices—in other words, price gouging.  The language of the Fair Pricing Policy mirrors the language of a number of state statutes prohibiting price gouging.[5]

Rather than address the Fair Pricing Policy's plain language, Plaintiffs mischaracterize it, alleging instead: "Because Amazon's pricing policies *do not permit its sellers to sell at lower prices on other platforms*, these fees are also baked into the prices they offer on other platforms through Amazon's aggressive enforcement of its price restraint."  SAC ¶ 125.  But that allegation is again inaccurate and unfounded, and the Court should "not accept as true allegations contradicting documents that are referenced in the complaint."  *Lazy Y Ranch Ltd.* v. *Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  The Fair Pricing Policy does not "require" third-party sellers to set specific prices, nor does it "require" those sellers to add Amazon's fees to their prices when selling through other sales channels.  Nor do Plaintiffs allege any facts to suggest that Amazon construes and enforces the Fair Pricing Policy as they characterize it.  By its plain terms, the Policy merely permits Amazon to take corrective action if it identifies "pricing practices on a marketplace offer that harms customer trust," such as "Setting a price on a product . . . that is significantly higher than recent prices offered on or off Amazon."  Plaintiffs cannot avoid dismissal by labeling the Fair Pricing Policy as an MFN when it is not.  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'") (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007)).

---

[5] *E.g.*, D.C. Code § 28-4102 (prohibiting charging more than the "normal average retail price" during an emergency); Iowa Admin. Code r. 61-31.1(714) (prohibiting "excessive" prices for certain items during a state of emergency); Idaho Code § 48-603(19) (same); La. Stat. Ann. § 29.732 (prohibiting prices higher than those "ordinarily charged" during state of emergency); Mo. Code Regs. tit. 15, §§ 60-8.030(1)(B)–(C) (prohibiting "an excessive price" during an emergency); N.C. Gen. Stat. § 75-38(a) (prohibiting "unreasonably excessive" prices during an emergency); Tex. Bus. & Com. Code Ann. § 17.46(b)(27) (prohibiting "excessive" prices during a disaster).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Recognizing this, Judge Puig-Lugo of the D.C. Superior Court recently dismissed antitrust claims filed by the D.C. Attorney General challenging exactly the same parity provision and Fair Pricing Policy because the plain language of Amazon's pricing policies contradicted the District of Columbia's allegations.  On March 18, 2022, Judge Puig-Lugo granted Amazon's motion to dismiss the District's amended complaint based on his conclusion that "the District's complaint fails to allege anti-competitive effects from these policies."  Hr'g Tr. at 40:11–42:4, *District of Columbia* v. *Amazon.com, Inc.*, 2021 CAB 001775 (D.C. Super. Ct. Mar. 18, 2022) (Rummage Decl., Ex. C).  In reaching that conclusion, the court explained: "sellers are free to set prices within the marketplace provided that those prices" are not "significantly higher than recent prices offered on or off Amazon."[6]  *Id.* at 27:4–8.  The same is true here: the SAC should be dismissed because the Policy's plain terms refute Plaintiffs' allegations.

## IV.  Plaintiffs Fail to Allege that Each Third-Party Seller Has Market Power and Each of the Alleged Vertical Conspiracies Resulted in Anticompetitive Effects.

Plaintiffs' claims rest on allegations of almost two million distinct vertical conspiracies between Amazon and each of its third-party sellers.  Plaintiffs therefore must allege that each agreement with a third-party seller is "likely to result in an anticompetitive effect."  *Dickson* v. *Microsoft Corp.*, 309 F.3d 193, 211 (4th Cir. 2002).  To do so, Plaintiffs would have to allege that each third-party seller, individually, has market power for the specific products that it sells.  *Id.*  A court cannot consider the "cumulative harm" of Amazon's agreements with all the sellers in its store but must review them individually "to evaluate each agreement's potential for anticompetitive effects."  *Id.* at 210.

The recent decision in *In re EpiPen Direct Purchaser Litigation*, 2022 WL 1017770 (D. Minn. Apr. 5, 2022), is instructive.  The plaintiffs in that case alleged that Mylan, the manufacturer of EpiPens, conspired with pharmacy benefit managers ("PBMs") to inflate the price of EpiPens that Mylan sold directly to the plaintiffs.  The court granted defendants' motion to dismiss, holding that plaintiffs failed to allege a "hub-and-spoke" conspiracy to fix prices between Mylan and the

---

[6] On April 14, 2022, the District of Columbia moved for reconsideration of the court's decision or, alternatively, leave to file an amended complaint.  Amazon has opposed that motion.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

PBMs. *Id.* at *7.  Instead, the plaintiffs' Sherman Act, Section 1 claim rested on separate alleged vertical conspiracies between Mylan and each PBM.  *Id.*  In such a case, "To state a viable § 1 claim, Plaintiffs are required to allege facts which, if proven true, would demonstrate that each PBM Defendant's individual agreement with Mylan was likely to result in an anti-competitive effect." *Id.* at *10 (quoting *Dickson*, 309 F.3d at 211).  The court held that plaintiffs failed to meet that requirement because they failed to allege any facts showing that any PBM, individually, had market power—an element the court held was "critical" to alleging that the vertical agreements between Mylan and the PBMs harmed competition.  *Id.* at *8–9.  The court held that it was not sufficient that plaintiffs alleged Mylan was a monopolist in the market in which EpiPens were sold.  *Id.* at *9–10.  Nor was it enough for plaintiffs to argue that the PBMs had a large market share in the aggregate, given that they were not alleged to have conspired with each other.  *Id.* "Plaintiffs' failure to allege that any PBM Defendant individually possessed substantial market power means that Plaintiffs have not plausibly pleaded their § 1 claim." *Id.* at *10.

