1

The Honorable Richard A. Jones

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10   DEBORAH FRAME-WILSON, CHRISTIAN
     SABOL, SAMANTHIA RUSSELL, ARTHUR
11   SCHAREIN, LIONEL KEROS, NATHAN
     CHANEY, CHRIS GULLEY, SHERYL
12   TAYLOR-HOLLY, ANTHONY COURTNEY,
     DAVE WESTROPE, STACY DUTILL,
13   SARAH ARRINGTON, MARY ELLIOT,
     HEATHER GEESEY, STEVE MORTILLARO,
14   CHAUNDA LEWIS, ADRIAN HENNEN,
     GLENDA R. HILL, GAIL MURPHY,
15   PHYLLIS HUSTER, and GERRY
     KOCHENDORFER, on behalf of themselves
16   and all others similarly situated,
17

No. 2:20-cv-00424-RAJ

**PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS SECOND AMENDED
COMPLAINT**

**NOTE ON MOTION CALENDAR:**
July 22, 2022

18                          Plaintiffs,

19        v.

20   AMAZON.COM, INC., a Delaware
     corporation,
21

22                          Defendant.

23

24

25

26

27

28



# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

STANDARD OF REVIEW ....................................................................2

BACKGROUND ..................................................................................2

ARGUMENT .......................................................................................5

I.      PLAINTIFFS HAVE ANTITRUST STANDING................................................5

    A.    Plaintiffs Plausibly Allege Amazon's Co-Conspirators Have the Specific Intent to Create or Maintain Amazon Marketplace's Monopoly. ...........................................................................5

    B.    Amazon' Remaining Objections to Standing Rehash Arguments That the Court Has Already Rejected or Raise Arguments That Amazon Inexcusably Failed to Raise in Its Prior Motion to Dismiss..........................................................................7

        1.    Plaintiffs need not join Amazon's co-conspirators.....................9

        2.    Plaintiffs do not rely on a pass-on theory of damages. ............10

        3.    This Court properly deferred ruling on umbrella standing, and in any event, Plaintiffs have standing to bring claims under an umbrella theory. ....................................11

        4.    Whether Plaintiffs are qualified to represent absent class members is a question for class certification, not Article III.....................13

II.    PLAINTIFFS ADEQUATELY ALLEGE A *PER SE* VIOLATION OF SECTION 1 OF THE SHERMAN ACT. ............................................15

III.    AMAZON'S FACTUAL DISPUTE REGARDING ITS FAIR PRICING POLICY MISCHARACTERIZES PLAINTIFFS' ALLEGATIONS. ..............19

IV.    PLAINTIFFS PLAUSIBLY ALLEGE AMAZON'S MARKET POWER AND THE ANTICOMPETITIVE EFFECTS ITS PRICE RESTRAINTS HAVE ON THE UNCHALLENGED RELEVANT MARKETS. ....................22

V.    PLAINTIFFS' SHERMAN ACT ALLEGATIONS ALSO SATISFY REQUIREMENTS OF THE CARTWRIGHT ACT. ........................................24

CONCLUSION....................................................................................24



## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re Am. Express Anti-Steering Rules Antitrust Litig.,*
  19 F.4th 127 (2d Cir. 2021) .................................................................13

*Apple Inc. v. Pepper,*
  __ U.S. __, 139 S. Ct. 1514 (2019)......................................................10

*In re Arizona Dairy Prods. Litig.,*
  627 F. Supp. 233 (D. Ariz. 1985) ........................................................13

*In re ATM Fee Antitrust Litig.,*
  686 F.3d 741 (9th Cir. 2012) ...............................................................10

*Aya Healthcare Servs. v. AMN Healthcare, Inc.,*
  9 F.4th 1102 (9th Cir. 2021) ...........................................................16, 23

*Aya Healthcare Servs. v. AMN Healthcare, Inc.,*
  2018 WL 3032552 (S.D. Cal. June 19, 2018).....................................17

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................2

*Boardman v. Pac. Seafood Grp.,*
  2015 WL 13357739 (D. Or. Mar. 6, 2015), *aff'd*, 822 F.3d 1011 (9th Cir.
  2016) .....................................................................................................12

*Cascade Health Solutions v. PeaceHealth,*
  515 F.3d 883 (9th Cir. 2008) ...........................................................6, 21

*In re: Cathode Ray Tube (CRT) Antitrust Litig.,*
  2016 WL 6246736 (N.D. Cal. Oct. 26, 2016)................................12, 13

*City of Anaheim v. S. Cal. Edison Co.,*
  955 F.2d 1373 (9th Cir. 1992) .............................................................23

*Complete Ent. Res. LLC v. Live Nation Ent., Inc.,*
  2017 WL 6512223 (C.D. Cal. Oct. 16, 2017)......................................24

*Continental T.V. v. GTE Sylvania,*
  433 U.S. 36 (1977)................................................................................18

*In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust Litig.,*
  691 F.2d 1335 (9th Cir. 1982) ..........................................................9, 11



*Costco Wholesale Corp. v. AU Optronics Corp.*,
  2014 WL 4723880 (W.D. Wash. Sep. 23, 2014) ...........................................................11, 12

*In re DDAVP Direct Purchaser Antitrust Litig.*,
  585 F.3d 677 (2d Cir. 2009) ...............................................................................................9

*Dickson v. Microsoft Corp.*,
  309 F.3d 193 (4th Cir. 2002) ............................................................................................23

*Dimidowich v. Bell & Howell*,
  803 F.2d 1473 (9th Cir. 1986) ..........................................................................................18

*In re Ditropan Xl Antitrust Litig.*,
  2007 WL 2978329 (N.D. Cal. Oct. 11, 2007)....................................................................9

*In re EpiPen Direct Purchaser Litig.*,
  2022 WL 1017770 (D. Minn. Apr. 5, 2022)......................................................................23

*Fairhaven Health, LLC v. BioOrigyn, LLC*,
  2021 WL 5987023 (W.D. Wash. Dec. 17, 2021) (Jones, J.) .................................................7, 8

*Freeman v. San Diego Ass'n of Realtors*,
  322 F.3d 1133 (9th Cir. 2003) ..........................................................................................11

*Garot Anderson Agencies, Inc. v. Blue Cross & Blue Shield United*,
  1993 WL 78756 (N.D. Ill. Feb. 26, 1993) ......................................................................16

*Greyhound Computer Corp. v. Int'l Bus. Machs. Corp.*,
  559 F.2d 488 (9th Cir. 1977) ............................................................................................22

*Harrell v. City of Gilroy*,
  2019 WL 452039 (N.D. Cal. Feb. 5, 2019) .......................................................................8

*Hartig Drug Co. v. Senju Pharm. Co.*,
  836 F.3d 261 (3d Cir. 2016)..............................................................................................14

*In re High-Tech Emp. Antitrust Litig.*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012) ............................................................................24

*Insight Psych. & Addiction, Inc. v. City of Costa Mesa*,
  2021 WL 1218253 (C.D. Cal. Mar. 4, 2021) .....................................................................7

*Jones v. Micron Tech., Inc.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019) ..............................................................................15

*Kong v. Trader Joe's Co.*,
  2022 WL 1125667 (9th Cir. Apr. 15, 2022) .......................................................................2

*Lazy Y Ranch LTD v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) ............................................................................................20

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

*Leeder v. Nat'l Ass'n of Realtors*,
   2022 WL 1307100 (N.D. Ill. May 2, 2022) ....................................................................10

*Lenhoff Enters. v. United Talent Agency, Inc.*,
   2015 WL 7008185 (C.D. Cal. Sep. 18, 2015) ...................................................................7

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
   140 F.3d (9th Cir. 1998) ..................................................................................................12

*Marion Diagnostics Ctr., LLC v. Becton Dickinson & Co.*,
   29 F.4th 337 (7th Cir. 2022) ............................................................................................14

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ....................................................................................13, 14

*In re Microsoft Corp. Antitrust Litig.*,
   127 F. Supp. 2d 728 (D. Md. 2001) ...................................................................................6

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984) ............................................................................................................6

*Moreno v. UtiliQuest, LLC*,
   29 F.4th 567 (9th Cir. 2022) ..............................................................................................2

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
   924 F.2d 1484 (9th Cir. 1991) ...........................................................................................5

*Nat'l Football League's Sunday Ticket Antitrust Litig. v. DirecTV, LLC*,
   933 F.3d 1136 (9th Cir. 2019) .......................................................................................5, 22

*NCAA v. Alston*,
   __, U.S. __, __, 141 S. Ct. 2141 (2021) ...........................................................................24

*Northbay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
   2017 WL 6059299 (N.D. Cal. Dec. 7, 2017) .....................................................................7

*Ollier v. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014) ...........................................................................................14

*In re Online DVD Rental Antitrust Litig.*,
   2010 WL 2680837 (N.D. Cal. July 6, 2010) ...............................................................12, 13

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
   20 F.4th 466 (9th Cir. 2021) ...........................................................................................6, 7

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
   967 F. Supp. 2d 1347 (N.D. Cal. 2013) ...........................................................................24

*Osborn v. Visa Inc.*,
   797 F.3d 1057 (D.C. Cir. 2015) ........................................................................................24

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

*Palmer v. BRG of Georgia,*
    498 U.S. 46 (1990) ..................................................................................16

*Payton v. County of Kane,*
    308 F.3d 673 (7th Cir. 2002) ...............................................................14

*Perry v. Newsom,*
    18 F.4th 622 (9th Cir. 2021) ................................................................13

*PLS.COM, LLC v. Nat'l Ass'n of Realtors,*
    32 F.4th 824 (9th Cir. 2022) ............................................................22, 23

*Rebel Oil Co. v. Atl. Richfield Co.,*
    51 F.3d 1421 (9th Cir. 1995) ...............................................................6, 23

*Reilly v. Medianews Grp., Inc.,*
    2007 WL 1068202 (N.D. Cal. Apr. 10, 2007) ......................................12

*Sagastume v. Psychemedics Corp.,*
    2021 WL 3932299 (C.D. Cal. Feb. 16, 2021) .........................................8

*Sambreel Holdings LLC v. Facebook, Inc.,*
    906 F. Supp. 2d 1070 (S.D. Cal. 2012) ................................................17

*Simon & Simon, PC v. Align Tech., Inc.,*
    533 F. Supp. 3d 904 (N.D. Cal. 2021) ..................................................24

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ..............................................................................12

*Staley v. Gilead Scis., Inc.,*
    2022 WL 1158006 (N.D. Cal. Apr. 11, 2022) ......................................12

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.,*
    2010 WL 3521979 (E.D. Cal. Sep. 3, 2010) ...........................................9

*Tampa Elec. Co. v. Nashville Coal Co.,*
    365 U.S. 320 (1961) ..............................................................................21

*Terminalift LLC v. Int'l Longshore & Warehouse Union Local 29,*
    2013 WL 2154793 (S.D. Cal. May 17, 2013) ..........................................7

*Texaco Inc. v. Dagher,*
    547 U.S. 1 (2006) ..................................................................................19

*TransUnion LLC v. Ramirez,*
    ___U.S.___, 141 S. Ct. 2190 (2021) .....................................................12

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.,*
    676 F.2d 1291 (9th Cir. 1982) ...............................................................23

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

*United Shoe Mach. Corp. v. United States*,
   258 U.S. 451 (1922) .................................................................................21

*United States v. Apple, Inc.*,
   791 F.3d 290 (2d Cir. 2015) ...............................................................18, 19

*United States v. Delta Dental*,
   943 F. Supp. 172 (D.R.I. 1996) ...............................................................24

*United States v. Joyce*,
   895 F.3d 673 (9th Cir. 2018) ....................................................................19

*United States v. Paramount Pictures, Inc.*,
   334 U.S. 131 (1948) ................................................................................5, 6

*Viamedia, Inc. v. Comcast Corp.*,
   951 F.3d 429 (7th Cir. 2020) ....................................................................21

*Whaley v. Pac. Seafood Grp.*,
   2012 WL 13047314 (D. Or. Jan. 31, 2012) .............................................13

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*,
   668 F.2d 1014 (9th Cir. 1981) ....................................................................9

*Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Rsrv.*,
   2018 WL 6018504 (S.D. Cal. Nov. 16, 2018) ...........................................8

*Wolfire Games, LLC v. Valve Corp.*,
   2022 WL 1443744 (W.D. Wash. May 6, 2022) .......................................22

## STATUTES

15 U. S. C. § 26 .............................................................................................11

D.C. Code § 28-4102 ......................................................................................21

## OTHER AUTHORITIES

Civ. R. 7(h)(1) ..................................................................................................8

Fed. R. Civ. P. 12(g)(2) ....................................................................................7



# INTRODUCTION

Over Amazon's objections to standing, market definition, anticompetitive conduct, and antitrust injury, this Court sustained Plaintiffs' Sherman Act monopoly and rule-of-reason price-fixing claims, agreed with Plaintiffs that they alleged a *per se* violation of the Cartwright Act, and allowed Plaintiffs to amend. Plaintiffs' Second Amended Complaint (SAC) amply addresses the Court's concerns about a *per se* Sherman Act claim. The SAC's expanded allegations supporting that claim are consistent with Supreme Court and Ninth Circuit precedent holding that a unilateral restraint is considered horizontal if it restricts competition between the rivals in the market in which they both compete. This is true even if they agree to the restraint as a condition of access to the defendant's platform. Amazon's motion to dismiss this claim therefore fails because it does not address these standards. *See* **Sec. II.**

Unable to land a punch on Plaintiffs' amended claim, and without identifying any change in the law that would justify the Court revisiting its order, Amazon repeats its objections to umbrella liability and pro-competitive justifications for its current MFN agreement—arguments that the Court already rejected. *See* **Sec. I.B.3 and III.** Amazon also submits a grab-bag of B-side arguments that did not make it into its first motion. Federal and local rules do not permit Amazon's efforts to take a second bite of the apple, *see* **Sec. I.B**, but these arguments are also wrong on the merits.

First, acquiescence in an illegal scheme is sufficient to establish intent to conspire. Amazon's argument that third-party sellers' compliance with its MFN agreements is insufficient to establish their specific intent to help Amazon maintain its monopoly is irreconcilable with Supreme Court precedent. *See* **Sec. I.A.** Next, Plaintiffs do not need to join Amazon's 2 million third-party sellers in this action as a simple matter of procedural law, and nothing Amazon cites is to the contrary. *See* **Sec. I.B1.** Plaintiffs also do not have a "pass-on" claim; third-party sellers cannot pass on fees for the simple reason that Amazon does not charge fees when third-party sellers sell goods in their *own online stores* or on online marketplaces that Amazon *does not operate*. This case is about Plaintiffs directly purchasing goods at supracompetitive prices illegally fixed by Amazon and its third-party sellers; it is not about those sellers passing on a

price-fixed overcharge that they incurred as direct purchasers. *See* **Sec. I.B.2.** Amazon's constitutional standing argument conflates Article III standards and class certification. Any challenge to Plaintiffs' ability to represent absent class members is a question for class certification, not standing. *See* **Sec. I.B.4.** Amazon's untimely objections to market power fails to identify any implausibility underlying Plaintiffs' allegations. *See* **Sec. IV.** Finally, as Amazon itself concedes, the validity of Plaintiffs' Cartwright Act claim rests with the viability of Plaintiffs' Sherman Act Section 1 claim, which the Court already sustained. *See* **Sec. V.**

### STANDARD OF REVIEW

On a motion to dismiss, the court must accept all facts in the complaint as true, view them in the light most favorable to the plaintiffs, and draw all reasonable inferences in their favor. *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 573 (9th Cir. 2022). A plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of th[e] facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.* at 556. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Kong v. Trader Joe's Co.*, 2022 WL 1125667, at *1 (9th Cir. Apr. 15, 2022) (quotation omitted).

### BACKGROUND

Amazon is the world's largest online retailer, with a market valuation of $1.5 trillion dollars—larger than Walmart, Target, SalesForce, IBM, eBay, and Etsy, combined. SAC ¶ 38. Amazon operates the Amazon Marketplace platform, where Amazon conducts first-party sales that constitute a principal source of its revenue. *Id.* ¶¶ 8, 90, 124. The platform also hosts the transactions of third-party sellers, which make up the majority of sales on the platform and from whom Amazon collects fees. *Id.* ¶¶ 8–10, 42. Eighty percent of third-party sellers also sell their products on other websites, including eBay, Walmart, or their own sites, but the vast majority of their revenue is earned on Amazon Marketplace. *Id.* ¶¶ 20, 35.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

Amazon Marketplace has tremendous market presence: approximately 74% of all online shoppers begin specific product searches there, and about 90% of all online marketplace sales occur there. *Id.* ¶¶ 38, 46. The platform has been the subject of antitrust investigations by the FTC, DOJ, and House Judiciary Committee. *Id.* ¶¶ 167–74. The U.S. House Subcommittee on Antitrust found that Amazon maintains market power because it is "not easy for users to switch away from [its] technology," even when both consumers and third-party sellers would prefer to use an Amazon rival. *Id.* ¶ 201.

Amazon and its third-party sellers maintain Amazon's market power by entering into Amazon's MFN agreement. *Id.* ¶¶ 3, 37, 265–75. Through this agreement, Amazon asserts control over its co-conspirators' access to its marketplace platform, and charges them exorbitant fees and imposes oppressive terms. *Id.* ¶¶ 7, 10, 93, 117, 155, 246. Amazon charges third-party sellers an average of 15% of the retail price just to host a product on Amazon Marketplace, and as much as 40% of its co-conspirators request additional services to increase their products' visibility. *Id.* ¶¶ 7, 123.

Amazon does not just operate the Amazon Marketplace; it also acts, as the world's largest online retailer, as a seller on its platform. *Id.* ¶¶ 8-10, 38, 93, 124, 160, 197, 206. Amazon can sell in any product category that it desires, and often Amazon sells the exact same products that its co-conspirators do. *Id.* ¶¶ 8–9, 17, 94, 97, 100. Amazon's co-conspirators could sell profitably at lower prices on other sites—but Amazon's MFN agreements minimize the ecommerce competition that its co-conspirators pose outside of Amazon Marketplace, leading to higher online prices. *Id.* ¶¶ 2, 10, 16, 87, 118-19, 125, 141–53. There is no meaningful difference between the "fair pricing" and "price parity" contract provisions that Plaintiffs challenge. *Id.* ¶¶ 16-17, 128–29. Both provisions restrain Amazon's two-million co-conspirators from selling anywhere else online at a price lower than they sell on Amazon Marketplace, and both penalize violators by terminating or suspending their accounts or removing their products from the default seller option (Buy-Box) that 90% of shoppers use when purchasing on Amazon Marketplace. *Id.* ¶¶ 7, 16, 22–26, 125, 129–31, 141, 232. Amazon's MFN is not a vertical restraint, and it does not promote intrabrand competition; it is a horizontal restraint on the prices Amazon's co-

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

conspirators can charge on sites other than Amazon Marketplace. *Id.* ¶¶ 2, 28, 109, 112, 143–44, 226.

Because Amazon Marketplace is the primary source of income for most of its co-conspirators, they will not risk competing on price on other sites. *Id.* ¶¶ 35, 130–32, 141. One very reluctant co-conspirator explains: "Were we to be suspended from selling on Amazon.com, it would probably take 3–6 months before we'd be bankrupt," and "[t]his is typical for small to medium sized businesses, which sell online today." *Id.* ¶ 91. Amazon scours the ecommerce market and often finds violations of its pricing policies within minutes of the price posting. *Id.* ¶¶ 125, 139. To comply with Amazon's price restraints, its co-conspirators forgo selling on other sites, or they raise their prices on other sites equal to or higher than their prices on Amazon Marketplace. *Id.* ¶¶ 34–35, 128, 130–32, 154. But third-party sellers do more than acquiesce to these terms—they actively enforce them by raising their prices on sites outside of Amazon Marketplace, even if they do so involuntarily. *Id.* ¶¶ 19, 34–35, 128, 130–32.

This agreed restraint between Amazon and its two-million co-conspirators inflates the ecommerce market price for all products the third-party sellers concurrently sell on Amazon Marketplace and other online sites—products like those Plaintiffs purchased. *Id.* ¶¶ 52, 60, 66–87, 146, 157. Amazon injures Plaintiffs and Class members who buy Class Products on ecommerce sites other than Amazon Marketplace at substantially higher prices than they would absent these price restraints. *Id.*

Amazon withdrew its price restraints in Europe in response to an investigation by German and British regulators. *Id.* ¶¶ 111–15, 167. German authorities found that Amazon's price-parity clause was horizontal price-fixing and had large harmful effects on consumers, even though Amazon had a lower market share in Germany than it currently does in the U.S. *Id.* ¶¶ 111–14. In an unsuccessful effort to stymie an FTC investigation into the same price restraints, Amazon announced in March 2019 that it would no longer enforce its price parity provision. *Id.* ¶¶ 15, 127. But because it continues to enforce the Fair Pricing Policy, which prohibits the same conduct and has the same penalties, its price restraints continue unabated. *Id.* ¶¶ 15-17, 127–32, 168. Plaintiffs seek damages and injunctive relief. *Id.* ¶¶ 51, 211.

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 4
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

**ARGUMENT**

## I.   PLAINTIFFS HAVE ANTITRUST STANDING.

On Amazon's last motion to dismiss, the Court held that allegations that some Plaintiffs purchased price-fixed Class Products directly from Amazon's co-conspirator third-party sellers established their standing as "direct purchasers of alleged antitrust co-conspirators," so the Court declined to consider whether direct purchases by other Plaintiffs of price-fixed Class Products from non-conspiring online retailers also provide standing under an umbrella theory. ECF No. 48 at 8. Amazon's current motion gives the Court no reason to revisit its prior ruling.

### A.   Plaintiffs Plausibly Allege Amazon's Co-Conspirators Have the Specific Intent to Create or Maintain Amazon Marketplace's Monopoly.

Amazon argues that no Plaintiffs have standing to sue Amazon for monopoly damages because they do not plausibly allege that Amazon's third-party sellers had a specific intent to create or maintain Amazon's monopoly power. On the contrary, their specific intent can be inferred "from the character of the actions taken," including the agreement between the parties. *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1491 (9th Cir. 1991) (quotation omitted). For example, in *Nat'l Football League's Sunday Ticket Antitrust Litig. v. DirecTV, LLC*, 933 F.3d 1136 (9th Cir. 2019), the Ninth Circuit held that plausible allegations that the challenged "agreements were designed to maintain market power" were "sufficient to allege [the contracting parties'] specific intent" to monopolize. *Id.* at 1159. Plaintiffs likewise allege specific intent based on the MFN agreements' intended effect of securing Amazon Marketplace's dominance in the relevant markets. SAC ¶¶ 17, 31, 35–37, 114, 156–58, 163, 170, 251, 267–69. Plaintiffs also plausibly allege specific intent based on allegations that the third-party sellers comply with the MFN agreements to give them access to Amazon Marketplace, without which many of the third-party sellers' businesses would fail. *See id.* ¶¶ 91–92, 132.

Amazon's argument that a plaintiff must show more than acquiescence to establish a conspiracy is misplaced. ECF No, 59 at 8–9. "Acquiescence in an illegal scheme"—sellers' coerced agreement to let Amazon set floor prices for goods that Amazon does not supply to them—"is as much a violation of the Sherman Act as the creation and promotion of one." *United*

1    *States v. Paramount Pictures, Inc.*, 334 U.S. 131, 161 (1948); *see also* ECF No. 48 at 8. Besides,

2    Plaintiffs alleged more than simple acceptance of pricing here. Even though Amazon's co-

3    conspirator third-party sellers participate in Amazon's price restraints involuntarily or under

4    coercion, they nevertheless take steps to enforce the agreement by actively setting prices on

5    competing marketplaces or retail websites that are no lower than the prices at which they list

6    goods on Amazon. *See Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 917 (9th Cir.

7    2008) (noting that involvement in an antitrust conspiracy is no less real when done involuntarily

8    or under coercion); SAC ¶¶ 19, 34–35, 128–32, 154. As noted, German antitrust authorities

9    concluded that Amazon raised consumer prices by using its MFN policy as a horizontal price-

10   fixing agreement with its third-party merchants. *Id.* ¶¶ 111–15. This constitutes concerted

11   conduct and is evidence of intent.

12          Amazon tries to skirt the rule that acquiescence to an illegal scheme is sufficient by

13   invoking inapposite cases, where a *distributor's* acceptance of a *supplier's* pricing does not itself

14   demonstrate intent to conspire. *See, e.g., Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1437

15   n.8 (9th Cir. 1995) (dealers' acquiescence to wholesaler's pricing insufficient to establish a

16   conspiracy); *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 728, 732 (D. Md. 2001) (PC

17   makers "acquiescence to Microsoft's monopolistic demands" to obtain "favorable prices from

18   Microsoft for its products" is insufficient to state a conspiracy); *see also Monsanto Co. v. Spray-*

19   *Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) (stating that antitrust law permits a supplier to

20   announce restraints "in advance and refuse to deal with those who fail to comply," and allows

21   "distributor[s] . . . to *acquiesce* in the manufacturer's demand") (emphasis added). But this is not

22   a manufacturer-distributor case; it is a case involving a platform provider that is *also* the world's

23   largest online retail seller, which has agreed with *other* online retail sellers to fix prices in the

24   very markets where both compete.

25          And contrary to Amazon's contention, an agreement even between "horizontal

26   competitors" to help one of them "acquire [or sustain] monopoly power" satisfies the

27   requirements of a monopoly conspiracy claim. *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,

28



20 F.4th 466, 482 (9th Cir. 2021).[1] Plaintiffs are not therefore asserting an impermissible "shared monopoly" or oligopoly, consisting of Amazon and its third-party sellers. ECF No. 59 at 7. Plaintiffs' allegations that the conspirators agreed to restraints designed to ensure Amazon Marketplace's market dominance satisfies the requirement of an agreement "to create a monopoly for *a single entity*." *Lenhoff Enters. v. United Talent Agency, Inc.*, 2015 WL 7008185, at *3 (C.D. Cal. Sep. 18, 2015) (emphasis added) (cited by Amazon).[2]

## B.   Amazon' Remaining Objections to Standing Rehash Arguments That the Court Has Already Rejected or Raise Arguments That Amazon Inexcusably Failed to Raise in Its Prior Motion to Dismiss.

The Court need not consider the remainder of Amazon's arguments related to Plaintiffs' standing because they were either readily available for Amazon to make in its first motion to dismiss but were not made, or they were already considered and rejected by the Court in its prior order. *See* ECF No. 59 at 9–11, 15–17. Federal and Local Rules prohibit Amazon's effort to get a second bite of the apple.

As to the arguments that Amazon failed to raise in its first motion to dismiss, Rule 12(g) of the Federal Rules of Civil Procedure provides that "a party that makes a [Rule 12] motion must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). "Thus, 'a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6).'" *Fairhaven Health, LLC v. BioOrigyn, LLC*, 2021 WL 5987023, at *6 (W.D. Wash. Dec. 17, 2021) (Jones, J.). Amazon's "failure to include these arguments in its previous Rule 12(b)(6) motion makes these arguments late, and [defendant] is precluded from raising them in its instant, second Rule 12(b)(6) motion." *Id.* (quotation omitted); *see also Insight Psych. & Addiction, Inc. v. City of Costa Mesa*, 2021 WL 1218253, at *6 (C.D. Cal. Mar. 4, 2021) (party's new arguments on a successive motion to

---

[1] *Terminalift LLC v. Int'l Longshore & Warehouse Union Local 29*, 2013 WL 2154793 (S.D. Cal. May 17, 2013), cited by Amazon, is distinguishable. There, the plaintiff alleged that the co-conspirators agreed to share the market as oligopolists. *Id.* at *6. Plaintiffs do not make that allegation here.

[2] *Northbay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 2017 WL 6059299 (N.D. Cal. Dec. 7, 2017), cited by Amazon, is distinguishable because the plaintiff did not allege that defendants had entered into *any* agreements designed to create or sustain one of the defendant's monopoly power. *Id.* at *6.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292  206.623.0594 FAX

dismiss violated both Rule 12(g) and the local rule limiting reconsideration in the absence of clear error, new facts, or new law).

A second motion to dismiss may only make arguments that were "previously unavailable." *Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Rsrv.*, 2018 WL 6018504, at *18 (S.D. Cal. Nov. 16, 2018); *see also id.* (because there was "no significant change in" the plaintiff's claim after amendment, defendants' arguments were prohibited by Rule 12(g)). Amazon does not—and cannot—argue that these arguments were previously unavailable. And while some courts interpret Rule 12(g) to provide limited discretion to entertain arguments that could have been made earlier, that discretion does not extend the Amazon's failure to raise in its prior motion a "straightforward question of whether" Plaintiffs have "stated legal claims." *Harrell v. City of Gilroy*, 2019 WL 452039, at *9 (N.D. Cal. Feb. 5, 2019).

Applying this rule, courts routinely decline to consider new arguments that were available to the defendant when it brought its prior motion. *Id.*; *see also Fairhaven Health*, 2021 WL 5987023, at *6; *Sagastume v. Psychemedics Corp.*, 2021 WL 3932299, at *3 (C.D. Cal. Feb. 16, 2021) ("Following the direction of the Ninth Circuit, the Court finds [defendant's] argument . . . cannot be raised in a 12(b)(6) motion" because defendant "simply failed to raise this argument the first time around."). So too here. Amazon's "scattershot approach," stretched out over two years, "wastes Court and party resources" and violates Rule 12(g). *Harrell*, 2019 WL 452039, at *8. A rule that condones Amazon's unexplained delay prejudices Plaintiffs, who have already amended their complaint following the Court's direction, and it "impedes [a] speedy resolution of the case" that has been pending since March 2020. *Id.* at *9.

As to Amazon's arguments that the Court already considered on Amazon's prior motion to dismiss, reconsideration is generally not permitted without a showing that the Court committed "manifest error in the prior ruling" or that there are "new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence," L. Civ. R. 7(h)(1), Amazon identifies no changes in the law or new facts that would justify reconsideration of those rulings, and the Court need not revisit them now. In any event, those arguments fail.

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 8
Case No. 2:20-CV-00424-RAJ

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

### 1.       Plaintiffs need not join Amazon's co-conspirators.

As a rule, in any action alleging an antitrust conspiracy, plaintiffs are "not required to sue all of the alleged conspirators." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1053 (9th Cir. 1981). Amazon relies on an exception articulated in *In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335 (9th Cir. 1982), which does not apply here. ECF No. 59 at 9–10. In that case, consumer plaintiffs sued gas suppliers and alleged that the retail gas dealers, from whom the plaintiffs purchased, had conspired with the suppliers to fix gas prices, while concurrently a class of retail dealers *also* sued the defendant suppliers for overcharging *them*. *Id.* at 1342. Because the consumer plaintiffs' standing depended on purchases from alleged co-conspirators, who were themselves direct purchasers from alleged cartel members, the Ninth Circuit affirmed the district court's order that required the consumer plaintiffs to join these intermediary purchasers to avoid the "serious risks of duplicative recovery and inconsistent adjudications" that could arise if the intermediary purchasers "could prove in a subsequent action that they were not conspirators and, as direct purchasers, were entitled to damages arising out of the same events." *Id.*[3]

No such concerns of "duplicative and conflicting recoveries" from other potential "direct purchasers" are present here. Amazon's third-party seller co-conspirators are not direct purchasers from Amazon of the Class Products that Plaintiffs purchased. SAC ¶¶ 28, 109, 226. Nor, as discussed below (Sec. I.B.2), do Plaintiffs seek to recover fees the third-party sellers paid to Amazon. And any potential claims those sellers may have for lost profits do not affect Plaintiffs' right to recover their separate and distinct overcharge injuries. *See In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688-89 (2d Cir. 2009) (potential actions of competitors does not justify denying direct purchasers' standing because "defendants' competitors, unlike the plaintiffs, would be seeking lost profits, not overcharges. . . . Denying the plaintiffs a remedy in favor of a suit by competitors would thus be likely to leave a significant

---

[3] That was the same concern raised in the other cases Amazon cites: *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 2010 WL 3521979, at *9 (E.D. Cal. Sep. 3, 2010), and *In re Ditropan Xl Antitrust Litig.*, 2007 WL 2978329, at *4 (N.D. Cal. Oct. 11, 2007).

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

antitrust violation undetected or unremedied.") (quotation omitted); *see also Apple Inc. v. Pepper*, __ U.S. __, __, 139 S. Ct. 1514, 1525 (2019) ("Basic antitrust law tells us that the mere fact that an antitrust violation produces two different classes of victims hardly entails that their injuries are duplicative of one another.") (quotation omitted). Because Plaintiffs assert standing based on direct purchases from the very cartel members with whom Amazon agreed to fix the price of the goods Plaintiffs purchased, they are not required to join the 2 million sellers in this litigation.

### 2.        Plaintiffs do not rely on a pass-on theory of damages.

According to Amazon, "Plaintiffs' claims depend on [seller] fees being incorporated into the ultimate prices that they pay," which "is a pass-on theory of damages" that cannot confer direct purchaser standing. ECF No. 59 at 11–12. But *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012) ("*ATM*"), the case principally cited by Amazon in support of this argument, refutes it. There, plaintiffs alleged that their banks conspired with other ATM owners in an ATM network to fix the transaction fee paid to them as ATM owners; and consumers claimed that their banks then passed on the conspiratorially fixed fee by charging plaintiffs for using "foreign" ATMs, *i.e.*, ones not owned by their banks. *Id.* at 744–45. The court held that the plaintiffs lacked standing because they did not directly pay the price-fixed ATM transaction fee, but instead complained that their banks passed on the added cost of that fee to them by raising foreign ATM fees. *Id.* at 750.[4]

For *ATM* to apply, Amazon and its third-party sellers would have to participate in a conspiracy to fix seller fees that sellers would then pass onto Plaintiffs in a subsequent transaction between Plaintiffs and the sellers. Plaintiffs have never alleged this. Unlike the plaintiffs in *ATM*, Plaintiffs here were injured by directly paying for price-fixed goods and thus their "theory of recovery [does] not depend on pass-on of damages." *Id.* at 752 (quotation omitted). Moreover, all purchases at issue in this case occurred on platforms *other than* Amazon

---

[4] *Leeder v. Nat'l Ass'n of Realtors*, 2022 WL 1307100, *4 (N.D. Ill. May 2, 2022), is likewise distinguishable because there the commission alleged fixed by the realtors was paid by the home seller who then passed on the added cost to the homebuyer plaintiff by increasing the home sales price.



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1   Marketplace, where Amazon does not charge seller fees, and there are no fees to pass on. SAC

2   ¶¶ 66–87, 211. And contrary to Amazon, "Plaintiffs do [] allege that Amazon and its third-party

3   sellers fixed the prices that consumers paid for the products they purchased outside" of Amazon

4   Marketplace. ECF No. 59 at 11.[5] Amazon's co-conspirators could profitably charge less on these

5   other sites precisely because they do not have to pay the high costs that Amazon charges them to

6   sell on Amazon Marketplace, but they *agree not to* under the MFN agreements. SAC ¶¶ 27, 31,

7   34, 146, 268.

8            **3.      This Court properly deferred ruling on umbrella standing, and
                        in any event, Plaintiffs have standing to bring claims under an
9                       umbrella theory.**

10          This Court previously held that Ninth Circuit precedent does not "foreclose[] an umbrella

11   theory claim" under the proper set of facts. *Costco Wholesale Corp. v. AU Optronics Corp.*, 2014

12   WL 4723880, at *4 (W.D. Wash. Sep. 23, 2014); *In re Coordinated Pretrial Proceedings in*

13   *Petroleum Prods. Antitrust Litig.*, 691 F.2d at 1340 ("We need not decide, however, whether, in

14   a situation involving a single level of distribution, a single class of direct purchasers from non-

15   conspiring competitors of the defendants can assert claims for damages against price-fixing

16   defendants under an umbrella theory."). After reviewing the parties' extensive briefing on

17   Plaintiffs' standing to assert umbrella liability claims (ECF No. 18 at 8-10, No. 20 at 5–6, No. 29

18   at 2–4, No. 42, and No. 43), the Court properly deferred ruling on this issue because at least

19   some Plaintiffs purchased price-fixed goods directly from Amazon's third-party sellers, and thus

20   "established standing as direct purchasers of alleged antitrust co-conspirators." ECF No. 48 at 8.

21   Amazon identifies no change in the law that would justify reconsideration of that ruling, nor any

22   error by the Court. ECF No. 59 at 12–15.

23          Moreover, Amazon's arguments against umbrella liability rely on *Illinois Brick*, which

24   does not apply to Plaintiffs' standing for injunctive relief. *Freeman v. San Diego Ass'n of*

25   *Realtors*, 322 F.3d 1133, 1145 (9th Cir. 2003). A threat of loss or damage satisfies the standing

26   requirements for injunctive relief under the Clayton Act. 15 U. S. C. § 26. The SAC plausibly

27

28          ⁵ Amazon relies on a policy asserting independent pricing on Amazon Marketplace, which has nothing to do
       with Plaintiffs' plausible allegations of price-fixing *outside of* Amazon Marketplace. ECF No. 59 at 11.

alleges that all Plaintiffs face a credible threat of being overcharged by one or more of Amazon's 2 million co-conspirators because Plaintiffs regularly shop at online stores or marketplaces where the co-conspirators sell Class Products at prices fixed by the MFN agreements. SAC ¶¶ 66–86. As active "customer[s] in market[s] controlled by a monopolist," *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d at 1237 (9th Cir. 1998), or restrained by other anticompetitive conduct, all Plaintiffs have standing to pursue injunctive relief to end conduct by Amazon that "threaten[s] to lessen competition, create a monopoly, or raise prices," *Reilly v. Medianews Grp., Inc.*, 2007 WL 1068202, at *5 (N.D. Cal. Apr. 10, 2007).[6]

Because all Plaintiffs have standing to assert injunctive relief for each claim asserted, and several have standing to pursue damages under the co-conspirator rule, the Court need not revisit its decision to defer ruling on Plaintiffs' umbrella liability standing, which is best left to a more developed record. *See In re Online DVD Rental Antitrust Litig.*, 2010 WL 2680837, at *7 (N.D. Cal. July 6, 2010) (permitting plaintiffs' umbrella liability claims to proceed because "[d]iscovery may, for example, prove the precise nature of [non-conspirator] Blockbuster's pricing in relation to [defendant] Netflix's"); *Costco*, 2014 WL 4723880, at *4 (Costco has articulated a version of the umbrella theory that can at least proceed to trial. . . . it will be easy enough to [show] . . . how . . . damage calculations would change if Costco cannot recover for purchases . . . manufactured by non-conspirators.").

Even if the Court considers Amazon's argument, Plaintiffs' opposition to Amazon's last motion to dismiss identified several courts within this Circuit that permitted plaintiffs to proceed under an umbrella theory of liability in the context of a single-level distribution system alleged here. *See, e.g.*, *In re: Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT*"), 2016 WL 6246736, at *5–8 (N.D. Cal. Oct. 26, 2016); *Boardman v. Pac. Seafood Grp.*, 2015 WL 13357739, at *3 (D.

---

[6] *Staley v. Gilead Scis., Inc.*, 2022 WL 1158006 (N.D. Cal. Apr. 11, 2022), cited by Amazon, is distinguishable because the plaintiffs there were not active customers and thus not likely to pay for any of the allegedly price-fixed drugs. *Id.* at *8. The requirement of a "concrete injury" in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (also cited by Amazon) concerns constitutional standing to assert claims for *damages*, not for injunctive relief. This distinction is critical because "Article III does not give federal courts the power to order" "individual damages" to an "uninjured plaintiff," whereas they may order *injunctive relief* "to prevent" harm to an uninjured "person exposed to a risk of future harm[.]" *TransUnion LLC v. Ramirez*, ___ U.S. ___, ___, 141 S. Ct. 2190, 2208, 2210 (2021) (quotation omitted).



1   Or. Mar. 6, 2015), *aff'd*, 822 F.3d 1011 (9th Cir. 2016); *Whaley v. Pac. Seafood Grp.*, 2012 WL

2   13047314, at *3–4 (D. Or. Jan. 31, 2012); *In re Online DVD Rental Antitrust Litig.*, 2010 WL

3   2680837, at *7; *In re Arizona Dairy Prods. Litig.*, 627 F. Supp. 233, 235–36 (D. Ariz. 1985).

4           Because the non-conspiring sellers set their prices under the "umbrella" of uncompetitive

5   market conditions created by Amazon and its co-conspirators, *see* SAC ¶¶ 133–36, Plaintiffs

6   allege "injuries that result from conspirators' impact *on the market* [that] are *directly* caused by

7   their collusive conduct regardless of the supplier that sells the good," *CRT*, 2016 WL 6246736, at

8   *6 (first emphasis in original; second emphasis added). These claims do not implicate pass-

9   through costs, as they concern a single-level chain of distribution, *id.* at *6; do not create a risk

10  of future duplicative recovery, as non-conspiring sellers do not have any claims against Amazon

11  that relate to Plaintiffs' purchases from them, *id.*; and do not present any causation issues that are

12  not also present "in the usual case where damages are calculated based on purchases made

13  directly from conspirators," *id.* And contrary to Amazon's cries about the "breathtaking scope"

14  of Plaintiff's damages theory, the Class Products that Plaintiffs' allegations reach are

15  commensurate with the reach of Amazon's MFN agreements and Amazon's market power,

16  which "encompasses virtually all consumer products," SAC ¶ 146; and "accounts for more than

17  half of all retail e-commerce in the United States," *id.* ¶ 161.[7]

18          **4.      Whether Plaintiffs are qualified to represent absent class
                      members is a question for class certification, not Article III.**

19

20          Amazon next "conflates standing and class certification," *Melendres v. Arpaio*, 784 F.3d

21  1254, 1261 (9th Cir. 2015), when it argues that Article III limits Plaintiffs' standing as class

22  representatives so that they can only litigate claims on behalf of absent class members who

23  purchased from the same set of third-party sellers as Plaintiffs, *see* ECF No. 59 at 15.

24          Constitutional standing determines whether the Court has subject matter jurisdiction over

25  the case. *Perry v. Newsom*, 18 F.4th 622, 630 (9th Cir. 2021). Plaintiffs' allegations that they

26

27          [7] *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127 (2d Cir. 2021) (cited by Amazon) rejected
    umbrella liability claims raised by merchants not under contract with Amex, but it also held that its ruling "does not
    mean that Amex could never be liable for allegedly raising prices throughout the market . . . [as] at least one circuit
28  court has held that an antitrust defendant may be held liable for umbrella effects on prices," *id.* at 143 n.11 (citing *In
    re Processed Egg Prods. Antitrust Litig.*, 881 F.3d 262, 276 (3d Cir. 2018)).

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 13
Case No. 2:20-CV-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1    were overcharged "as a result of the [Amazon's] anticompetitive behavior . . . together with the

2    complaint's specific descriptions of anticompetitive behavior indulged in by [Amazon and its co-

3    conspirators], are sufficient to establish . . . an Article III case or controversy." *Hartig Drug Co.*

4    *v. Senju Pharm. Co.*, 836 F.3d 261, 272 (3d Cir. 2016). Tellingly, Amazon raises no 12(b)(1)

5    challenges to this Court's subject matter jurisdiction. *See* ECF No. 59-1 at 1 (stating that

6    Amazon's motion is made pursuant to Rule 12(b)(6)). In fact, Amazon essentially concedes that

7    Plaintiffs satisfy "Article III standing to assert claims based on purchases from sellers from

8    whom those Plaintiffs made purchases." ECF No. 59 at 16.

9       Under Ninth Circuit law, standing in a class action is satisfied if at least one named

10   plaintiff meets the requirements. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 865

11   (9th Cir. 2014). Once the Court determines that a named plaintiff has "individual standing" to

12   raise the claims asserted, this concludes the Court's "standing inquiry." *Melendres*, 784 F.3d at

13   1262 (quotation omitted)). "[A]ny issues regarding the relationship between the class

14   representative[s] and the passive class members—such as dissimilarity in injuries suffered—are

15   relevant only to class certification, not to standing." *Id.* at 1262 (quotation omitted). That means

16   that whether minute differences, like payment to one third-party seller rather than another, make

17   any material difference to Plaintiffs' prosecution of the same legal claim against Amazon "on

18   behalf of others who have similar, but not identical, interests depends not on standing, but on an

19   assessment of typicality and adequacy of representation" at the class certification stage. *Id.*

20   (quotation omitted).

21       Because in *Marion Diagnostics Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337 (7th

22   Cir. 2022), the Seventh Circuit did not follow the Ninth Circuit's approach, that decision, cited

23   by Amazon, has no bearing on this Court's analysis of Plaintiffs' Article III standing. *Marion*

24   *Diagnostics* is also factually distinguishable because it considered standing to assert overcharges

25   arising from a separate conspiracy, as opposed to overcharges arising from sellers complying

26   with identical obligations under the same contract with Amazon. *Compare Payton v. County of*

27   *Kane*, 308 F.3d 673, 681–82 (7th Cir. 2002) ("If the defendants *with whom the named*

28   *representative did not interact directly* are following a common statute (and this common factor

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 14
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292  206.623.0594 FAX

assures that the representative has the same legal claim as the unnamed parties)," then "*we see nothing in either standing doctrine or Rule 23 that automatically precludes use of the class action device*.") (emphasis added).

Amazon also misrepresents *Jones v. Micron Tech., Inc.*, 400 F. Supp. 3d 897 (N.D. Cal. 2019), which did not address the named plaintiffs' standing to assert absent class members' claims. *Jones* held that the indirect purchaser plaintiffs failed to establish their *own standing* by not adequately alleging the relevant market, scope of the products affected by the price-fixing agreement, or how the overcharge was passed onto them. *Id.* at 907–08. Because Amazon does not challenge Plaintiffs' constitutional standing to raise their individual claims, *Jones* is inapposite. *See id.* at 909 ("The Court is here called upon to examine whether the named Plaintiffs have standing to bring certain claims, not standing 'to obtain relief for unnamed class members' for the same injury.") (quoting *Melendres*, 784 F.3d at 1261–62). Likewise, because Amazon does not dispute that Plaintiffs fit the definition of their proposed Class or that they have articulated a concrete and particularized injury, Amazon's remaining authority are also inapposite. *See* ECF No. 59 at 15.

## II.   PLAINTIFFS ADEQUATELY ALLEGE A *PER SE* VIOLATION OF SECTION 1 OF THE SHERMAN ACT.

As the Court previously held: "Horizontal agreements in which competitors fix prices . . . are *per se* violations of the Sherman Act." ECF No. 48 at 10. In support of Plaintiffs' amended *per se* claim, the SAC includes the investigatory findings of the House Judiciary Committee on Antitrust, as well as Italian and German competition enforcement agencies, which all found that Amazon competes directly with its third-party sellers in online retail sales. SAC ¶¶ 94, 110–15. German competition authorities also specifically found that Amazon's first MFN, the Price Parity Provision, is a "horizontal price-fixing" agreement intended to protect Amazon's own retail sales by preventing "sellers on Amazon's Marketplace platform from offering their goods elsewhere online at a lower price," whether on "other e-commerce platforms" or on their "own online shops." *Id.* ¶¶ 110–12. The House Judiciary Committee confirmed that "Amazon has a history of using MFN clauses" anticompetitively and that its current MFN, the Fair Pricing



Policy, penalizes Amazon's retailer rivals "that offer products at a lower price on competing sites." *Id.* ¶¶ 17, 170.

In its prior order, this Court accepted for purposes of the motion to dismiss "that Amazon and the sellers" perform "the same online retail function" and compete "for the same online retail customers," and that Amazon and its third-party sellers agreed to "restrict[] how third-party sellers set prices of their products on external site." ECF No. 48 at 11–12. But the Court adopted Amazon's premise that to challenge "Amazon's conduct as a competitor to its third-party sellers," Plaintiffs must allege an agreement that fixes both the "prices of Amazon's products *and* those of third-party sellers." *Id.* at 11 (emphasis in original).

But binding authority contradicts that premise. In *Palmer v. BRG of Georgia*, 498 U.S. 46, 47 (1990), the Supreme Court held that potentially competing bar review providers engaged in a *per se* price fixing violation when the companies agreed that the Georgia firm would pay its rival a licensing fee for each course, which substantially increased the price of the Georgia firm's course without increasing the price of its rival's courses. Despite the unilateral restraint on prices, packaged in a vertical arrangement, the competitors' agreement was held to be *per se* illegal because it "was formed for the purpose and with the effect of raising the price of the bar review course." *Id.* at 49 (quotation omitted); *see also Garot Anderson Agencies, Inc. v. Blue Cross & Blue Shield United*, 1993 WL 78756, at *13 (N.D. Ill. Feb. 26, 1993) (relying on *Palmer* and rejecting the summary judgment argument that a *per se* analysis requires a reciprocal restraint between competitors). Amazon's MFN agreements are likewise *per se* illegal because they were formed with the purpose and effect of increasing third-party sellers' prices on other online retail sites by fixing them to the higher prices on Amazon Marketplace, rather than letting market forces set online retail prices competitively. SAC ¶¶ 103–108.

In *Aya Healthcare Servs. v. AMN Healthcare, Inc.*, the Ninth Circuit also held that competitors' agreement to a unilateral restraint constituted a horizontal restraint "among competitors on the way in which they will compete with one another." 9 F.4th 1102, 1108 (9th Cir. 2021) (quotation omitted). Like Amazon, the defendant in *Aya* wore multiple hats. First, as the largest medical staffing service in the country, it directly fulfilled hospital customers' request

for medical staff; second, it operated the largest subcontractor network through which it doled out "spillover" assignments to its rival staffing services, and it operated a software platform that allowed its customers to obtain staffing directly from its pool of subcontractor-rivals. *Aya Healthcare Servs. v. AMN Healthcare, Inc.*, 2018 WL 3032552, at *1–2 (S.D. Cal. June 19, 2018). Like Amazon, the defendant in *Aya* imposed a unilateral restraint on its rivals as a condition of their access to its platform and network: each rival consented to the defendant's "unilateral no-poaching agreements," which prohibited "the rival providers" from employing the defendant's medical staff. *Id.* at *2.

The parties in *Aya* did not dispute, and the Ninth Circuit confirmed, that this unilateral restraint "constitutes a horizontal restraint," in that it "restricts [the defendant's] actual or potential employer-rival, [the plaintiff], from competing with [the defendant] for its employees by soliciting them to work for [the plaintiff]." 9 F.4th at 1109 (quotation omitted). Likewise, Amazon's MFN agreements are horizontal restraints because they prevent Amazon's actual or potential rivals from lowering online retail prices below the agreed floor price, whereas if Amazon faced unrestricted online retail price competition from its third-party sellers, it would have to lower its own prices to compete with them. SAC ¶¶ 103–10.

To the extent that the district court's opinion in *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070 (S.D. Cal. 2012), suggests that restraints between competitors should be treated as vertical if agreed to "as a condition for platform access," it is no longer good law considering the Ninth Circuit's determination in *Aya* that such restraints are horizontal in nature. ECF No. 48 at 12.[8] *Aya* is distinguishable, however, from the current case in that the ancillary restraint doctrine exempted the *Aya* defendant's horizontal restraint from a *per se* analysis because the restraint was reasonably necessary to support the parties' "collaboration agreement to fulfill the demand of hospitals for travel nurses." 9 F.4th at 1109 (quotation omitted). This exemption does not apply to Amazon's MFN agreements for several independent reasons.

---

[8] By its own terms, the *Sambreel* decision does not apply to Amazon's restraint on rivals' competition *outside* of its platform because the court expressly declined to consider whether Facebook's platform agreement potentially restrained competition with its rivals' outside of its platform. 906 F. Supp. 2d at 1077 n.3.

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1  "Naked restraints," like price-fixing, "are categorically" excluded from this doctrine. *Id.*

2  (quotation omitted). And it can only apply in the context of a collaboration agreement, whereas

3  Amazon's contract expressly disavows "'any partnership, joint venture, agency, franchise, sales

4  representative, or employment relationship between'" Amazon and the sellers. SAC ¶ 28

5  (quoting Amazon's Business Service Agreement). Nor are the MFN agreements reasonably

6  necessary to operate an online retail marketplace: eBay's online retail marketplaces and

7  Amazon's online retail marketplaces in Europe operate without one (since Amazon agreed to

8  drop its Price Parity Provision in response to antitrust regulator inquiries). *Id.* ¶¶ 109–10, 127.

9         The "hybrid arrangement" exemption, contemplated by the Court's order on Amazon's

10 motion to dismiss, also does not exempt Amazon's MFN agreements from a *per se* analysis. ECF

11 No. 48 at 12. That exemption applies only to arrangements with "both a dual distributorship and

12 a horizontal relationship." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1481 (9th Cir. 1986).

13 "[D]ual distributorships" are "arrangements, in which a manufacturer operates . . . as both a

14 supplier and a distributor of its own products[.]" *Id.* at 1480. Amazon's MFN agreements lack

15 the supplier arrangement that would provide "the justification for" applying the "rule of reason

16 analysis" to its price restraints. *Id.*; *see also United States v. Apple, Inc*., 791 F.3d 290, 323 (2d

17 Cir. 2015) ("The rule of reason is unquestionably appropriate to analyze an agreement between a

18 manufacturer and its distributors to . . . limit the price at which the distributors sell the

19 manufacturer's goods[.]"). Because Amazon does not supply the goods its third-party sellers sell,

20 its MFN agreements are naked restraints without the "potential for a simultaneous reduction of

21 intrabrand competition and stimulation of interbrand competition" that would justify exempting

22 the MFN agreements from a *per se* analysis. *Continental T.V. v. GTE Sylvania*, 433 U.S. 36, 51

23 (1977). What is more, Amazon's MFN agreements blatantly *interfere* with brand manufacturers'

24 ability to compete on price by indiscriminately setting floor prices across multiple brands for

25 millions of products—including products that brands (like Nike and Birkenstock) have not even

26 authorized to be sold on Amazon Marketplace. SAC ¶¶ 28, 143–45. The authorities Amazon

27 cites in support of the potential procompetitive effects of *brand manufacturers'* vertical,

28 interbrand restraints are therefore inapposite. ECF No. 59 at 18.

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 18
Case No. 2:20-CV-00424-RAJ

Binding precedent also rejects Amazon's contention that the Court should refrain from applying the *per se* analysis in an industry in which courts allegedly have little experience. It "is irrelevant that" Amazon and its co-conspirators' retail price fixing "activities took place in any particular industry" because "the Sherman Act, so far as price-fixing agreements are concerned, establishes one uniform rule applicable to all industries alike." *United States v. Joyce*, 895 F.3d 673, 678 (9th Cir. 2018) (quotation omitted). The Court already rejected (ECF No. 48 at 20) Amazon's renewed argument (ECF No. 59 at 18–19) that its MFN agreements are *per se* legal, so it would be "breaking no new ground" to apply a *per se* analysis to MFN agreements used for anticompetitive purposes. *Apple*, 791 F.3d at 320. Finally, "[p]rice-fixing agreements between two or more competitors" are "*per se* unlawful." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). Because Plaintiffs' *per se* claim relies on Amazon's MFN agreements with each of its rival third-party sellers, Plaintiffs need not also allege that the third-party sellers colluded with each other to establish a horizontal restraint. ECF No. 59 at 18.

## III. AMAZON'S FACTUAL DISPUTE REGARDING ITS FAIR PRICING POLICY MISCHARACTERIZES PLAINTIFFS' ALLEGATIONS.

Amazon next argues that its Fair Pricing Policy is not an MFN and that the Court erred in interpreting this agreement to require sellers to add Amazon's fees to the price of their products when they sell them on all external platforms. ECF No. 59 at 19–21. This argument takes the Court's ruling out of context and ignores plausible allegations regarding how the challenged agreement operates as an MFN *in practice* to require sellers to raise prices on competing sites.

First, Amazon disregards the first MFN agreement (the Price Parity Provision) which Amazon enforced for the first *three years* of the Class Period, which explicitly required "at least as favorable" pricing on the Amazon Marketplace—meaning that the price on Amazon Marketplace, inclusive of fees, dictated the minimum price on other online stores or marketplaces. ECF No. 48 at 3; SAC ¶¶ 14–15. As the Court held—and Amazon does not dispute for purposes of its motion—that MFN plausibly harms competition because it "could—and as Plaintiffs allege, does in fact—raise the cost of products on external platforms that charge lower fees than Amazon." ECF No. 48 at 20.



Amazon now tries to gloss over the plausible anticompetitive effect of its earlier, explicit policy and argue that the "plain language" of its more recent Fair Pricing Policy does not explicitly require the floor price as its earlier MFN did. ECF No. 59 at 19. As an initial matter, that argument at most raises a factual dispute that cannot be resolved at this stage.

The Fair Pricing Policy broadly prohibits any "pricing practices" on the marketplace "that harm[] customer trust," including "[s]etting a price on a product or service that is significantly higher than recent prices offered *on or off* Amazon." SAC ¶ 16 & n.21 (quoting the Fair Pricing Policy) (alterations in original); ECF No. 48 at 3. Amazon threatens to remove the coveted Buy Box or even terminate a third-party seller for violating this policy, and Amazon is the party that interprets and enforces the policy at its discretion. SAC ¶¶ 16, 129–130. Amazon itself interprets and *enforces* the Fair Pricing Policy in the exact same way as its predecessor Price Parity Policy. *Id.* ¶¶ 16–17, 127–29. As the Fair Pricing Policy states, Amazon "regularly monitors the prices" offered by third-party sellers. *Id.* ¶ 16. When Amazon discovers that a third-party seller is pricing an item lower on another platform, it sends the seller a "pricing alert" and removes its Buy Box privileges. *Id.* ¶ 17 & n.24, 130–132. Accordingly, sellers continue to abide by the price parity rule out of fear of Amazon's retaliation, *id.* ¶¶ 130–32, with the ultimate result—as the Court recognized—being the same anticompetitive effect of higher prices and suppressed competition on external platforms, ECF No. 48 at 7, 20; SAC ¶¶ 17, 129, 141–153. And indeed, the U.S. House Subcommittee on Antitrust found that Amazon continues to use its Fair Pricing Policy "to penalize sellers that offer products at a lower price on competing sites." *Id.* ¶ 17 & n.23. Put differently, if a rose by any other name is just as sweet, Amazon's Price Parity Policy by any other name (here, the Fair Pricing Policy) is just as rotten.

In attempting to side-step these allegations, Amazon asks the Court to prioritize the supposed "plain terms" of the Fair Pricing Policy over how Amazon chooses to interpret and enforce it. ECF No. 59 at 20. This finds no support in the law.[9] To the contrary, "[i]n applying

---

[9] *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580 (9th Cir. 2008), cited by Amazon, held that the court could review defendants' extraneous documents, addressing their alleged equal protection violation, but the court was not required "to accept Defendants' characterization of *what classification they made*" in rejecting the plaintiff's application. *Id.* at 589 (emphasis in original).

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

the antitrust laws, we care more about economic substance than about form." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 470, 471 (7th Cir. 2020) (finding "substantial evidence of an explicit tie" from defendant's conduct and market realities). Courts focus on the "*practical effect*" of the arrangement, not the words that appear on the page. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) (emphasis added); *United Shoe Mach. Corp. v. United States*, 258 U.S. 451, 457 (1922) ("While the clauses enjoined do not contain specific agreements not to use the machinery of a competitor . . . the practical effect of these drastic provisions is to prevent such use."); *Cascade Health Sols. v. PeaceHealth*, 515 F.3d at 914 (reversing summary judgment for defendant based on anticompetitive restraint enforced "either as an implied condition of dealing or as a matter of economic imperative"). Here, the *practical effect* of the Fair Pricing Policy, as Amazon enforces it, is that it operates as an anticompetitive MFN.

Finally, Amazon uses its strained reliance on the formal terms of the Fair Pricing Policy to rehash purported procompetitive justifications that the Court has already rejected. The Court already held that it "need not consider" such procompetitive justifications at the pleadings stage. ECF No. 48 at 20. Plaintiffs have plausibly alleged anticompetitive effects, and nothing further is required at this stage. SAC ¶¶ 143–53.[10] Moreover, Amazon's price gouging justification is untenable. Amazon claims that the "language of the Fair Pricing Policy mirrors the language of a number of state statutes prohibiting price gouging." ECF 59 at 20. But the narrow provisions of the statutes Amazon cites are a far cry from Amazon's all-encompassing prohibition on practices that Amazon might find, at its sole discretion, "harm consumer trust." The District of Columbia's provision, for instance, prohibits prices above the "normal average retail price" *only* "during an emergency that resulted from a natural disaster" and *only* after the mayor has issued an "emergency declaration," which may not remain in effect for more than thirty days. D.C. Code § 28-4102. Amazon points to no authority that suggests the antitrust laws allow a monopolist to impose its own pricing conditions on the market under the guise of "price gouging," let alone via

---

[10] Amazon's cite (ECF No. 59 at 21) to a transcript from a hearing before a D.C. Superior Court which, unlike this Court, found that Amazon's Fair Pricing Policy has no anticompetitive effects is merely an end-run around the law of the case and inapposite because that court considered *different* allegations.



a policy as broad as Amazon's. *See, e.g.*, *Greyhound Computer Corp. v. Int'l Bus. Machs. Corp.*, 559 F.2d 488, 498 (9th Cir. 1977) ("If the jury concluded IBM possessed monopoly power in the leasing of general purpose computers, IBM would be precluded from employing otherwise lawful practices that unnecessarily excluded competition from the submarket.").

## IV. PLAINTIFFS PLAUSIBLY ALLEGE AMAZON'S MARKET POWER AND THE ANTICOMPETITIVE EFFECTS ITS PRICE RESTRAINTS HAVE ON THE UNCHALLENGED RELEVANT MARKETS.

When Amazon previously moved to dismiss Plaintiffs' rule-of-reason claim, it merely challenged Plaintiffs' market definitions. ECF No. 18 at 15–19. Amazon waited until this motion—two years after the case was filed—to argue that the claim fails because it does not allege that each third-party-seller individually has market power. ECF No. 59 at 21–23. This untimely argument violates Rule 12(g), *see supra* Sec. I.B, and is incorrect as a matter of law.

Notably, Plaintiffs need not allege market power at all to prevail on their *per se* claim. *PLS.COM, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 838 (9th Cir. 2022). Similarly, for all other claims, Plaintiffs "can show that a restraint injures competition if they plausibly allege a naked restriction on price or output, such as an agreement not to compete in terms of price," as Plaintiffs have here. *Nat'l Football League's Sunday Ticket Antitrust Litig. v. DirecTV, LLC*, 933 F.3d at 1151 (quotations omitted).

Amazon does not challenge the dominance of its marketplace platform in each of the relevant markets Plaintiffs allege, *i.e.*, the U.S. retail ecommerce market, Identified Submarkets, and alternative Online Retail Marketplace Market. *See* SAC ¶¶ 37–51, 176–210, 244–46, 251, 267, 269–70. Nor does Amazon challenge Plaintiffs' allegations of the anticompetitive effects in those markets caused by Amazon's uniform MFN agreements with its co-conspirators. *Id.* ¶¶ 143–53. As such, Amazon fails to identify any implausibility underlying Plaintiffs' market power and anticompetitive effect allegations. ECF No. 48 at 18–22 (finding MFN allegations plausibly established anticompetitive effects and antitrust injury); *Wolfire Games, LLC v. Valve Corp.*, 2022 WL 1443744, at *3–4 (W.D. Wash. May 6, 2022) (same).

Amazon's contention that a plaintiff must allege that its MFN agreements with each third-party seller individually—as opposed to collectively—harms competition is inconsistent

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1    with Ninth Circuit precedent and that court's directive that "it would not be proper to focus on

2    specific individual acts of an accused monopolist while refusing to consider their overall

3    combined effect." *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992).

4    Amazon ignores the fundamental principle, recognized by this Court (ECF No. 48 at 15), that

5    courts assess market power only *in the alleged relevant market*. *PLS.COM*, 32 F.4th at 838 ("[A]

6    plaintiff must define the relevant market and show that the defendant has market power *in that

7    market*." (emphasis added)); *Aya*, 9 F.4th at 1112 ("In determining whether a company has

8    market power, we must first define the relevant market.").

9         The reason is simple: The market power analysis focuses on whether a party seeking to

10   impose a restraint in the defined relevant market has the power to do so in a way that could harm

11   competition and lead to consumer harm. *Aya*, 9 F.4th at 1112. Amazon's own case citations

12   make this exact point: where plaintiffs alleged that a defendant restrained trade in markets where

13   only its *co-conspirators* operated, the plaintiffs must establish the *co-conspirator's* market share

14   for each conspiracy asserted. *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 210 (4th Cir. 2002)

15   (because the plaintiff "alleged discrete conspiracies" between individual PC makers and non-PC

16   maker Microsoft, the plaintiffs needed to allege the each PC maker had power in the PC market);

17   *In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770, at *8 (D. Minn. Apr. 5, 2022) (Where

18   the plaintiffs alleged separate conspiracies between Mylan and each PBM defendant, Mylan's

19   "virtual monopoly power over the [epinephrine auto-injector] EAI market" was irrelevant

20   because "the relevant market for Plaintiffs' claim against the PBM Defendants is the PBM

21   market, not the EAI market. . . . Each PBM Defendant has a PBM market share of 30% or

22   less. . . . Such a market share is insufficient as a matter of law to establish 'substantial market

23   power' on the part of the individual PBM Defendants.").

24        Conversely, it is appropriate to consider, as Plaintiffs have here, the aggregate

25   anticompetitive effect of Amazon's MFN agreements with its 2 million sellers in the markets in

26   which *Amazon* operates. *Rebel Oil*, 51 F.3d at 1437 ("The aggregation of market shares of

27   several rivals is justified if the rivals are alleged to have conspired to monopolize."); *Twin City

28   Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1303 (9th Cir. 1982) ("[I]t was

proper for the district court to have aggregated Sportservice's contracts in the relevant market in order to assess the Sherman Act violations resulting from these contracts."); *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1363 (N.D. Cal. 2013) ("Aggregating the effect" of the defendant retailer's two separate agreements with suppliers for purposes of alleged violation of Section 1 was "appropriate for the purpose of showing the [retailer's] conduct was anticompetitive[.]").

Indeed, the case law is replete with examples of situations where a dominant player forces rules on third parties in a market-wide fashion, thereby illegally harming competition. *See*, *e.g.*, ECF No. 48 at 12; *NCAA v. Alston*, __, U.S. __, __, 141 S. Ct. 2141 (2021) (non-compensation rules imposed by NCAA on member universities throughout nation); *Osborn v. Visa Inc.*, 797 F.3d 1057 (D.C. Cir. 2015) (rules by dominant ATM networks imposed nationwide on thousands of ATM operators); *Simon & Simon, PC v. Align Tech., Inc.*, 533 F. Supp. 3d 904 (N.D. Cal. 2021) (standard contracts imposed on dental service organizations); *Complete Ent. Res. LLC v. Live Nation Ent., Inc.*, 2017 WL 6512223, at *2–3 (C.D. Cal. Oct. 16, 2017) (exclusive contracts with venues throughout nation); *United States v. Delta Dental*, 943 F. Supp. 172, 175 (D.R.I. 1996) (contracts with dentists across nation). In short, Amazon asks for a dramatic departure from the law; one that finds no basis in precedent.

## V.   PLAINTIFFS' SHERMAN ACT ALLEGATIONS ALSO SATISFY REQUIREMENTS OF THE CARTWRIGHT ACT.

Finally, Plaintiffs sufficiently allege a violation of the Cartwright Act, SAC ¶¶ 276–84, and Amazon raises no basis to dismiss this claim, independent to its objections to Plaintiffs' claim under Section 1 of the Sherman Act. Because "Plaintiffs plead a valid Sherman Act claim, they likewise plead a valid Cartwright Act claim." *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1114 (N.D. Cal. 2012).

## CONCLUSION

For these reasons, the Court should deny in its entirety Defendant's Motion to Dismiss. Alternatively, if the Court requires allegations that are more detailed, Plaintiffs ask for leave to amend.



DATED: June 20, 2022               Respectfully submitted,

                                   HAGENS BERMAN SOBOL SHAPIRO LLP

                                   By ___*/s/ Steve W. Berman*_____
                                    Steve W. Berman (WSBA No. 12536)
                                    */s/ Barbara A. Mahoney*_____
                                    Barbara A. Mahoney (WSBA No. 31845)
                                    1301 Second Avenue, Suite 2000
                                    Seattle, WA 98101
                                    Telephone: (206) 623-7292
                                    Facsimile: (206) 623-0594
                                    steve@hbsslaw.com
                                    barbaram@hbsslaw.com

                                   KELLER POSTMAN, LLC

                                    Zina G. Bash (pro hac vice)
                                    111 Congress Avenue, Suite 500
                                    Austin, TX, 78701
                                    Telephone: (512) 690-0990
                                    E-mail: zina.bash@kellerpostman.com

                                    Warren D. Postman (pro hac vice)
                                    Albert Y. Pak (pro hac vice)
                                    1100 Vermont Avenue, N.W., 12th Floor
                                    Washington DC, 20005
                                    Telephone: (202) 918-1123
                                    E-mail: wdp@kellerpostman..com
                                    E-mail: albert.pak@kellerpostman.com

                                   QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP

                                   By:___*/s/ Alicia Cobb*_____
                                    Alicia Cobb, WSBA # 48685
                                    1109 First Avenue, Suite 210
                                    Seattle, WA 98101
                                    Telephone: (206) 905-7000
                                    Email: aliciacobb@quinnemanuel.com

                                    Steig D. Olson (pro hac vice)
                                    David D. LeRay (pro hac vice)
                                    Nic V. Siebert (pro hac vice)
                                    51 Madison Avenue, 22nd Floor
                                    New York, NY 10010
                                    Telephone: (212) 849-7000
                                    Email: steigolson@quinnemanuel.com



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Adam B. Wolfson (pro hac vice)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Email: adamwolfson@quinnemanuel.com

KELLER ROHRBACK L.L.P.

By:      /s/ Derek W. Loeser
Derek W. Loeser (WSBA No. 24274)
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
Dloeser@kellerrohrback.com

*Attorneys for Plaintiffs and the Proposed Class*



## **CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2022, a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

*/s/ Steve W. Berman*
Steve W. Berman

PLAINTIFFS' OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO DISMISS - 27
Case No. 2:20-CV-00424-RAJ

HB  HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX