HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH FRAME-WILSON, CHRISTIAN SABOL, SAMANTHIA RUSSELL, ARTHUR SCHAREIN, LIONEL KEROS, NATHAN CHANEY, CHRIS GULLEY, SHERYL TAYLOR-HOLLY, ANTHONY COURTNEY, DAVE WESTROPE, STACY DUTILL, SARAH ARRINGTON, MARY ELLIOT, HEATHER GEESEY, STEVE MORTILLARO, CHAUNDA LEWIS, ADRIAN HENNEN, GLENDA R. HILL, GAIL MURPHY, PHYLLIS HUSTER, and GERRY KOCHENDORFER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation,

Defendant.

Case No. 2:20-cv-00424-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendant Amazon's  Motion to Dismiss the Second Amended Complaint ("SAC"). Dkt. # 59. Plaintiffs oppose the motion to dismiss. Dkt. # 61. Having reviewed the briefing, including the parties' supplemental

authorities (Dkt. ## 64, 66), the remaining record, and relevant law, the Court finds that oral argument is unnecessary. For the reasons below, the motion to dismiss is **DENIED in part** and **GRANTED in part**.

## II. BACKGROUND

The general facts of this case have been recounted in this Court's prior order, and the Court will not reiterate them here. *See* Dkt. # 48 (prior Order outlining the facts of the case). Previously, the Court denied in part and granted in part Amazon's motion to dismiss the First Amended Complaint ("FAC"). Dkt. # 48. Specifically, the Court dismissed Plaintiffs' 15 U.S.C. § 1 ("Section 1") *per se* claim; state antitrust, restraint of trade, and consumer protection claims; and unjust enrichment claims. *Id.* The Court granted Plaintiffs leave to amend their complaint, and Plaintiffs filed the SAC. *See* Dkt. #55.

The SAC again includes claims for a *per se* Section 1 violation (First Cause of Action), a non-*per se* Section 1 violation (Second Cause of Action), a 15 U.S.C. § 2 ("Section 2") monopolization violation (Third Cause of Action), a Section 2 attempted monopolization violation (Fourth Cause of Action), a Section 2 conspiracy to monopolize violation (Fifth Cause of Action), and a California Cartwright Act *per se* violation (Sixth Cause of Action). Dkt. # 55, ¶¶ 224-284.

Amazon now moves to dismiss the SAC with prejudice for lack of antitrust standing and failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. # 59. Amazon argues: (1) that Plaintiffs lack standing for reasons the Court did not reach in its prior Order, (2) new allegations concerning Amazon's Fair Pricing Policy contract the Policy's plain language, (3) the SAC fails to allege market power or anticompetitive effects, and (4) the SAC's Section 1 and Cartwright Act allegations fail as they did previously. *Id.* at 7-9.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint

for failure to state a claim. The court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). The complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. DISCUSSION

Amazon moves to dismiss Plaintiffs' SAC, alleging various grounds for dismissal: Amazon argues: (1) that Plaintiffs lack standing for reasons the Court did not reach in its prior Order, (2) new allegations concerning Amazon's Fair Pricing Policy contract the Policy's plain language, (3) the SAC fails to allege market power or anticompetitive effects, and (4) the SAC's Section 1 and Cartwright Act allegations fail as they did previously. *Id.* at 7-9.

### A. Standing

1.) *Co-Conspirator Standing*

In ruling on Amazon's motion to dismiss the FAC, this Court held that Plaintiffs established standing based on their allegation that they were direct purchasers of antitrust conspirators. Dkt. #48 at 8. This Court found that Plaintiffs' allegation that "they overpaid as a result of the alleged price-fixing conspiracy when they purchased class products from Amazon's co-conspirators on platforms other than Amazon.com" was sufficient for antitrust standing, because the Ninth Circuit has held that "[w]hen co-conspirators have jointly committed the antitrust violation, a plaintiff who is the

immediate purchaser from any of the conspirators is directly injured by the violation." *Id.* (citing *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 113, 1157 (9th Cir. 2019)).

The Court further found that there was no need to apply an umbrella theory, which posits that non-conspirators' prices for class products are artificially inflated due to the "umbrella" of non-competitive market conditions created by Amazon's arrangements with co-conspirators, to the parties' arguments. Dkt. # 19 at 15-16; Dkt. # 48 at 6-8; *see also In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 691 F.2d 1335, 1338-39 (9th Cir. 1982).

Amazon again challenges Plaintiffs' standing, arguing that Plaintiffs have failed to establish it under the co-conspirator exception to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), on grounds that the Court did not reach. Plaintiffs note that Amazon's prior challenge to Plaintiffs' standing was resolved in Plaintiffs' favor, and the arguments now raised by Amazon could have been raised in the first round of briefing, if they weren't already raised. Indeed, Amazon sought reconsideration of this Court's prior Order denying in part and granting in part dismissal, and again urged this Court to apply an umbrella analysis to Plaintiffs' standing argument. *See* Dkt. # 51. Essentially, Plaintiffs oppose Amazon using the same raised arguments to take a second bite at the dismissal apple.

Although Amazon claims that their current arguments against Plaintiffs' standing are based on amendments to the SAC, Plaintiffs' core allegations remain consistent. Given that the Court has previously ruled that Plaintiffs have standing (and found it unnecessary to analyze standing as direct purchasers from alleged antitrust co-conspirators under an umbrella theory), the Court sees no need to revisit its ruling at this time. However, the Court will address several arguments raised by Amazon in its briefing.

2.) *Joinder of Alleged Co-Conspirators and Pass-On Theory of Damages*

Amazon argues that Plaintiffs must join third-party sellers and alleged co-conspirators as defendants. Dkt. # 59 at 1. Amazon claims that, to establish standing based on an alleged vertical conspiracy, "joinder of the alleged co-conspirators 'is required to prevent a serious risk of multiple liability.'" *Id.* (citing *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 691 F.2d 1335, 1342 (9th Cir. 1982). Plaintiffs factually distinguish *Petroleum Products* from the matter at hand, and the Court agrees that Plaintiffs need not join Amazon's co-conspirators.

The plaintiffs in *Petroleum Products* derived standing from their gas purchases from alleged co-conspirators (retail dealers) who also directly purchased from defendant gas suppliers. 691 F.2d at 1341. The court required plaintiffs to join the retail dealers *if* they were to pursue a resale price maintenance conspiracy claim. *Id.* If plaintiffs pursued this claim, the retail dealers could later prove that they were not a part of the conspiracy and could then maintain their own suits as direct purchasers. *Id.* at 1342. The Court found there to be an unacceptable risk of duplicative recovery. *Id.* As this Court previously noted, here, "there is no chain of distribution or pass-through costs that create a risk of duplicative recovery" here. Dkt. # 48 at 8. However, even if third-party sellers were to pursue their own actions for lost profits, that would not foreclose Plaintiffs' own action for overcharge injuries. *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688 (2d Cir. 2009).

Similarly, Amazon argues that Plaintiffs improperly rely on a pass-on theory of liability and relies on *In re ATM Antitrust Fee Litig.*, 686 F.3d 741, 755 (9th Cir. 2012). Amazon characterizes Plaintiffs' claims thusly: "Plaintiffs' claim they paid more than they otherwise would have paid because the former parity provision and the Fair Pricing Policy caused Amazon third-party sellers to pass on to consumers the fees they paid to Amazon, eliminating price competition among online retailers." Dkt. # 59 at 11. Under *ATM*, Amazon argues, Plaintiffs' allegations that "seller fees are *built into* the prices its sellers charge their customers for products purchased on Amazon Marketplace" are fatal.

*Id.* (quoting SAC ¶ 125) (italics in Dkt. # 59). "An allegation that 'a cost paid by the buyer is baked into the purchase price is simply another way of saying that the cost is passed through to the buyer.'" Dkt. # 59 at 11 (quoting *Leeder v. Nat'l Ass'n of Realtors*, 2022 WL 13071400, at *4 (N.D. Ill. May 2, 2022)). Plaintiffs argue that, for *ATM* to apply, "Amazon and its third-party sellers would have to participate in a conspiracy to fix seller fees that sellers would then pass onto Plaintiffs in a subsequent transaction between Plaintiffs and the sellers. Plaintiffs have never alleged this." Dkt. # 61 at 10. The Court agrees. Notably, in *ATM*, the district court found plaintiffs to be indirect purchasers (and therefore blocked by the *Illinois Brick* wall) because they did not directly pay the alleged unlawful fee. 686 F.3d at 750. Here, on the other hand, Plaintiffs allege that they directly purchase Class Products at inflated prices from co-conspirator sellers, conferring standing. SAC ¶ 263, 274. Amazon's argument fails.

*3.) Section 2 Conspiracy to Monopolize Standing*

Amazon attacks Plaintiffs' standing to bring their new Section 2 conspiracy to monopolize claim, arguing that Plaintiffs fail to allege facts to satisfy the required elements. Dkt. # 59 at 7. A Section 2 conspiracy to monopolize claim is proven by: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assoc., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

Amazon attacks Plaintiffs' allegations in support of the third element and contends that the SAC fails to allege that Amazon and its third-party sellers acted in concert with "specific intent" to confer monopoly power on Amazon alone. Dkt. # 59 at 7. Instead, Amazon argues, Plaintiffs allege a shared monopoly, which is not recognized in the Ninth Circuit. *Id.* at 8. Plaintiffs argue that the sellers' specific intent can be inferred from the character of the actions taken, which includes the various MFN agreements. Dkt. # 61 at 5. Additionally, Plaintiffs' note that they do not allege the existence of a shared

monopoly, but instead describe a monopoly in which many of the alleged co-conspirators participate "reluctantly". SAC ¶ 35.

The Court agrees. "The involuntary nature of one's participation in a conspiracy to monopolize is no defense. An antitrust conspirator can be held liable for damages even though he participates only under coercion." *Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674, 682 (9th Cir. 1976). Given the undeveloped factual record, the Court at this point cannot say whether the agreements between Amazon and third-party sellers "are not so anticompetitive on their face that they can be condemned without … evidence that they were adopted with specific intent to monopolize." *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1155 (9th. Cir. 2003). However, taking the allegations in the SAC as true and making all inferences in the light most favorable to Plaintiffs, as the Court must at this stage, the Court finds that Plaintiffs have adequately alleged that the agreements at issue here "were designed to maintain market power, which is sufficient to allege defendants' specific intent." *In re National Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1159 (9th Cir. 2019); SAC ¶¶ 17-18, 36, 156-58, 163-64, 201, 251, 269.

*4.) Article III Standing*

Amazon argues that Plaintiffs have not alleged requisite facts to establish Article III standing based on purchases by absent class members from sellers *other* than alleged co-conspirator sellers from whom Plaintiffs made purchases. Dkt. # 59 at 15. According to Plaintiffs, Amazon conflates standing and class certification. Dkt. # 61 at 13. The Court agrees.

To establish Article III standing, a plaintiff must show that "(1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). "Standing exists if at

least one named plaintiff meets the requirements." *Id.* Amazon's argument raises the issue of whether named plaintiffs are adequate representatives of the claims of unnamed plaintiffs—a question for class certification, to be addressed at a later time. *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015).

For the reasons stated above, this Court finds that Plaintiffs' suit should not be dismissed for lack of standing. Amazon's request is **DENIED.**

**B. Section 1 *Per Se* Claim**

Previously, this Court dismissed Plaintiffs' Section 1 *per se* claim, noting that Plaintiffs were not challenging Amazon's conduct as a competitor to third-party sellers, but instead challenge the vertical agreement between third-party sellers and Amazon.com as their host platform. Dkt. # 48 at 11-12. Plaintiffs did not allege in their First Amended Complaint that the provisions at issue involved agreement to fix prices of Amazon's products *and* those of third-party sellers. *Id.* However, this Court noted that, even if the agreements between Amazon and third-party sellers were found to also contain a horizontal element, they would be analyzed under the rule of reason—not a *per se* framework. *Id.* (citing *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1481 (9th Cir. 1986))

Plaintiffs argue that the SAC "demonstrates that the MFN agreements are agreements between competitors to increase their prices across online retail sales." SAC ¶¶ 2, 29. In support of Plaintiffs' revived *per se* Section 1 claim, the SAC includes findings from the House subcommittee on antitrust and German competition authorities that third-party sellers are both Amazon's customers and competitors. *Id.* ¶ 94. It further alleges that German regulators have characterized the prior Price Parity Provision as a "horizontal price-fixing" agreement with stark anticompetitive effects. *Id.* ¶ 112-113.

Amazon, on the other hand, argues that Plaintiffs' Section 1 *per se* claims again fail and asserts that "[n]o court has ever found that polices directed at promoting

competitive *consumer* prices, like the former parity provision and the Fair Pricing Policy, are an antitrust violation at all, let alone a *per se* violation." Dkt. # 59 at 17. Because of this, Amazon argues, the rule of reason applies instead. *Id.* at 19.

"Some types of restraints…have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful *per se*." *State Oil v. Khan*, 522 U.S. 3, 10 (1997). The Supreme Court has cautioned that "the *per se* approach is not to be readily expanded to new arrangements or to business relationships with which the courts are inexperienced." *American Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 784 (9th Cir. 1996) (citations omitted).

Plaintiffs rely on *Palmer v. BRG of Georgia, Inc.* in support of their contention that Amazon's MFN agreements are *per se* illegal. 498 U.S. 46 (1990). *Palmer* involved an agreement between companies that previously competed in a particular geographic market before they allocated territories and agreed not to compete in each other's territories. *Id.* at 49. This is an example of market allocation, and not analogous to the facts before us, which are considerably more complex. Notably, the *Palmer* Court found significant the immediate and substantial price increase that one of the companies instituted after coming to their illegal agreement. *Id.* at 47. This price increase ended up benefitting both parties to the agreement. *Id.* No such agreement (or benefit to both third-party sellers and Amazon) is alleged here. Similarly, *Aya Healthcare Serv., Inc. v. AMN Healthcare, Inc.*, also cited by Plaintiffs, involved an *undisputed* horizontal restraint that was ultimately found to be "ancillary to the parties' broader agreement," and therefore subject to a rule of reason analysis. 9 F.4th 1102, 1111 (9th Cir. 2021). Ancillary restraints must be "(1) subordinate and collateral to a separate, legitimate transaction" and "(2) reasonably necessary to achieving that transaction's pro-competitive purpose," and Plaintiffs do not allege that the allegedly anticompetitive aspects of the MFNs are "ancillary" to the co-conspirators' agreements. *Id.* at 1109 (citations and quotations omitted). *Aya*'s applicability to the facts at hand is limited.

Ultimately, the SAC still does not present facts "supporting a horizontal agreement, a 'meeting of the minds,' or conspiracy between" third-party sellers who entered an MFN that would lead to *per se* liability. Dkt. # 48 at 13 (citing *Twombly*, 550 U.S. at 557). This cause of action is dismissed. Amazon's motion to dismiss this claim is **GRANTED**.

**C. Section 2 Monopolization Claims**

Amazon moves to dismiss Plaintiffs' Section 2 claims on the basis that the plain language of the "Fair Pricing Policy" does not require "third-party sellers to add Amazon's fees and costs to their products when they sell them off Amazon in other online stores." Dkt. # 59 at 19[1]. The policy prohibits sellers from "[s]etting a price on a product or service that is significantly higher than recent prices offered on or off Amazon." SAC ¶ 16; Dkt. # 60, Ex. B. Amazon argues that the policy "protects consumers," is not an MFN, and only prohibits price gouging—something that is prohibited by many states. Dkt. # 59 at 19-20. Ultimately, Amazon argues, the policy is not anticompetitive.

Plaintiffs maintain that the "Fair Pricing Policy" is simply a whitewashed version of the prior Price Parity requirement, and that the policy threatens sellers who sell their products for a higher price on Amazon with consequences such as "removing the product from the Buy Box, suspending shipping options, and terminating selling privileges." SAC ¶ 129.

The SAC contains various allegations that the policy is administered as an anticompetitive MFN and forces third-party sellers to maintain price parity across their online platforms even when they could offer lower prices on sales channels outside of

[1] Amazon submits a copy of the Fair Pricing Policy, *see* Dkt. # 60, Ex. B, which Plaintiffs refer to (and provide a web link to) in the SAC. The authenticity of this document is not in question, and as such, the Court may consider it. *Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1177 (W.D. Wash. 2015).

Amazon in order to avoid suspension or termination. *See* SAC ¶¶ 17, 129, 141.142. The Court finds these allegations, taken as true, plausible on their face. Amazon's argument that its "Fair Pricing Policy" has procompetitive justifications may be used to rebut Plaintiffs' claims once a *prima facie* case has been established, but the Court need not consider such rebuttals on a motion to dismiss. *See In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1033 (N.D. Cal. 2008) (holding that while "[a] procompetitive benefit may rebut a *prima facie* case . . . to survive dismissal Plaintiffs are required only to establish a *prima facie* case").

**D. Market Power and Anticompetitive Effects**

Next, Amazon argues that Plaintiffs must allege that each third-party seller has market power and each agreement with a third-party seller is likely to result in an anticompetitive effect and that the SAC fails to do so. Dkt. # 59 at 21. Amazon appears to seek dismissal of all of Plaintiffs' claims on this basis. Plaintiffs note that Amazon's motion to dismiss the FAC challenged only the threshold question of Plaintiffs' definition of the relevant market, and not the potential market power of each third-party seller, and as such, their arguments are untimely under Rule 12(g). Dkt. # 61 at 22; *see also* Dkt. # 18 at 14-18. In any event, Plaintiffs argue, the SAC plausibly alleges a "naked restriction on price or output, such as an agreement not to compete in terms of price," and this is sufficient. Dkt. # 61 at 22 (quoting *National Football*, 933 F.3d at 1151).

A Section 1 rule of reason claim requires four elements: "Plaintiffs must plead facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *National Football*, 933 F.3d at 1151 (quoting *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012)); *see also In re Musical Instruments and Equipment Antitrust Litigation*, 798 F.3d 1186, 1191-92 (9th

Cir. 2015) ("Vertical agreements…are analyzed under the rule of reason, whereby courts examine 'the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed,' to determine the effect on competition in the relevant product market.") (quoting *Nat'l Soc'y of Professional Eng'rs v. United States*, 435 U.S. 679, 692 (1978)).

To state a claim for monopolization under Section 2, a plaintiff must prove: "(1) [p]ossession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." *Pac. Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992). To state a claim for an attempt to monopolize under Section 2, Plaintiffs must establish the following elements: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." *Id.* Finally, a Section 2 conspiracy to monopolize claim is proven by four elements: "(1) the existence of a combination or conspiracy to monopolize; (2) an over act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assoc., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003). Plaintiffs also must plead a relevant market to state a claim under Section 1 or 2 of the Sherman Act, although they need not be pled with specificity at this stage. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). Amazon argues that Plaintiffs have failed to adequately allege market power and that each alleged conspiracy is anticompetitive. In the Ninth Circuit,

> [m]arket power may be demonstrated through either of two types of proof. One type of proof is direct evidence of the injurious exercise of market power. If the plaintiff puts forth evidence of restricted output and supracompetitive prices, that is direct proof of the injury to competition which a competitor with market power may inflict, and thus, of the actual exercise of market power. The more common type of proof is circumstantial evidence pertaining to the structure of the market. To demonstrate market power circumstantially, a plaintiff must: (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show

> that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run.

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) (internal citations omitted). In *Twin City Sportservice, Inc. v. Charles O. Finley & Co. Inc.,* the Ninth Circuit held that the court may consider "the overall effects of a defendant's conduct in the relevant market" and was not "limited to looking at the market implications of the one contract between the antitrust plaintiff and defendant." 676 F.2d 1291, 1302 (9th Cir. 1982). The Court finds the principle to be applicable here. Amazon has not convinced this Court that Plaintiffs are required to allege that each third-party seller has market power for the specific products it sells. The Court finds that the allegations of the SAC in regards to the overall effects of Amazon's conduct in the market are sustainable on their face. *See* SAC ¶¶ 143-53. Amazon's motion to dismiss Plaintiffs' alternative Section 1 and Section 2 claims is **DENIED.**

### E. California Cartwright Act Claim

In addition to their federal antitrust claims, Plaintiffs assert a claim under the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770. SAC ¶¶ 276-284. Previously, this Court dismissed with leave to amend the FAC's fifth cause of action for the violation of 38 states' antitrust and restraint of trade laws. Dkt. # 48 at 22-24; *see also* FAC ¶¶ 217-225. Amazon seeks dismissal of Plaintiffs' Cartwright Act claim, arguing that the reasons for dismissal of their Section 1 claims apply equally to their Cartwright Act claim. Dkt. # 59 at 23. Amazon argues that the facts before this Court fall under "an implied exception similar to the one that validates reasonable restraints" under the Sherman Act, as outlined by the California Supreme Court. *Id.* (citing *In re Cipro Cases I & II*, 61 Cal. 4th 116, 137 (2015)). Plaintiffs counter that because they plead a valid Sherman Act claim, "they likewise plead a valid Cartwright Act claim." Dkt. # 61 at 24 (citing *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1114 (N.D. Cal.

2012)).

To state a claim under the Cartwright Act, a plaintiff must allege: (1) the formation and operation of the conspiracy, (2) the illegal acts done pursuant thereto, (3) a purpose to restrain trade, and (4) the damage caused by such acts. *In re California Gasoline Spot Market Antitrust Litig.*, No. 20-cv-03131-JSC, 2022 WL 3215002, at *1 (N.D. Cal. Aug. 9, 2022). If Plaintiffs plead facts that support an antitrust claim, those facts may also support a valid California unfair competition claim. *Hicks*, 897 F.3d at 1124, n. 9. Just as Plaintiffs' Section 1 *per se* claim has failed, so to does Plaintiffs' Cartwright Act *per se* claim. *See Jain Irrigation, Inc. v. Netafirm Irrigation, Inc.*, 386 F. Supp. 3d 1308, 1316 (E.D. Cal. 2019) ("[B]ecause plaintiffs' Cartwright Act claims rise or fall depending on the success of its Sherman Act claim, plaintiffs' Cartwright Act claims must also be dismissed."). Plaintiffs' Cartwright Act claim is **DISMISSED**.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## V. CONCLUSION

For the reasons stated above, Amazon's Motion to Dismiss, Dkt. # 59, is **DENIED in part** and **GRANTED in part.** The Court **GRANTS** Amazon's motion to dismiss Plaintiffs' Section 1 claim under a *per se* analysis. Leave to amend is not granted, as the Plaintiffs would have to significantly amend the pleadings against to bring such a claim. The Court **DENIES** Amazon's motion to dismiss Plaintiffs' alternative Section 1 claim and Plaintiffs' Section 2 claims. The Court **GRANTS** dismissal of Plaintiffs' Cartwright Act *per se* claim. The parties shall propose a class certification briefing schedule within twenty-one (21) days.

DATED this 23rd day of March, 2023.

The Honorable Richard A. Jones
United States District Judge