The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH FRAME-WILSON, CHRISTIAN SABOL, SAMANTHIA RUSSELL, ARTHUR SCHAREIN, LIONEL KEROS, NATHAN CHANEY, CHRIS GULLEY, SHERYL TAYLOR-HOLLY, ANTHONY COURTNEY, DAVE WESTROPE, STACY DUTILL, SARAH ARRINGTON, MARY ELLIOT, HEATHER GEESEY, STEVE MORTILLARO, CHAUNDA LEWIS, ADRIAN HENNEN, GLENDA R. HILL, GAIL MURPHY, PHYLLIS HUSTER, and GERRY KOCHENDORFER, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>  v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>                    Defendant. | No. 2:20-cv-00424-RAJ<br><br>**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF GEOGRAPHIC DATA**<br><br>NOTE ON MOTION CALENDAR:<br>April 21, 2023 |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    DISPUTED REQUESTS ........................................................................................2

III.   LEGAL STANDARD ............................................................................................3

IV.   ARGUMENT .........................................................................................................4

      A.    U.K. And German Data Are Relevant To Commonly Accepted Econometric Analyses Offered In Support Of Class Certification ..........................4

      B.    Amazon Has Failed to Articulate With Specificity or Substantiate Any Purported Undue Burden or Other Objection ...................................................7

V.    CONCLUSION ......................................................................................................8

PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF GEOGRAPHIC DATA - i
Case No. 2:20-CV-00424-RAJ



# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A. Farber & Partners, Inc. v. Garber*,
  234 F.R.D. 186 (C.D. Cal. 2006) ................................................................................. 4, 8

*In re Aspartame Antitrust Litig.*,
  2008 WL 2275531 (E.D. Pa. May 13, 2008) ....................................................................7

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2004 WL 7200711 (E.D. Pa. Oct. 29, 2004) ....................................................................7

*Doe v. Trump*,
  329 F.R.D. 262 (W.D. Wash. 2018) ............................................................................ 3, 8

*Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*,
  661 F. Supp. 2d 1039 (D. Minn. 2009) ............................................................................6

*In re Plastics Additives Antitrust Litig.*,
  2009 WL 10741541 (E.D. Pa. Oct. 29, 2009) ..................................................................6

*In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*,
  335 F.R.D. 1 (E.D.N.Y. 2020) .........................................................................................5

*U.S. v. Dentsply Int'l, Inc.*,
  2000 WL 654286 (D. Del. May 10, 2000) ......................................................................6

*In re Urethane Antitrust Litig.*,
  261 F.R.D. 570 (D. Kan. 2009) .......................................................................................6

### OTHER AUTHORITIES

Fed. R. Civ. P. 26 ................................................................................................................ 3, 8

Fed. R. Civ. P. 37 .....................................................................................................................3

PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF GEOGRAPHIC DATA - ii
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
206.623.7292  206.623.0594 FAX

## I. INTRODUCTION

Plaintiffs bring this proposed class action lawsuit against Amazon for violations of the Sherman Act.[1] Plaintiffs allege binding agreements between Amazon and the third-party sellers that sell on Amazon Marketplace that restrain competition and enable Amazon to create or maintain its online retail monopoly. Specifically, Plaintiffs allege that Amazon's Price Parity Provision (in effect in the United States until March 2019), and its Marketplace Fair Pricing Policy (enforced by Amazon from 2017 through the present) are designed to and have the intended effect of preventing the third-party sellers from selling their goods on other online sites at prices that are lower than the price of their goods on Amazon Marketplace. Plaintiffs allege that Amazon's policies inflated prices of goods offered for sale at online retailers other than Amazon. Plaintiffs, who allege that they overpaid for goods purchased online, seek to represent a class of consumers who likewise purchased from online retailers at prices inflated by Amazon's conduct.

For purposes of preparing and presenting a methodology for assessing class-wide impact and damages, Plaintiffs requested transactional data[2] from Amazon, including data from two foreign markets, the United Kingdom and Germany. This is because the same Price Parity Provision was in effect in these markets for a shorter time than it was in the United States, and thus comparing the data from these markets with data from the United States would provide critical information relevant to how Amazon's challenged conduct harmed competition. ECF No. 55 (Second Amended Class Action Complaint ("SAC")) ¶¶ 94, 111-15, 167. While the parties continue to engage in discussions relating to other aspects of Amazon's anticipated data productions—negotiations which Plaintiffs hope will be fruitful and not require the Court's intervention—Amazon refuses to produce data from the United Kingdom and Germany, and insists that its productions must be limited to data from only the United States.

---

[1] Counsel for Plaintiffs also represent plaintiffs against Amazon in the *De Coster* action, and move concurrently for the same relief in that action.

[2] "Transactional data" reflects consummated sales between Amazon platform sellers (whether first party or third-party) and consumers. It is distinct from "offer data," which reflects prices displayed on Amazon, but not actual sales.

PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF GEOGRAPHIC DATA - 1
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
206.623.7292 206.623.0594 FAX

Here, the primary alleged anticompetitive conduct is Amazon's imposition of the Price Parity Provision through March 2019, and its imposition of the similar Marketplace Fair Pricing Policy through the present day. ECF No. 55 (SAC) ¶¶ 111-15, 127-29. Plaintiffs' data requests relate not only to Amazon's U.S. operations, but also its U.K. and German operations, because Amazon withdrew the Price Parity Provision abroad several years before it did so in the United States. Economists regularly use data from a "yardstick" market to assess competitive conditions but-for the alleged anticompetitive conduct. *See e.g.*, Ex[3]. A, Areeda & Hovenkamp, "Antitrust Law: An Analysis of Antitrust Principles and Their Application," at § 340a2. Thus, comparisons between U.S. data, on one hand, and U.K. and German data, on the other, can provide information relevant to assessing how Amazon's challenged conduct harmed competition.

Although Amazon does not contest that this type of data may be used for these analyses, Amazon refuses to produce it based on an unsubstantiated burden objection and because foreign transactions are purportedly not relevant to Plaintiffs' claims. But Amazon has not identified *any* particularized burden in producing foreign data, much less any undue burden, Ex. B (Amazon R&Os to RFP 89), and data regarding foreign transactions is relevant to a yardstick analysis measuring the competitive impact of Amazon's conduct on the U.S. transactions at issue. Plaintiffs therefore seek an order compelling Amazon to produce the requested transactional data from its U.K. and German markets.

## II. DISPUTED REQUESTS

Plaintiffs served their first and second sets of Requests for Production on September 23 and September 28, 2022. These Requests seek data regarding Amazon's operations in the United Kingdom and Germany, including the following categories of data:

- all historic transaction-level sales data for the United Kingdom and Germany (Request No. 89 (c));

---

[3] All exhibits referenced herein as "Ex." are attached to the Declaration of Steve W. Berman in Support of Plaintiffs' Motion to Compel Production of Geographic Data unless otherwise indicated.

PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF GEOGRAPHIC DATA - 2
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
206.623.7292 206.623.0594 FAX

- aggregated sales revenues, shipping charges, fees and commissions paid to Amazon, revenue for Amazon, and costs for Amazon, in the United States, United Kingdom, and Germany (Request No. 90); and

- corresponding data dictionaries and keys (Request No. 91).

Ex. B. The data sought includes fields to uniquely identify third-party sellers, products, offer and sale prices, shipping and other costs to third-party sellers, fees and commissions charged by Amazon, and other sales-related information relevant to Plaintiffs' expert analyses.

Amazon served its responses and objections to these Requests on November 9, 2022. Amazon objected in relevant part that "the request is overbroad, unduly burdensome, not proportionate to the needs of the case, and not relevant to the claims or defenses of any party, to the extent it seeks… (b) data for foreign transactions, which are not relevant to Plaintiffs' claims…." Ex. B, R&O to Request Nos. 89 (emphasis added); Request Nos. 90-91. The parties met and conferred on data productions on January 20, February 17, and March 27, 2023, and exchanged multiple letters. Throughout this process, Plaintiffs explained the relevance of this information, and asked Amazon to substantiate its burden objections. Amazon never provided any particularized burden information.

Because the parties were unable to reach agreement on the geographic scope of the anticipated data productions, Plaintiffs bring this motion.

### III.    LEGAL STANDARD

A "party may move for an order compelling … discovery," if the party "has in good faith conferred or attempted to confer with the … party failing to make … . discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Although the party seeking to compel discovery has the burden of establishing that its requests are relevant, *see* Fed. R. Civ. P. 26(b)(1), the party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections with competent evidence." *Doe v. Trump*, 329 F.R.D. 262, 270–71 (W.D. Wash. 2018) (brackets, quotation omitted). "[G]eneral or

PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF GEOGRAPHIC DATA - 3
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
206.623.7292 206.623.0594 FAX

boilerplate objections such as 'overly burdensome…' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections… . Similarly, boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).

## IV.   ARGUMENT

**A.   U.K. And German Data Are Relevant To Commonly Accepted Econometric Analyses Offered In Support Of Class Certification**

Plaintiffs understand that Amazon imposed the Price Parity Provision on its third-party sellers since approximately 2010, including in the United States, United Kingdom, and Germany. The Price Parity Provision prohibited Amazon's third-party sellers from selling their goods on other online sites at prices that are lower than the price of their goods on Amazon Marketplace. In the face of regulatory scrutiny, Amazon then withdrew that Price Parity Provision in the United Kingdom and Germany in or around November 2013. *See* Bundeskartellamt [Federal Cartel Office], Nov. 26, 2013, B6-46/12, *available at* https://tinyurl.com/4nn5x9d7. But Amazon continued to impose that policy on its third-party sellers in the United States into early 2019, and even then Amazon continued to enforce a similar parity policy against its third-party sellers in the United States through its Marketplace Fair Pricing Policy. ECF No. 55 (SAC) ¶¶ 127-29, 168. Therefore, data from Amazon's U.K. and German marketplaces (where Amazon withdrew the challenged Price Parity Provision years earlier) as compared to anticipated productions of data relating to the United States (where Amazon kept the Price Parity Provision in place longer), can provide relevant information for Plaintiffs' experts to conduct comparative analyses, and prepare methodologies for analyzing class-wide impact and damages.

Amazon argues the requested data is irrelevant because (i) Plaintiffs' proposed analyses will not work and (ii) the data is from foreign transactions while Plaintiffs' class is limited to the United States. Neither of these arguments has merit. The foreign transactional data Plaintiffs seek is directly relevant to an assessment of the of class-wide impact of Amazon's anticompetitive conduct in the United States and damages to the class (as courts around the



country have found in analogous cases), and the assessment Plaintiffs contemplate is well-accepted in the economic literature and by courts.

*First*, to assess impact or damages in antitrust cases, it is common to use data from a period or geography that is not subject to the allegedly anticompetitive practice. *See e.g.*, Ex. A, Areeda & Hovenkamp, "Antitrust Law: An Analysis of Antitrust Principles and Their Application," at § 340a2 (discussing two possible approaches for calculating damages, a benchmark approach and a yardstick approach, each using data untainted by the alleged conduct); *In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. 2020) (class-wide impact inquiry satisfied by using a yardstick approach that compared product unaffected by the conduct to a product affected by the conduct). Specifically, geographic yardstick analyses have been used *for decades* to conduct antitrust analyses. *See, e.g.*, Ex. C, John E. Lopatka, "Overcharge damages for monopolization of new economy markets," Antitrust Bulletin 51 (2006), at 453 (explaining that plaintiffs' experts estimated damages in a consumer class action against Microsoft using a product or geographic yardstick approach); Ex. D, Herbert Hovenkamp, "Apple v. Pepper: Rationalizing Antitrust's Indirect Purchaser Rule," 120 Colum. L. Rev. Forum 14 (2020) (discussing utility of yardstick analysis using unaffected different geographic market in indirect purchaser context). In fact, the European Union Guidelines for practitioners on quantifying harm in antitrust cases specifically contemplate geographical comparisons across different markets. Ex. E, European Commission, *Practical Guide – Quantifying Harm in Actions for Damages Based on Breaches of Article 101 or 102 of the Treaty on the Functioning of the European Union* (2013) at ¶¶ 49-51, 56-58, 155-59.

Likewise, economists have used geographic comparators specifically to evaluate the impact of Amazon's Price Parity Provision, one of Amazon's parity policies Plaintiffs challenge. *See* Ex. F, Song (2021) "Price Parity Clauses and Product Prices: Evidence from Amazon and eBay," at 16-17 ("We collect data on products sold on Amazon in the United Kingdom and Canada. We choose these two countries because their market structures and economic conditions are similar to those of the United States. In addition, they did not experience policy changes

PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF GEOGRAPHIC DATA - 5
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
206.623.7292 206.623.0594 FAX

during our study period."). Virtually identical analyses have been conducted in the wake of government enforcement actions against online travel agents and their MFNs. *See* Ex. G, Hunold, Kesler, Laitenberger, Schlutter (2018), "Evaluation of best price clauses in online hotel bookings" (comparing hotel room offer pricing across France, Germany, Austria, and Canada, in the wake of different government enforcement proceedings against online travel agents' best price clauses, a type of platform MFN clause); *see also* Ex. H, Ennis, Ivaldi, Lagos (2022) "Price Parity Clauses for Hotel Room Booking: Empirical Evidence from Regulatory Change" ("This paper examines the impact of most favored nation (MFN) clauses on retail prices, taking advantage of two natural experiments that changed vertical contracting between hotels and major digital platforms. First, a broad E.U. intervention narrowed the breadth of "price parity clause" obligations between hotels and major Online Travel Agencies (OTAs). Second, France and Germany went further and eliminated all price-parity agreements for top OTAs.").

These analyses—and consequently the comparative geographic data upon which they depend—present a critical avenue for Plaintiffs to demonstrate impact and damages. Courts have recognized this to be true and have compelled the production of benchmarking data for these very purposes. *See e.g.*, *In re Plastics Additives Antitrust Litig.*, 2009 WL 10741541, at *1 (E.D. Pa. Oct. 29, 2009) (ordering the production of eight additional months of "benchmark" data); *Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, 661 F. Supp. 2d 1039, 1054–55, 1075 (D. Minn. 2009) (ordering production of data from Michigan as relevant to damages analyses in Minnesota including yardstick analysis).

*Second*, there is ample legal support specifically for production of foreign documents and data in U.S. antitrust cases. *See e.g.*, *U.S. v. Dentsply Int'l, Inc.*, 2000 WL 654286, at *5 (D. Del. May 10, 2000) ("The fact that the United States is the relevant market in this case does not necessarily limit discovery to the United States ... A 'general policy of allowing liberal discovery in antitrust cases' has been observed by this Court because 'broad discovery may be needed to uncover evidence of invidious design, pattern, or intent.'"). This is equally true in the context of class actions. *See, e.g.*, *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 575 (D. Kan. 2009) ("[N]othing in the FTAIA [Foreign Trade Antitrust Improvements Act] or [*F. Hoffman-La Roche*



*Ltd.*] v. *Empagran S.A.*, 542 U.S. 155 (2004) precludes discovery of documents or information related to foreign commerce that are relevant to antitrust claims alleging a domestic injury."); *In re Aspartame Antitrust Litig.*, 2008 WL 2275531, at *2-3 (E.D. Pa. May 13, 2008) (granting plaintiffs motion to compel "documents that relate, to among other things, the non-U.S. manufacture, sale and distribution of aspartame" and rejecting "Defendants' suggestion that discovery be limited to only those foreign materials that Defendants determine have a substantial effect on U.S. commerce" as "not acceptable."); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 7200711, at *5 (E.D. Pa. Oct. 29, 2004) ("Even in cases like this one, that assert claims based only on harm to domestic consumers, courts have granted extensive discovery involving international or foreign price-fixing activities where they are relevant to the plaintiffs' claims.") (collecting cases). In short, the mere fact that the transactional data does not reflect class purchases does not render it irrelevant.

The Court should order production of the following categories of data from the United Kingdom and Germany, as requested in Plaintiffs' Request Nos. 89-91:

- **Request No. 89:** (c) all historic transaction-level sales data for the United Kingdom and Germany;
- **Request No. 90:** aggregated sales revenues, shipping charges, fees and commissions paid to Amazon, revenue for Amazon, and costs for Amazon, in the United States, United Kingdom, and Germany; and
- **Request No. 91:** corresponding data dictionaries and keys.

**B.   Amazon Has Failed to Articulate With Specificity or Substantiate Any Purported Undue Burden or Other Objection**

Despite Plaintiffs' repeated requests, Amazon has neither specified the purported burden here nor has it substantiated any other objection to production. Instead, Amazon offers only boilerplate objections to producing data from the United Kingdom and Germany. *See, e.g.*, Amazon's R&O to Request No. 89 ("the request is overbroad, unduly burdensome, not proportionate to the needs of the case …."). Of course, "general or boilerplate objections such as 'overly burdensome…' are improper—especially when a party fails to submit any evidentiary

PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF GEOGRAPHIC DATA - 7
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
206.623.7292 206.623.0594 FAX

1  declarations supporting such objections. *A. Farber & Partners, Inc.*, 234 F.R.D. at 188.
2  Similarly, boilerplate objections to proportionality, without setting forth any undue burden are
3  improper. *See* Fed. R. Civ. P. 26 advisory committee notes (2015 Amendment) (restoration of
4  the "proportionality calculation to Rule 26(b)(1)" was not "intended to permit the opposing party
5  to refuse discovery simply by making a boilerplate objection that it is not proportional").

6        Here, Amazon has not offered the evidence required to sustain its undue burden or
7  proportionality objections. Over the course of several meet and confers and four months of
8  detailed correspondence, Amazon has provided no specific information or support for any
9  objection based on any purported burden. To the contrary, Amazon acknowledged in the process
10 of meeting and conferring that it has not identified *any* burdens associated with producing United
11 Kingdom and German data, beyond the small incremental burden of producing an additional
12 volume of data in response to Plaintiffs' Requests. But that "is not [an] 'undue' burden, but the
13 ordinary burdens that civil litigants must bear." *Trump*, 329 F.R.D. at 271-72. Plaintiffs' request
14 for U.K. and German data is proportionate: as set forth above, the data is clearly relevant to
15 Plaintiffs' intended analyses, and Amazon has not demonstrated burden that would outweigh
16 Plaintiffs' interest in discovery.

17       The Court should compel Amazon to produce the data Plaintiffs seek.

## V.    CONCLUSION

19       For all the reasons set forth above, Plaintiffs request an order compelling Amazon's
20 immediate production of transactional and other data from the United Kingdom and Germany
21 responsive to RFP Nos. 89 to 91.

PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF GEOGRAPHIC DATA - 8
Case No. 2:20-CV-00424-RAJ


1301 Second Avenue, Suite 2000, Seattle, WA 98101
206.623.7292 206.623.0594 FAX

| | | |
|---|---|---|
| 1 | DATED: April 6, 2023 | Respectfully submitted, |
| 2 | | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 3 | | By: */s/Steve W. Berman* |
| 4 | | Steve W. Berman, WSBA #12536 |
| | | By: */s/ Barbara A. Mahoney* |
| 5 | | Barbara A. Mahoney, WSBA #31845 |
| | | 1301 Second Avenue, Suite 2000 |
| 6 | | Seattle, WA 98101 |
| 7 | | Telephone: (206) 623-7292 |
| | | Facsimile:  (206) 623-0594 |
| 8 | | E-mail: steve@hbsslaw.com |
| | | E-mail: barbaram@hbsslaw.com |
| 9 | | |
| 10 | | KELLER ROHRBACK L.L.P. |
| 11 | | By: */s/ Derek W. Loeser* |
| | | Derek W. Loeser, WSBA No. 24274 |
| 12 | | 1201 Third Avenue, Suite 3200 |
| | | Seattle, WA 98101-3052 |
| 13 | | Telephone: (206) 623-1900 |
| 14 | | Facsimile:  (206) 623-3384 |
| | | E-mail:  Dloeser@kellerrohrback.com |
| 15 | | KELLER LENKNER LLC |
| 16 | | Zina G. Bash (*pro hac vice*) |
| 17 | | 111 Congress Avenue, Suite 500 |
| | | Austin, TX, 78701 |
| 18 | | Telephone: (512) 690-0990 |
| | | E-mail: zina.bash@kellerlenkner.com |
| 19 | | |
| 20 | | Warren D. Postman (*pro hac vice*) |
| | | Albert Y. Pak (*pro hac vice*) |
| 21 | | 1100 Vermont Avenue, N.W., 12th Floor |
| | | Washington DC, 20005 |
| 22 | | Telephone: (202) 918-1123 |
| | | E-mail: wdp@kellerlenkner.com |
| 23 | | E-mail: albert.pak@kellerlenkner.com |
| 24 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 25 | | By: */s/ Alicia Cobb* |
| 26 | | Alicia Cobb, WSBA # 48685 |
| | | 1109 First Avenue, Suite 210 |
| 27 | | Seattle, WA 98101 |
| | | Telephone: (206) 905-7000 |
| 28 | | Email: aliciacobb@quinnemanuel.com |

PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF GEOGRAPHIC DATA - 9
Case No. 2:20-CV-00424-RAJ

Steig D. Olson (*pro hac vice*)
David D. LeRay (*pro hac vice*)
Nic V. Siebert (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Email: steigolson@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Email: adamwolfson@quinnemanuel.com

*Attorneys for Plaintiffs and the Proposed Class*

PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF GEOGRAPHIC DATA - 10
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
206.623.7292 206.623.0594 FAX

## CERTIFICATE OF LENGTH

I hereby certify that this memorandum complies with the word count limit set forth in Local Civil Rule 7(e) because it contains 2,744 words. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

/s/ Steve W. Berman
Steve W. Berman

PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF GEOGRAPHIC DATA - 11
Case No. 2:20-CV-00424-RAJ

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
206.623.7292  206.623.0594 FAX

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2023, a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

                               */s/ Steve W. Berman*
                               Steve W. Berman

