The Honorable Richard A. Jones

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH FRAME-WILSON, CHRISTIAN
SABOL, SAMANTHIA RUSSELL, ARTHUR
SCHAREIN, LIONEL KEROS, NATHAN
CHANEY, CHRIS GULLEY, SHERYL
TAYLOR-HOLLY, ANTHONY COURTNEY,
DAVE WESTROPE, STACY DUTILL, SARAH
ARRINGTON, MARY ELLIOT, HEATHER
GEESEY, STEVE MORTILLARO, CHAUNDA
LEWIS, ADRIAN HENNEN, GLENDA R.
HILL, GAIL MURPHY, PHYLLIS HUSTER,
and GERRY KOCHENDORFER, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation,

Defendant.

Case No. 2:20-CV-00424-RAJ

**AMAZON.COM, INC.'S
OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL
PRODUCTION OF
GEOGRAPHIC DATA**

NOTE ON MOTION CALENDAR*:*
April 21, 2023

Oral Argument Requested

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

THE REQUESTS............................................................................................................ 2

ARGUMENT .................................................................................................................. 3

    I.      Plaintiffs Do Not Show the Relevance of the Foreign Data They Seek. .............. 3

         A.     Plaintiffs Do Not Claim That Transactions in Amazon's U.K.
              and German Stores Are at Issue.................................................................... 3

         B.     Plaintiffs Fail to Show That the Retail Environments in the U.K.
              and Germany Are Similar to the United States........................................ 4

    II.     Producing the Foreign Data Would Be Unduly Burdensome for
         Amazon and Is Disproportionate to the Needs of the Case. ............................... 8

CONCLUSION............................................................................................................... 11

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Cases**

4
*A.T.* v. *Everett Sch. Dist.*,

5
   2017 WL 4811361 (W.D. Wash. Oct. 25, 2017) ......................................................3

6
*In re Aspartame Antitrust Litig.*,
   2008 WL 2275531 (E.D. Pa. May 13, 2008) ..........................................................8

7
*In re Auto. Refinishing Paint Antitrust Litig.*,

8
   2004 WL 7200711 (E.D. Pa. Oct. 29, 2004) ..........................................................8

9
*In re Bard IVC Filters Prods. Liab. Litig.*,
   317 F.R.D. 562 (D. Ariz. 2016) ..............................................................................8

10

11
*Conn. Gen. Life Ins.* v. *Earl Scheib, Inc.*,
   2013 WL485846 (S.D. Cal. Feb. 6, 2013) .............................................................9

12
*United States* v. *Dentsply Int'l, Inc.*,

13
   2000 WL 654286 (D. Del. May 10, 2000)...........................................................5, 8

14
*In re Domestic Airline Travel Antitrust Litig.*,
   2018 WL 4381070 (D.D.C. June 15, 2018) ...........................................................2

15

16
*El Aguila Food Prod., Inc.* v. *Gruma Corp.*,
   131 F. App'x 450 (5th Cir. 2005) ...........................................................................6

17
*Goodness Films, LLC* v. *TV One, LLC*,

18
   2014 WL 12780291 (C.D. Cal. May 19, 2014) .....................................................5

19
*In re High-Tech Emp. Antitrust Litig.*,
   2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ........................................................2

20

21
*Insignia Sys., Inc.* v. *News Am. Mktg. In-Store, Inc.*,
   661 F. Supp. 2d 1039 (D. Minn. 2009) ..................................................................5

22
*Loeffel Steel Prod., Inc.* v. *Delta Brands, Inc.*,

23
   387 F. Supp. 2d 794 (N.D. Ill. 2005), *amended*, 2005 WL 8178971 (N.D. Ill.
   Sept. 8, 2005) ..........................................................................................................6

24
*Luken* v. *Christensen Grp. Inc.*,

25
   2017 WL 5483782 (W.D. Wash. Nov. 15, 2017) ................................................10

26
*McNulty* v. *Reddy Ice Holdings, Inc.*,

27
   271 F.R.D. 569 (E.D. Mich. 2011) .........................................................................2

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*In re Microcrystalline Cellulose Antitrust Litig.*,
   221 F.R.D. 428 (E.D. Pa. 2004)............................................................................7

*In re Plastics Additives Antitrust Litig.*,
   2009 WL 10741541 (E.D. Pa. Oct. 29, 2009)......................................................5

*In re Subpoenas Issued to Labatt Food Serv., LLC*,
   2022 WL 1000318 (W.D. Tex. Apr. 1, 2022).......................................................6

*Treehouse Avatar LLC* v. *Valve Corp.*,
   2021 WL 4428407 (W.D. Wash. Sept. 24, 2021)................................................9

*In re Urethane Antitrust Litig.*,
   261 F.R.D. 570 (D. Kan. 2009)............................................................................8

**Other Authorities**

Fed. R. Civ. P. 26......................................................................................................3, 9

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## INTRODUCTION

This lawsuit—brought by a proposed class of U.S. customers—challenges two pro-competitive policies applicable to third-party sellers offering products in Amazon's U.S. store. One sought to prevent third-party sellers from discriminating against Amazon customers by offering higher prices in Amazon's U.S. store than offered elsewhere, and the other sought to prevent price gouging in Amazon's U.S. store. Plaintiffs' claims relate solely to their purchases in U.S. online stores (other than Amazon), alleging that they paid inflated prices for their purchases in U.S. stores.

The putative class definition encompasses purchases "through any other retail e-commerce channel *in the United States* other than Amazon." Complaint, Dkt. 55, ¶ 211. But this motion does not seek data about these putative class purchases, or any purchase by Plaintiffs or other absent class members in U.S. stores. Plaintiffs instead seek to compel the production of extensive data relating to transactions in Amazon's United Kingdom ("U.K.") and German stores, which by Plaintiffs' own admission will not form the basis for any of their claims. Plaintiffs seek data dating back to 2010 relating to all transactions in Amazon's U.K. and German stores.[1] The request ignores the Federal Rules' requirement that discovery be relevant and proportional to the needs of the case, as it would require production of countless terabytes of transactional data reflecting at least hundreds of millions of transactions from Amazon's U.K. and German stores that have nothing to do with the purchases that Plaintiffs made in U.S. stores. Plaintiffs' only attempt to suggest the potential relevance of this mass of foreign data is that the data *might* somehow turn out to be useful to their experts. But Plaintiffs fail to specify what analysis their experts would perform with the foreign transactions data, and Plaintiffs fail to explain how or why the requested data are appropriate or necessary for any such analysis.

Instead of showing relevance and proportionality, Plaintiffs argue that because discovery of data for so-called "benchmark" analyses is *sometimes* permitted and that because discovery of

---

[1] Plaintiffs' motion is limited to "transactional data" (i.e., information about completed sales) which Plaintiffs make clear is distinct from "offer data." Amazon maintains its objections to any requests for foreign offer data, and reserves all rights.

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

foreign documents is *sometimes* permitted, the discovery of foreign transactional data should automatically be granted here. Plaintiffs fail to identify any analogous case in which the production of foreign benchmarking data has been compelled for a similar purpose to what Plaintiffs assert here—a vague possibility that the data could possibly be useful for expert analyses. Plaintiffs' request is far from proportional to the needs of the case given the burden it imposes on Amazon. Plaintiffs' motion to compel should therefore be denied.

## THE REQUESTS

Amazon has already agreed to produce massive amounts of data from its U.S. store in response to Plaintiffs' requests. First, although Plaintiffs' proposed class period starts in March 2016, Amazon has agreed to produce data about transactions within Amazon's U.S. store dating back to mid-2011. Second, Amazon has agreed to produce daily "snapshots" of the offers in Amazon's U.S. store dating back to mid-2016—the earliest date data in this form is available. Third, Amazon has also agreed to produce data about U.S. offers from outside of Amazon's store that it has collected. Altogether, Amazon estimates that these data sets will exceed 100 terabytes ("TBs")[2] (or 100,000 gigabytes ("GBs")). This will be one of the largest, if not the largest, production of data for a class action. *E.g., In re Domestic Airline Travel Antitrust Litig.*, 2018 WL 4381070, at *2 (D.D.C. June 15, 2018) ("Defendants produced to Plaintiffs at least 400 gigabytes of transactional data"); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *2 (N.D. Cal. Sept. 2, 2015) ("Class Counsel analyzed over 15 gigabytes of employment-related compensation and recruiting data").[3]

Amazon has not yet produced—and Plaintiffs have not reviewed—the enormous volume of data that Amazon is working diligently to produce from its U.S. store. Rather than waiting to analyze the data that Amazon has agreed to produce and determining what, if any, additional data

---

[2] "One terabyte is 1 trillion bytes of information, which would be the equivalent of approximately 220 million pages of printed text." *McNulty* v. *Reddy Ice Holdings, Inc*., 271 F.R.D. 569, 570 n.1 (E.D. Mich. 2011).

[3] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is added unless otherwise indicated. Citations to lettered exhibits are citations to exhibits attached to the declaration of Steve Berman, Dkt. 100; citations to numbered exhibits are citations to exhibits attached to the declaration of Kyle Smith, filed herewith.

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

are required, Plaintiffs immediately moved to compel the production of "all historic transaction-level sales data for the United Kingdom and Germany." Mot. 2. Plaintiffs seek information on every sale in Amazon's German and U.K. stores. Plaintiffs assert that their proposed experts will somehow use this data to analyze whether Plaintiffs paid supracompetitive prices despite the fact that Plaintiffs allege no claims based on purchases in any stores other than U.S. stores.[4]

## ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) restricts discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "The Court *must* limit the frequency or extent of discovery" if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)," Fed. R. Civ. P. 26(b)(2)(C), or if it "is not proportional to the needs of the case." *A.T.* v. *Everett Sch. Dist.*, 2017 WL 4811361, at *7 (W.D. Wash. Oct. 25, 2017). The party seeking discovery "bears the burden of demonstrating that the information it seeks is relevant and that the responding party's objections lack merit." *Id.* Plaintiffs fail to meet their burden in establishing relevance and proportionality.

**I.      Plaintiffs Do Not Show the Relevance of the Foreign Data They Seek.**

**A.      Plaintiffs Do Not Claim That Transactions in Amazon's U.K. and German Stores Are at Issue.**

Plaintiffs' Complaint challenges Amazon's U.S. conduct, allegedly affecting third-party sellers in the U.S. store which allegedly harmed Plaintiffs and a purported class of U.S. purchasers on the internet (outside Amazon's store). First, Plaintiffs challenge a provision of Amazon's U.S. Business Services Agreement with third-party sellers in place until March 2019 that sought to prevent third-party sellers from discriminating against customers in Amazon's U.S. store. Dkt. 78-1 (SAC) ¶ 14. Second, Plaintiffs challenge Amazon's Marketplace Fair Pricing Policy which seeks to eliminate price gouging in Amazon's store. *Id.* ¶ 16 n.20. Despite the differences between

---

[4] Plaintiffs also requested several categories of aggregated financial information for Amazon's German and U.K. stores and "corresponding data dictionaries." Mot. 7. Plaintiffs' Motion does not even attempt to explain the purported relevance of this aggregated financial data. And as Amazon has explained to Plaintiffs, while Amazon generally does not maintain data dictionaries in the ordinary course of business, Amazon will continue working with Plaintiffs to discuss the fields within the produced U.S. transactional data.

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the Parity Provision and the Fair Pricing Policy, Plaintiffs allege that "outcome is the same" for both, *id.*, and they have "the same impact." *Id.* ¶ 142.

The Complaint does not allege that products purchased in Amazon's U.K. and German stores are class products, or that they are within the putative relevant market.  *E.g.*, SAC ¶ 211 (defining "National Class" as purchasers through "any other retail e-commerce channel in the United States"), ¶ 231 ("the relevant geographic market is the entire United States"), ¶ 232 (alleging restrictions on how sellers "were allowed to sell their products in the United States").

Whether a particular item was sold or offered in Amazon's U.K. or German stores on a certain date (or at what price) has no bearing on whether the prices Plaintiffs allegedly paid in online U.S. stores (other than Amazon) were supracompetitive.  Plaintiffs do not argue that they suffered any harm arising from the transactions in Amazon's U.K. or German stores.  Instead, they argue that "comparisons between U.S. data, on one hand, and U.K. and German data, on the other, can provide information relevant to assessing how Amazon's challenged conduct harmed competition."  Mot. 2.

**B.      Plaintiffs Fail to Show That the Retail Environments in the U.K. and Germany Are Similar to the United States.**

Plaintiffs' theory of relevance for the transaction data from Amazon's U.K. and German stores relies on a chain of unstated—and unsupported—assumptions leading to their conclusion that the foreign data would be usable as a "benchmark" comparison.  Given their failure to state— let alone, substantiate—the assumptions underlying their theory, the Court should reject Plaintiffs' argument for relevance.

Plaintiffs argue that because "it is common to use data from a period or geography that is not subject to the allegedly anticompetitive practice," the requested U.K. and German data can be used to "conduct comparative analyses between the foreign stores and Amazon's U.S. store."  Mot. 4–5.  Plaintiffs identify no case approving and provide no analysis justifying the production of foreign benchmarking data.  Notably, Plaintiffs' own cases highlight their lack of support:  "The parties have not cited, and the Court has not found, any cases on point as to whether comparative

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

foreign market data is relevant to prove the effects of an alleged anti-competitive company policy imposed in this country." *United States* v. *Dentsply Int'l, Inc.*, 2000 WL 654286, at *6 (D. Del. May 10, 2000).[5]

Without case support, Plaintiffs' motion instead attempts to combine two separate issues without adequate justification or any support in the case law: (1) the use of benchmarking data and (2) the production of foreign documents. While both benchmarking data and foreign documents are sometimes subject to discovery in domestic antitrust cases, Plaintiffs' cited cases show that the conditions warranting production of those types of information are not met here.

The cases that Plaintiffs cite confirm that any purported benchmark or yardstick data must be comparable to the market in question. In *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, the court certified a class based on a benchmark comparison between two prescription drugs treating eye diseases. 335 F.R.D. 1, 19–20 (E.D.N.Y. 2020). In that case, plaintiffs' expert explained—and the court credited that—the yardstick product was chosen "because it is also an ophthalmic product, it faced generic entry within the last 10 years, and it is featured in Allergan's own forecasting of generic entry as a useful analog." *Id.*; *see also In re Plastics Additives Antitrust Litig.*, 2009 WL 10741541, at *1 (E.D. Pa. Oct. 29, 2009) (granting motion to compel eight additional months of data *for the same product* in the *same geographic location* but implying that the outcome would be different if "data sought in this case is so far removed that it would not be suitable for use.").[6]

Before any benchmarking analyses can have relevance, the plaintiff must demonstrate that the proposed benchmark is sufficiently similar to the alleged geographic market and time period. *Goodness Films, LLC* v. *TV One, LLC*, 2014 WL 12780291, at *2 (C.D. Cal. May 19, 2014)

---

[5] In *Dentsply*, Plaintiffs sought (and the court granted discovery of) foreign data to show the defendant's intent in establishing the alleged restraint and to measure defendant's market share among other countries. Here, Plaintiffs do not assert that the requested foreign data are relevant to either. And because "Dentsply does not contend that the specific information and documents sought by the United States' motion to compel would be burdensome to produce," the *Dentsply* court had no opportunity to evaluate the proportionality of the data sought. *Id.*

[6] *Insignia Sys., Inc.* v. *News Am. Mktg. In-Store, Inc.*, 661 F. Supp. 2d 1039, 1075 (D. Minn. 2009), compelled the production of a data set because Defendants' expert relied on the data, not because it had independent significance. In any event, Plaintiffs' motion does not acknowledge that differences in the competitive conditions between two neighboring states are not akin to differences in different countries thousands of miles away.

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(rejecting expert's opinions on damages because "he has not identified relevant, similar comparisons on which to base his [] valuation"); *El Aguila Food Prod., Inc.* v. *Gruma Corp.*, 131 F. App'x 450, 453 (5th Cir. 2005) (affirming rejection of expert methodology where expert "made no effort to demonstrate the reasonable similarity of the plaintiffs' firms and the businesses whose earnings data he relied on as a benchmark").[7]  Courts have denied discovery for data where the requesting party was unable to show the reliability of the analysis for which they seek data.  *In re Subpoenas Issued to Labatt Food Serv., LLC*, 2022 WL 1000318, at *3 (W.D. Tex. Apr. 1, 2022) (granting motion to quash third-party subpoena, finding that requested data was irrelevant where "counsel was unable to describe . . . how their damages model would account for deviations in the [third-party's] pricing that were unrelated to changes in the producer's price.").

The secondary sources Plaintiffs cite agree that any benchmark or yardstick data must come from markets sufficiently similar to the market in question.  Ex. A, Areeda & Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, at § 340a2 ("It is also necessary that the yardstick market be as comparable as possible in all respects: degree of competition, tax structure, regulatory requirements, population density, average income, and so on.  The selected yardstick will be vulnerable to attack if there are meaningful differences between the plaintiff's market and the yardstick market").[8] The academic literature Plaintiffs cite likewise notes the unreliability of using data from a market without sufficient similarities to the relevant market.  When the competitive benchmark is "not proven to be economically similar to the [relevant] market" the proposed benchmark data "cannot reliably be used to estimate the prices [the defendant] would have charged in the [relevant] market absent exclusionary conduct."  Ex. C,

---

[7] *See also Loeffel Steel Prod., Inc.* v. *Delta Brands, Inc.*, 387 F. Supp. 2d 794, 812 (N.D. Ill. 2005), *amended*, 2005 WL 8178971 (N.D. Ill. Sept. 8, 2005) ("In order for the sampling chosen by DVC comparison to have the requisite predictive capacity and the reliability *Daubert* demands, [an expert] had to select samples that are truly comparable. To put it another way, care must be taken to be sure that the comparison is one between apples and apples rather than one between apples and oranges.").

[8] *See also* Ex. E, European Commission, *Practical Guide – Quantifying Harm in Actions for Damages Based on Breaches of Article 101 or 102 of the Treaty on the Functioning of the European Union* (2013) at ¶ 50 ("The more a geographic market is similar (except for the infringement effects) to the market affected by the infringement, the more it is likely to be suitable as a comparator market.  This means that the products traded in the two geographic markets compared should be the same or, at least, sufficiently similar.  Also the competitive characteristics of the geographic comparator market should be similar to the characteristics of the affected market except for the infringement.").

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

John E. Lopatka, *Overcharge damages for monopolization of new economy markets*, Antitrust Bulletin 51 (2006), at 492.[9]  Compounding Plaintiffs' failure to explain the relevance of their requested data, they do not explain what "comparative analyses" or "methodologies" they contemplate.

Plaintiffs do not make any showing that the transactions in Amazon U.K. and German stores would serve as an appropriate benchmark for Amazon's U.S. store.  Instead, they merely point to the existence of parity provisions in Amazon's stores in the three countries, Mot. 4, without mention of how the provision was allegedly enforced or how the different third-party sellers or customers reacted to the provisions.  Plaintiffs do nothing to substantiate their unstated assumptions that Amazon's stores in the three countries, the retail or ecommerce markets in the three countries, or the countries' legal, economic, or cultural regimes are comparable.  Nor do they address the macroeconomic conditions present in the three countries: including tax and regulatory structures and GDP per capita.  A party's bald assertions that data would be helpful for some unspecified analysis is not sufficient to establish relevance.  *In re Microcrystalline Cellulose Antitrust Litig.*, 221 F.R.D. 428, 430 (E.D. Pa. 2004) ("I am not convinced that plaintiffs require more than three years of such data to conduct a meaningful 'before and after' analysis").

Plaintiffs have also done nothing to explain their purported choice of benchmark in conferrals with Amazon.  During a meet and confer, when asked to explain their choice of benchmark, Plaintiffs only pointed to the fact that there were many transactions in Amazon's stores in the United States, the U.K., and Germany and that the three countries are all advanced economies.  And when Amazon requested additional information about the assumptions underlying Plaintiffs' choice of a proposed benchmark, Plaintiffs refused, claiming that it was protected work product.  Ex. 1 (Email from N. Siebert to K. Smith (Mar. 27, 2023)).  Plaintiffs do

---

[9] Plaintiffs misstate the methodology of an unpublished paper by Ph. D. student Yu Song.  *See* Ex. F.  The paper's main analysis compared publicly available prices on Amazon *in the United States* before and after the March 2019 removal of the former Parity Provision.  The paper's use of U.K. and Canada data was limited to a "placebo test[]" meant to "boost our confidence" in the main U.S.-based analysis.  *See* Ex. F at 17.  Plaintiffs' other articles, Exs. G and H, do not address the United States, and mostly limit their analysis to data sets solely within the European Union.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

not provide a sworn declaration from any expert or any actual analysis in their motion about *what* would make the U.K. or Germany an appropriate benchmark here.

Instead of grappling with the flaws of relying on foreign data, Plaintiffs misstate Amazon's position, claiming that Amazon is opposed to *any* foreign discovery. That is incorrect; whether any hypothetical foreign discovery may be permitted is not an issue before the Court.

None of Plaintiffs' cited cases disagree with Amazon's position. While one case ordered the production of foreign data in order to compare the defendant's market share, *Dentsply*, 2000 WL 654286, at *5; *supra* 4–5, their remaining cases about foreign discovery involved the production of documents—not transactional data—that was relevant to the alleged domestic conspiracy, *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 575 (D. Kan. 2009) (foreign documents "may help them prove defendants' joint commitment to fix prices in the United States (i.e., the existence of the conspiracy), the ability of defendants to engage in domestic price fixing, and the mechanisms employed by defendants in price fixing"); *accord In re Aspartame Antitrust Litig.*, 2008 WL 2275531, at *7 (E.D. Pa. May 13, 2008); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 7200711, at *5 (E.D. Pa. Oct. 29, 2004). Plaintiffs do not argue that the foreign transactional data will provide evidence as to Amazon's actions in the U.S. or a common global course of action.

## II.   Producing the Foreign Data Would Be Unduly Burdensome for Amazon and Is Disproportionate to the Needs of the Case.

Plaintiffs' Motion also should be denied because the discovery they seek is at odds with the proportionality requirement of Rule 26. *In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) (explaining "relevancy alone is no longer sufficient," given the 2015 amendments to Rule 26 narrowing the scope of discovery, as "discovery must also be proportional to the needs of the case").[10]

---

[10] Plaintiffs criticize Amazon for not specifying or substantiating the burden to produce these massive sets of foreign data. Mot. 7. But that is only because Plaintiffs filed the instant motion before waiting for a response to their questions about Amazon's burden. During a March 27 meet and confer, Amazon explained that it would need two weeks to provide the requested information, given upcoming holidays and the availabilities of key Amazon personnel. Without explaining any immediate need for a response, Plaintiffs rejected Amazon's timeline and filed this motion before two

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1      Where the costs of discovery outweigh the potential benefits, the Plaintiffs' requests cannot

2  be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  For example, *ATM Fee*

3  *Antitrust Litigation* is instructive.  2007 WL 1827635, at *3.  There, the court denied a motion to

4  compel foreign transaction data from which plaintiffs sought to draw comparisons with domestic

5  markets.   The court found the plaintiffs' requests seeking data on foreign transactions were

6  "unreasonably broad" and that the "usefulness of [the foreign data] . . . pales in comparison to the

7  burden of requiring an antitrust defendant to provide any and all information about its global

8  industry and its competitors, as opposed to the anticompetitive practice alleged." *Id.*  The same

9  reasoning applies equally here.

10     This Court's decision in *Treehouse Avatar LLC* v. *Valve Corp.*, 2021 WL 4428407 (W.D.

11  Wash. Sept. 24, 2021) is also instructive.  In that case, the plaintiff sought discovery of certain

12  financial data from the defendant that was not kept in any summary form in the ordinary course of

13  business. *Id.* at *2.  The defendant agreed to query its databases for certain agreed upon financial

14  data and create special customized reports for the plaintiff in exchange for the plaintiff's agreement

15  that it would not seek more financial information later. *Id.*  Later, the plaintiff filed a motion to

16  compel certain additional financial data. *Id.*  The defendant argued that compiling the data

17  requested would impose an undue burden on the company because such data were not compiled

18  in the ordinary course of business and the defendant would need to "identify, collect, and compile

19  a variety of information from millions of transactions around the world from multiple, distinct

20  sources." *Id.* at *3.  This Court agreed, finding that plaintiff's request imposed "a significant

21  burden that outweighs its likely benefit" and denied discovery. *Id.*

22     The same reasoning applies equally here.  To date, Amazon has already agreed to produce

23  massive amounts of structured data about transactions and offers in Amazon's U.S. store, including

24  data stretching years beyond the March 2016 start of the class period.  Amazon currently estimates

25

26  weeks had elapsed.  Notably, the parties conducted a lengthy meet and confer about the production of transactional
data on April 6, mere hours before the filing of this motion.  Plaintiffs did not press for *any* additional information or

27  discussion about the foreign data sought in this Motion, and Plaintiffs never mentioned they would be bring this
Motion later that same day. Smith Decl. ¶¶ 9–11.

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

that this data set alone will be about 4 TB.  Amazon is also preparing to produce data sets reflecting offers (that did not necessarily result in a sale) that are estimated to be more than 100 TB. Plaintiffs' motion should be evaluated against this backdrop.  *Conn. Gen. Life Ins.* v. *Earl Scheib, Inc.*, 2013 WL485846, at *3–4 (S.D. Cal. Feb. 6, 2013) (holding that it will "not order Defendant to absorb the incredible expense associated with responding to these . . . RFPs, especially when Defendant has been working to produce documents and information in response to Plaintiff's various other discovery requests"); *cf. Luken* v. *Christensen Grp. Inc.*, 2017 WL 5483782, at *2 (W.D. Wash. Nov. 15, 2017) (denying discovery where "interrogatories were neither proportional nor reasonably targeted, especially when considering the amount of discovery already available").

As the accompanying Declaration of Kunal Dongre, Data Engineering Manager at Amazon, explains, the additional discovery sought by Plaintiffs would increase Amazon's burden substantially in this case.  Amazon does not store "transaction-level sales data" in one central location; the data are stored in data repositories containing large volumes of various types of data. Dongre Decl. ¶ 8.  The large volumes of data in these repositories or "data lakes" generally consist of many different data tables, and the various data tables are managed by different Amazon teams. *Id*.  In order to collect the data that Plaintiffs request, an engineer would need to develop a complex custom-made query (i.e., write computer code) that would compile and link together the specific data tables and fields Plaintiffs requested.  *Id*. ¶ 9.  Because the data are stored in separate data tables managed by different teams, the software engineer writing the query would have to consult with the appropriate teams managing the relevant data, to ensure that the requested data are queried reliably.  *Id*. ¶ 10.

Amazon has already agreed to produce transactional data from completed sales from Amazon's U.S. store for time period 2011 onward, representing an estimated 4 TB of data.  *Id*. ¶ 12. Amazon estimates that the time it would take to process the German and U.K. store data for production would be similar to the time it will take to process the U.S. store transactional data for production, i.e., several months.  *Id*. ¶¶ 7, 14, 19.  This time estimate assumes that the engineer suspends all of his or her full-time work during the process.  *Id*.¶ 21.  Moreover, this work would

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

also require consultation and collaboration with 14-15 different business teams spread across Amazon who manage individual data sets.  *Id*. ¶ 22.  Depending on the condition of the data queried, the process might require the work of the engineers on the teams who manage each of the data tables.  *Id*.  Carrying out potential data retrieval effort would pull engineers from other projects critical to Amazon's business.  *Id.*  The process would also require Amazon to divert a high-end server for at least three to four weeks.  *Id*. ¶ 24.  All other work for this server would have to be suspended.  *Id.*

In short, the work taken to produce this data would significantly interrupt Amazon's operational activities.  In light of the limited relevance, if any, of transactional data reflecting sales in Amazon's U.K. and German stores, Amazon's production agreements with Plaintiffs to date, and the significant additional burden producing such information would impose on Amazon, Plaintiffs' Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Compel foreign data from the U.K. and Germany should be denied.

DATED this 17th day of April 2023.

Davis Wright Tremaine LLP
Attorneys for AMAZON.COM, INC.

*/s/ John A. Goldmark*
John A. Goldmark
MaryAnn Almeida, WSBA #40980
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 757-8136
Fax: (206) 757-7136
E-mail: johngoldmark@dwt.com
E-mail: maryannalmeida@dwt.com

Paul, Weiss, Rifkind, Wharton & Garrison LLP

*/s/ Karen L. Dunn*

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Kyle Smith (*pro hac vice*)
2001 K Street, NW
Washington, DC  20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
E-mail: kdunn@paulweiss.com
E-mail: wisaacson@paulweiss.com
E-mail: amauser@paulweiss.com
E-mail: mgoodman@paulweiss.com
E-mail: ksmith@paulweiss.com

Attorneys for AMAZON.COM, INC.

AMAZON'S OPP'N TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF GEOGRAPHIC DATA (2:20-CV-00424-RAJ) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## **CERTIFICATE OF LENGTH**

I hereby certify that this memorandum complies with the word count limit set forth LCR 7(e) because it contains 3,506 words.  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

*/s/ John A. Goldmark*
John A. Goldmark

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on April 17, 2023, a true and correct copy of the foregoing was filed

3  electronically by CM/ECF, which caused notice to be sent to all counsel of record.

4                                              */s/ John A. Goldmark*
                                              John A. Goldmark
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax