UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH FRAME-WILSON, et al., on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>　　　　　　　　　Defendant. | CASE NO. C20-424RSM<br><br>ORDER GRANTING MOTION TO COMPEL PRODUCTION OF GEOGRAPHIC DATA |

This matter comes before the Court on Plaintiffs' "Motion to Compel Production of Geographic Data," Dkt. #99. Defendant Amazon opposes. Dkt. #107. The Court has determined that oral argument is unnecessary.

Amazon is "the world's largest online retailer." Dkt. # 55 at ¶ 38. Plaintiffs are consumers from 19 states, including Alabama, Arkansas, Arizona, California, Florida, Georgia, Illinois, Iowa, Maine, Nevada, New Hampshire, North Carolina, Pennsylvania, Tennessee, Texas, Vermont, Virginia, Washington, and Wisconsin, who purchase consumer goods online. *Id*. at ¶ 63.

Plaintiffs bring this proposed class action against Amazon for violations of the Sherman Act. Plaintiffs allege there are binding agreements between Amazon and third-party sellers that

sell on Amazon Marketplace that restrain competition and enable Amazon to create or maintain its online retail monopoly. Specifically, Plaintiffs allege that Amazon's Price Parity Provision (in effect in the United States until March 2019), and its Marketplace Fair Pricing Policy (enforced by Amazon from 2017 through the present) are designed to and have the intended effect of preventing the third-party sellers from selling their goods on other online sites at prices that are lower than the price of their goods on Amazon Marketplace. *See id*. Plaintiffs allege that Amazon's policies inflated prices of goods offered for sale at online retailers other than Amazon, damaging Plaintiffs. Plaintiffs also allege in the Amended Complaint that Amazon had similar policies in Europe but withdrew them "under pressure from British and German regulators." *Id*. at ¶ 127.

The instant Motion deals with Plaintiffs' attempts to obtain data on Amazon's sales outside the United States, specifically in the United Kingdom and Germany. The relevancy of such data is not immediately obvious, given that the putative class definition encompasses only those who purchased "through any other retail e-commerce channel in the United States other than Amazon." *Id.* at ¶ 211.

On September 23 and 28, 2022, Plaintiffs served Amazon with their first and second sets of Requests for Production, the following of which are the subject of the instant Motion:

> RFP NO. 89(c): All historical transaction-level sales (and sales adjustment) data (in digital, computer readable format) from the following categories… Transaction data covering historical transactions on UK and German storefronts, Amazon.co.uk and Amazon.de beginning no later than January 2010 and continuing to the present, with continuous coverage of the intervening period.

> RFP NO. 90: Any documents or data sufficient to show totals, aggregated to a daily, monthly, or quarterly basis for all years at least since 2010, or as far back as financial records are available and separately for the Amazon.com, Amazon.co.uk, and Amazon.de storefronts, of:

ORDER GRANTING MOTION TO COMPEL PRODUCTION OF GEOGRAPHIC DATA - 2

      a. Sales revenues and shipping charges of all Third-Party Sellers on Amazon;
      b. Total fees and commissions accruing to Amazon on the basis of Third-Party Sellers' sales, broken down by fee;
      c. Total revenues accruing to Amazon from any other services provided to Third-Party Sellers, including logistics and fulfillment;
      d. Total revenues accruing to Amazon from Prime subscription members;
      e. Total sales revenues of all Third-Party Sellers made through the buy box, and sales of all Third-Party Sellers not made through the buy box;
      f. Total first-party sales revenues earned by Amazon through the Amazon Marketplace split into sales made through the buy box, and sales made not through the buy box;
      g. Total costs incurred by Amazon in the operation of Amazon Marketplace, broken out by cost center; and
      h. Total costs incurred by Amazon in the provision of logistic services to Third-Party Sellers, broken out by cost center.

      RFP NO. 91: With respect to the data requested in Request Nos. 86-90:
      a. Data dictionaries, decoding documents, lists and definitions for each transaction code, abbreviation, or other field or entry code or value, and indicating whether quantity values for each transaction type should be included in calculating net quantity sold, or should be ignored because they do not affect net quantity sold;
      b. A key or identification of a set of variables that allows for the correct merging and combining of the data you produced; and
      c. To the extent that codes or values have changed over time as the result of a database platform shift, redesign, etc., mapping Documents or datasets connecting values in previous periods to their equivalent counterparts.

Dkt. #100-2 at 58–60. Amazon responded to each of the above requests with essentially the same objections. This is the Response to RFP NO. 89:

      RESPONSE: Amazon objects that the request is overbroad, unduly burdensome, not proportionate to the needs of the case, and not relevant to the claims or defenses of any party, to the extent it seeks (a) information that predates the relevant limitations period, (b) data for foreign transactions, which are not relevant to Plaintiffs' claims, and (c) data pertaining to Amazon's own first-party sales, rather than the third-party sales that are the subject of this lawsuit. Amazon objects to the extent the request seeks data or data in formats that are not maintained in the ordinary course of business. Amazon objects that the request is vague to the extent it

ORDER GRANTING MOTION TO COMPEL PRODUCTION OF GEOGRAPHIC DATA - 3

> uses the term "transaction datasets" which is undefined and does not identify with sufficient clarity the information sought. Subject to and without waiving its objections, Amazon will identify, in accordance with the ESI Protocol, responsive data concerning transactions by third-party sellers in the United States for the time period 2016 to the present. Prior to the production of responsive data, Amazon will provide Plaintiffs a sample of such data.

*Id*. at 59.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The party that resists discovery has the burden to show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Plaintiffs assert that they need the above information for their "experts to conduct comparative analyses" and to "prepare methodologies for analyzing class-wide impact and damages." Dkt. #99 at 7.

Amazon's arguments against compelling this discovery fall into two buckets: relevancy and undue burden.

Although this case concerns only damages from overpaying for purchases at "any other retail e-commerce channel in the United States other than Amazon," Plaintiffs make a credible and meritorious argument that the data from Amazon sales in the United Kingdom and Germany are relevant and important to resolving certain issues in this case. First, Plaintiffs assert that "to assess impact or damages in antitrust cases, it is common to use data from a

period or geography that is not subject to the allegedly anticompetitive practice." *Id*. at 8 (citing cases and secondary sources). Second, Plaintiffs point to previous research on the impact of Amazon's Price Parity Provision that relied on comparing Amazon's sales data from different countries, including the United Kingdom. *Id*. at 8–9. Third, Plaintiffs point to other antitrust cases where foreign data was produced. *Id*. at 9 (citing *U.S. v. Dentsply Int'l, Inc.*, 2000 WL 654286, at *5 (D. Del. May 10, 2000); *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 575 (D. Kan. 2009); *In re Aspartame Antitrust Litig.*, 2008 WL 2275531, at *2-3 (E.D. Pa. May 13, 2008); and *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 7200711, at *5 (E.D. Pa. Oct. 29, 2004)). Amazon has failed to convince the Court that this information is too irrelevant to be produced. Although Amazon questions whether the UK and German markets are relevant "benchmarks" for Plaintiffs' expert analysis, Plaintiffs do not currently have the burden of proving such and Amazon is free to attack any expert opinions formed from this data later in this case.

      Turning to the burden question, Amazon begins by pointing out just how much data has already been produced related to U.S. transactions. Dkt. #107 at 13–14 (Amazon has already agreed to produce massive amounts of structured data about transactions and offers in Amazon's U.S. store…. Amazon currently estimates that this data set alone will be about 4 TB. Amazon is also preparing to produce data sets reflecting offers (that did not necessarily result in a sale) that are estimated to be more than 100 TB."). Amazon has its data engineering manager declare that it does not store "transaction-level sales data" in one central location. *Id*. at 14 (citing Dkt. #108 at ¶ 8). Instead, they are stored in "data lakes" with different data tables managed by different Amazon teams. *Id*. Custom queries would need to be created by someone who understood how data storage systems evolved in the last thirteen years. This data manager declares "I understand that in connection with this litigation, Amazon has already

agreed to produce transactional data from completed sales from Amazon's U.S. store for time period 2011 onward," and "I estimate that the volume of data reflecting transactions in Amazon's U.K. and German stores is comparable to the volume of transactions in Amazon's U.S. store." Dkt. #108 at ¶¶ 12–13.

Plaintiffs state in their Reply brief that Amazon's arguments and evidence spend far more time discussing discovery efforts that have already occurred with regard to U.S. data while obfuscating and under-describing what will need to occur for the data at issue in this Motion. Plaintiffs assert in a footnote that Amazon's U.S. net sales from 2014-2022 were $356 billion, "compared to $33.6 and $30 billion for Germany and the UK, respectively." Dkt. #113 at 6 n.1. Plaintiffs state that they have attempted to work with Amazon to reduce the amount of data that needs to be collected. *Id*. at 6.

The production of the requested information will doubtlessly take a significant effort and cost a substantial amount of time and money. But this is a significant, substantial case. Ultimately, Amazon succeeds only in demonstrating that it has already produced a lot of data in this case, not that the requested discovery here will be disproportional. The data from external markets has a critical role to play in determining damages in this case. Taking into consideration everything presented by the parties, and Amazon's failure to offer more, the Court concludes that the requested discovery is proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Plaintiffs' Motion to Compel Production of Geographic Data, Dkt. #99,

ORDER GRANTING MOTION TO COMPEL PRODUCTION OF GEOGRAPHIC DATA - 6

is GRANTED. Defendant shall provide Plaintiffs with full and complete responses to RFPs No. 89 through 91 in a timely fashion. The parties are DIRECTED to meet and confer within fourteen (14) days about the timing of this discovery production and any other remaining issues. The Court will issue a Minute Order granting the nearly-identical Motion in the related case, *De Coster et al. v. Amazon,* C21-693RSM, consistent with the stipulation of the parties to share discovery and the Court's Order at Dkt. #123.

DATED this 27th day of June, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE