1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH FRAME-WILSON, et al., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation.,

Defendant.

CASE NO. C20-424RSM

ORDER GRANTING MOTION FOR PROTECTIVE ORDER

This matter comes before the Court on Plaintiffs' Motion for Protective Order, Dkt. #97. Defendant Amazon opposes. Dkt. #101. Neither party has requested oral argument.

Amazon is "the world's largest online retailer." Dkt. # 55 at ¶ 38. Plaintiffs are online consumers from 19 states, including Alabama, Arkansas, Arizona, California, Florida, Georgia, Illinois, Iowa, Maine, Nevada, New Hampshire, North Carolina, Pennsylvania, Tennessee, Texas, Vermont, Virginia, Washington, and Wisconsin. *Id*. at ¶ 63.

Plaintiffs bring this proposed class action against Amazon for violations of the Sherman Act. Plaintiffs allege there are binding agreements between Amazon and third-party sellers that sell on Amazon Marketplace that restrain competition and enable Amazon to create or maintain its online retail monopoly. Specifically, Plaintiffs allege that Amazon's Price Parity Provision (in effect in the United States until March 2019), and its Marketplace Fair Pricing Policy (enforced by Amazon from 2017 through the present) are designed to and have the intended

effect of preventing third-party sellers from selling their goods on other online sites at prices that are lower than the price of their goods on Amazon Marketplace. *See id*. Plaintiffs allege that Amazon's policies inflated prices of goods offered for sale at online retailers other than Amazon, damaging Plaintiffs. Plaintiffs also allege that Amazon had similar policies in Europe but withdrew them "under pressure from British and German regulators." *Id*. at ¶ 127.

The instant Motion deals with Amazon's attempts to obtain in discovery: 1) information as to named Plaintiffs' medical prescriptions; and 2) Plaintiffs' hard-copy receipts and other indicia of purchases made at brick-and-mortar stores. The parties have reached an agreement as to the first kind of information. What remains is a dispute over the brick-and-mortar receipts, found in Requests for Production ("RFPs") 3, 4, 5, 7, 9, 11, 12, 17, 27, 36, and 46.

This dispute has been simmering for almost a year. On August 15, 2022, the parties engaged in a Rule 26(f) conference. Dkt. #69 at 2. Amazon asked Plaintiffs to preserve documents related to "purchases of products during the putative Class Period . . . whether online or in a physical store," "shopping habits and practices," and "document and data preservation practices." *Id*. at 7, 10. Plaintiffs met with Amazon's counsel on December 15, 2022, January 18 and 30, 2023, February 23, 2023, and April 4, 2023, concerning their objections to this kind of discovery. The parties exchanged numerous rounds of back-and-forth emails.

As a compromise, Plaintiffs offered to search their electronic records, including emails and credit card statements that will reflect both online and brick-and-mortar purchases. Dkt. #98-3 at 8. Plaintiffs also proposed to produce a reasonable set number of paper receipts, or produce paper receipts from specific retailers. Amazon counteroffered that each named Plaintiff preserve and produce new hard-copy receipts and other paper documents relating to brick-and-mortar purchases for a year and spend eight hours searching their homes, offices, cars, or other locations for existing paper receipts (or if less than eight hours, provide Amazon a written

explanation of where they searched and for how long). Dkt. #98-4 at 4, Dkt. #98-7 at 4. Amazon later counteroffered that Plaintiffs preserve records for only 10 months.  The parties could not agree, and the instant Motion followed.

 "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  "The decision to issue a protective order rests within the sound discretion of the trial court."  *Seiter v. Yokohama Tire Corp.*, 2009 U.S. Dist. LEXIS 76844, 2009 WL 2461000, *1 (W.D. Wash. 2009).

Amazon asserts that brick-and-mortar receipts are relevant to assess the relevant market for Plaintiffs' antitrust claims.[1]  Dkt. #101 at 9.  While information as to the purported class's aggregate purchases is clearly relevant, and the individual Plaintiffs' itemized physical store purchases may be relevant, the burden on these Plaintiffs to hold onto every paper receipt does not strike the Court as proportional to the needs of the case considering Amazon's relative access to market data, the parties' comparative resources, and the relatively low importance of this information compared to market-wide data.  The Court is convinced that the medium burden on Plaintiffs outweighs the small benefit to Amazon.  To make this point, Plaintiffs argue:

---

[1] To prove their antitrust claims, Plaintiffs must prove a relevant market—a market that "must encompass the products at issue as well as all economic substitutes for the product." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (citation omitted).

Plaintiffs' individual purchases at brick-and-mortar stores provide "the least reliable evidence" to analyze the relevant market. *In re Cox Enters.*, 2014 WL 104964, at *10 (internal quotation marks and citation omitted). The "determination of the correct antitrust market must be conducted using market-wide data," such as data from third-party sources or transactional or market surveillance data maintained by Amazon. *In re Asacol Antitrust Litig.*, 2017 WL 11476172, at *3. If Amazon ultimately challenges Plaintiffs' market definition, it seems incredible that Amazon would base its analyses on paper receipts from a few named Plaintiffs.

Dkt. #97 at 14 (citing *In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 2014 WL 104964, (W.D. Okla. Jan. 9, 2014); *In re Asacol Antitrust Litig.*, 2017 WL 11476172 (D. Mass. Jan. 3, 2017)).  The Court agrees.

Amazon also argues that it needs this data to determine Plaintiffs' suitability as class representatives, specifically whether their shopping habits are typical of the putative class.  Dkt. #101 at 11–12 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011)). Plaintiffs reply that "[t]ypicality focuses on the class representative's claim" and "not the specific facts from which the claim arose[.]" Dkt. #104 at 4 (quoting *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017)). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory[.]" *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 734 (9th Cir. 2007) (quotation omitted). Plaintiffs cite *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 284 (N.D. Cal. 2016) for the proposition that "[T]o satisfy the typicality requirement," it is "sufficient" that "Plaintiffs have alleged the same antitrust violation as to every class member."  The Court is convinced that itemized receipts will not help determine the typicality of Plaintiffs' claims against Amazon, and that this is a further basis to grant the Motion.

The usefulness of this type of information from the named Plaintiffs is weighed against the burden on those Plaintiffs when considering proportionality. The Court is convinced that

asking Plaintiffs to save paper receipts on every purchase, exchange, or return over the course of a year is a significant burden. Plaintiffs' earlier compromise to "produce... credit card and bank statements, PayPal, Venmo, debit card information, and receipts sent by email—as well as the reasonable number of hard-copy documents," Dkt. #104 at 6, however is proportional to the needs of this case. Accordingly, the Court will grant this Motion but require Plaintiffs to commit to their earlier compromise.

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Plaintiffs' Motion for a Protective Order, Dkt. #97, is GRANTED. Amazon may not conduct discovery of any purchases Plaintiffs made through a prescription. The Court further orders that Plaintiffs are relieved of any duty to preserve, search or provide paper records concerning their brick-and-mortar purchases, but must proceed with their compromise to "produce... credit card and bank statements, PayPal, Venmo, debit card information, and receipts sent by email—as well as the reasonable number of hard-copy documents." The parties are to make every reasonable effort to resolve any further disagreements on this issue without Court involvement. The Court will issue a Minute Order granting the nearly identical Motion in the related case, *De Coster et al. v. Amazon*, C21-693RSM, consistent with the stipulation of the parties to share discovery and the Court's Order at Dkt. #123.

DATED this 12th day of July, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR PROTECTIVE ORDER - 5