1

2

3                     UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
4                               AT SEATTLE

5    ELIZABETH DE COSTER *et al.*, on behalf of    CASE NO. 2:21-cv-00693-JHC
     themselves and all others similarly situated,
6
                                                   ORDER
                        Plaintiffs,
7
            v.
8
     AMAZON.COM, INC., a Delaware corporation,
9
                        Defendant.
10

11   DEBORAH FRAME-WILSON, *et al.*, on behalf    CASE NO. 2:20-cv-00424-JHC
     of themselves and all others similarly situated,
12
                        Plaintiffs,
13          v.

14   AMAZON.COM, INC., a Delaware corporation,

15                      Defendant.

16   CHRISTOPHER BROWN, *et al.*, on behalf of
     themselves and all others similarly situated,
17                                                 CASE NO. 2:22-cv-00965-JHC

18                      Plaintiffs,

19          v.

20   AMAZON.COM, INC., a Delaware
     corporation,
21
                        Defendant.
22

23

24

ORDER - 1

# I

## INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion to Compel Production of Documents from Amazon's Privilege Logs and For Appointment of a Special Master. Case No. 21-693, Dkt. # 189 (sealed); Case No. 20-424, Dkt. # 186 (sealed); Case No. 22-965, Dkt. # 89 (sealed). Previously, the Court granted Plaintiffs' request for in camera review of up to 100 documents. Case No. 21-693, Dkt. # 277; Case No. 20-424, Dkt. # 256; Case No. 22-965, Dkt. # 148. This Order discusses the results of the Court's in camera review and next steps for the parties.

# II

## BACKGROUND

Plaintiffs brought these antitrust class action lawsuits against Amazon claiming various violations of the Sherman Act. Case No. 21-693, Dkt. # 126 (redacted); Case No. 20-424, Dkt. # 165 (redacted); Case No. 22-965, Dkt. # 100. Plaintiffs moved to compel production of all documents with what they say were unsubstantiated privilege claims, asserting that Amazon's privilege logs were deficient and that the company had improperly withheld hundreds of thousands of documents as privileged. Case No. 21-693, Dkt. # 189 (sealed); Case No. 20-424, Dkt. # 186 (sealed); Case No. 22-965, Dkt. # 89 (sealed). Amazon responded that it was in the process of re-reviewing the challenged privilege log entries and would be completing its review by mid-October 2024. *See* Case No. 21-693, Dkt. # 203 at 14–15 (sealed); Case No. 20-424, Dkt. # 197 at 14–15 (sealed); Case No. 22-965, Dkt. # 103 at 14–15 (sealed). Because Plaintiffs' claims appeared premature, the Court denied Plaintiffs' motion without prejudice. Case No. 21-693, Dkt. # 218 (sealed); Case No. 20-424, Dkt. # 207 (sealed); Case No. 22-965, Dkt. # 111

1

2

(sealed).  The Court instructed Plaintiffs to contact the Court to schedule an in-person hearing if Amazon's re-review did not resolve their discovery issues.  *Id.*

3

4

5

6

7

8

9

10

11

By November 2024, Amazon had yet to complete its privilege re-review.  On January 31, 2025, the Court held a hearing in which Plaintiffs renewed their motion and the parties presented their arguments on the outstanding discovery issues to the Court.  Case No. 21-693, Dkt. # 277; Case No. 20-424, Dkt. # 256; Case No. 22-965, Dkt. # 148.  The Court then ordered Amazon to complete its re-review of every document withheld as privileged and provide a final privilege log to Plaintiffs by February 25, 2025.  *Id.*  The Court permitted Plaintiffs to identify up to 100 documents from Amazon's final privilege log for in camera review.  *Id.*  On March 6, 2025, Plaintiffs identified 100 documents for in camera review, and Amazon provided these documents to the Court.[1]

12

13

14

15

16

17

18

19

20

Amazon has identified four types of documents for which it claims attorney-client privilege or work-product protection.  *See* Case No. 21-693, Dkt. # 292 (sealed); Case No. 20-424, Dkt. # 284 (sealed); Case No. 22-965, Dkt. # 162 (sealed).  Category 1 documents are described as communications that include a direct provision of legal advice or direct request for legal advice.  *Id.*  Category 2 documents are described as communications that convey legal advice or a request for legal advice.  *Id.*  Category 3 documents are described as communications in which the primary purpose is to convey legal advice.  *Id.*  Category 4 documents are described

21

22

23

24

---

[1] When Amazon provided the in camera documents to the Court, it attached a letter further explaining its privilege determinations.  Case No. 21-693, Dkt. # 292 (sealed); Case No. 20-424, Dkt. # 284 (sealed); Case No. 22-965, Dkt. # 162 (sealed).  Plaintiffs then submitted a brief to the Court responding to the arguments raised in Amazon's letter.  Case No. 21-693, Dkt. # 294 (sealed); Case No. 20-424, Dkt. # 286 (sealed); Case No. 22-965, Dkt. # 164 (sealed).  Amazon then filed a brief in response to Plaintiffs' brief.  Case No. 21-693, Dkt. # 299 (sealed); Case No. 20-424, Dkt. # 291 (sealed); Case No. 22-965, Dkt. # 168 (sealed).  Because the parties' briefing addresses issues before the Court related to these discovery matters, the Court considers the arguments raised in the briefs.

as attorney work-product or the collecting of information to provide legal advice.[2]  *Id.*  Amazon is producing to Plaintiffs 15 of the 100 documents identified for in camera review.[3]  *Id.*  The company also seeks to claw back two documents—Documents 37 (No. 0020387) and 38 (No. 0035414)—asserting that it applied insufficient redactions to the documents.

### III
#### DISCUSSION

A.    Legal Standards

The attorney-client privilege "protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."  *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).  When a communication has more than one potential purpose, a court considers "whether the *primary purpose* of the communication is to give or receive legal advice."  *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (emphasis added); *see also TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. SACV1400341JVSDFMX, 2016 WL 6922075, at *2 (C.D. Cal. May 26, 2016) ("Courts generally agree that the privilege applies only if the primary or predominate purpose of the communication is to seek legal advice or assistance.").  "A dual-purpose communication can only have a single 'primary' purpose."  *Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (quoting *In re Grand Jury*, 23 F.4th at 1091).  And privilege claims "must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of

---

[2] Amazon also identifies documents that contain redactions and documents that have a "change in production status" (i.e., documents it has produced to Plaintiffs, documents that have technical errors, or documents it seeks to claw back).  *See* Case No. 21-693, Dkt. # 292 (sealed); Case No. 20-424, Dkt. # 284 (sealed); Case No. 22-965, Dkt. # 162 (sealed).

[3] Amazon will produce Documents 3 (No. 0000332), 12 (No. 0045842), 31 (AMZ_CAAG_00007917), 33 (AMZ_CAAG_00007921), 36 (AMZ_CAAG_00046146), 39 (No. 0022367), 40 (No. 0022362), 45 (No. 0008981), 60 (No. 0000979), 67 (No. 0004255), 77 (No. 0032021), 78 (No. 0005682), 88 (AMZ_CAAG_00015084), 97 (AMZ_CAAG_00086334), 98 (AMZ_CAAG_00086580).  Thus, the Court need not review these documents.

privilege is unacceptable. The scope of the privilege should be 'strictly confined within the narrowest possible limits.'" *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (quoting *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)).

The work-product doctrine "is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or [their] representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)). The doctrine "protects 'certain materials prepared by an attorney acting for [their] client in anticipation of litigation.'" *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). When a document serves a "dual purpose" (i.e., when it was not prepared solely for litigation), the court considers whether "'the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *Richey*, 632 F.3d at 568 (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004). Under the "because of" standard, the court looks at the totality of the circumstances to determine whether the "'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'" *Id.* (quoting *Torf*, 357 F.3d at 908).

B.    Amazon's Request to Claw Back Documents 37 and 38

Generally, a party waives privilege with respect to a document if they produce it. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116–17 (9th Cir. 2020). Federal Rule of Evidence 502(b) provides that disclosure does not waive privilege when it is (1) inadvertent; (2) the privilege holder "took reasonable steps to prevent disclosure;" and (3) the privilege holder took prompt, reasonable steps to correct the error. *See* Fed. R. Evid. 502(b)(1) – (3). And Federal Rule of Evidence 502(d) provides that a federal court may order that the privilege is not waived due to production. "[W]aiver of any privilege [i]s the threshold issue" when determining

whether a clawed back document is privileged.  *In re Qualcomm Litig.*, No. 3:17-CV-108-GPC-MDD, 2018 WL 6617294, at *4 (S.D. Cal. Dec. 18, 2018).  The party asserting privilege bears the burden of proving that privilege is not waived.  *Id.*

Plaintiffs contend that Amazon cannot show that the disclosure of the two documents was inadvertent.  Case No. 21-693, Dkt. # 294 (sealed) at 9–11; Case No. 20-424, Dkt. # 286 (sealed) at 9–11; Case No. 22-965, Dkt. # 164 (sealed) at 9–11.  They say that the Protective Order invokes the protections afforded by Rule 502*(b)* and Amazon may not claw back documents it *intentionally* produced to Plaintiffs.  *Id.*

Amazon responds that the parties did not intend to override the protections of Federal Rule of Evidence 502*(d)*.  Case No. 21-693, Dkt. # 299 (sealed) at 3–4; Case No. 20-424, Dkt. # 291 (sealed) at 3–4; Case No. 22-965, Dkt. # 168 (sealed) at 3–4.  The company says that it did not waive privilege because the Protective Order controls the treatment of documents produced during discovery in these cases.  *Id.*

1.    The Protective Order

Rule 502(d) allows a federal court to "order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver[.]"  The Protective Order

> invokes the protections afforded by Fed. R. Evid. 502(b). As provided under Fed. R. Evid. 502(b) and 502(d) and subject to the limitations in Fed. R. Evid. 502(a), the disclosure of privileged material in connection with this litigation does not operate as a waiver in this action or any other action by the Producing Party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

Case No. 21-693, Dkt. # 169 at 17; Case No. 20-424, Dkt. # 179 at 17; Case No. 22-965, Dkt. # 82 at 17–18.[4]

Other courts in this Circuit have reasoned that while Rule 502 permits "parties to modify individualized protective orders, unless those modifications contain 'concrete directives' regarding each prong of Rule 502(b), the prongs of Rule 502(b) remain the standard for evaluating a claw back request [p]articularly when the modifying language is not sufficiently clear and adequate, the prongs of Rule 502(b) control." *United States v. United Health Grp., Inc.*, No. CV 16-8697 FMO (SSx), 2020 WL 10731257, at *3 (C.D. Cal. Nov. 9, 2020) (citing *Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, No. 2:11-CV-02082-APG, 2013 WL 5332410, at *13 (D. Nev. Sept. 23, 2013) ("It goes without saying that parties must adequately articulate the desire to supplant analysis under Rule 502(b) in any agreement under Rule 502(d) or (e)")); *see also Brown v. Google LLC*, No. 20CV03664YGRSVK, 2022 WL 12039375, at *5–6 (N.D. Cal. Oct. 20, 2022).

The Protective Order, approved of by this Court, does not "articulate the desire" to forgo the Rule 502(b) waiver analysis. No reasonable reading of the Order supports Amazon's contention that it allows a party to claw back a document under any circumstances. The Order expressly "invokes the protections afforded by Fed. R. Evid. 502(b)." Case No. 21-693, Dkt. # 169 at 17; Case No. 20-424, Dkt. # 179 at 17; Case No. 22-965, Dkt. # 82 at 17–18. Thus, the Rule 502(b) waiver standard still applies to the parties' claw back requests.

---

[4] The Amended Stipulated Protective Orders across the three cases have identical language regarding the "Inadvertent Production of Privileged or Otherwise Protective Material." Case No. 21-693, Dkt. # 169 at 17; Case No. 20-424, Dkt. # 179 at 17; Case No. 22-965, Dkt. # 82 at 17–18.

1

2.    Rule 502(b) exception to waiver

2

As stated above, when a party discloses a privileged document, that "disclosure does not

3

operate as a waiver" if "(1) the disclosure is inadvertent; (2) the holder of the privilege or

4

protection took reasonable steps to prevent disclosure; and (3) the holder promptly took

5

reasonable steps to rectify the error."  Fed. R. of Evid. 502(b)(1) – (3).  Each of the requirements

6

of Rule 502(b) "are separate and should not be conflated in the analysis[.]"  *Datel Holdings Ltd.*

7

*V. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *2 (N.D. Cal. Mar. 11, 2011).

8

"The disclosing party has the burden of proving that the elements of the rule have been met."

9

*Columbia Cmty. Credit Union v. Chicago Title Ins. Co.*, No. C09-5290RJB, 2009 WL 10688219,

10

at *4 (W.D. Wash. Dec. 22, 2009).

11

Plaintiffs assert that Amazon cannot show inadvertence because the company

12

intentionally produced the documents to Plaintiffs in redacted form after its privilege re-review.

13

Case No. 21-693, Dkt. # 294 (sealed) at 9–11; Case No. 20-424, Dkt. # 286 (sealed) at 9–11;

14

Case No. 22-965, Dkt. # 164 (sealed) at 9–11.  They say that Amazon has adduced no facts that

15

would show that the production of these documents was accidental.  *Id.*  Amazon does not

16

address Plaintiffs' argument about inadvertence.  *See generally* Case No. 21-693, Dkt. # 299

17

(sealed) at 3–4; Case No. 20-424, Dkt. # 291 (sealed) at 3–4; Case No. 22-965, Dkt. # 168

18

(sealed) at 3–4.

19

While Rule 502(b) does not define "inadvertent," other courts have developed two

20

approaches to the issue.  *See T&W Holding Co., LLC v. City of Kemah, Texas*, 641 F. Supp. 3d

21

378, 382 (S.D. Tex. 2022); *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-

22

CIV, 2015 WL 1565310, at *8 (S.D. Fla. Apr. 8, 2015).  Under the first approach, the court

23

simply looks to "whether the party intended a privileged or work-product protected document to

24

be produced or whether the production was a mistake.'"  *T&W Holding Co., LLC*, 641 F. Supp.

3d at 382.  Under the second, the court looks at factors along with a party's subjective intent, "including the total number of documents reviewed, the procedures used to review the documents before production, and the actions of the producing party after discovering that the documents had been produced."  *Id.*

Other district courts in the Ninth Circuit have adopted the first approach.  *See, e.g.*, *B&G Foods N. Am., Inc. v. Embry*, No. 2:20-CV-0526 KJM DB, 2024 WL 922900, at *2 (E.D. Cal. Mar. 4, 2024) ("An 'inadvertent disclosure' is simply where the work-product protected document was produced as the result of a mistake."); *Datel Holdings Ltd.*, 2011 WL 866993, at *2 ("[I]nadvertence under the first prong does not turn on the reasonable steps taken to prevent mistaken disclosure addressed in the second prong.").  The Court adopts this approach because it aligns with other courts in the Circuit as well as the structure and purpose of Rule 502(b).  *See Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009) ("[T]he structure of Rule 502 suggests that the analysis under subpart (b)(1) is intended to be much simpler, essentially asking whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake.").

Amazon's production of Documents 37 and 38 was intentional.  Plaintiffs say that Document 37 was produced with redactions on February 25, 2025, and Document 38 was produced with redactions on August 9, 2024, and then re-produced to Plaintiffs with fewer redactions on January 29, 2025.  Case No. 21-693, Dkt. # 294 (sealed) at 8; Case No. 20-424, Dkt. # 286 (sealed) at 8; Case No. 22-965, Dkt. # 164 (sealed) at 8.  Amazon intentionally produced these documents with specific redactions after completing a comprehensive re-review of its privilege logs.  "When a party makes a strategic decision that it later regrets, such as redacting a document rather than withholding it completely as privileged, it cannot later claim inadvertence to shield itself from the consequences of its own judgment call."  *F.T.C. v. Amazon.com, Inc.*, No. 2:23-CV-00932-JHC,

2024 WL 3620467, at *6 (W.D. Wash. Aug. 1, 2024); *see also T&W Holding Co., LLC*, 641 F. Supp. 3d at 383 ("Kemah's lawyers made a conscious decision to identify certain documents as those they may rely on in this case, and they cannot now run away from that decision claiming mistake or inadvertence.").[5]

C.    Communications Involving Amazon's In-House Counsel

Most of the documents submitted to the Court for in camera review are communications involving Amazon's in-house counsel.  In-house attorneys often serve multiple functions in a corporation.  They "may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities."  *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).  The attorney-client privilege does not extend to an in-house attorney's *business* advice and "[c]orporations may not conduct their business affairs in private simply by staffing a transaction with attorneys." *Id.* (citing *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977)); *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019) ("Communications with in-house counsel may relate to business rather than legal matters, and in-house counsel's business advice is not protected by attorney-client privilege.").

Even when an in-house attorney leads a discussion or takes an active role in a meeting, this does not necessarily make the entire communication privileged.  For example, Documents 86 (AMZ_CAAG_00015117) and 87 (AMZ_CAAG_0015492) are internal email chains, including non-attorney employees and in-house attorneys, about Amazon's "talking points" in response to a New York Times article about Amazon's acquisition of Whole Foods Market.

---

[5] Because Amazon has failed to meet its burden for one of the requirements under Rule 502(b), the Court need not address the other two elements.  *See, e.g.*, *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 446 (D. Md. 2012) ("Because Maxtena has failed to meet its burden with respect to at least one of the required elements of Rule 502(b), there is no need to address the other two prongs.").

These communications, in which in-house attorneys actively take part, concern public relations matters such as potential responses to reporters.  Even though the email chain contains statements like "***confirming privileged and confidential***" and "seeking legal advice" there is no discernable request for legal advice or any legal analysis in the emails.  When the primary purpose of the document relates to business operations rather than giving or receiving legal advice, it is not protected by the attorney-client privilege.  *See Oracle Am., Inc. v. Google, Inc.*, No. C-10-03561-WHA DMR, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011) ("In-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters. When attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status, a party therefore 'must make a clear showing that the speaker made the communication[ ] for the purpose of obtaining or providing *legal* advice.'" (quoting *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076) (alteration and emphasis in original).

Amazon's in-house counsel sometimes provide input on memoranda prepared by non-attorney employees.  For example, Document 22 (No. 002647) is a memorandum drafted by three non-attorney employees about updates to Amazon's third-party seller business, including the growth of the "Fulfilled by Amazon" program, expanding Amazon's advertising program, and the growth of global sales.  One of the non-attorney employees shared the memorandum with in-house attorney Katherine Wax, who reviewed and edited the document.  The memorandum has a footer that says, "Amazon.com Privileged & Confidential," but the memorandum concerns business matters and Wax's edits to the document are mainly stylistic and grammatical.  The edits do not reflect any legal analysis or advice.  There is also no request for legal advice in the document.  Thus, this memorandum is not privileged.  Business memoranda shared with in-house attorneys are not privileged unless the party asserting privilege can show that the communications involving in-house counsel were made for the primary

purpose of providing or obtaining legal advice.  Communications concerning advertising, business competitors, the business' financial priorities, and so on are not privileged.  *See Dewitt v. Walgreen Co.*, No. 4:11-CV-00263-BLW, 2012 WL 3837764, at *4 (D. Idaho Sept. 4, 2012) ("The mere fact that in-counsel reviewed and revised a document does not necessarily make the documents privileged or protected by the work-product doctrine."); *In re Avandia Mktg., Sales Pracs. & Prods. Liab.*, No. 07-MD-01871-CMR, 2009 WL 4807253, at *2 (E.D. Pa. Oct. 2, 2009), *report and recommendation adopted sub nom. In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 07-MD-01871, 2009 WL 4641707 (E.D. Pa. Dec. 7, 2009) ("[T]he fact that an attorney (as well as many non-attorneys) reviewed an otherwise non-privileged document does not transform that document into a privileged one.").

D.    Attorney Work-Product

In its letter to the Court, Amazon asserts that "many" of the documents at issue are protected by the work-product doctrine.  Case No. 21-693, Dkt. # 292 at 6 (sealed); Case No. 20-424, Dkt. # 284 at 6 (sealed); Case No. 22-965, Dkt. # 162 at 6 (sealed).  But as Plaintiffs point out, Amazon asserted work product claims only in its amended privilege log for five documents in the in camera sample.[6]  Plaintiffs contend that because Amazon delayed raising these work-product claims, they have waived that protection.  Case No. 21-693, Dkt. # 294 (sealed) at 15–16; Case No. 20-424, Dkt. # 286 (sealed) at 15–16; Case No. 22-965, Dkt. # 164 (sealed) at 15–16 (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005)).  Amazon counters that waiver is not automatic, and courts have permitted parties to alter the asserted basis for privilege on a document-by-document basis in connection

---

[6] Amazon's February 25, 2025 Privilege Log asserts work-product protection over Documents 7 (No. 0001677), 10 (No. 0022819), 17 (No. 0016280), 28 (AMZ_CAAG_000107250) and 100 (AMZ_CAAG_00005410).

with an in camera review.  Case No. 21-693, Dkt. # 299 (sealed) at 6; Case No. 20-424, Dkt. #

291 (sealed) at 6; Case No. 22-965, Dkt. # 168 (sealed) at 6 (citing *In re Google RTB Consumer*

*Priv. Litig.*, No. 21-CV-02155-YGR (VKD), 2024 WL 3642191, at *3 (N.D. Cal. Aug. 1, 2024)).

In *Burlington Northern*, the Ninth Circuit determined that there is no per se waiver of

privilege when a party fails to produce their privilege log within the 30-day time limit under

Federal Rule of Civil Procedure 34.  408 F.3d at 1149.  Other courts have said that "*Burlington*

*Northern* broadly addresses how district courts should evaluate a claim of waiver arising from a

failure to raise a timely, valid claim of privilege."  *Mi Familia Vota v. Fontes*, 344 F.R.D. 496,

520 (D. Ariz. 2023); *see also Munguia-Brown v. Equity Residential*, 337 F.R.D. 509, 515 (N.D.

Cal. 2021) ("The Ninth Circuit's decision in *Burlington* seems to envision a responding party

that announces its privilege objection early but then makes it hard for that claim to be evaluated

by delaying service of its privilege log for a long time.").  The Ninth Circuit stated that courts

should determine whether privilege is waived on a case-by-case basis and consider the factors

below,

> the degree to which the objection or assertion of privilege enables the litigant
> seeking discovery and the court to evaluate whether each of the withheld documents
> is privileged (where providing particulars typically contained in a privilege log is
> presumptively sufficient and boilerplate objections are presumptively insufficient);
> the timeliness of the objection and accompanying information about the withheld
> documents (where service within 30 days, as a default guideline, is sufficient); the
> magnitude of the document production; and other particular circumstances of the
> litigation that make responding to discovery unusually easy (such as, here, the fact
> that many of the same documents were the subject of discovery in an earlier action)
> or unusually hard.

*Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at 1149.  It also said that these factors should be

considered as part of a "holistic reasonableness analysis . . . to forestall needless waste of time

and resources, as well as tactical manipulation of the rules and the discovery process."  *Id.*

The circumstances here warrant a conclusion of waiver.  Amazon claimed work-product protection in its amended privilege log for only five of the documents in the in camera sample, yet it is now asserting in its correspondence to the Court that work-product protection applies to dozens more documents in the in camera sample.  *See* Case No. 21-693, Dkt. # 292 (sealed); Case No. 20-424, Dkt. # 284 (sealed); Case No. 22-965, Dkt. # 162 (sealed); *see also See* Case No. 21-693, Dkt. # 289-1 (sealed); Case No. 20-424, Dkt. # 281-1(sealed); Case No. 22-965, Dkt. # 161-1 (sealed).  Amazon also fails to show or explain how these documents qualify for work-product protection.  For example, Amazon asserts work-product protection over Document No. 85 (AMZ_CAAG_00081435), an email written by a non-attorney employee and sent to other non-attorney employees and in-house attorneys summarizing a team meeting about "Uncompetitive 3P Offers."  This emailed summary was drafted by a non-attorney and there are no discernable legal strategies or impressions in this document.  There is also no indication that this document was prepared in anticipation of litigation.  *See NextEra Energy Mktg., LLC v. Macquarie Energy LLC*, No. 1:22-CV-01345-VM, 2024 WL 2048518 (S.D.N.Y. May 8, 2024)("[T]he work product doctrine does not automatically protect any document just because an in-house counsel was an author, recipient, or custodian.").

Thus, the Court considers only the five work-product protection claims that Amazon raised in its amended privilege log.  Amazon has waived work-product protection over all other documents in the in camera sample.

E.      Results of the Court's In Camera Review & Next Steps

Having reviewed Amazon's explanatory notes, cover letter, and the parties' supplemental briefing, the Court determines that 54 out of the 85 documents reviewed in camera must be produced to Plaintiffs in full or with some redactions.  Of these 54 documents, 19 contain some privileged material or attorney-work product, but the scope of the designation was too broad.

Thus, about 63 % of the documents submitted for in camera review must be provided to Plaintiffs in their entirety or with appropriate redactions.

    1.      Withheld documents to be produced to Plaintiffs in full:

- Document 1 (No. 0016589)

- Document 5 (No. 0005752)

- Document 8 (No. 0014621)

- Document 11 (No. 0053715)

- Document 20 (No. 0001328)

- Document 22 (No. 0002647)

- Document 28 (AMZ_CAAG_00010725)

- Document 34 (AMZ_CAAG_00013395)

- Document 35 (AMZ_CAAG_00041575)

    2.      Documents to be reproduced to Plaintiffs *without* any redactions:

- Document 10 (No. 0022819)

- Document 37 (No. 0020387)

- Document 38 (No. 0035414)

- Document 41 (No. 0022580)

- Document 46 (No. 0022471)

- Document 47 (No. 0052449)

- Document 51 (No. 0035963)

- Document 57 (No. 0000762)

- Document 58 (No. 0004153)

- Document 59 (No. 0021007)

- Document 61 (No. 0030406)

- Document 65 (No. 0000203)

- Document 73 (No. 0012115)

- Document 74 (No. 0013218)

- Document 76 (No. 0012315)

- Document 79 (AMZ_CAAG_00009878)

- Document 82 (AMZ_CAAG_00005894)

- Document 83 (AMZ_CAAG_00067067)

- Document 85 (AMZ_CAAG_00081435)

- Document 86 (AMZ_CAAG_00015117)

- Document 87 (AMZ_CAAG_00015492)

- Document 90 (AMZ_CAAG_00029357)

- Document 92 (AMZ_CAAG_00090826)

- Document 93 (AMZ_CAAG_00085985)

- Document 94 (AMZ_CAAG_00086062)

- Document 96 (AMZ_CAAG_00086331)

3.    Documents to be produced to Plaintiffs *with* some redactions:

- Document 4 (No. 0000505) [Redact only the question posed by non-attorney Jensen Vessels to in-house attorney Michael Norvell in the November 3, 2022 9:06 A.M. email and Norvell's response in the November 3, 2022 9:24 A.M. email.]

- Document 16 (No. 0016270) [Redact only the question posed by in-house attorney Michael Norvell in the April 5, 2023 7:49 P.M. email.]

- Document 18 (0000496) [Redact only in-house attorney Michael Norvell's comments ## 3, 5 ("Page 2 comments") 6, 8 ("Page 3 comments") and 9 ("Page 4 comments").].

- Document 19 (No. 0000506) [Redact only the question posed by Jensen Vessels to in-house attorney Michael Norvell in the November 3, 2022 9:06 A.M. email and Norvell's response in the November 3, 2022 9:24 A.M. email.]

- Document 21 (No. 0002120) [Redact only in-house attorney Matthew Foman's comment # 1 ("Page 2 comments").]

- Document 23 (No. 0003639) [Redact only the second paragraph on pg. 2 under the "Hotly Debated Topics" heading and the paragraph(s) under the "Legal's Recommendation" heading on pgs. 3, 5.]

- Document 24 (No. 0003791) [Redact only in-house attorney Titus Potter's comments ## 30 ("Page 6 comments"), 33, 34 ("Page 7 comments").]

- Document 44 (No. 0019582) [Remove the redactions on pg. 4 and the first sentence on pg. 9. Amazon may keep the remaining redactions in this document.]

- Document 50 (No. 0035948) [Remove the redactions to the first sentence in non-attorney Elissa Quinby's email dated March 16, 2019 12:53 A.M. Amazon may keep the remaining redactions in this document.]

- Document 53 (No. 0024260) [Remove the redactions to non-attorney Dharmesh Meta's August 5, 2021 6:26 P.M. email.  Amazon may keep the remaining redactions in this document.]

- Document 54 (No. 0026612) [Remove the redactions to the email sent by non-attorney Chad Brown in the February 11, 2021 2:01 P.M. email to in-house attorney Ashley Nelson.  Amazon may redact only Brown's question to Nelson.]

- Document 55 (No. 0003190) [Remove the redactions to non-attorney Mike Miller's May 20, 2020 8:47 A.M. email.  Remove the redactions to non-attorney Chris Cunningham's May 20, 2020 9:10 A.M. email.  Remove the redactions to in-house counsel Christine Sam's May 20, 2020 9:12 A.M. email.  Amazon may keep the remaining redactions in this document.]

- Document 56 (No. 0030425) [Remove the redactions to pg. 2.  Amazon may keep the remaining redactions in this document.]

ORDER - 17

- Document 62 (No. 0029989) [Remove the redactions to non-attorney Namrata Shah's July 21, 2022 2:17 P.M. email.  Remove the redactions to Namrata Shah's October 21, 2022 3:42 A.M. email.  Amazon may keep the remaining redactions in this document.]

- Document 63 (No. 0029615) [Remove the redactions to pgs. 2–4, 6, and 7. Amazon may keep the remaining redactions in this document.]

- Document 64 (No. 0029652) [Remove the redactions to pg. 3.  Amazon may keep the remaining redactions in this document.]

- Document 66 (No. 0001187) [Remove the redactions to non-attorney Christa Glenn's December 8, 2020 2:01 P.M. email.  Remove the redactions to non-attorney Mike Miller's December 8, 2020 2:25 P.M. email.  Remove the redactions to Mike Miller's December 8, 2020 4:14 P.M. email.  Remove the redaction to the question in Mike Miller's December 8, 2020 5:37 P.M. email. Remove the redactions to Christa Glenn's December 8, 2020 8:47 P.M. email. Remove the redactions to non-attorney Ian Simpson's December 8, 2020 8:59 P.M. email.  Amazon may keep the remaining redactions in this document.]

- Document 70 (No. 0039126) [Remove redactions to in-house attorney Ben Garry's comment on pg. 4.  Amazon may keep the remaining redactions in the document.]

- Document 80 (AMZ_CAAG_00015041): [Remove redactions to in-house attorney Gustave Hottegindre's January 27, 2020 2:02 P.M. email.  Remove redactions to Gustave Hottegindre's January 27, 2020 5:21 P.M. email. Remove redactions to "high level comments" Nos. 1–2 in Gustave Hottegindre's January 28, 2020 12:00 P.M email.  Remove redactions to Gustave Hottegindre's January 28, 2020 2:42 P.M. email.  Remove redactions to Gustave Hottegindre's January 28, 2020 3:08 P.M. email.  Remove redactions to Gustave Hottegindre's January 28, 2020 3:30 P.M. email. Remove redactions to in-house attorney Gustave Hottegindre's January 30, 2020 10:38 A.M. email.  Amazon may keep the remaining redactions in the document.]

4.    Documents that need not be reproduced to Plaintiffs:

- Document 2 (No. 0000744)

- Document 6 (No. 0000386)

- Document 7 (No. 0001677)

- Document 9 (No. 0021029)

- Document 13 (No. 0022790)

- Document 14 (No 0016559)

- Document 15 (No. 0009059)

- Document 17 (No. 0016280)

- Document 25 (No. 0009062)

- Document 26 (AMZ_CAAG_00000931)

- Document 27 (AMZ_CAAG_00000114)

- Document 29 (AMZ_CAAG_00011772)

- Document 30 (AMZ_CAAG_00002519)

- Document 32 (AMZ_CAAG_00027214)

- Document 42 (No. 0009068)

- Document 43 (No. 0018407)

- Document 48 (No. 0014224)

- Document 49 (No. 0026804)

- Document 52 (No. 0024156)

- Document 68 (No. 0022228)

- Document 69 (No. 0042568)

- Document 71 (No. 0001283)

- Document 72 (No. 0050626)

- Document 75 (No. 0051509)

- Document 81 (AMZ_CAAG_00001234)

- Document 84 (AMZ_CAAG_00002336)

- Document 89 (AMZ_CAAG_00016780)

- Document 91 (AMZ_CAAG_00023500)

- Document 95 (AMZ_CAAG_00090800)

- Document 99 (AMZ_CAAG_00018833)

- Document 100 (AMZ_CAAG_00005410)

The Court's in camera review shows that Amazon improperly designated operational, business, and strategic documents as attorney-client communications or attorney-work product. For many of these communications, in-house attorneys are simply copied on emails. Even where an in-house attorney actively takes part in a conversation, most of the communications involve public relations matters, technical/operational issues, strategic goals for the company, customer expectations, or regulatory demands, not requests for or the provision of legal advice. Many documents over which Amazon asserted attorney-work product do not appear to have been prepared in anticipation of litigation or contain discernable legal strategies.

Neither party has provided a practical approach to resolve their disagreements about the potentially thousands of disputed privilege log entries across these three cases without imposing an unreasonable burden on the Court. In this Order, the Court has articulated the legal standards the parties are to apply to their privilege and work-product claims and provided guidance for addressing any remaining privilege disputes. That said, unless the parties' future disputes require assessing only a limited number of privilege log entries or documents, the Court is inclined to refer the parties to a special master from private practice. The Court is also amenable to assessing the costs of retaining the special master against the parties in proportion to their success (or lack thereof) on the merits of their claims of privilege or work-product protection. For example, a party who prevails on 70% of the disputed privilege claims will have to pay only 30% of the special master's fees and expenses.

## IV

### CONCLUSION

The Court ORDERS Amazon to produce the documents as set forth above by April 8, 2025.

Dated this 25th day of March, 2025.

*John H. Chun*
_____
John H. Chun
United States District Judge