The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH FRAME-WILSON, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a corporation,<br><br>Defendant. | Case No. 2:20-cv-00424-JHC<br><br>**DEFENDANT AMAZON.COM, INC.'S MOTION TO EXCLUDE TESTIMONY OF DAVID SUNDING, PH.D.**<br><br>ORAL ARGUMENT REQUESTED<br><br>NOTE ON MOTION CALENDAR: February 27, 2026<br><br>**REDACTED** |



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

**TABLE OF CONTENTS**

I. **INTRODUCTION** .......... 1

II. **LEGAL STANDARD** .......... 2

III. **ARGUMENT** .......... 2

A. Sunding's Methodology Is Unreliable Because It Excludes Almost [redacted] Percent of the Relevant Data—the Data Reflecting No Price Changes. .......... 2

B. Sunding Concedes that Focal Point Pricing Can Result in No Pass-Through, Particularly in Response to Small Cost Changes, But Tries to Minimize the Prevalence of Focal Point Pricing by Performing Flawed Analyses. .......... 6

C. The Data Refute Sunding's Critique of Berger's Analysis of the Impact of the February 2019 Fee Change on Prices. .......... 7

**CONCLUSION** .......... 8



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

# TABLE OF AUTHORITIES

**Cases**

*Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*,
55 F. Supp. 2d 1024 (N.D. Cal. 1999) .......... 5

*Casey v. Home Depot*,
2016 WL 7479347 (C.D. Cal. 2016) .......... 2

*Daubert v. Merrell Dow Pharms., Inc.*
509 U.S. 579 (1993) .......... 6

*Davis v. Carroll*,
937 F. Supp. 2d 390 (S.D.N.Y. 2013) .......... 2

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......... 2

*In re Hanford Nuclear Rsrv. Litig.*,
894 F. Supp. 1436 (E.D. Wash. 1995) .......... 5

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
524 F. Supp. 3d 1007 (S.D. Cal. 2021), *aff'd*, 2022 WL 898595 (9th Cir. 2022) .......... 5

*In re Live Concert Antitrust Litig.*,
863 F. Supp. 2d 966 (C.D. Cal. 2012) .......... 5

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .......... 8

*Laumann v. National Hockey League*,
117 F. Supp. 3d 299 (S.D.N.Y. 2015) .......... 8

*Morrison v. Washington*,
2023 WL 5287647 (W.D. Wash. 2023) .......... 2

*Rojas v. Marko Zaninovich, Inc.*,
2011 WL 6671737 (E.D. Cal. 2011) .......... 5

*U.S. Information Systems, Inc. v. Int'l Brotherhood of Elec. Workers*,
313 F. Supp. 2d 213, 234 (S.D.N.Y. 2004) .......... 5



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

**Rules**

Fed. R. Evid. 702 ........................................................................................................ 2



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

## I. INTRODUCTION

Amazon demonstrated in its opposition to class certification that Plaintiffs failed to offer a methodology capable of showing class-wide impact because, among other reasons, their model predicts the uniform pass-through of small cost changes that sellers often would not pass through to consumer class members. Because of the limited degree to which sellers pass through small cost changes, Plaintiffs' proposed class includes uninjured class members and their expert Prof. Pathak relies on an average damages calculation that includes unharmed transactions.

On reply, Plaintiffs seek to rehabilitate their methodology with expert opinions from Dr. David Sunding. Sunding purports to perform analyses that show sellers *do* commonly adjust their prices by the small amounts Plaintiffs' model predicts. To reach his conclusion, Sunding systematically excluded all instances in which sellers did not adjust their prices, accounting for almost [redacted] percent of the available data. Sunding's analysis of the data is not merely selective analysis, it is systematic exclusion of contradictory evidence to manufacture a predetermined result. His approach is akin to measuring automobile reliability by studying only cars that did not break down or assessing academic attendance by examining only pupils who never missed a day of school.

In addition, none of Sunding's analyses of price changes are in connection with a fee change; he examines price changes over the entire period covered by the data without regard to whether they were in response to a small change in costs; accordingly, none of his analyses address whether it was more likely than not that sellers would have uniformly passed through fee changes to consumers. Berger's analyses demonstrate that focal point prices are "stickier" than non-focal point prices and are less likely to change in response to a small change in costs, and Sunding's critiques of Berger's analyses are based on hypothetical concerns that are refuted by the data. For these reasons, Sunding's opinions fail to meet Rule 702's reliability and "fit" requirements, and they are unhelpful because they fail to inform whether Plaintiffs have put forward a methodology



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

for showing class-wide impact. Sunding's opinions should therefore be excluded.

## II. LEGAL STANDARD

"Rule 702 charges trial courts to act as gatekeepers to ensure any expert testimony is reliable as well as relevant." *Morrison v. Washington*, 2023 WL 5287647, at *2 (W.D. Wash. 2023).[1] Federal Rule of Evidence 702 requires Plaintiffs to demonstrate "that it is more likely than not that" their "expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Accordingly, the Court is required to analyze the expert's data and methodology to determine whether the expert testimony is "based on sufficient facts or data." Fed. R. Evid. 702(b); *Casey v. Home Depot*, 2016 WL 7479347, at *21 (C.D. Cal. 2016) (expert's opinion excluded where analysis was not "based on sufficient facts and data").

Where "expert testimony rests on inadequate factual foundations, problematic assumptions, or a misleadingly partial selection of relevant facts, it must be excluded under Rule 702." *Davis v. Carroll*, 937 F. Supp. 2d 390, 418 (S.D.N.Y. 2013). Expert testimony must be excluded where there is "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## III. ARGUMENT

### A. Sunding's Methodology Is Unreliable Because It Excludes Almost [redacted] Percent of the Relevant Data—the Data Reflecting No Price Changes.

Sunding's opinion that online retail prices are highly "[redacted]" and therefore commonly change to address small cost increases, Ex. A, Sunding Rep. ¶ 25, must be excluded because this opinion rests on a methodology designed to ignore almost [redacted] percent of the relevant data to reach distorted and therefore uninformative and unreliable results.

To support his claim that focal point prices do not prevent sellers from making small price adjustments, Sunding calculated a "[redacted] Ex. A, Sunding Rep. ¶¶ 29-

[1] All references to "Ex." are to exhibits to the Declaration of Amy J. Mauser in Support of Amazon's Motion to Exclude Testimony of David Sunding, Ph.D. With respect to quoted material, unless otherwise indicated, brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. Emphasis is added unless indicated.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

30, Table 1. As his analysis demonstrates, and as he confirmed during his deposition, Sunding's analysis [redacted]. Ex. B, Sunding Dep. 59:9-60:7, 65:11-66:10; Ex. A, Sunding Rep. ¶ 29, Table 1. [redacted]. Ex. B, Sunding Dep. 70:8-71:10.

Specifically, for his Table 1, Sunding started with all transactions in the Wal-Mart and eBay data—[redacted]. Of those transactions, he determined [redacted]. Ex. A, Sunding Rep. ¶¶ 28-30, Table 1; Ex. B, Sunding Dep. 59:9-66:10; 70:8-71:10; 73:3-13. As a result, [redacted]. Ex. B, Sunding Dep. 66:16-67:16 (confirming that [redacted]"); *id.* at 59:9-60:23 (admitting "[redacted]"); *id.* at 73:3-25 ("[redacted]."); *id.* ([redacted]).

Sunding's Table 2 analyzes an even smaller subset of the transactions than in Table 1—[redacted]. Ex. B, Sunding Dep. 80:15-85:25. [redacted]



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

[redacted]. *Id.*[2]

For the transactions that did not experience a price change, Sunding was unable to identify what percentage had focal point prices and what percentage did not. Ex. B, Sunding Dep. 77:1-14 ("[redacted]."). Sunding was also unable to say [redacted]. *Id.* at 87:13-24 ("[redacted]"); *id.* at 87:25-88:14 ([redacted]).

For prices that did not change, Sunding's failure to analyze what percentage of transactions had focal point prices and what percentage did not is fatal to his analysis because it shows that he never examined the degree to which focal point prices compared to non-focal point prices did not change as a result of small changes in costs. Because he focused solely on price changes, and then small price changes, all his analyses show is that, in the rare instance in which small price changes took place, some of those price changes are from focal point prices. Even then, [redacted]. Ex. A, Sunding Report, Table 2; *see also* Ex. B, Sunding Dep. 85:22-25 ("[redacted].").

Sunding's exclusion of transactions with no price changes is not just an issue of the size of

[2] Like Tables 1 and 2, Sunding's Table 3 also excludes transactions with focal points that did not change. Ex. B, Sunding Dep. 109:10-21. Table 3 takes the same price transitions examined in Table 1, *id.* at 106:22-107:2 and examines the rate at which particular cent-endings transition to the same focal point price, a different focal point price, or a non-focal point price. Ex. A, Sunding Rep., Table 3.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

the data sample considered; the flaws in Sunding's analysis are even more serious. Sunding's data sample [redacted]. Courts exclude expert testimony where an expert "selectively" examines "only portions of the data." *Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.,* 55 F. Supp. 2d 1024, 1034-35 (N.D. Cal. 1999); *In re Hanford Nuclear Rsrv. Litig.*, 894 F. Supp. 1436, 1450 (E.D. Wash. 1995) (rejecting putative expert who was "selective in his choice of supporting data, focusing only on those fragments of data which tend to lend credence to his theory"). For example, in *U.S. Information Systems, Inc. v. Int'l Brotherhood of Elec. Workers*, the court granted defendants' motion to exclude expert testimony where the data the expert used was the result of a process that "was systematically biased to select [data] with the very price differential that [the expert's] analysis was designed to test for." 313 F. Supp. 2d 213, 234 (S.D.N.Y. 2004).

Sunding's exclusion of the transactions with no price change causes "serious methodological flaws" in his analysis because it entirely ignores all the data that fail to support his opinion, leading to distorted results. *Rojas v. Marko Zaninovich, Inc.*, 2011 WL 6671737, at *4-5 (E.D. Cal. 2011) (an expert who "appears to have excluded" relevant data without explanation "before starting his analysis" is properly rejected because "his report was flawed" if the data excluded "distort[ed] the analysis" by failing to "use all available [relevant] information available at the time he analyzed his data"). Where, as here, an expert excludes from analyses data that would have undermined the expert's opinions, courts have excluded the expert's opinions as impermissibly determining the results of the expert's analysis. *E.g.*, *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 988 (C.D. Cal. 2012) (excluding expert whose "approach impermissibly predetermined the results" because "Dr. Phillips simply excluded 1999 from his data set, and performed the 'Before–and–After' analyses as though 1999 had never occurred"); *In re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F. Supp. 3d 1007, 1039 (S.D. Cal. 2021), *aff'd*, 2022 WL 898595 (9th Cir. 2022) (rejecting expert whose analysis "consists of a cherry-picked selection of



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

favorable data" and is "unduly results-driven, not good science, and therefore inadmissible").

**B. Sunding Concedes that Focal Point Pricing Can Result in No Pass-Through, Particularly in Response to Small Cost Changes, But Tries to Minimize the Prevalence of Focal Point Pricing by Performing Flawed Analyses.**

Sunding does not dispute that seller pricing strategies, including focal point pricing, can result in no pass-through. Ex. B, Sunding Deposition, 89:5–13 ("[redacted]"). He concedes that for small fee changes, a seller situated at a sticky focal point (such as $19.99, $19.95, or $20.00) might not change its price at all. *Id*. at 91:14-92:2 ("[redacted]."). Sunding also concedes that, in addition to focal point pricing, sellers might not pass through small cost changes based on "[redacted] *id*. at 89:14-90:18; 92:5-18, or [redacted]. *Id.* at 90:19-91:13.

Notwithstanding these concessions, Sunding asserts that "[redacted]" Ex. A, Sunding Report ¶ 57. Again, Sunding applies a flawed methodology to try to generate support for his conclusion, which is grounds for exclusion. He tries to minimize the prevalence of focal point pricing through his Table 5, which sets forth [redacted] *Id*. ¶ 56, Table 5. But his analysis demonstrates that [redacted]. *Id.*

The analysis in Table 5 fails to "fit" Plaintiffs' claims, as *Daubert v. Merrell Dow Pharms., Inc.* requires, 509 U.S. 579, 591 (1993), and therefore is unhelpful to the factfinder for at least two reasons. First, Sunding focuses on seller-product pairs, rather than transactions. The relevant



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

inquiry, for the purpose of Plaintiffs' claims, is not whether a product for a given seller was priced at the same focal point for the entirety of the period covered by the data, but whether sellers for specific transactions chose to maintain the same focal point price, rather than pass through a small fee change in their prices to consumers. As Berger explains, Sunding's focus on seller-product pairs rather than transactions [redacted])" Ex. C, Berger Surreply Rep. ¶ 11.

Second, as Berger explains, "[redacted]" Ex. C, Berger Surreply Rep. ¶ 32.

### C. The Data Refute Sunding's Critique of Berger's Analysis of the Impact of the February 2019 Fee Change on Prices.

Berger addressed the impact of the February 2019 Amazon fee decrease on prices. Sunding does not dispute the results that Berger obtained. Instead, Sunding claims that [redacted]. Ex. A, Sunding Report ¶ 40 n.39. Sunding does not cite any support for his analysis other than two internal Amazon documents that address [redacted] He admitted at his deposition that [redacted]



Davis Wright Tremaine LLP
Law Offices
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

[redacted] is not the same thing as analyzing seller responses in the form of price changes to fee modifications. Ex. B, Sunding Dep. 120:11-126:17.

Sunding performed no analysis to demonstrate that a longer time window would have changed Berger's results. Had he performed that analysis, Sunding would have observed that "[redacted]." Ex. C, Berger Surreply ¶¶ 10, 27. Berger's empirical analysis relating to the impact of the February 2019 fee decreases on prices is undisputed. Sunding's hypothetical and unsubstantiated critiques render his opinions irrelevant to a central class certification question in this case: whether sellers pass through fee changes by the uniform 25% assumed by Pathak. Opinions that fail to analyze the available facts and data, as Sunding's opinion about the appropriate time window here, are inadmissible. *E.g.*, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (expert must apply principles and methods to the facts of the case); *Laumann v. National Hockey League*, 117 F. Supp. 3d 299, 315 (S.D.N.Y. 2015) (excluding expert opinion that "substitutes mathematical assumptions for actual, readily-obtainable information").

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court exclude Dr. Sunding's analyses and opinions.

DATED this 6th day of February, 2026.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

/s/ *John A. Goldmark*

John A. Goldmark, WSBA # 40980
MaryAnn Almeida, WSBA #49086
Emily Parsons, WSBA #57061
920 Fifth Avenue, Suite 3300

Seattle, WA 98104-1610
Telephone: (206) 757-8136
Email: JohnGoldmark@dwt.com
Email: MaryAnnAlmeida@dwt.com
E-mail: emilyparsons@dwt.com

DUNN ISAACSON RHEE LLP

/s/ *Karen L. Dunn*
Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Kyle Smith (*pro hac vice*)
401 Ninth Street, NW
Washington, D.C. 20004-2637
Telephone: (202) 240-2900
E-mail: kdunn@dirllp.com
E-mail: wisaacson@dirllp.com
E-mail: amauser@dirllp.com
E-mail: ksmith@dirllp.com

Meredith Dearborn (*pro hac vice*)
345 California Street
Suite 600
San Francisco, CA 94104-2671
Telephone: (202) 240-2900
Email: mdearborn@dirllp.com

*Attorneys for Amazon.com, Inc.*

*I certify that this memorandum contains 2,933 words in compliance with the Local Civil Rules.*