Plaintiffs' claims here likewise rest on separate alleged vertical agreements between Amazon and alleged third-party sellers, but, unlike in *EpiPen* where the agreements involved a single product and a small number of alleged co-conspirators, the alleged conspiracies here involve almost two million third-party sellers selling hundreds of millions of different products ranging from tomato seeds to staplers to sweatshirts.  Plaintiffs have failed to allege that any of those third-party sellers individually have market power.  And if third-party sellers lack market power, the alleged co-conspirators' competitors could easily undercut co-conspirators' prices, allowing consumers to avoid competitive injury.  The SAC's allegations relating to the third-party seller Adorama illustrate the point.  Plaintiffs allege Adorama could sell an Apple watch in Amazon's store for $300 but "may only receive about $255 after Amazon takes its commission and fees." SAC ¶ 10.  Plaintiffs also allege that if "Adorama lowered the price of the same model Apple watch on its own website to $255," or at a slightly higher price on a competing e-commerce website with lower fees, then Adorama could make "more sales at the same return as its sales on Amazon Marketplace." *Id.* ¶ 11.  But non-conspirator Apple *also* sells Apple watches and has every

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

incentive to undercut both Amazon and Adorama at a lower price.  Plaintiffs do not allege—and could not plausibly allege—that Adorama has the market power to constrain Apple from selling Apple watches at a lower price, which is fatal to their claims that an alleged conspiracy between Amazon and Adorama causes market-wide prices for Apple watches to be inflated.

## V.     Plaintiffs' Cartwright Act Claim Fails for the Same Reasons Their Claims Under the Sherman Act Fail.

Finally, the Court should dismiss Plaintiffs' claim under California's state antitrust law—the Cartwright Act, Cal. Bus. & Prof. Code §§ 16700–16770—for the same reasons it should dismiss their Sherman Act claims.  SAC ¶¶ 276–284.  Plaintiffs allege that Amazon's alleged conduct here rendered it a "trust" under the Cartwright Act and that under Cal. Bus. & Prof. Code § 16726, "Every trust to restrain trade in California is *per se* unlawful except as provided by" the Act.  SAC ¶¶ 281–282.  Plaintiffs' claim misconstrues the Cartwright Act.

The standard for pleading and proving liability under the Cartwright Act is the same as the standard for liability under the Sherman Act.  As the California Supreme Court has held, "the broad prohibitions of the Cartwright Act" are subject "to an implied exception similar to the one that validates reasonable restraints" under the Sherman Act.  *In re Cipro Cases I & II*, 61 Cal. 4th 116, 137 (2015); *Ixchel Pharma., LLC* v. *Biogen*, 9 Cal.5th 1130, 1159 (2020) ("Though the Cartwright Act is written in absolute terms, in practice not every agreement within the four corners of its prohibitions has been deemed illegal."); *see also Epic Games, Inc.* v. *Apple Inc.*, 2021 WL 4128925, at *110 (N.D. Cal. Sept. 10, 2021) (rejecting plaintiff's argument that "even if its claims under the Sherman Act fail, [plaintiff] is nevertheless entitled to relief on its Cartwright Act claims because the Cartwright Act is broader in range and deeper in reach than the Sherman Act," and collecting cases).  Because Plaintiffs have failed to state a Sherman Act, Section 1 claim, their Cartwright Act claim likewise fails and must be dismissed.  *Jain Irrigation, Inc.* v. *Netafim Irrigation, Inc.*, 386 F. Supp. 3d 1308, 1316 (E.D. Cal. 2019) ("plaintiffs' Cartwright Act claims rise or fall depending on the success of its Sherman Act claim").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

**CONCLUSION**

2          Plaintiffs have now pleaded their claims three times, without success.  The Court should

3   grant the motion and dismiss Plaintiffs' claims with prejudice.

4          DATED this 16th day of May, 2022.

5

6                                              Davis Wright Tremaine LLP
                                               Attorneys for AMAZON.COM, INC.

7                                              _s/Stephen M. Rummage_____
                                               Stephen M. Rummage, WSBA #11168
8                                              MaryAnn Almeida, WSBA #49086
                                               920 Fifth Avenue, Suite 3300
9                                              Seattle, WA  98104-1610
                                               Telephone: (206) 757-8136
10                                             Fax: (206) 757-7136
                                               E-mail: steverummage@dwt.com
11                                             E-mail: maryannalmeida@dwt.com

12                                             Paul, Weiss, Rifkind, Wharton & Garrison LLP

13                                             _s/ Karen L. Dunn_____
                                               Karen L. Dunn (*pro hac vice*)
14                                             William A. Isaacson (*pro hac vice*)
                                               Amy J. Mauser (*pro hac vice*)
15                                             Martha L. Goodman (*pro hac vice*)
                                               2001 K Street, NW
16                                             Washington, DC 20006-1047
                                               Telephone: (202) 223-7300
17                                             Fax: (202) 223-7420
                                               E-mail: kdunn@paulweiss.com
18                                             E-mail: wisaacson@paulweiss.com
                                               E-mail: amauser@paulweiss.com
19                                             E-mail: mgoodman@paulweiss.com

20                                             Attorneys for AMAZON.COM, INC.

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax